```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK
------------------------------:

PANINI AMERICA, INC.,          : Case No.: 23-CV-9714

                 Plaintiff, :

     v.                        :

FANATICS COLLECTIBLES          : New York, New York

INTERMEDIATE HOLDCO, INC.,     : July 2, 2025

et al.,                        :

                 Defendants.:

------------------------------:
```

           TRANSCRIPT OF STATUS CONFERENCE HEARING

          BEFORE THE HONORABLE VALERIE FIGUEREDO

               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

```
For Plaintiff:          BOIES, SCHILLER & FLEXNER LLP
                        BY:  David Boies, Esq.
                             Stuart Singer, Esq.
                        333 Main Street
                        Armonk, New York 10504

For Defendant:          LATHAM & WATKINS LLP
                        BY:  Lawrence E. Buterman, Esq.
                        1271 Avenue of the Americas
                        New York, New York 10020

For Defendant:          QUINN EMANUEL
                        BY:  Kathryn D. Bonacorsi, Esq.
                        295 Fifth Avenue
                        New York, New York 10016
```

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.


           AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1              THE DEPUTY CLERK:  Good afternoon.  This is
 2   the matter of Panini America, Inc. vs. Fanatics,
 3   Inc., et al.; Case Number: 23-cv-9714.  The
 4   Honorable Valerie Figueredo presiding.
 5              Counsels, can you please make your
 6   appearances for the record, and it's just for those
 7   that will be speaking during this conference.
 8              For Panini, who do we have on the line?
 9              MR. BOIES:  Good afternoon, your Honor.
10   This is David Boies of Boies Schiller Flexner.  With
11   me on the phone is also my partner, Stuart Singer,
12   for Panini.
13              THE DEPUTY CLERK:  And for Fanatics?
14              MS. BONACORSI:  You've got Kate Bonacorsi
15   from Quinn Emanuel.  And with me is co-counsel at
16   Latham & Watkins, Larry Buterman.
17              THE COURT:  Good afternoon, everyone.  This
18   is Judge Figueredo.  Can everyone hear me okay?
19              MR. BUTERMAN:  Judge, you're a little low.
20              THE COURT:  Okay.  I will do my best to
21   speak up.  I do apologize.  I feel like we might
22   have had issues with the phone.  If at any point you
23   can't hear me, just chime in, and I'll try to be
24   louder.
25              Is this loud enough for now?
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1              MS. BONACORSI:  Yes, your Honor.

 2              MR. BOIES:  Yes, your Honor.

 3              THE COURT:  Okay.  I just -- yeah, I just

 4    want to make sure folks can hear okay.

 5              So the reason for the conference was the

 6    letter that came in at ECF 179 on May 30th.  It

 7    concerned -- I know we had been talking about the

 8    various licensing agreements.  They were produced.

 9    Fanatics wanted to redact information that they are

10    indicating is commercially sensitive.  And then

11    there was an opposition from Panini at ECF 180.

12              I had then looked at some of these

13    agreements and some of the redactions.  And I had,

14    sort of, specific questions as to, you know, why

15    certain things need to get redacted.

16              So I'm obviously, as you all know at this

17    point, happy to hear from everyone, but I, sort of,

18    wanted to start off by asking counsel for Fanatics

19    about some of these provisions.  I'm going to try to

20    be vague so that I don't accidentally say something

21    that was, you know, redacted at the moment.

22              But I'm curious.  I understand in your

23    letter you indicate that certain figures, certain

24    financial figures would be -- you know, the exact

25    dollar amount are commercially sensitive, but then
```

1    at other instances you -- the certain commercial --

2    definitions of certain terms were redacted.  And so

3    I'm trying to understand if you're redacting the

4    figure and redacting, for instance, you know, how

5    third party -- if you're redacting the number, the

6    figure, and you're also redacting things that go

7    into the figure, the computation of the figure.

8         So, you know, I think the definition in one

9    of the agreements of the standard digital products

10   and -- that "retail revenue" was redacted and other

11   terms along those lines -- how is Fanatics -- I'm

12   sorry -- Panini supposed to respond to the defense

13   that Fanatics got the business because it offered,

14   you know, either better terms or more financially

15   advantageous terms?

16        If anyone wants to chime in ...

17        MS. BONACORSI:  Sure.  And, your Honor,

18   this is Kate Bonacorsi from Quinn Emanuel.

19        So there's sort of two separate components

20   to your question.  So one is the redaction of

21   certain financial figures.  So it's our position

22   that in certain instances, such as with respect to

23   equity minimum guarantees, that the specific amount

24   is not relevant to Panini's antitrust claims;

25   rather, the existence of a provision regarding

AMM TRANSCRIPTION SERVICE  631.334.1445

1    equity or regarding a minimum guarantee is the

2    relevant component.  And that's reflected in,

3    obviously, the various redactions of financial

4    figures throughout.

5          With respect to the second component of

6    your question regarding, you know, sort of, the

7    underlying calculation or the underlying definition,

8    those are the bespoke commercial terms we refer to

9    in our letter.  And in certain instances, those

10   provisions go into the calculations of the figure

11   that is redacted.  In other instances, they are

12   separate commercial terms which are bespoke to these

13   agreements.

14         And one thing I would like to point out for

15   your Honor is just that -- I think this is reflected

16   in our letter as well -- is that we did have

17   significant back-and-forth with the licensors on

18   these redactions.  And so Fanatics, we endeavored,

19   you know, to propose the most limited set of

20   redactions possible.  And what's been presented to

21   your Honor for in-camera review here reflects our

22   agreed-on proposed redactions that includes input

23   from the licensors as to what they believe is also

24   commercially sensitive.  And so I just wanted to

25   highlight that for you.

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1              THE COURT:  So I understand, you know, that
 2    there was a negotiation about what was getting
 3    redacted.  There's some things, though, maybe not
 4    understanding the agreement or the industry, that
 5    seemed perhaps overly broad.
 6              So I think in one agreement at page 33,
 7    there was redaction of workers' comp or
 8    insurance-related information.  There might have
 9    been termination provisions that seemed, at least to
10    me, somewhat standard that were redacted.
11              I guess for some of these things, I was,
12    sort of, a bit unclear as to why it would be so
13    commercially sensitive that even with a protective
14    order, attorneys' eyes only, this couldn't be
15    disclosed.
16              MS. BONACORSI:  So that's a fair question,
17    your Honor, and concern.
18              So with respect to -- I'm trying to go to
19    the page 33 of whichever agreement your Honor is
20    referring to.  I will say that --
21              THE COURT:  I'm sorry.  I will be more
22    specific.  Let me open the agreement.
23              MS. BONACORSI:  Okay.
24              THE COURT:  If you look at the one
25    titled -- and I apologize.  If you look at the one
```

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    titled "MLB 5-10-21," and then you go to page 33 of
 2    that agreement ...
 3              MS. BONACORSI:  One moment, your Honor.
 4              THE COURT:  Sure.
 5              MS. BONACORSI:  Okay.  So I am in the MLB
 6    agreement.  And, your Honor, could you just direct
 7    me to the provision you're looking at again?
 8              THE COURT:  Yeah.  So it's MLB 5-10-21.
 9    It's page 33, provision 20, it's titled "Insurance."
10              MS. BONACORSI:  Okay.  Got it.
11              So these are financial figures with respect
12    to -- I guess, starting with the insurance.  One
13    concern we might have with these are whether -- you
14    know, we haven't seen Panini's license agreements,
15    but this may be a bespoke term to Fanatics'
16    agreement.  If Panini does have similar provisions,
17    they may have different limits in place.  And it's
18    our position these provisions are completely
19    irrelevant to Panini's antitrust claims, so there
20    would be no harm in redacting it.  There's no
21    allegations that I'm aware of that relate to, you
22    know, the insurance provision of these license
23    agreements.
24              And then I guess separately with respect to
25    the termination provision, these are highly bespoke
```

1  terms where different triggering events may lead --

2  or may provide a basis for termination.  Again,

3  these -- to the extent such provisions exist with

4  Panini, they may be different.  They may not exist.

5  And given, you know, the fact these are competitors

6  in the same industry, we have a concern that if, you

7  know, Panini gains access to termination provisions,

8  they may interfere with performance by one party or

9  another.  And for that reason, we view these as

10  highly competitive as well and -- or sorry -- excuse

11  me -- sensitive.

12          THE COURT:  And can I ask a question

13  about -- so, I guess, this just seemed like an

14  example in my mind, but maybe I can even point to

15  another one.

16          If you look at page 24 of the same

17  agreement where -- it's Section 10.

18          MS. BONACORSI:  Yep.

19          THE COURT:  That subcategory A, which is

20  redacted.

21          MS. BONACORSI:  Yep.

22          THE COURT:  I guess Fanatics' argument is

23  that that is bespoke?

24          MS. BONACORSI:  Yes.  For the same reason

25  as what I just said.  Trying to stay -- trying to

1    keep this vague, your Honor, for the reason that

2    it's still redacted, but the bases I just provided

3    would apply here as well.

4          THE COURT:  And I'm also trying not to give

5    specifics about what's redacted, but it strikes me

6    as that's something that would allow any person to

7    terminate a normal contract.

8          In other words, I guess --

9          MS. BONACORSI:  To some extent --

10         THE COURT:  -- I may not be understanding

11   the agreement.  I recognize that.  But it seems like

12   this should be a relatively standard term in most

13   agreements.

14         MS. BONACORSI:  I agree with you to some

15   extent, your Honor.  I do think that there are other

16   bases for what this section is getting at that are

17   bespoke to this agreement, that would be included in

18   what's been redacted here.  Again, apologies, your

19   Honor, for being vague.  And if I can elaborate in

20   another way, you know, let me know.

21         THE COURT:  Does anyone from Panini want to

22   chime in?

23         MR. BOIES:  Yes, your Honor.  This is David

24   Boies.

25         First, there is no doubt that what has been

AMM TRANSCRIPTION SERVICE  631.334.1445

1    redacted is responsive to our demand.  I also think

2    there is no doubt, just from the context, that what

3    is at issue here is relevant to our antitrust

4    claims.  I don't understand how counsel can say that

5    the amount that is being paid and the terms and

6    conditions of the license agreement and what they

7    refer to as "bespoke terms" are not relevant to the

8    question of whether Fanatics was or was not offering

9    a better deal.  I can't see how it is not relevant

10    to the consideration that was being given for these

11    contracts, all of which go directly to our antitrust

12    claims.

13        With respect to the fact that it's

14    sensitive information, this Court dealt with that

15    issue seven months ago.  In the December 12, 2024

16    hearing, the Court, you know, directly dealt with

17    that argument and said -- referring to the argument

18    that this was commercially sensitive said, "but that

19    concern can be addressed by requiring that the

20    agreements be produced with an attorney-eyes-only

21    designation."

22        And that's exactly what you did.  And we

23    thought seven months ago that we would be getting

24    these documents.

25        Your Honor has noted that these agreements

AMM TRANSCRIPTION SERVICE  631.334.1445

1    go to the heart of our antitrust claims.  Judge

2    Swain noted that our antitrust claims were premised

3    on these agreements.  And not to have the agreements

4    and not to have the entire context of the

5    agreements, not even to have the financial terms of

6    the agreements, seems to me to be quite inconsistent

7    with the law of the circuit that we cited, but also

8    just inherently unfair.

9         It makes it impossible for us really to try

10   the case that we've brought.  And I don't know of

11   any precedent at all for -- where license agreements

12   are at issue, and they are at the heart of a dispute

13   of any kind, that you wouldn't get the complete

14   license agreement, particularly when you have an

15   attorneys' eyes only provision here.

16        MS. BONACORSI:  If I may, your Honor,

17   briefly respond to that.

18        I just don't see how the limited redactions

19   to these license agreements -- and you'll notice

20   that the vast majority of these are unredacted.  And

21   I'll just point to the two examples that your Honor

22   identified today, the termination provision and the

23   insurance -- the figures redacted in the insurance

24   clause.

25        I do not see how the redaction of that

1    limited information makes it impossible for Panini

2    to try its case.  I think a vague assertion of

3    relevance of every single term in this agreement is

4    not sufficient given the extreme commercial

5    sensitivity given the parties here.

6            And I would just also note, your Honor,

7    that the protective order here, which the parties

8    negotiated and agreed on, expressly calls for and

9    allows the redaction of irrelevant, commercially

10    sensitive information.  And putting aside the, you

11    know, attorney -- or the outside counsel eyes only

12    designation, the proposed redactions are consistent

13    with what's in the protective order.  And that was

14    always contemplated by the parties and bargained

15    for.

16            THE COURT:  But can I ask you a question?

17            MR. BOIES:  Your Honor?

18            THE COURT:  Just one question,

19    Ms. Bonacorsi, because you -- I get the point that

20    maybe -- or I follow the argument that perhaps some

21    of these are completely irrelevant to the antitrust

22    claims and the heart of the dispute, but there seems

23    to be -- at least for the financial figures and some

24    of these bespoke terms that feed into the

25    calculation of the financial figure, that there -- I

1    don't understand the argument there that this

2    wouldn't be relevant and necessary for litigating

3    the claims.

4              MS. BONACORSI:  Sure.

5              THE COURT:  I know you pointed to the --

6    I'm sorry to interrupt.

7              I know you pointed to the Workers' Comp or

8    the insurance because I had raised those.  And, yes,

9    perhaps that might be tangential to the claims, but

10   then some of the other redactions really go to the

11   issues in dispute.

12             MS. BONACORSI:  Sure.  Yes, your Honor.

13             And to that point, I will say that we

14   attempted to meet and confer with counsel for Panini

15   on this point and understand the specific relevance

16   and engaged with them on a potential negotiation or

17   compromise on narrow redactions.  And, essentially,

18   what we were met with, which led to the letter

19   writing that your Honor received, is that the

20   redactions of these agreements, much as Mr. Boies

21   just said, is not appropriate at all, you know,

22   given they're purportedly central to this dispute.

23             And so while Fanatics was totally willing

24   to engage in a, you know, meet and confer process to

25   discuss specific relevance of various provisions to

              AMM TRANSCRIPTION SERVICE  631.334.1445

1    the antitrust claims, Panini's counsel was not

2    interested in having that dialogue with us.  And I

3    think we remain open to discussion and narrowing

4    based on an articulation of the relevance.

5        And I certainly agree with your Honor that

6    the Workers' Comp was perhaps the most -- one of the

7    most tangential ones at issue here, along with the

8    insurance.  And I do think there is something in

9    between, perhaps, our full set of redactions that we

10   agreed on with the licensors and a narrower set that

11   would allow Panini to, you know, try its case and

12   not be deprived of anything necessary.

13       MR. BOIES:  Your Honor, if I could correct

14   a couple of things.

15       First, we did not bargain that they could

16   unilaterally redact materials based on their view of

17   what was or was not relevant.  Indeed, if counsel is

18   referring to paragraph 14 of the agreement, that

19   talks about redacting nonresponsive portions, not

20   irrelevant portions.  Nonresponsive portions.  And

21   there's no doubt that what is at issue here are

22   responsive to our demands.

23       The second correction is that in the offer

24   to meet and confer that counsel refers to, what they

25   want us to do is to try to demonstrate the relevance

AMM TRANSCRIPTION SERVICE  631.334.1445

1    of financial terms that we don't see.  Our
2    position -- and we think it is -- with respect, your
3    Honor, I really don't see another side to this.
4            The financial terms and the other
5    consideration is at the heart of what this case is
6    about.  It may be that insurance is not at the heart
7    of it, but it's certainly relevant.
8            But the financial terms and the so-called
9    "bespoke terms" are at the heart of what they are
10   giving us consideration.  That is the relevance of
11   this information.  And that even leaves aside the
12   question as to whether they can redact, from a
13   responsive document that's central to the case,
14   materials that they think are less important.
15           The entire document is the document that is
16   the basis of the license agreement.  It's the basis
17   of the consideration.  It's the basis of our
18   antitrust claim.  And I just -- I don't see how they
19   can redact any of it, but I particularly don't see
20   how they can redact the financial terms and the
21   so-called "bespoke" consideration that is at the
22   heart of this.
23           THE COURT:  Ms. Bonacorsi, can I ask you a
24   question?
25           Since this involves the licensees or the

1    third parties, is there -- if I were to order this
2    produced without redactions, do the individual
3    entities have any recourse?
4           MS. BONACORSI:  I would -- we would be
5    required under the various license agreements, your
6    Honor, to go back to them and notify them as your
7    Honor's order that we're required to produce these
8    without redactions.
9           I don't know, you know, what, if anything,
10   they would try to do beyond, you know, us producing
11   them to -- or, excuse me, producing them to Panini
12   without redactions.
13          You know, we've had discussions about, you
14   know, the scope of redactions and the process, you
15   know, at a high level and that we would be
16   submitting letters.  And so I'm honestly not sure
17   what they would do.
18          THE COURT:  And then can I ask you another
19   question?
20          Do you -- since, you know, it seems like
21   you all practice in this space pretty regularly, do
22   you have any other antitrust case where redactions
23   of this type were permitted, you know, for things
24   like the license agreement?
25          And I'm just really focused on the

1   redaction of the financial terms and then those

2   definitions that feed into the calculation of the

3   financial figures.

4        MR. BUTERMAN:  Your Honor, this is Larry

5   Buterman from Latham & Watkins.  I'll handle it.

6        I would say that this is certainly a unique

7   situation that we are dealing with, and I'll confess

8   that I've never come across a situation like this.

9   The reason being that I -- you know, in all the

10  years that I've been practicing, I've never been in

11  a world where a competitor is seeking active

12  agreements that go to the heart of contractual

13  relationships with third parties, where that

14  competitor is very forward about the fact that they

15  plan to compete with the entity.

16        What I would say, your Honor, is what I

17  have said previously, which is, I am very, very

18  confident that if Panini and Fanatics had gotten

19  together and exchanged this information, that there

20  would be regulators lining up with complaints about

21  the sharing of this information because it

22  completely undermines the competitive process for

23  Panini to have this information in their hands.

24        And there is a reality that exists, which

25  is that Mr. Boies, who I have the utmost respect

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1   for, and his firm, operate very, very much beyond
 2   just outside counsel for Panini in this matter.  And
 3   we continuously see them interjecting themselves
 4   into areas that go beyond the four corners of this
 5   litigation.
 6           And I don't know how it is possible that
 7   this information in the hands of Boies Schiller,
 8   even if they have the best of intentions, is not
 9   going to color and undermine future competitive
10   negotiations.  Because to the extent that Panini
11   asks Boies Schiller to review a proposal that
12   they're putting together for a future license, is
13   Boies not going to advise their clients based on
14   information that they've received by virtue of this,
15   the ruling here?
16           And that's why, as Ms. Bonacorsi said, we
17   took great pains to only redact what we believed --
18   after talking to the affected third parties, what
19   they believed was the absolute minimum that they
20   would be comfortable with.
21           And I agree with Ms. Bonacorsi.  I don't
22   know what their relief is if your Honor orders the
23   production of these materials on an outside-counsel
24   basis.  Certainly, the redactions that were made
25   were with the understanding that this would be going
```

1    to outside counsel.

2            I would think, at a minimum, your Honor, as

3    a practical solution, that if your Honor is inclined

4    to instruct that any of these materials be

5    unredacted, any portions that the license -- the

6    parties have at least some opportunity to petition

7    the Court for further relief.  I think that would be

8    a fair and equitable way of dealing with those third

9    parties.

10            MR. BOIES:  Your Honor, this is David

11    Boies.  Can I respond to that?

12            To begin with, the third parties have had

13    seven months to make their positions known.  This is

14    simply a further delay.  And as the Court noted back

15    in December at the hearing, delay itself prejudices

16    the plaintiff.  We've had seven months of delay.

17    And I just ask the Court not to bake additional

18    months of delay into this process.

19            Second, this is exact -- this argument that

20    somehow attorneys' eyes only is not enough is

21    exactly the argument that this Court rejected seven

22    months ago on the page that I cited to your Honor.

23    I think it was page 6 of the December 12th hearing.

24            We've been over this over and over again,

25    and each time it's a recycling of the same

1    arguments.  You know, in our letter, we cited Second

2    Circuit opinion.  We cited others in prior letters

3    and in our papers to Judge Swain.

4         With respect, your Honor, everybody agrees

5    that these license agreements are at the heart of

6    this case.  I am simply not aware of any, you know,

7    case that holds that documents at the heart of the

8    case, regardless of their commercial sensitivity,

9    can't be produced at least under an attorneys' eyes

10   only category.  And there's no evidence in the

11   record at all that Boies Schiller is advising Panini

12   with respect to how to conduct its business and what

13   to offer prospective licensors.  And even if it

14   were, I think your Honor's analysis in December is

15   the right analysis.

16        MR. BUTERMAN:  And with respect, your

17   Honor, I think that last part is the really

18   troubling part: "and even if it were."

19        We are aware and we have received letters

20   from Mr. Singer on topics that are unrelated to this

21   litigation.  And it is very clear to us that Boies

22   Schiller is operating more akin to a hybrid

23   outside/inside counsel.  In fact, that's a point

24   that they made very clear to us when we were

25   negotiating the protective order in this matter, and

1    we had conversations about the various levels of

2    designation that they pointed out that they're

3    differently situated than we are because Panini did

4    not have inside counsel the way that Fanatics did,

5    and that raised issues.

6            And it does, your Honor, because as far as

7    we know, based on what we've seen, it is not

8    accurate to say that Boies Schiller's role is

9    limited to representing Panini just within this

10   litigation in the Southern District of New York.  It

11   extends far beyond.  And they are working, as far as

12   we understand, very closely with the company and

13   advising them.

14           And, again, there is a clear reality -- and

15   Mr. Boies did not contest this reality -- that if

16   his firm and he and Mr. Singer and others are called

17   upon to assist Panini, that there is no way that

18   they can divorce from their advice to their client,

19   the information that they have gained through

20   reviewing these license agreements.  And that will

21   absolutely cause a real problem for the competitive

22   process and hurt the potential parties who are

23   banking on the fact that there will be a competitive

24   process when they go to the market.  We are harmed.

25   Those parties are harmed.  The only entity that

1    isn't harmed is Panini.

2            And the last thing, your Honor, that I just

3    want to say -- and with respect to my colleague,

4    Mr. Boies, who hasn't been involved in a lot of

5    these conversations -- discovery in this case is

6    ongoing.  There have been extensive document

7    requests that have been served by both sides,

8    objections, and the parties are moving forward.  So

9    the notion that there's delay going on, that's an

10    old argument.

11            The only thing I'll agree with Mr. Boies on

12    is that he's been saying that for seven months now.

13    And it wasn't true then and it isn't true now.  And

14    the idea that third parties should be afforded an

15    opportunity to intervene once there's an order makes

16    perfect sense.  And there's no reason why a third

17    party should have intervened beforehand because they

18    were never subject to an order that was affecting

19    their rights until this point.

20            So I don't see giving those third parties a

21    minimal amount of time in order to exercise their

22    rights, if they choose to do so, in any way delays

23    this.  We are all aware of the schedule that your

24    Honor has entered in in this matter, and we're all

25    operating in good faith to meet those deadlines.

1          MR. BOIES:  Your Honor?

2          MR. SINGER:  Your Honor, this is Stuart

3     Singer.  Since Mr. Buterman referred to me, I could

4     just briefly respond.

5          Our role is litigation counsel for Panini

6     in this litigation and when other litigations come

7     up.  We're not their corporate lawyers.  We're not

8     their transactional lawyers.  And when a letter

9     raises other demands and legal claims, they may not

10    be part of this case, but we respond to them.  That

11    does not make us transactional lawyers and certainly

12    doesn't mean we would violate any order which

13    restricts information.  Our client is not required

14    to have in-house counsel in order to get relevant

15    information to litigate this lawsuit.

16         Secondly, these agreements are for 15 --

17    10-, 15- and 20-year terms.  They're done.  I mean,

18    we're dealing with the litigation of the effects of

19    those.  There's no ongoing negotiation going on with

20    the NFL or the NBA or Major League Baseball at this

21    point for us to enter into a new license agreement

22    regarding the subject of these license agreements.

23    It's the fact that they have precluded competition

24    for such a long period is why this is, as Judge

25    Swain has found, a plausible antitrust case.

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1          And third, I would just echo -- because I
 2   have been involved, as Mr. Boies has been, in the
 3   discovery process, seven months ago, when this Court
 4   ordered these documents be produced to us, the NFL
 5   and the other third parties received notice of that
 6   order.  They could have intervened if they felt it
 7   was necessary to do so.  So we would urge the Court
 8   to not allow further delay in producing what the
 9   Court ordered produced many months ago.
10          MR. BUTERMAN:  And with respect, which was
11   produced pursuant to the Court order.  And we
12   took -- and what we have done is exactly what was
13   required.  And the provisions allowed for there to
14   be redactions.  We redacted in accordance with the
15   terms of the protective order, as well as after
16   consultation with the third parties.  And when
17   Panini raised concerns about the redactions, we
18   followed the provisions of the protective order,
19   which is how this all ended up going in front of
20   your Honor.
21          So, again, the insinuation that we've done
22   anything other than comply with the orders and move
23   this forward is just flatly incorrect.
24          And with respect to Mr. Singer's arguments
25   about the license agreements at issue, while it is
```

1      absolutely true that there are license agreements

2      that have been entered into -- although, of course,

3      they're very eager to understand the terms by which

4      those agreements can be terminated, which I think

5      really does undermine a lot of what they're saying

6      because it's clear that that's information that

7      they're interested in for competitive purposes.

8              The reality is that these terms, in

9      oftentimes bespoke terms, are things that Fanatics

10     went to the market with when license agreements came

11     up for bid.  And part of our concern is not only

12     that they're going to seek to interfere with our

13     ongoing licenses and take advantage of termination

14     provisions, as Ms. Bonacorsi said, but there are new

15     licenses that come up for bid from time to time, and

16     that they're going to use the information that they

17     have here to inform how they want to go to market

18     and compete against us in those future licenses.

19     And that's the reason why we have -- and we believe

20     personally that there is a potential harm to

21     Fanatics in future competitions, and that goes

22     beyond these specific license agreements.

23              So I think just saying, oh, well, the

24     license agreements that Panini has -- that they're

25     concerned about, they've already been entered into,

```
 1   and they're not coming up for renewal -- I think
 2   that's a bit of a red herring here.  And this is the
 3   real concern that we have, your Honor.
 4           MR. SINGER:  Your Honor, this is Stuart
 5   Singer.
 6           I have to go back to what Mr. Buterman is
 7   saying when he says they redacted these in
 8   accordance with the agreement.  That is not correct.
 9           As Mr. Boies pointed out, the agreement --
10   the protective order allows for redacting
11   nonresponsive information from responsive documents.
12   It does not allow them to make decisions as to what
13   is relevant as part of a responsive document.
14           The genesis for that was the discussion we
15   had with the Court where you might have certain
16   documents where you would have treatment of things
17   totally outside of sports trading cards in the same
18   document that would not be responsive to a request
19   pertaining to sports trading cards, and that those
20   could be redacted.
21           It does not say, as they keep saying, that
22   you could redact information that they deem to be
23   irrelevant and call for a paragraph-by-paragraph
24   analysis of a document that, in its entirety, is
25   responsive because it's the license agreements here.
```

1          The rest of their arguments is just a

2     rehash of what the Court already decided, that we're

3     entitled to these documents, and you have the

4     highest level of protection possible with attorneys'

5     eyes only.

6          MR. BUTERMAN:  And the last thing I'll say

7     on this, your Honor, is that I really -- I let it go

8     the first time, but I really am surprised that both

9     Mr. Boies and Mr. Singer are hanging their hat on

10    the fact that there's irrelevant material here that

11    they believe that they should be entitled to.

12         I don't understand how irrelevant material

13    is responsive.  I guess the argument would have to

14    be that, even though the material is irrelevant, it

15    might lead to the discovery of responsive materials.

16    I don't understand how that's actually possible

17    here.

18         But regardless, I think that that's at best

19    for them, a semantics argument.  And certainly, we

20    don't understand why they're pushing so hard for

21    information that is irrelevant if -- unless what

22    they're really interested in is just knowing all the

23    terms of these agreements from cover to cover, which

24    raises the question, why?  Why do they want

25    irrelevant material if for no other reason than

1    they're necessary terms if you're going to go to

2    market against us and negotiate -- and try to

3    negotiate against us?  And that just highlights the

4    concern that we have.

5            MR. BOIES:  Your Honor, could I --

6            MR. SINGER:  Your Honor, this is Stuart

7    Singer.

8            I cannot believe that Counsel is suggesting

9    that the financial terms of a license are irrelevant

10   in an antitrust case.  Mr. Boies made clear we

11   believe these are highly relevant, but that under

12   the terms of the protective order and this prior

13   ruling, we shouldn't even have to go into a question

14   of paragraph by paragraph in fighting about the

15   relevancy because these are responsive and,

16   therefore, they need to be produced.

17           MR. BOIES:  Could I just make one point

18   clearly because obviously I wasn't clear before.

19           The protective order does not allow the

20   redaction of materials from responsive documents

21   because the information is viewed as confidential or

22   sensitive.  It allows for attorney eyes only in

23   certain limited cases, but there's nothing in the

24   protective order that says they can redact materials

25   from responsive documents based on sensitivity.

1    Nothing.  And I just ask the Court to look at

2    paragraph 14, which both of us have referenced.

3            MS. BONACORSI:  I would just -- one ...

4            THE COURT:  No.  Go ahead.

5            MS. BONACORSI:  Sorry, your Honor.

6            THE COURT:  No, no.

7            MS. BONACORSI:  I was just going to point

8    out in paragraph 14 -- and I'm looking at it right

9    now -- "Should either party wish to redact

10   nonresponsive portions of a responsive document for

11   confidentiality reasons, the parties shall meet and

12   confer regarding the proposed redactions."

13           And I think Mr. Buterman, co-counsel, just

14   raised this point with you.  But the daylight

15   between nonresponsive and irrelevant, I'm failing to

16   grasp that point, and, moreover, why Panini would

17   want that information.

18           But this explicitly contemplates a

19   response -- a document that is otherwise responsive

20   having nonresponsive portions and allowing the

21   redaction thereof, and then the parties can meet and

22   confer to try to narrow the dispute, which is

23   precisely what we tried to do here.

24           And there are plainly terms here that, you

25   know, while Mr. Boies and Mr. Singer have said they

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    want the entire agreement, you know, regardless of

 2    relevancy to their antitrust claims, there -- it

 3    certainly seems there are provisions here that they

 4    are more interested than others, which is why we

 5    tried the meet and confer process, you know, at the

 6    outset.

 7           And that's the last point I'd like to make,

 8    your Honor.

 9           MR. BOIES:  And the only -- very briefly --

10    correction I might make there is that the responsive

11    determination is based on what is responsive to our

12    demand.  I think that is absolutely clear from the

13    context of the document.

14           But, your Honor, you can read the document

15    as well as we can.  Maybe better.  You have before

16    you what you've ruled before.  I don't -- I'm not

17    going to add any more.

18           MR. BUTERMAN:  Your Honor, except that what

19    Mr. Boies just proposed makes no sense because if he

20    were -- if it really is responsive to what they say

21    is responsive and what they put in their document

22    request, then the provision has no meaning

23    whatsoever.

24           And obviously, we don't operate in

25    litigation in a world where one party gets to decide
```

1    what's responsive and what's not.  And the provision

2    itself, because it set forth this entire process by

3    which you would have a meet and confer, it was

4    understood that the parties would try to work these

5    things out amongst themselves.  And if they

6    couldn't, they would come to your Honor, which is

7    why we are where we are.

8         Unfortunately, because when we sat down to

9    have the meet and confer with Panini, it was a very

10   short call because they said to us, are you

11   willing -- we believe that everything needs to be

12   produced.  We are not willing to accept any

13   redactions whatsoever, and so, therefore, there's no

14   purpose in having a conversation about certain

15   categories of material.

16        So that's why we are here.  But I think

17   where we -- I think at this point -- I mean,

18   Mr. Boies, I think, wants to chime in again, but I

19   think we're now just rehashing our points.

20        MR. BOIES:  I do think we're rehashing, but

21   because you keep misstating things, it's hard not to

22   respond.

23        The reason that we had this nonresponsive

24   portions of a responsive document was because the

25   one example that you gave to the Court of how this

1    might come about was where you had two lines of

2    business discussed in the same document.  One line

3    of business related to trading cards and another

4    line of business was entirely separate.  That was

5    exactly why we had this in here.

6            And the license agreements all relate to

7    trading cards.  They all relate to our claims.

8    That's the difference.

9            MR. BUTERMAN:  I will respectfully disagree

10   with Mr. Boies about the purpose behind the

11   provision.  I think that that's neither here nor

12   there.  I don't particularly like his statement that

13   we're misrepresenting things, but I understand that

14   he's very passionate about this, so I'll -- we'll

15   let that go.  And I think we are -- your Honor, I

16   apologize that we've gone on for so long on this.

17           MR. BOIES:  That's the one thing I think we

18   are in agreement on.

19           THE COURT:  So I just have two relatively

20   quick questions.

21           One is -- I heard Mr. Singer say that the

22   firm operates as litigation counsel only, they are

23   not transactional or corporate counsel.

24           Is that correct, Mr. Singer?

25           MR. SINGER:  That's correct.  We are

 1    litigators.  We ...

 2              THE COURT:  So if Panini --

 3              MR. SINGER:  Aren't corporate lawyers

 4    transactional lawyers?

 5              THE COURT:  So if Panini were negotiating

 6    any type of contract, they would hire a different

 7    firm?

 8              MR. BOIES:  They would --

 9              MR. SINGER:  If they were negotiating a

10    license agreement or a contract, they wouldn't be

11    calling on us, which are litigators, to do that.  In

12    fact, when the parties in this case were negotiating

13    a transaction with one another, there were other

14    counsel who were representing Panini in that

15    negotiation.

16              THE COURT:  And Boies Schiller was --

17              MR. BUTERMAN:  Your Honor, I --

18              THE COURT:  Sorry.

19              I think I just wanted confirmation that

20    Boies Schiller was not representing Panini in those

21    transactional negotiations.

22              MR. BOIES:  That is correct, your Honor.

23              THE COURT:  And then Mr. --

24              MR. BUTERMAN:  Your Honor?

25              THE COURT:  Yeah.  Go ahead.

1              MR. BUTERMAN:  Yeah.  Sorry.

2              What I was going to say is I think what

3    would be helpful -- because I want to make sure

4    we're not speaking past each other here, and it

5    probably would be helpful if Mr. Boies and

6    Mr. Singer would be willing to represent that they

7    do not plan on advising Panini with respect to any

8    either ongoing or future license agreements in any

9    way, shape or form, and that they do not plan -- if

10   that's the case, I think that they should be willing

11   to say so.  To say that we're not corporate counsel

12   is a very, very different thing.

13             And so, that, I haven't heard from them.

14   Are they willing to represent to your Honor and to

15   us that they will not advise Panini in any way,

16   shape or form with respect to either current license

17   agreements or future opportunities where Panini

18   might seek to enter into a license agreement with a

19   third party?

20             MR. BOIES:  Your Honor, we are not now and

21   will not be transactional counsel.  Now, that

22   doesn't mean that we are not going to advise the

23   client with respect to antitrust issues, litigation

24   risks.

25             There -- I mean, for example, right now,

            AMM TRANSCRIPTION SERVICE  631.334.1445

1    the letter that counsel for Fanatics has referred to

2    a couple of times was a letter about legal claims

3    relating to another transaction.  So there are going

4    to be legal issues, litigation issues.  That is what

5    we're going to be advising the client about.  We are

6    not -- we have not and are not going to be advising

7    them as to what the licenses ought to say from a

8    business standpoint or anything like that.

9            With respect to the legal issues, the

10   litigation issues, that is what we have been

11   representing them and will be representing them.

12   And, as Mr. Singer indicated, when there was a

13   possible corporate transaction at issue, we were not

14   representing Panini in that.

15           MR. BUTERMAN:  And, again, there's just a

16   difference between saying that you're a -- not a

17   transactional lawyer or that they hire different

18   corporate lawyers and saying that you aren't going

19   to advise them.

20           And I think what Mr. Boies said is that

21   they absolutely -- Boies Schiller would absolutely

22   advise Panini if called upon to do so with some

23   caveat that he would be doing so with respect to

24   potential litigation risks.

25           I think that -- that, to me, is

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    purposely -- opens up.  I don't want to say it that
 2    way.
 3            I'll say that that to me opens up a lot of
 4    wiggle room for them to advise based on information
 5    that they gain from review of these license
 6    agreements.  I think that they should be -- under
 7    these circumstances, given the sensitivity here, I
 8    think they should be willing to commit that they are
 9    not going to, in any way, shape or form, advise
10    Panini regarding the license agreements, either the
11    ongoing license agreements or the future -- or
12    potential future license agreements, and will not
13    share with Panini in any way, shape or form, what's
14    in these agreements.
15            MR. BOIES:  We --
16            MR. BUTERMAN:  That's not such a -- I don't
17    think that's an unreasonable -- I don't think it's
18    unreasonable to say that if they're getting access
19    to this information, that they are not going to use
20    it in any way that's going to benefit Panini outside
21    of this litigation.  And that means that they cannot
22    advise them on any licenses.
23            They can't review potential future license
24    agreements in any way because it's going to be in
25    their mind, and they're going to be telling Panini,
```

1    well, this term -- you know, that there's not risk.

2    Why do they know that there's not risk?

3            Potentially, because they've seen our

4    agreements and they know what's in our agreement.

5    That's the concern.  It undermines the competitive

6    process.  And one way that they can go a long way to

7    make -- I assume.  And I'm only speaking for

8    Fanatics.  But one way they could go a long way to

9    probably make a lot of people more comfortable is if

10   they will flatly commit that they are not going to

11   do any advising to Panini, whether Panini asks for

12   it or not, regarding current licenses or future --

13   any future business opportunities.

14           THE COURT:  Can I ask a question?

15           MR. BOIES:  To begin with -- sure.

16           THE COURT:  Just a quick question.

17           Sometimes you see protective orders that

18   say the information can only be used in the current

19   litigation.  This protective order doesn't have

20   that.

21           Because that seems to address,

22   Mr. Buterman, your concern.  They would only be

23   allowed to use the information with regards to this

24   lawsuit.

25           MR. BOIES:  Your Honor, I was going to make

AMM TRANSCRIPTION SERVICE  631.334.1445

1    that exact point.

2            If you look at paragraph 7 of the

3    protective order, it says, "Any designated materials

4    disclosed will be held and used by the persons

5    receiving such information solely for use in

6    connection with the actions and not for any other

7    purpose or in any other litigation or proceeding."

8            We are bound by that.  We would -- if he

9    says he wants me to say that, I will say that.  We

10   said it in the protective order.  We're subject to

11   that.  And there's -- there is no basis, none, to

12   suggest that we would not abide by that paragraph of

13   the protective order.

14           MR. BUTERMAN:  I think that the issue, your

15   Honor, is just -- it's one that pops up very often,

16   which is what's in the mind of the -- what's in the

17   counsels' mind and how can it be divorced?

18           So I think that what we really need is a

19   commitment from Mr. Boies beyond the paragraph in

20   the protective order, that they will not advise

21   Panini in any way, shape or form with respect to any

22   license agreements, current or future, because if

23   they do, there's no way that they won't be taking

24   advantage of the information that they learn here.

25           And since Mr. Boies has represented and

```
 1    Mr. Singer said, we're litigation counsel, I don't
 2    think it's a hard representation to make, and I
 3    think it's one that they should be willing to.  If
 4    what they're saying is true and they're not using
 5    any, you know, wiggle room here, they should just be
 6    able to say point blank, your Honor, we are
 7    litigating this case.  That is all we're doing.  We
 8    are not going to engage in anything related to any
 9    license agreements with respect to Panini, whether
10    they ask for it or not.  We're not reviewing them.
11    We're not advising them.  We are not doing anything.
12            And that would provide a lot more comfort,
13    I believe, to everyone involved.
14            MR. BOIES:  Your Honor, Latham & Watkins,
15    for sure, and probably Quinn Emanuel, represents
16    Fanatics in a number of matters other than this
17    litigation.  It has not occurred to us up until now
18    to ask them to represent that they would never
19    represent Fanatics in anything again other than this
20    litigation.  I don't think it's remotely fair to
21    have that be a one-sided prospect.
22            MR. BUTERMAN:  That's not what I said,
23    though.
24            MR. BOIES:  The idea --
25            MR. BUTERMAN:  That's not even remotely
```

AMM TRANSCRIPTION SERVICE  631.334.1445

1    what I requested, your Honor.

2          MR. BOIES:  I think -- actually, Counsel, I

3    think it is.  And what you're saying is that, if

4    Panini has other issues with respect to license

5    agreements, we can't give them any kind of legal

6    advice on that.

7          I don't think that's appropriate.  I don't

8    think that's fair.  But if the Court orders it, I

9    think it needs to be a two-way street.

10         MR. BUTERMAN:  And just to be clear, I

11   really don't appreciate that type of strawman.

12   That's not what we suggested in any way.  We're not

13   saying they can't be lawyers to Panini.  What we're

14   saying is -- we go back to where we are -- they

15   cannot use the information that they learned from

16   this litigation to benefit Panini in any way.

17         That's what this has been about since day

18   one, because when this case started, Panini,

19   Mr. Boies and his firm were adamant that they needed

20   to see these license agreements right away.  And it

21   was curious to us why they were so adamant that they

22   needed them while a motion to dismiss was pending

23   and why they were pushing just for these license

24   agreements.

25         And your Honor will recall that we had

                AMM TRANSCRIPTION SERVICE  631.334.1445

1  numerous conversations about whether there were less

2  commercially sensitive materials that we could

3  provide them.  And they kept saying, no, no, no, no,

4  no.  This is what we want.  And we kept asking, you

5  know, is there something less?

6         The fact that they've wanted this from day

7  one and been so adamant that they need it is really

8  what's been concerning us, that they are planning on

9  using this for commercial purposes.  And what we

10  want are assurances that this information will not

11  be utilized in any way, shape or form by Panini to

12  the detriment of Fanatics, our license partners, or

13  the competitive process in the future.  That's it.

14         MR. BOIES:  Okay.  Your Honor, if that's

15  it, and he wants to propose a mutual provision that

16  expands paragraph 7 of the protective order in some

17  way, we'll certainly look at that.

18         And I think paragraph 7 provides what

19  Counsel says.  It provides it both ways.  It doesn't

20  lock either firm out from other representations, but

21  it clearly provides that it is solely for use in

22  this action and not for any other purpose or in any

23  other litigation or proceeding.  And if he wants to

24  add to that "and shall not be used to benefit either

25  client in any way other than this litigation," we

AMM TRANSCRIPTION SERVICE  631.334.1445

1    can add that.  But to try to lock people out of

2    representation, I think is not appropriate.

3          MR. BUTERMAN:  And, again, your Honor, I

4    don't know why Mr. Boies keeps saying that.  That's

5    not what was suggested by me.  It's not what's being

6    suggested.  I want Mr. Boies and his firm to be as

7    successful as they want to be.  That's not -- this

8    isn't about keeping anyone from a representation.

9    It's about upholding the --

10          MR. BOIES:  Can you --

11          MR. BUTERMAN:  It's about upholding the

12   competitive process.

13          I am happy to go look at Section 7 for us

14   to meet and confer and see if we can reach an

15   agreement with Mr. Boies and his firm.  I think we

16   could probably do that very promptly, your Honor.

17   And I know we've got a conference set -- next

18   scheduled conference for next month.  I'm sure that

19   it's not going to take more than, you know, an

20   exchange of e-mails for us to either see that we'll

21   reach agreement or we will not.

22          That being said, your Honor, I don't

23   believe that that is the end of all of this because

24   I do believe that there are numerous provisions at

25   issue here that we have redacted because they have

1  no bearing.  They are irrelevant to this matter.

2  And we do not believe that simply because we have a

3  commitment that Mr. Boies isn't going to -- from

4  Mr. Boies that he's not going to use them in other

5  matters, that that somehow alleviates the concern.

6          And it isn't -- outside counsel only

7  designation isn't a license to get everything.

8  There are still rules that relate to relevancy.  And

9  we have arguments that a lot of the -- that the

10  limited redactions that we're looking at are a

11  combination of irrelevant materials that in many

12  instances are also very commercially sensitive.  And

13  that's why we think we still have a dispute that

14  requires the Court's attention.

15          MR. BOIES:  Your Honor, I don't see how you

16  can conceivably describe the financial terms and the

17  so-called "bespoke terms" as irrelevant.  Those

18  terms, I don't think you can -- I don't think they

19  are -- they can deduct properly "irrelevant"

20  material from documents that are at the heart of the

21  case.  As one of the cases we cited, your Honor, in

22  our letter said, you're depriving it, at least, of

23  some context.

24          But leaving that issue aside, I would urge

25  the Court to at least get us, finally, the financial

1    terms and the so-called "bespoke terms" that go to

2    the heart of what we're talking about.

3         THE COURT:  So I'm going to -- I think I've

4    maybe suggested in the past, you know, the parties

5    try to reach a middle ground.  But on this, just to

6    keep you moving, since I think you may end up at an

7    impasse anyways, I will give you a written decision

8    addressing this.  I'm going to try to get it out

9    pretty quickly.  It might not be until Monday

10   because we're closed tomorrow, and there's no

11   docketing, and there's no docketing on Friday for

12   the holiday, but I'll get you a written order.

13        I know that -- I think, Mr. Buterman, you

14   had indicated, you know, potentially, maybe the

15   third parties would want to chime in at some point.

16   I don't know that I need to give you anything

17   special in that regard because you always can

18   take -- you can always appeal my order to Judge

19   Swain.

20        So I'm going to give you a written order

21   to, sort of, explain my reasoning, so that way if

22   you do decide to seek further review, you have

23   something to take to Judge Swain.

24        MR. BUTERMAN:  Thank you, your Honor.  And

25   that's -- yes.  Thank you.  That makes sense.

1          MR. BOIES:  Thank you, your Honor.

2          MR. SINGER:  Thank you, your Honor.

3          THE COURT:  Okay.  Does anyone have

4    anything else?

5          MR. BOIES:  Not from Panini, your Honor.

6          MR. BUTERMAN:  And no, your Honor.  Nothing

7    from Fanatics, other than to thank your Honor for

8    hearing us out on this issue.  We greatly appreciate

9    it.

10          THE COURT:  Okay.  No worries.

11          MR. BOIES:  Yes.  Thank you very much.

12          MS. BONACORSI:  Thank you, your Honor.

13          MR. BOIES:  Thank you very much for your

14    time.

15          THE COURT:  Thanks so much.

16

17                         0o0

18

19

20

21

22

23

24

25

```
 1
 2
 3                    C E R T I F I C A T E
 4
 5        I, Adrienne M. Mignano, certify that the
 6    foregoing transcript of proceedings in the case of
 7    Panini America Inc. v. Fanatics Inc., et al;
 8    Docket #23CV9714 was prepared using digital
 9    transcription software and is a true and accurate
10    record of the proceedings.
11
12
13    Signature    _____
                      Adrienne M. Mignano
14                   ADRIENNE M. MIGNANO, RPR
15
16    Date:        July 8, 2025
17
18
19
20
21
22
23
24
25
```