UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PANINI AMERICA, INC.,

                        Plaintiff,                    **23-cv-9714 (LTS) (VF)**

        -against-                                     **23-cv-6895 (LTS) (VF)**

FANATICS, INC. et al,

                        Defendants.
------------------------------------------------------------------X
FANATICS COLLECTIBLES TOPCO, INC.,

                        Plaintiff,

        -against-

PANINI S.P.A.,

                        Defendant.
------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

On October 9, 2025, the Court held a conference to address various discovery disputes raised by the parties. See ECF Nos. 209, 211, 215, 216. Several of the disputes were resolved on the record. See ECF No. 224 ("Tr."). Below the Court addresses the disputes that were not resolved during the conference.

Panini's Document Requests

- Equity agreements and governance rights held by the licensors. See ECF No. 211 at 3 (Section IV discussing RFPs 112, 116). As previously indicated, Panini has shown that the grant of an equity or other ownership interest, or governance or voting right in Fanatics to the licensors prior to the execution of the relevant exclusive licenses is relevant to its claims. See ECF No. 197 (23-cv-9714) at 2-3. Panini seeks the agreements themselves. Although the provision of an equity stake (or the provision of an ownership

1

interest, or governance or voting rights) may be used to argue that the licensors had an interest in enhancing Fanatics' business, that argument can be made without resort to the agreements themselves. The agreements at issue are not related to Fanatics trading card business, which is at the heart of Panini's claims, and the agreements are confidential and commercially sensitive. However, to the extent the grant of an equity or other ownership interest, or governing or voting right was made in connection with the exclusive license agreements challenged by Panini, then Panini is entitled to review the agreements given their direct relevance to Panini's claims, and any confidentiality concern can be addressed by an AEO designation.

- Individuals and entities with financial ownership in Fanatics. See ECF No. 211 at 3 (Section V discussing Request 5). This request also seeks information concerning Fanatics other business lines (not just Fanatics Collectibles) and financial interests that predate the exclusive licenses. Tr. at 62-63. Panini argues that such information is relevant to show what influenced the decision to award the licenses to Fanatics. Tr. at 63-64, 66. An individual, however, can make an independent decision to invest in Fanatics distinct from any decision by the entity they are associated with, and this request seeks information concerning any individual investment for any reason in any of Fanatics' businesses, not just the trading card business. Panini's claims, however, relate to decisions by entities (the Leagues and Players Associations) and concern Fanatics trading card business. It is thus not apparent that the request seeks information relevant to Panini's claims.

- Fanatics' use of customer data. See ECF No. 211 at 4 (Section VI). Panini seeks documents discussing or reflecting Fanatics' strategy or rationale for using customer data collected in connection with any of Fanatics' products or services. Tr. at 68. Fanatics has offered to produce licensing negotiation communications with the Leagues and Players Associations related to Fanatics' use of customer data. Tr at. 70-72. Panini argues that the documents it seeks are relevant to responding to Fanatics' defense that there are competitive justifications for the relationship between Fanatics and the Leagues, such as Fanatics' innovative use of customer data. Tr. at 69-71. At this juncture, it is not apparent that Fanatics will rely on its *actual* use of customer data to argue that such use constitutes a competitive advantage supporting the award of the exclusive licenses. Accordingly, Fanatics' proposal in response to this request is appropriate and proportional to the needs of the case. However, if it becomes clear at some point while discovery remains open that Fanatics will argue that its actual use of customer data was a procompetitive justification for the licensing relationship, then Fanatics will have to produce documents discussing or reflecting Fanatics' strategy or rationale for using customer data collected in connection with Fanatics' products or services.

- Fanatics' individual agreements with NBA and NFL players. See ECF No. 211 at 5 (Section VII discussing Requests 54 and 56). Panini seeks summary sheets of Fanatics' agreements with football and basketball players for the right to use their NIL or autographs on NFL or NBA Cards. Fanatics does not dispute the relevance of the requested information. Instead, Fanatics argues that it should be permitted to provide anonymized summaries because it would otherwise have to comply with cumbersome

2

and burdensome notice obligations for each agreement if it discloses the player's name, and there are an "extensive" number of athletes involved. See Tr. at 74-76, 82. Panini argues that you have to know who the athlete is to understand whether the terms of the individual agreement makes economic sense. Tr. at 77. To address Fanatics' burden concern, Panini has offered to limit the request to 50 total athletes. Id. From the discussion at the conference, it appears that this dispute is not ripe, and the parties might be able to reach a compromise that addresses Panini's concern for athlete names and Fanatics' concern relating to the burden of the notice obligations. To the extent the parties cannot reach agreement, the issue can be discussed again at the conference on November 6, 2025. However, if by that date there is no agreement, Fanatics should be prepared to more concretely explain the notice obligations it would be required to comply with if the disclosure of an athlete's identity were required.

- <u>Documents related to Fanatics' 2025 arbitration against the NFLPA.</u> See ECF No. 211 at 5 (Section VIII discussing Requests 147-149). Panini seeks all pleadings, legal briefs, orders, deposition and hearing transcripts, and all settlement-related documents and communications from a confidential settlement involving Fanatics. Panini argues that this information is relevant because it is further evidence of a conspiracy. Tr. at 86. But Panini has no concrete basis for thinking that the settlement agreement was the product of collusion. The settlement was negotiated at arm's length by an independent mediator, and the parties to that settlement have an expectation of confidentiality. Panini has not shown that the information sought by this request is relevant to the claims in its complaint.

Fanatics' Document Requests

- <u>Fanatics' Requests for Certain Documents and Data from 2009 to 2014</u>. See ECF No. 209 at Section I. Fanatics argues that these documents dating back to 2009 are relevant to industry norms and showing that Panini, when it entered the U.S. trading card business in 2009, acted in the same way as Fanatics did when it entered the business. Tr. at 91-92. Fanatics also intends to argue that Panini's business failures led to its loss of the licenses. Id. Panini has agreed to produce documents going back to 2009 for a limited number of RFPs, and it is producing documents since 2014 for other requests. See ECF No. 216 at 1-2. Panini's proposal is reasonable. Fanatics has not established that the documents and data from 2009 are relevant to the claims in this action and proportional to the needs of the case. Panini agreed to produce documents from 2009 related to the licenses and negotiations with the licensors mentioned in the complaint, as well as the pitches and negotiation materials for those licensors. Tr. at 96. That information would allow Fanatics to make its argument that Panini engaged in the same conduct when it entered the trading card business or to argue that its own conduct was consistent with industry norms. Additionally, Panini has agreed to produce documents dating back to 2014, before Panini obtained each of its most recent license agreements, for other categories of documents, including pricing, products, and sales. Requiring more would not be proportional to the needs of the case.

3

For RFPs 6 and 9, the parties should discuss potential search terms that Panini could employ across all custodians for documents dating back to 2009. See Tr. at 99-100, 122. For RFPs 15-16, 35, and 38, as indicated during the conference (Tr. at 110-11), the documents sought for the disputed time period (from 2009 to 2014) are relevant. To the extent those documents are inaccessible, Panini should submit a declaration explaining why the production of documents responsive to RFPs 15-16, 35, and 38 from 2009 to 2014 would be unduly burdensome. For RFP 14, Panini agreed to produce documents responsive from 2014 onward. Panini also indicated a willingness to produce documents sufficient to show the types of and quantities of collectibles products it produced and sold dating back to 2009. For this request, documents sufficient to show for the disputed time period is proportional to the needs of the case. Panini need not produce anything more. For RFPs 19-20, Panini will produce responsive documents beginning in 2014. That time period extends through the entire term of their license, allowing Fanatics to raise the argument that Panini lost the license because it was not innovative. Tr. at 112-16. To the extent any pre-2014 data responsive to these requests might arguably be relevant, the relevance appears to be minimal and requiring their production would not be proportional to the needs of the case. For RFPs 59-61, the Court will rule on this issue once it reviews a declaration from Panini explaining the burden of producing responsive documents from prior to 2014.

- Fanatics' Request for Certain Ex-U.S. Documents and Data. See ECF No. 209 at Section II. It appears from the discussion at the conference that the parties reached an agreement concerning RFPs 30 and 31. See Tr. at 127-128. If that is not the case (see Tr. at 141), the parties can raise the issue at the next conference. For RFPs 3, 14-15, and 32-34, Fanatics has indicated that it will submit case law to support its argument concerning the relevance of this discovery for purposes of attacking the market definition. See Tr. at 136-41. Alternatively, the parties should meet and confer to consider a mutual exchange of data related to their respective collectibles business outside of the United States. See Tr. at 139. For RFP 2, it appears that Panini has agreed to produce responsive documents, but Fanatics can raise the issue again at the next conference if that is not the case. Tr. at 142. For RFPs 43, 45, and 55, the parties indicated that they are still in discussion and if these requests are still in dispute, the issue can be raised at the next conference. Tr. at 142-143.

- Fanatics' Individual Requests to Panini. See ECF No. 209 at Section III. For RFP 51, the parties agreed to engage in further discussions as to which sports leagues might be implicated by the request, from 2017 onward, where Panini did not have a licensing relationship. See Tr. at 149-51. For RFP 67, to the extent Fanatics seeks this information to argue that the licensors were dissatisfied with Panini's performance, that information will be apparent from other discovery Fanatics is obtaining concerning Panini's performance during its licensing period. However, to the extent the request seeks documents concerning any formal investigation, regardless of the basis for the investigation and its connection to the claims at issue, and regardless of whether the investigation was public, the request is overly broad. If during discovery, Fanatics learns

4

of information that may allow it to make a more targeted request for documents, Fanatics can raise the issue again. See Tr. at 154-55.

**SO ORDERED.**

DATED:   New York, New York
         October 23, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge