**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**


PANINI AMERICA, INC.,

     Plaintiff,

v.

FANATICS, INC.,
FANATICS, LLC,
FANATICS COLLECTIBLES
INTERMEDIATE HOLDCO, INC.,
FANATICS SPV, LLC, and
FANATICS HOLDINGS, INC.

     Defendants.

_____/

        **Case No. 1:23-cv-09714-LTS-VF**
        **[rel: Case No. 1:23-cv-06895-LTS-VF]**


**PANINI AMERICA'S OBJECTION AND MEMORANDUM OF LAW IN SUPPORT OF**
**OBJECTION TO NOVEMBER 13, 2025 NON-DISPOSITIVE ORDER**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

    I.     Case Background ........................................................................................... 2

    II.    Background of Discovery Dispute ........................................................... 3

    III.   The Custodian Order .................................................................................. 5

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ....................................................................................................................... 7

    I.     The Custodian Order is contrary to the law because it fails to apply the proper legal standard. ................................................................................. 7

          A.    Motions to compel custodians are governed by Rule 26, which requires the requesting party to show relevance and proportionality and the resisting party to justify limitations. ........................................................... 7

          B.    The "manifestly unreasonable" standard applied in the Custodian Order is untethered to Rule 26. ............................................................... 11

          C.    The "manifestly unreasonable" standard applied in the Custodian Order is also in tension with Rule 30. ..................................................... 13

    II.    Under a proper Rule 26 analysis, Panini's Letter Motion should be granted in its entirety. ............................................................................................... 15

          A.    Panini has demonstrated relevance and proportionality for each of the Disputed Custodians. ......................................................................... 15

          B.    Fanatics failed to justify excluding the Disputed Custodians. ................. 20

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*,
2018 WL 2215510 (S.D.N.Y. May 15, 2018) ........................................................................ 7

*Capitol Recs., Inc. v. MP3tunes, LLC*,
261 F.R.D. 44 (S.D.N.Y. 2009) ........................................................................................... 10

*Coventry Cap. US LLC v. EEA Life Settlements Inc.*,
333 F.R.D. 60 (S.D.N.Y. 2019) ............................................................................................. 7

*Delancey v. Wells*,
2025 WL 1009415 (S.D.N.Y. Apr. 4, 2025) ........................................................................ 14

*Fam. Wireless #1, LLC v. Auto. Techs., Inc.*,
2016 WL 2930887 (D. Conn. May 19, 2016) .................................................................. 6, 10

*Felder v. Warner Bros. Discovery*,
2025 WL 1718098 (S.D.N.Y. June 20, 2025) ............................................................... passim

*Food Lion, LLC v. Dairy Farmers of Am., Inc.*,
2020 WL 6947921 (M.D.N.C. Sept. 29, 2020) ..................................................................... 8

*Ft. Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013) ........................................................................................... 11

*In re Auto. Refinishing Paint Antitrust Litig.*,
2004 WL 7200711 (E.D. Pa. Oct. 29, 2004) ......................................................................... 3

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
2023 WL 2871090 (S.D.N.Y. Apr. 10, 2023) ....................................................................... 6

*King v. Habib Bank Ltd.*,
2023 WL 3558773 (S.D.N.Y. Apr. 21, 2023) ....................................................................... 9

*Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*,
880 F.3d 620 (2d Cir. 2018) .................................................................................................. 7

*Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*,
2024 WL 5481238 (N.D. Ill. Dec. 30, 2024) .................................................................... 3, 8

*Markson v. CRST Int'l, Inc.*,
2021 WL 4027499 (C.D. Cal. May 14, 2021) ....................................................................... 8

*Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
   2017 WL 2305398 (S.D.N.Y. May 18, 2017) .............................................................. 4, 6, 12

*Nichols v. Noom Inc.*,
   2021 WL 12307293 (S.D.N.Y. Apr. 30, 2021) ...................................................................... 7

*Oakley v. MSG Networks, Inc.*,
   2024 WL 4134903 (S.D.N.Y. Sept. 10, 2024), *reconsideration denied*, 2024 WL 4859024
   (S.D.N.Y. Nov. 21, 2024) ....................................................................................... 5, 10, 21

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
   2024 WL 5048013 (N.D. Tex. Dec. 9, 2024) ......................................................................... 8

*Stinson v. City of New York*,
   2015 WL 4610422 (S.D.N.Y. July 23, 2015) .................................................................... 5, 10

*Thomas v. City of New York*,
   336 F.R.D. 1 (E.D.N.Y. 2020) ......................................................................... 5, 9, 20, 21

## **Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................................................. 7, 8

Fed. R. Civ. P. 26(b)(1) (C)(i) .......................................................................................... 9

Fed. R. Civ. P. 26(b)(2) .............................................................................................. 11, 20

Fed. R. Civ. P. 26(b)(2)(C) .............................................................................................. 8

Fed. R. Civ. P. 30(b)(2) ................................................................................................... 14

Fed. R. Civ. P. 34(a) ....................................................................................................... 14

Fed. R. Civ. P. 72(a) ......................................................................................................... 7

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiff Panini America ("Panini") respectfully objects to Magistrate Judge Figueredo's November 13, 2025 Order on Panini's Letter Motion to Compel Defendant Fanatics to add Disputed Custodians. ECF No. 234 (the "Custodian Order"). The Custodian Order failed to apply the correct legal standard under Rule 26 of the Federal Rules of Civil Procedure; therefore, it is contrary to the law.

## INTRODUCTION

We ask in this Objection for the District Court to clarify the appropriate legal standard that should be used to determine the identification of document custodians in litigation under the Federal Rules. The Magistrate Judge applied a highly deferential standard to the selection of custodians by the responding party, Fanatics, requiring Panini to show that the selection of custodians by Fanatics was "manifestly unreasonable." Custodian Order at 1-2. That standard is not found within Rule 26, it is contrary to Rule 26, and it also diverges from the standard employed by other courts in this District and by other federal courts. As a result of its application here, Fanatics will be able to successfully resist producing non-duplicative documents from multiple witnesses it has already identified as knowledgeable in its initial disclosures, and which hold meaningful positions within Fanatics' trading card business. There is no dispute over the custodians Panini has identified (twenty-two individuals). The issue is that Fanatics has insisted on limiting its custodians; even with three additional custodians added by the Custodian Order, the rejection of nine others followed from application of an incorrect standard that places a burden on Panini to show Fanatics' choices are "manifestly unreasonable."

Instead, Rule 26 should govern this dispute. It requires the requesting party to show relevance and proportionality, and then obligates the resisting party to substantiate any limitation with evidence of undue burden, disproportionality, inaccessibility, or true cumulativeness. In the current dispute, Fanatics has not contested relevancy or proportionality, nor has it shown any

undue burden. And showing such an undue burden or unreasonable cumulativeness would be very difficult since modern ESI tools readily cull duplicate materials without attorney review. If proposed custodians' files are duplicative, the impact is minimal and manageable, and if they are not, those are precisely the responsive documents that should be produced.

## BACKGROUND

### I.    Case Background

In this complex antitrust case, Panini challenges Fanatics' monopolization and attempted monopolization of the market for the production and sale of Major U.S. Professional Sports Leagues trading cards. Through exclusive, decades-long licenses combining all major sports leagues, Fanatics has foreclosed 100 percent of the relevant market. It then leveraged that long-term monopoly to obtain a monopoly in the short term through a multi-pronged attack involving acquisition and control of Panini's critical specialty printer; raiding Panini's employees without a legitimate business need; paying star rookie players not to deal with Panini; defaming Panini, coercing card retailers, distributors, case breakers, and hobby shops; and engaging in other anticompetitive and tortious conduct. This Court rejected dismissal of seven causes of action—including antitrust claims under Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act, as well as multiple tort claims maintaining a breadth of claims that will require discovery across multiple Fanatics business divisions and personnel levels. *See* ECF No. 164, MTD Order (largely denying Fanatics' motion).

The antitrust and other issues at stake, as defined by this Court, are significant. Discovery concerning Fanatics' conduct that gives rise to Panini's claims is relevant to resolving the issues in the case. Moreover, in antitrust cases, courts "often take a liberal view view of relevance and permit broad discovery" because direct evidence of anticompetitive conduct is rare and relevant materials are "largely in the hands of the alleged conspirators." *In re Auto. Refinishing Paint*

*Antitrust Litig.*, 2004 WL 7200711 (E.D. Pa. Oct. 29, 2004); *see also Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, 2024 WL 5481238, at *3 (N.D. Ill. Dec. 30, 2024).

## II.    Background of Discovery Dispute

Fanatics' custodian list should be proportional to the needs of this complex, high-stakes case and reflect the breadth and significance of the issues at stake. Yet Fanatics designated just twelve custodians for custodial ESI discovery. That list omits numerous individuals listed in Fanatics' initial disclosures as well as other individuals who undisputedly played key roles in planning, negotiating, and implementing the exclusive licenses, activities that are at the core of this case. During the parties' meet and confer negotiations, Fanatics offered scant information about the excluded custodians, asserted unilateral control over custodian selection, and—without support—labeled the rest duplicative. ECF No. 206-2 (Ex. B to Letter Motion) at 16-17.

Unable to come to an agreement with Fanatics, Panini moved to add twelve more Fanatics custodians (the "Disputed Custodians") that are likely to have unique, relevant documents central to Panini's antitrust and tort claims. ECF No. 207 ("Letter Motion") at 2-4 & App. A (detailing the 12 Disputed Custodians).

Panini grounded its request in Rule 26's relevance and proportionality standard: based on Fanatics' initial disclosures, organizational charts, public statements, previous deposition testimony from Disputed Custodians, previously-produced Fanatics documents identifying Disputed Custodians, and Panini's own investigation, Panini demonstrated that searching the Disputed Custodians was likely to lead to relevant evidence that would not be captured otherwise. *See id.* at 2-4. Panini emphasized that it had already accepted compromises to narrow its proposed list and that its own custodian count, at twenty-two, appropriately reflected the breadth of the claims at issue. *See id.* at 1 & n.1. Panini also noted that Fanatics had declined to provide hit reports for the disputed custodians and, despite invoking duplication, had not collected or reviewed those

custodians' materials, leaving its duplication assertions unsubstantiated. *See id.* at 5.

In its Response, Fanatics argued that its custodian list was immune from judicial scrutiny unless Panini demonstrated that the list was "manifestly unreasonable." ECF No. 213, Fanatics' Letter Response at 1 (citing *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017)). Significantly, Fanatics did not argue that any of the twelve Disputed Custodians lacked relevant information; nor did it contend that discovery from those individuals, if relevant, would be disproportionate to the needs of this case. And it did not present custodian-specific evidence of undue burden, expense, inaccessibility, or unreasonably cumulative duplication. Its opposition turned instead on its contention that its custodian selection was entitled to deference and Panini had "not carried its burden of demonstrating that" this list was "manifestly unreasonable." *Id.* at 2-3.

At the November 7 hearing, Panini reiterated that the dispute should be governed by the Rule 26 framework, *see* ECF No. 242, Nov. 7 Hr'g Tr. at 23-24, and highlighted record-based gaps that the Disputed Custodians would fill. As examples, regarding the custodians currently in dispute, Panini noted that Fanatics' initial disclosures identified Disputed Custodian Clay Luraschi as the only individual with knowledge of its purported "product innovation," a central theme of Fanatics' defense, *id.* at 18:12-24; that Disputed Custodian Jeff Gordon sat at the intersection of licensing strategy and GCP operations, *id.* at 17:12-18:8; and that Disputed Custodian Nick Bell's position at Fanatics Collect/Live made him an appropriate custodian for Panini's case-breaker allegations, *id.* at 30:3-19.

Fanatics' counsel, on the other hand, acknowledged that they had not collected the Disputed Custodians' documents or done anything to independently confirm their assertions of duplication. *Id.* at 17:23-18:6; 31:6-19; 33:14-36:7. Indeed, Fanatics' counsel could not even

4

confirm that its selected custodians cover the full scope of Panini's requests, characterizing potential gaps as "purely hypothetical" and "speculation." *Id.* at 31:6-19. It nonetheless maintained that its list sufficed under the "manifestly unreasonable" standard advanced in its Response. *Id.* at 19:20-20:6.

## III. The Custodian Order

On November 13, Judge Figueredo issued the Custodian Order, which began its analysis with the erroneous standard urged by Fanatics, which is neither grounded in the Federal Rules nor consistently applied in this District. Custodian Order at 1-2. Citing *Mortgage Resolution* and presuming Fanatics' selections should stand unless Panini proved them "manifestly unreasonable," Judge Figueredo granted Panini's motion in part by adding three custodians—Wilkes, Galaviz, and Bayne—but declined to order inclusion of the remaining nine at this time. *Id.* at 3. Relying on Fanatics' conclusory and unsubstantiated assurances that searches of its preselected custodians would capture relevant information, the Court reasoned it was not "readily apparent" that these nine would have unique, noncumulative documents. *Id.* at 2.

The Custodian Order's departure from the Federal Rules reflects a broader inconsistency in the treatment of custodian disputes in this Circuit. Some decisions adhere—as they should—to the framework set forth in Rule 26(b), which governs the limits and scope of discovery: the requesting party must show relevance and proportionality; once that showing is made, the resisting party must justify limits with concrete evidence of inaccessibility or unreasonable cumulativeness. *See, e.g.*, *Thomas v. City of New York*, 336 F.R.D. 1, 2-4 (E.D.N.Y. 2020); *Felder v. Warner Bros. Discovery*, 2025 WL 1718098, at *10 (S.D.N.Y. June 20, 2025); *Stinson v. City of New York*, 2015 WL 4610422, at *3–7 (S.D.N.Y. July 23, 2015); *Oakley v. MSG Networks, Inc.*, 2024 WL 4134903, at *2 (S.D.N.Y. Sept. 10, 2024), *reconsideration denied*, 2024 WL 4859024 (S.D.N.Y. Nov. 21, 2024); *Fam. Wireless #1, LLC v. Auto. Techs., Inc.*, 2016 WL 2930887, at *3 (D. Conn.

May 19, 2016). Still, other decisions have required a heightened showing that the disputed custodians are likely to have unique, non-duplicative materials before the burden shifts. *E.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2023 WL 2871090, at *9 (S.D.N.Y. Apr. 10, 2023). And at least one decision—cited by Fanatics and adopted by the Custodian Order—invokes a "manifestly unreasonable" presumption that defers to the producing party's custodian choices. *See Mortg. Resol. Servicing, LLC*, 2017 WL 2305398, at *2.

Only the first approach is anchored in the Federal Rules. The "manifestly unreasonable" standard applied by Judge Figueredo, on the other hand, is at odds with Rule 26 and invites abuse. While the Federal Rules' broader discovery regime is designed to promote transparency and the full and fair exchange of relevant information, application of the "manifestly unreasonable" standard allows a producing party to shield or, at a minimum, delay discovery of relevant data by offering nothing more than conclusory and unsupported argument that the disputed custodians' data are "duplicative"—precisely like the unsupported argument offered by Fanatics.

This case presents an opportunity for this Court to clarify the standard and confirm that Rule 26 supplies the governing burdens and proportionality limits for all discovery disputes. Because the Custodian Order failed to apply the proper legal standard under Rule 26(b), it is contrary to the law and must be reversed in relevant part. Panini respectfully requests that the Court modify the Custodian Order to compel Fanatics to add the remaining nine Disputed Custodians,[1] or alternatively, remand this matter to Judge Figueredo for reconsideration under the correct legal standard.

---

[1] The nine remaining Disputed Custodians are (1) Jeffrey Gordon, former Chief Strategy Officer, Fanatics Collectibles; (2) Josh Luber, Chief Vision Officer, Fanatics Collectibles; (3) Gregory Abovsky, CFO, Fanatics Collectibles; (4) Nick Bell, CEO, Fanatics Collect/Fanatics Live; (5) Saj Cherian, Chief of Staff and Head of Fanatics Ventures, Fanatics Holdings, Inc.; (6) Julie Yoo, SVP of Global Expansion, Fanatics Collectibles; (7) Denise Albero, SVP of Business Process, Fanatics Holdings, Inc. (previously SVP of Financial Planning and Analysis and Investor Relations (Oct. 2021 – Aug. 2024)); (8) Clay Luraschi, SVP of Global Product Development, Fanatics Collectibles; and (9) Brian Boyce, former GCP Account Manager assigned to Panini's account.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(a), a district court may "modify or set aside" any part of a magistrate judge's non-dispositive order "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). A "finding is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019) (citation omitted).

## ARGUMENT

I.   **The Custodian Order is contrary to the law because it fails to apply the proper legal standard.**

    A.   **Motions to compel custodians are governed by Rule 26, which requires the requesting party to show relevance and proportionality and the resisting party to justify limitations.**

The scope and limits of discovery are governed by Rule 26. *Nichols v. Noom Inc.*, 2021 WL 12307293, at *2 (S.D.N.Y. Apr. 30, 2021). On a motion to compel or limit discovery, the Rule 26 analysis generally proceeds in two steps.

*First*, under Rule 26(b)(1), the requesting party must make a showing that the information sought is relevant and proportional. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."). Relevance under Rule 26(b)(1) is construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any party's claim or defense." *Felder*, 2025 WL 1718098, at *3; *see also Klipsch Grp., Inc. v. ePRO E-Com. Ltd.,* 880 F.3d 620, 631 (2d Cir. 2018) (noting that the Federal Rules permit "extremely broad discovery"); *Blackrock Allocation Target Shares: Series S Portfolio v. Bank of New York Mellon*, 2018 WL 2215510, at *6 (S.D.N.Y. May 15, 2018) ("Although not unlimited, relevance for purposes of discovery is an extremely broad concept.") (internal citation omitted). That breadth is

particularly salient in antitrust litigation, where courts take an expansive view of relevance and permit broad discovery of defendants because direct evidence is rare and probative information is often uniquely within defendants' control.[2] *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2024 WL 5048013, at *2 (N.D. Tex. Dec. 9, 2024) ("Where 'allegations of conspiracy or monopolization are involved ... broad discovery may be needed to uncover evidence of invidious design, pattern or intent'") (internal citations omitted); *Linet Americas*, 2024 WL 5481238, at *3 ("Broad discovery is permitted because direct evidence of ... anticompetitive [conduct] is often difficult to obtain, and the existence of [anticompetitive conduct] frequently can be established only through circumstantial evidence, such as business documents and other records.") (citation omitted, alterations in original).[3]

*Second*, once the requesting party establishes relevance and proportionality, "the burden shifts to the opposing party to justify curtailing discovery." *Felder*, 2025 WL 1718098, at *3. The Court "must limit the frequency or extent of discovery" if the discovery sought is "unreasonably cumulative or duplicative," can be obtained from a more convenient or less burdensome source, or is otherwise disproportionate when measured against the Rule 26(b)(1) factors. Fed. R. Civ. P. 26(b)(1)-(2). With respect to ESI specifically, to avoid production in response to a "motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(C). However, "general and conclusory objections as to relevance, overbreadth, or burden

---

[2] Indeed, despite aggressive efforts to curtail discovery over the past several months, Fanatics previously acknowledged that discovery in this antitrust case would be "unusually extensive, time-consuming, and costly." ECF No. 120 at 4.

[3] *See also Markson v. CRST Int'l, Inc*., 2021 WL 4027499, at *5 (C.D. Cal. May 14, 2021) ("In antitrust conspiracy cases such as this, courts have generally allowed liberal discovery to 'uncover evidence of invidious design, pattern, or intent.'") (citation omitted); *Food Lion, LLC v. Dairy Farmers of Am., Inc*., 2020 WL 6947921, at *5 (M.D.N.C. Sept. 29, 2020) ("Particularly where allegations of conspiracy or monopolization are involved ... broad discovery may be needed to uncover evidence of invidious design, pattern or intent.") (citation omitted).

are insufficient to exclude discovery." *King v. Habib Bank Ltd.*, 2023 WL 3558773, at *2 (S.D.N.Y. Apr. 21, 2023).

These fundamental principles apply with equal force in custodian disputes as in other discovery disputes. *See, e.g.*, *Thomas*, 336 F.R.D. at *1-2 (beginning analysis of motion to compel additional custodians with Rule 26); *Felder*, 2025 WL 1718098, at *10 (same).

*Thomas* exemplifies application of the proper standard in the custodian context. 336 F.R.D. at *1-2. At the outset, the court observed that neither party had addressed the "standards or burdens for ESI production correctly" set forth in Rule 26. *Id*. at *2. After setting forth the applicable principles, the court compelled collection and production from additional custodians where defendants "failed to rebut Plaintiff's showing that the discovery sought is relevant and proportional, or that the discovery is not reasonably accessible because of undue burden or cost." *Id*. In reaching this conclusion, the court rejected defendants' asserted entitlement "to choose which custodians to search," noting that "[s]uch an approach is in tension with Rule 26—which requires production of ESI unless the party resisting discovery shown that the information in question is not reasonably accessible." *Id*. at *4.

The defendants in *Thomas* also unsuccessfully attempted to limit discovery by asserting that information from the disputed custodians would be duplicative of discovery from other custodians. *Id*. at *2. However, defendants in *Thomas*—like Fanatics—"offer[ed] not a modicum of proof for this position." *Id*. As the court noted, under Rule 26 "[t]he mere existence of overlap and some duplication is insufficient to preclude the discovery sought." *Id*. (citations omitted). Rather, Rule 26 requires any duplication to be "***unreasonably*** cumulative or duplicative." *Id*. (citing Fed. R. Civ. P. 26(b)(1)(C)(i)) (emphasis added).

*Felder* reflects a similar approach, anchored in Rule 26. 2025 WL 1718098, at \*10. The plaintiff sought ESI for certain searches from six additional custodians. Although the defendant did not deny that these individuals had relevant information, it argued that the plaintiff failed to establish that they "would have any unique information not captured by other communications." *Id*. The court rejected this attempt to invert Rule 26's burden framework and placed the onus on the defendant to justify excluding the custodians. *Id*. The court then readily disposed of defendant's duplication objections, noting that "to the extent that ESI searches reveal emails from these custodians that are duplicative of emails from other custodians, the duplication can be easily eliminated through the deduping process." *Id*. Defendant also failed to substantiate its burden claims with hit counts. *Id.* Thus, the court overruled defendant's objections and granted the plaintiff's request for additional custodians. *Id*.

Other cases are in accord. *Stinson*, 2015 WL 4610422, at \*4 (granting request to compel 49 additional custodians where resisting party's opposition "include[d] no affidavits or other evidence tending to show that searching the ESI of the requested custodians is not reasonably practicable without undue cost"); *Oakley*, 2024 WL 4134903, at \*4 (granting motion to compel production from 15 additional custodians where plaintiff "made a *prima facie* showing of relevance" and defendants failed to substantiate burden claims with a hit report); *Fam. Wireless*, 2016 WL 2930887, at \*3 (granting additional lower-level custodians over defendants' unsupported duplication and burden objections, reasoning that "lower-level employees may discuss execution of policies amongst themselves and with third parties other than their superiors," and "[t]hese communications may be particularly revealing"); *Capitol Recs., Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 50-51 (S.D.N.Y. 2009) (compelling searches of six additional custodians because

defendant failed to show such searches "would be unduly burdensome or that a search of their files would not potentially yield relevant information").

Considered together, these decisions reflect a consistent application to custodian motions grounded in Rule 26. Once a requesting party shows that a disputed custodian is likely to hold relevant information and that discovery from that custodian is proportional, the producing party must carry its burden to justify limits with concrete, custodian-specific evidence. Unsubstantiated claims that custodians' files would be "duplicative"—like those offered by Fanatics—fall short under Rule 26, which requires duplication to be unreasonably cumulative to justify limiting discovery. Fed. R. Civ. P. 26(b)(2). Moreover, as *Felder* recognized, parties may use standard deduping procedures to eliminate the need to review duplicative search results from different custodians. *Felder*, 2025 WL 1718098, at *10; *see also Ft. Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co*., 297 F.R.D. 99, 106 (S.D.N.Y. 2013) ("[D]efendants may continue to utilize procedures to eliminate duplicative search output from their production.").

### B.    The "manifestly unreasonable" standard applied in the Custodian Order is untethered to Rule 26.

The Custodian Order departed from the Rule 26 framework that governs the scope of discovery as properly applied in custodian disputes by the cases cited above. Instead of beginning with Rule 26(b), and asking whether Panini demonstrated relevance and proportionality and, if so, whether Fanatics carried its burden to justify limits, the Custodian Order presumed Fanatics' custodian selections were entitled to deference unless Panini showed they were "manifestly unreasonable." Custodian Order at 1-2. That presumption is inconsistent with Rule 26. It effectively flips the framework on its head by placing on the moving party the burden to prove the producing party's selections are unreasonable—even where, as here, relevance and proportionality

were not disputed, and Fanatics offered no concrete evidence of undue burden or unreasonably cumulative duplication.

Fanatics' Response invited this error by urging the Court to adopt the "manifestly unreasonable" standard. ECF No. 213 at 2-3. The Custodian Order then adopted that view and relied on *Mortgage Resolution* as support. Custodian Order at 1-2. But the non-controlling *Mortgage Resolution* opinion provides no basis to displace the principles set forth in Rule 26. The decision did not cite Rule 26 at all—let alone apply its two-step inquiry or its proportionality factors—and it identified no authority for the "manifestly unreasonable" standard. *See Mortg. Resol. Servicing, LLC*, 2017 WL 2305398, at *2.

Instead, the magistrate judge in *Mortgage Resolution* appears to have extrapolated this standard from the Sedona Conference's Principle 6, which states that "generally, '[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.'" *Id.* (quoting The Sedona Conference, *The Sedona Principles: Second Edition, Best Practices Recommendations & Principles for Addressing Electronic Document Production*, at ii princ. 6 (2007)).[4] That general proposition about a producing party's preservation and collection process does not equate to an entitlement to unilaterally select custodians immune from judicial scrutiny absent a showing of "manifest unreasonableness." Indeed, the Sedona Principles say very little about custodian selection and nowhere instruct that courts must defer to a producing party's list unless it is "manifestly unreasonable."

---

[4] The current version of the Sedona Principles contains the same language. The Sedona Conference, *The Sedona Principles: Third Edition, Best Practices Recommendations & Principles for Addressing Electronic Document Production*, at 118 (2018), *available at* https://www.thesedonaconference.org/sites/default/files/3-2_Sedona_Principles_3d_Ed.pdf.

To the extent Principle 6 can be read to suggest such a rule, it must be disregarded. Private guidance cannot supplant the Federal Rules of Civil Procedure. The limits and scope of discovery are governed by Rule 26. The "manifestly unreasonable" presumption collapses the Rule 26 analysis into a threshold deference to the producing party and allows conclusory assurances to defeat otherwise proper discovery, even where—as here—the producing party has not disputed relevance or proportionality and has not attempted to show undue burden or unreasonably cumulative duplication.

The Custodian Order's erroneous reliance on this standard was not merely academic. The parties' submissions and the hearing transcript reflect that Fanatics did not contest relevance or proportionality. And Fanatics declined to provide hit counts and did not otherwise present custodian-specific evidence of undue burden, inaccessibility, or unreasonably cumulative duplication. Yet the Custodian Order accorded deference to Fanatics' list and declined to add nine of the Disputed Custodians because it was not "readily apparent" that they would have unique, noncumulative documents. Custodian Order at 2. This approach effectively placed on Panini the burden to disprove duplication before significant discovery had taken place in contravention of Rule 26's allocation of burdens to the resisting party.

**C.    The "manifestly unreasonable" standard applied in the Custodian Order is also in tension with Rule 30.**

The premise that a producing party may generally dictate the universe of custodians is also at odds with Rule 30, which generally allows the requesting party to decide whom to depose. Rule 30 permits a party to notice "any person's" deposition, including a party's officers, directors, or managing agents, and absent a protective order, the deposing party—not the producing party— selects the witness. That allocation reflects a general feature of the Federal Rules: each party decides how it will develop and try its case—and, correspondingly, what related documents and

13

witnesses it will use—subject to the court's case-management authority and the limits in Rule 26. It would be anomalous if the Rules allowed the requesting party to choose the opponent's deponents while simultaneously empowering the opponent to veto, in advance, whose files may be searched for documents.

Rule 30 underscores the point by authorizing document requests to accompany a deposition notice to a party witness. It provides that "notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition." Fed. R. Civ. P. 30(b)(2). In practice, that means if a producing party omits a plainly relevant witness from its custodian set, the requesting party can notice that individual's deposition and require the production of that witness's documents in connection with the deposition. The "manifestly unreasonable" presumption would create an inefficient two-step process: it would allow a producing party to defer collection from relevant witnesses during document discovery only to be required to make a compressed production tied to depositions of those same witnesses later in discovery.

There is no principled basis for this asymmetry. The same Rule 26 standards that govern custodial ESI during document discovery govern objections to a Rule 30/34 deposition document request. *See* Fed. R. Civ. P. 34(a) (a "party may serve on any other party a request" for documents "within the scope of Rule 26(b)"); *Delancey v. Wells*, 2025 WL 1009415, at *2 (S.D.N.Y. Apr. 4, 2025) ("Rule 34 permits a party to serve on any other party a request for documents and electronically stored information so long as the request is within the scope of Rule 26(b)(1)."). If the producing party believes the request is disproportionate, unduly burdensome, or seeks "unreasonably cumulative or duplicative" material, Rule 26 requires the producing party to substantiate that position with specific evidence. By contrast, applying the "manifestly

unreasonable" presumption to custodian selection during document discovery inevitably results in serial discovery: first, a narrowed custodian set dictated by the producing party; later, deposition notices for the omitted witnesses; and finally, a scramble to collect and produce the very documents that should have been produced earlier. The Federal Rules do not sanction these inefficiencies. Rather, the Rules are designed to promote early, orderly disclosure of relevant materials from relevant custodians under Rule 26.

## II.     Under a proper Rule 26 analysis, Panini's Letter Motion should be granted in its entirety.

### A.     Panini has demonstrated relevance and proportionality for each of the Disputed Custodians.

Panini met its initial burden under Rule 26 by demonstrating in its Letter Motion, custodian by custodian, why each proposed individual is likely to possess relevant information bearing directly on the claims and defenses at issue. Letter Motion at 2-4 & App. A. As explained in the Letter Motion and summarized below, Panini tied each disputed custodian to claims plead and concrete issues in the case, relying on Fanatics' own initial disclosures, organizational charts, public statements and descriptions of the individual's roles and responsibilities, and record materials. *See id.* at 2-4. Even assuming the heightened "unique, non-duplicative" test applies, Panini's custodian-specific showing clears it:

**(1) Jeffrey Gordon, co-founder and former Chief Strategy Officer, Fanatics Collectibles**.
Gordon co-founded Fanatics Collectibles and served as its Chief Strategy Officer through January 2025. Fanatics identified him in its initial disclosures as having knowledge of the sports trading-card licensing agreements and negotiations, Fanatics' investment in GCP, and GCP operations. ECF No. 206-3 (Ex. C to Letter Motion) at 3. Public materials and Fanatics' organizational charts reflect that, as late as April 2024, Gordon oversaw GCP operations and the limited record already shows his hands-on involvement in coordinating

key GCP matters, ECF No. 242, Nov. 7 Hr'g Tr. at 17:12-12-14; Ex. A (Gordon texts),
which bears directly on Panini's Section 2 and Section 7 claims and its claim for tortious
interference with Panini's GCP relationship. Fanatics' assertion that other custodians were
"equally or more involved," ECF No. 213 at 5—even if credited—does not render
Gordon's files duplicative. To the contrary, strategic and implementation communications
at his level are highly unlikely to be fully captured in others' files.

(2) **Josh Luber, Chief Vision Officer and co-founder, Fanatics Collectibles**. Luber also
co-founded Fanatics Collectibles and is █████████████████████████ license,
reflecting his central role in the structure, timing, and execution of that agreement. His
"vision" function makes it especially likely that his files contain important strategy and
planning documents, licensing frameworks, and communications with licensors. Luber's
role and ██████████ designation readily satisfy any uniqueness requirement.

(3) **Gregory Abovsky, CFO, Fanatics Collectibles**. Abovsky is the divisional CFO
responsible for "all business and financial planning, accounting, investor relations,
purchasing, tax, treasury and divisional finance" for Fanatics Collectibles, overseeing
dedicated finance organizations in the U.S. and internationally. Letter Motion, App. A at
8; ECF No. 206-15 (Ex. O to Letter Motion) at 1; ECF No. 207-3 (Ex. T to Letter Motion)
at '682-'683. Fanatics' contention that he joined after the exclusive licenses were signed
misses the point. ECF No. 213 at 3. The divisional finance files are uniquely probative of
the ongoing anticompetitive effects and profitability tied to exclusivity—particularly
where this Court has already recognized the durability and growth of Fanatics' market
power. ECF No. 164 at 12. Those files differ from Fanatics Holdings' corporate-level
finance materials held by existing custodian Glenn Schiffman and are directly relevant to

16

Panini's claims and to Fanatics' defenses. To the extent there is overlap, it can be managed with deduplication tools.

**(4)** **Nick Bell, CEO, Fanatics Collect/Fanatics Live**. Bell leads Fanatics Collect—Fanatics' live commerce/case-breaking and secondary-market platform—and, by Fanatics' own account, sits on the Fanatics Collectibles leadership team, reporting directly to the Collectibles CEO. ECF No. 206-6 (Ex. F to Letter Motion) at 3; ECF No. 207-3 (Ex. T to Letter Motion) at '681. Organizational charts likewise reflect his role as CEO of "Fanatics Collectibles Live Commerce" as recently as July 2023. ECF No. 207-1 (Ex. I to Letter Motion) at '010. Given that leadership position and reporting line, Bell is uniquely likely to have documents reflecting Fanatics' strategy and communications regarding case breakers—including Fanatics' coercing case breakers to join Fanatics Live. Am Compl. ¶¶ 205-206.[5] Additionally, because many of Fanatics' long-term exclusive deals include ███████████████████████████████████████████████████ ██████████████████████—Bell's files likely contain unique, relevant evidence on the equity arrangements with licensors at issue here.

**(5)** **Saj Cherian, Chief of Staff and Head of Fanatics Ventures, Fanatics Holdings, Inc**. Fanatics' initial disclosures identify Cherian as knowledgeable about "Fanatics' sports trading card licensing agreements; Fanatics' negotiation of sports trading card licensing agreements." ECF No. 206-3 (Ex. C to Letter Motion) at 2. According to Fanatics, he "works closely with CEO Michael Rubin" on "business development and partnerships,"

---

[5] Panini has requested certain Fanatics communications with case breakers, which bear on Panini's allegations that Fanatics has coerced case breakers to join its Fanatics Live platform. Am Compl. ¶¶ 205-206. Fanatics has agreed to produce those documents, but its counsel's admissions made clear that Fanatics has not undertaken any effort to identify an appropriate custodian for these requests: "***Presumably, if*** there are communications with case breakers regarding Fanatics trading cards, those communications would be within the collectibles business, which is underneath David Leiner. Again, I am speaking in ***purely hypotheticals*** here because **this is speculation**." ECF No. 242, Nov. 7 Hr'g Tr. at 31:6-10 (emphasis added).

"capital raising," and "investments," and he "cultivate[d]" league partnerships. ECF No. 206-10 (Ex. J to Letter Motion) at 1. As Chief of Staff and Ventures head, Cherian's operational vantage point is distinct from CEO-level communications and likely includes implementation plans, working-level coordination with leagues, equity and investment analyses, and tactical documents. Those are precisely the kinds of unique materials not necessarily reflected in CEO files.

**(6)** **Julie Yoo, SVP of Global Expansion, Fanatics Collectibles**. Fanatics identified Yoo in its initial disclosures as knowledgeable about sports trading-card licensing agreements, their negotiation, and the GCP investment. ECF No. 206-3 (Ex. C to Letter Motion) at 4. Publicly available documents show Yoo built the initial Topps acquisition model and, for a period, was the only person on the team. ECF No. 206-11 (Ex. K to Letter Motion) at 1. Yoo's files are thus uniquely positioned to capture licensing-strategy communications and early-stage modeling for MLB/MLBPA rights, as well as coordination around GCP.

**(7)** **Denise Albero, SVP of Business Process; formerly SVP of Financial Planning and Analysis and Investor Relations, Fanatics Holdings, Inc**. As SVP of Financial Planning, Albero "[r]aised ~$2.5Bn in two separate equity rounds" and "[o]versaw integration of the Topps trading cards business upon close December 2021 which was foundational to the creation of the Collectibles operating segment." ECF No. 206-12 (Ex. L to Letter Motion) at 1-2. Her Financial Planning and Analysis and Investor Relations files are uniquely probative of the strategic rationale for the Topps acquisition and Fanatics' equity arrangements with licensors.

**(8)** **Clay Luraschi, SVP of Global Product Development, Fanatics Collectibles**. Luraschi is the only individual identified in Fanatics' disclosures as knowledgeable about "product

innovation," a central theme of Fanatics' defense. ECF No. 206-3 (Ex. C to Letter Motion) at 3; ECF No. 230 (Am. Answer) at 1-2 (referencing Fanatics' purported "innovation" six times in preliminary statement). Luraschi has fourteen trading-card-focused directors and managers reporting to him—many with their own teams. ECF No. 207-3 (Ex. T to Letter Motion) at '694-'698. Given Fanatics' description of Luraschi and his role as the leader of Fanatics' trading-card product development, Luraschi likely has unique, relevant evidence relating to product strategy, the definition of the relevant market, and Fanatics' retailer and distributor anticompetitive conduct. And the limited production made by Fanatics to date shows that Luraschi was closely involved in Fanatics' raid of Panini employees. Am. Compl. ¶¶ 150-162; Ex. B (██████████████████████████████); Ex. C (██████████████████████████████).

**(9)** **Brian Boyce, former GCP Account Manager for Panini's account**. Fanatics identified Boyce in its initial disclosures as having knowledge about GCP operations. ECF No. 206-3 (Ex. C to Letter Motion) at 5. Boyce worked at GCP during Fanatics' acquisition and during the period when Panini alleges Fanatics leveraged GCP to suppress Panini's output. Am. Comp. ¶¶ 134-149. As Panini's assigned account manager, Boyce's files are uniquely likely to contain communications about scheduling, capacity allocation, prioritization, production constraints, and directives bearing on Panini's orders—materials that would not necessarily appear in senior GCP or Fanatics executives' files. Fanatics itself previously offered to add Boyce, then retracted the offer. ECF No. 206-2 (Ex. B to Letter Motion) at 8, 10. His custodial files are plainly unique and relevant.

In addition to demonstrating the relevance of the above custodians, Panini also established proportionality. It explained that, even with the addition of all Disputed Custodians, the resulting

custodian count would be proportional to the breadth and complexity of this action and materially lower than custodian counts routinely approved in similarly complex cases. Letter Motion at 4-5. Panini further identified the unique nature of information reasonably expected to reside in each custodian's files, as explained above. Measured against the factors set forth in Rule 26(b)(1)—the importance of the issues, the substantial amount in controversy, the parties' relative access to the critical evidence (which is overwhelmingly in Fanatics' possession), Fanatics' substantial resources, and the need for extensive discovery from Fanatics as an antitrust defendant to resolve the issues—Panini's proposal was plainly within the bounds of proportionality.

**B.    Fanatics failed to justify excluding the Disputed Custodians.**

Under Rule 26's burden-shifting framework, Panini's showing required Fanatics to come forward with concrete, custodian-specific evidence demonstrating inaccessibility, disproportionality, or that the requested discovery would be "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). Fanatics did not meet that burden—indeed, it did not even try. It offered no hit counts for the Disputed Custodians and no declarations. Nor did it provide competent proof of unreasonably cumulative duplication such as "email exhibits showing that all parties were copied on the relevant emails" or a "plausible explanation (such as a factual proffer that, given their roles as supervisors, these defendants always emailed with each other about all employees)." *Thomas*, 336 F.R.D. at 2.

To the contrary, Fanatics asked the Court to accept blanket unsubstantiated assurances that the Disputed Custodians were duplicative, even though—as Fanatics' counsel conceded during the hearing—Fanatics' counsel has not collected their documents or performed any independent evaluation to determine duplication, or conducted custodian interviews of these individuals, and is relying at most on "witness interviews." ECF No. 242, Nov. 7 Hr'g Tr. at 34:9-18. But "[i]nterviews of witnesses about the content of their electronic communications is likely to

20

provide, at best, an incomplete picture of the content of relevant and discoverable ESI." *Thomas*, 336 F.R.D. at 4. It is not enough for counsel to rely solely on the independent judgment—or misjudgment—of a potential custodian as to whether he or she has unique responsive data. "It is also problematic to accept, without verifying, that the witness being asked to collect documents is involved in all the relevant conversations." *Id*. This is precisely the sort of conclusory presentation that Rule 26 rejects. *Thomas*, 336 F.R.D. at 2; *Oakley*, 2024 WL 4134903, at *2; *Ft. Worth*, 297 F.R.D. at 102.

In any event, duplication—if it exists—does not pose a meaningful obstacle to adding custodians where standard deduplication tools can be employed to cull duplicative search results. *Ft. Worth*, 297 F.R.D. at 106; *Felder*, 2025 WL 1718098, at *10. If the incremental files from adding custodians are truly duplicative, any increase in hit counts will be modest and readily eliminated through deduplication, imposing minimal additional burden. ECF No. 242, Nov. 7 Hr'g Tr. at 23:19-25:4, 33:14-34:2. If, instead, search results reveal non-duplicative materials, that result confirms why the custodians should have been included from the outset: they hold unique, relevant documents that the existing set does not capture.

Because Panini made the requisite showing of relevance and proportionality and Fanatics failed to carry its burden to exclude the requested discovery, the proper application of Rule 26 compels inclusion of the Disputed Custodians. Accordingly, Panini's Letter Motion should be granted in full.

## CONCLUSION

For the above reasons, Panini respectively requests that the Court modify the Custodian Order and compel Fanatics to add the nine remaining Disputed Custodians identified in Panini's Letter Motion: Jeffrey Gordon, Josh Luber, Gregory Abovsky, Nick Bell, Saj Cherian, Julie Yoo, Denise Albero, Clay Luraschi, and Brian Boyce. Alternatively, Panini requests that the Court

remand to Judge Figueredo for reconsideration of Panini's Letter Motion under the correct Rule 26 legal standard.

December 5, 2025                              Respectfully submitted,

                                             */s/ Stuart Singer*
                                             David Boies
                                             Eric Brenner
                                             **BOIES SCHILLER FLEXNER LLP**
                                             55 Hudson Yards
                                             New York, NY 10001
                                             Telephone: (212) 446-2300
                                             dboies@bsfllp.com
                                             ebrenner@bsfllp.com

                                             Stuart H. Singer*
                                             Sabria A. McElroy*
                                             Jason Hilborn*
                                             **BOIES SCHILLER FLEXNER LLP**
                                             401 E. Las Olas Blvd., Suite 1200
                                             Fort Lauderdale, FL 33301
                                             Telephone: (954) 356-0011
                                             ssinger@bsfllp.com
                                             smcelroy@bsfllp.com
                                             jhilborn@bsfllp.com

                                             James P. Denvir*
                                             Richard A. Feinstein*
                                             **BOIES SCHILLER FLEXNER LLP**
                                             1401 New York Ave, NW
                                             Washington, DC 20005
                                             Telephone: (202) 237-2727
                                             jdenvir@bsfllp.com
                                             rfeinstein@bsfllp.com

                                             *Counsel for Panini S.p.A.*

                                             *pro hac vice

## CERTIFICATE OF COMPLIANCE

I certify that the number of words in the foregoing memorandum of law complies with Local Rule 7.1(c) and Rule A.2.h. of this Court's Individual Practices. The memorandum of law contains 6,526 words, excluding the caption, any index, table of contents, table of authorities, signature blocks, and this certification exempted by Local Rule 7.1(c) and Rule A.2.h. of this Court's Individual Practices, as counted by Microsoft Word.

Dated: December 5, 2025              */s/ Stuart Singer*