

December 5, 2025

**Via ECF**
The Honorable Valerie Figueredo
United States District Court Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

  Re: *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023) – Panini's Motion to Quash Nonparty Subpoena

Dear Judge Figueredo:

  Panini submits this letter-motion to request a discovery conference and seeks an order quashing the nonparty subpoena dated November 19, 2025, to Wild Card, Inc., issued by Fanatics. *See* Fanatics' Notice of Subpoena to Wild Card, Inc. (attached as Exhibit A). Shortly after Wild Card filed a separate lawsuit against Panini in the Eastern District of Texas, Fanatics served a Rule 45 subpoena on Wild Card in this case, tracking the allegations in that unrelated action and seeking Panini documents and communications concerning those claims.

  This is not the first time that Fanatics has tried to team up with Wild Card to harass Panini: Fanatics also tried to buy control of another claim Wild Card had brought against Panini. In any event, Wild Card's lawsuit has nothing to do with Fanatics' unlawful long-term exclusive deals with licensors and the market-wide foreclosure at issue here. Because the subpoena seeks documents concerning alleged conduct unrelated to the claims and defenses in this case, it is irrelevant and should be quashed.

## Background

  Decades ago, Wild Card's predecessor—AAA Sports—filed for Chapter 7 bankruptcy. *In re: AAA Sports, Inc.*, 1:94-bk-10684 (Bankr. S.D. Ohio Feb. 1994). The Trustee later pursued litigation to monetize the estate's assets. *See id.*, ECF No. 356. AAA Sports then filed a copyright action against Panini in the Eastern District of Texas (the "AAA litigation"). *See*, *E. Hanlin Bavely, Chapter 7 Trustee of AAA Sports, Inc. v. Panini Am., Inc.*, 3:22-cv-00093 (E.D. Tex. Feb. 10, 2022), ECF No. 1. That litigation proceeded under a court-entered protective order governing confidential materials the parties produced. That order mandates that any confidential discovery "must not be used for any purpose other than in connection with" the AAA litigation "until such designation is removed either by agreement of the Parties, or by order of the Court." *See id.*, ECF No. 27 ¶ 9.

  In August 2023, Fanatics tried to buy Wild Card's claims against Panini in the AAA litigation. The Asset Purchase Agreement for the proposed deal identifies the buyer as AAA SPV, LLC, and is executed on the buyer's behalf by Melissa A. Bengtson—the Chief of Corporate & Governance Affairs and Corporate Secretary at Fanatics. *See* Motion to Sell All Assets, *In re: AAA Sports, Inc.*, 1:94-bk-10684 (Bankr. S.D. Ohio Aug. 16, 2023), ECF No. 371.[1] One week later, AAA Sports and Panini reached a settlement in the AAA litigation, effectively bringing the sale discussions to a close. *See*, AAA litigation, ECF No. 250.

---

[1] *See also* U.S. Sec. & Exch. Comm'n, Form D: *Fanatics Holdings, Inc.*, at 3 (Dec. 23, 2022); *Lewis v. M&T Bank*, 2022 WL 775758, at *1 (2d Cir. Mar. 15, 2022) ("[C]ourts may take judicial notice of publicly available documents such as regulatory filings.").



After losing its motion to dismiss, Fanatics issued discovery requests to Panini. For one of those requests, Fanatics sought "[a]ll Documents and Communications concerning allegations by any Person, including Wild Card, Inc., that [Panini] infringed their Intellectual Property Rights, and any resolution related to those allegations, including settlement agreements." Fanatics' Second Set of RFPs to Panini (attached as Exhibit B), RFP No.77. Panini objected to that request as having "no plausible relevance to the claims and defenses in this Action" and being "overboard, irrelevant, and not proportionate to the needs of the case to the extent it seeks confidential information including settlement agreements." Panini's Responses and Objections to Fanatics' Second Set of RFPs (attached as Exhibit C), at 13. That request remains in dispute between the Parties.

Recently, on November 6, 2025, Wild Card filed a lawsuit against Panini in the Eastern District of Texas. *See* Compl., *Wild Card, Inc. v. Panini Am., Inc.*, 4:25-cv-01216-ALM (E.D. Tex.), ECF No. 1 (the "Wild Card litigation"). Wild Card alleges that Panini pressured distributors at an October 2021 meeting not to carry Wild Card products and that four of the distributors acquiesced over a one-week period. *Id.* at ¶¶ 2, 22, 24, 27.

Sure enough, less than two weeks after Wild Card filed its frivolous lawsuit against Panini, Fanatics served a Rule 45 subpoena on Wild Card in this case. *See* Exhibit A). The subpoena's requests track themes from the Wild Card litigation and seeks documents and communications exchanged between Wild Card and Panini relating to the allegations in Wild Card's complaint.

## Argument

### I.     The Subpoena Seeks Documents Not Relevant to Any Claim or Defense in This Action.

Rule 45 requires courts to ensure that nonparty subpoenas remain tethered to Rule 26's limits on relevance and proportionality, *see Ireh*, 2008 WL 4283344, at *5, and courts routinely quash subpoenas where the requesting party cannot make that threshold showing, *see Diamond v. 500 SLD LLC*, 2022 WL 956262, at *2 (S.D.N.Y. Mar. 30, 2022); *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 58 (S.D.N.Y. 2018); *Salvatorie Studios, Int'l v. Mako's, Inc.*, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001). That is precisely the situation here. The subpoena is expressly—and exclusively—premised on allegations raised by Wild Card in a separate lawsuit involving different actors, different conduct, and an entirely different theory of liability.

Consider this Court's decision in *Diamond*. In that case, the Court rejected a subpoena seeking materials from a computer-forensics expert. *Diamond*, 2022 WL 956262, at *1. The expert had been engaged years earlier in a different lawsuit involving one of the plaintiffs and one of the defendants in the underlying action. *Id.* But that prior litigation was "factually unrelated to the present action." *Id.* at *2. The Court noted, for example, that the third party had no personal knowledge of the claims the parties were now litigating. *Id.* A related example is this Court's decision in *Salvatorie Studios*. There, the defendant served a third-party subpoena on the law firm that had represented the plaintiff in a prior case, seeking the settlement agreements from that earlier lawsuit. *Salvatorie Studios*, 2001 WL 913945, at *1. The Court quashed the subpoena, finding that the defendant "failed to establish that the settlement agreement it [sought] is in any way relevant to the claims or defenses raised in *this* action—a different lawsuit against a different party." *Id.*

The same disconnects exist here. Fanatics' subpoena is premised entirely on Wild Card's allegations in a separate lawsuit involving different actors, different conduct, and a wholly different theory of liability.

In the end, this subpoena is just a recycled attempt by Fanatics to drag Panini through the mud as some defense to its own unlawful conduct here. But as Chief Judge Swain has already held



as a matter of law, Panini's alleged conduct has no bearing on Fanatics' antitrust liability because there is no in pari delicto or unclean hands defense to antitrust claims. *See* ECF No. 164 at 18 n.11; *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 140 (1968) ("[T]he doctrine of in pari delicto … is not to be recognized as a defense to an antitrust action.") *Apex Oil Co. v. DiMauro*, 713 F. Supp. 587, 604 (S.D.N.Y. 1989) ("[U]nclean hands is not a defense to an antitrust action."). So whatever Wild Card (or Fanatics) may allege Panini has done in the past, those allegations cannot render the requested materials relevant to Fanatics' anticompetitive conduct here.

## II.   The Court Has Inherent Authority, and Panini Has Standing.

The Court has inherent authority to limit irrelevant or non-proportional subpoenas irrespective of "standing." Indeed, "the question of standing is beside the point where the objection to the subpoena is on relevance or proportionality," and courts routinely construe such objections as requests for protective relief under Rule 26(c)(1). *See Allstate Ins. Co. v. All Cnty., LLC*, 2020 WL 5668956, at *2 (E.D.N.Y. Sept. 22, 2020); *Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp. 3d 384, 405 (D. Conn. 2020) ("Even if Hartford has no standing, the Court certainly does. In cases where the party lacks standing to challenge a subpoena served on a non-party, the Court may nevertheless exercise its inherent authority to limit irrelevant or non-proportional discovery.").

Even if standing were a consideration, Panini clearly has it. "[A] party may object to a subpoena issued to a non-party if the party claims a personal right, real interest in, or privilege concerning the documents." *Fecteau v. City of Mount Vernon*, 2025 WL 2391410, at *3 (S.D.N.Y. Aug. 15, 2025) (citing *Gilead Scis., Inc. v. Khaim*, 755 F. Supp. 3d 285, 293 (E.D.N.Y. 2024) (finding that a party's "real interest in the data subject to [a third party] subpoena is sufficient to confer standing to object to the request")); *see also Solow v. Conseco, Inc.*, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008) (noting that Rule 45(d)(3)(B) itself makes clear that courts may "quash, modify, or condition a subpoena to protect the person subject to *or affected by the subpoena* from unnecessary or unduly harmful disclosures of confidential information"). That standard is plainly met here. The subpoena is on its face about Panini, seeks Panini documents, concerns a separate litigation in which Panini and Wild Card are parties, and may also target documents belonging to Panini that Wild Card has only because of the prior AAA Sports litigation. The subpoena's focus on Panini provides more than sufficient personal and real interest to object.

## III.   Fanatics Cannot Evade Party Discovery.

Fanatics' subpoena is also improper for the independent reason that it is a textbook end-run around ordinary party discovery by seeking from a hostile third-party Panini documents and communications—some of which are the very documents Panini has already objected to in the underlying action. "Subpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34." *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 69 (S.D.N.Y. 2020) (citation modified). "If documents are available from a party," they should be "obtained pursuant to Rule 34 rather than subpoenaing them from a non-party" under "Rule 45." *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) (citation modified). Courts thus reject attempts to obtain from non-parties what should be sought, if at all, from the opposing party. *See id.* (quashing a nonparty subpoena because the party had same documents); *Arista Recs. LLC v. Lime Grp. LLC*, 2011 WL 679490, at *1 (W.D. Wash. Feb. 9, 2011) ("Because the documents requested from Amazon can better be obtained from Plaintiffs or have little relevance to the Southern District of New York case, Defendants' need to enforce the subpoena is outweighed by the burden to Amazon."). This Court should do the same here.

For all these reasons, Panini requests that the Court quash Fanatics' subpoena to Wild Card.

**BSF**

## CERTIFICATION OF CONFERRAL

      I certify that counsel conferred regarding Panini's motion to quash the Wild Card subpoena through two phone calls and an email exchange on December 5, 2025, beginning at 10am EST, between Alisha Moriceau for Panini and Emiliano Delgado for Fanatics. During further email correspondence, Fanatics stated that Panini "lacks standing" to move to quash on relevance or party-discovery grounds, that it "will not withdraw the subpoena," and that it will not "refrain from reviewing any documents that Wild Card produces," and Panini informed Fanatics that Panini would "be seeking a discovery conference with Judge Figueredo, by letter-motion."

Respectfully submitted,

/s/ Stuart Singer
David Boies
Eric Brenner
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

Stuart H. Singer*
Sabria A. McElroy*
Jason Hilborn*
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
jhilborn@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com

*Counsel for Panini America, Inc.*

*pro hac vice

---

**MEMO ENDORSED**

[signature]
HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE

**Dated: December 8, 2025**

The Court will address this letter motion at the conference scheduled for December 16, 2025. See ECF No. 222. Fanatics is directed to file a response by **Friday, December 12, 2025**.

---

cc:    All Counsel of Record (by ECF)