**quinn emanuel** trial lawyers | new york

December 12, 2025

<u>Via ECF</u>
The Honorable Valerie Figueredo
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, New York, NY 10007-1312

Re: *Panini Am., Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023) – Fanatics' Response to Motion to Quash Nonparty Subpoena

Dear Judge Figueredo:

Panini's Motion to Quash the subpoena directed to Wild Card, Inc. ("Motion") is meritless and should be denied for three reasons. Dkt. 250. *First*, the Motion is procedurally improper: Contrary to Rule 45, Panini did not file it with "the court for the district *where compliance is required*." *In re Smerling Litig.*, 2022 WL 684148, at *2 (S.D.N.Y. Mar. 8, 2022) (original emphasis; quotation omitted). Binding authority instructs that Panini was required to seek relief in the Northern District of Texas, which has the exclusive jurisdiction to enforce, modify, or quash the subpoena.

*Second,* Panini lacks standing to quash the subpoena. Because Panini lacks any right or interest in documents held by its competitor (which it sought to drive out of the market), it cannot be heard on this issue. Nor can Panini dispel the standing requirement operative under Rule 45 or Rule 26. *See FCX Solar, LLC v. FTC Solar, Inc*., 2022 U.S. Dist. LEXIS 123223, at *4 (S.D.N.Y. July 12, 2022) (Figueredo, M.J.) (denying motion to quash where movant did not have a "privilege, privacy, or proprietary interest in the documents sought" under Rule 45 and Rule 26).

*Third*, Panini's substantive objections are meritless. The information sought, regarding Panini's illegitimate business practices, goes directly to issues of causation, damages, and Fanatics' affirmative defenses. Based on Wild Card's allegations, Fanatics expects the requested documents will show that Panini's alleged injury was the result of Panini's own complacency and, indeed, self-sabotage. That Panini sunk so low and became so desperate that it leveled threats against distributors unless they boycotted Panini's fledgling competitor, Wild Card, speaks volumes to support Fanatics' theory of the case. At bottom, Panini is simply trying to stop Wild Card, which is not a party to this litigation and has not moved to quash, from producing powerful, relevant evidence of Panini's bad acts. That is no basis for relief here.

I. **Panini Filed the Motion with the Wrong Court**

Panini has taken its request to the wrong forum considering that the subpoena requires compliance in Dallas, Texas—not New York. Dkt. 250-1 at 5. "Rule 45(d)(3) . . . reserves the power to quash or modify a subpoena to the 'court for the district *where compliance is required*.'" *In re Smerling*, 2022 WL 684148, at *2 (original emphasis; quoting Fed. R. Civ. P. 45(d)(3)). The "issuing court lacks jurisdiction over motions to quash if it is not also the court where compliance is required." *Id.* (cleaned up). Where, as here, jurisdiction is lacking over a motion to quash, the motion is due to be denied. *See, e.g., id.*; *Chauncey v. H.O. Penn Mach. Co., Inc.*, 2025 WL 2406466, at *2 (S.D.N.Y. Aug. 19, 2025); *KGK Jewelry LLC v. ESDNetwork*, 2014 WL 1199326, at *3 (S.D.N.Y. Mar. 21, 2014) (same). Because the U.S. District Court for the Northern District of Texas has exclusive jurisdiction to quash or modify the subpoena, Panini's motion is doomed at the threshold.

## II. Panini Lacks Standing to Quash the Subpoena

Even looking past this fatal jurisdictional defect, the Motion fails for lack of standing. "A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *KGK Jewelry,* 2014 WL 1199326, at *3. "The movant bears the burden of persuasion on a motion to quash." *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 57892, at *2 (S.D.N.Y. Jan. 4, 2013).

Panini fails to identify any privilege or cognizable right that it holds in the documents requested from Wild Card. Panini just declares the requirement is "plainly met" because the subpoena purportedly seeks "Panini documents, concerns a separate litigation" involving Panini, and "may also target documents belonging to Panini." Dkt. 250 at 3. This conclusory assertion does not begin to explain how Wild Card, Panini's direct competitor, could plausibly have any of Panini's proprietary or privileged information. Panini was required to present specifics proving the requested documents are proprietary and protected. By no means can Panini's "naked assertion" of a generalized interest in the documents give rise to standing. *FCX Solar,* 2022 U.S. Dist. LEXIS 123223, at *7 (denying motion to quash where movant did "not adequately explain[] precisely what proprietary information the third parties possess that could be responsive"). That the documents may "contain information about [Panini's] business activities" does not demonstrate that Panini has a "'privilege, privacy, or proprietary interest in the document[s] sought.'" *Sound Around, Inc. v. Friedman*, 2025 WL 33505, at *6 (S.D.N.Y. Jan. 3, 2025).

Panini is flatly wrong to claim that the "question of standing is beside the point." Dkt. 250 at 3. As Your Honor explained when denying a similar motion to quash in *FCX Solar,* "[t]he case law is clear: absent a claim of privilege, privacy, or proprietary interest in the documents sought, a party does not have standing to object to a subpoena directed at a non-party" "on the grounds of relevance." 2022 U.S. Dist. LEXIS 123223, at *4; *see also, e.g.*, *Universitas Educ.*, 2013 WL 57892, at *5; *Sound Around,* 2025 WL 33505, at *6. This rule "applies with essentially the same force" to Panini's request for the Motion to be construed as "a motion for a protective order under Rule 26(c)." *FCX Solar,* 2022 U.S. Dist. LEXIS 123223, at *4-5. Again, Panini has no relationship with Wild Card that would create a legally cognizable interest in its documents—Wild Card is a direct competitor that Panini has allegedly targeted with anticompetitive conduct.[1]

## III. The Subpoena Seeks Highly Relevant Documents

Even if Panini had filed in the right court and had standing, its relevance and party-discovery objections still fail. The scope of relevancy "is quite broad" and "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *FCX Solar, LLC v. FTC Solar, Inc.*, 2022 WL 3584946, at *2 (S.D.N.Y. Aug. 22, 2022) (Figueredo, M.J.). The "burden to establish relevancy … is not heavy." *Id.*

Injury and causation are essential and contested elements of Panini's antitrust claims. *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*, 22 F.4th 103, 116 (2d Cir. 2021) ("[T]he Clayton Act covers only plaintiffs whose injuries were proximately caused by a defendant's antitrust violations"). Evidence of Panini's business practices is "highly probative on the central issue of whether [Panini's] alleged injury and damages . . . were caused by [Fanatics']

---

[1] The protective order in *E. Hanlin Bavely, Chapter 7 Trustee of AAA Sports, Inc. v. Panini Am., Inc.*, 3:22-cv-93-ALM, Dkt. 27 ¶ 22 (E.D. Tex.) provides that confidential information may be disclosed if "required by law or by order of the Court."

2

anticompetitive conduct or by [Panini's] own deliberate business judgments."  *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1369 (2d Cir. 1988); Dkt. 230: Fanatics' Answer, *e.g.*, Aff. Def. 10 (unclean hands), 12 (Panini's "own actions, inactions, and/or omissions" bar its claims), 13 (Panini "suffered no cognizable injury or damages"), 16 (Panini's alleged injuries "were not proximately caused by any act or omission of Fanatics").  The requested documents will establish that Panini's alleged damages are self-inflicted and traceable to Panini's own faulty business decisions and anticompetitive conduct, including threatening distributors with "allocation downgrades or program exclusion" unless they boycotted Wild Card.  Dkt. 250-1 at 15-16 (quoting *Wild Card, Inc. v. Panini Am., Inc.*, No. 4:25-cv-01216, ECF No. 1 ¶ 1 (E.D. Tex. Nov. 6, 2025)).

       Panini misses the mark by claiming "there is no in pari delicto or unclean hands defense to antitrust claims."  Dkt. 250 at 3 (citing *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 140 (1968)).  Nothing in *Perma Life* "suggests that otherwise readily admissible evidence must be excluded because it might also be relevant to an *in pari delicto* or unclean-hands defense.  In fact, *Perma Life* explicitly states that such evidence 'can of course be taken into consideration in computing damages.'"  *U.S. Football*, 842 F.2d at 1369; *see, e.g.*, *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 95 (S.D.N.Y. 2017) (unclean hands defense was relevant to plaintiff's damages); *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 2010 WL 145098, at *6 (N.D. Cal. Jan. 8, 2010) (similar).  The Wild Card documents showing whether Panini has engaged in the same anticompetitive conduct it accuses Fanatics of bear on important issues of causation, Panini's purported damages, and Panini's alleged entitlement to injunctive relief.

       Panini's cited authority, *see* Dkt. 250 at 3, does not provide otherwise.  Neither decision involved a moving party that failed to file in the proper forum or lacked standing.  *See Diamond v. 500 SLD LLC*, 2022 WL 956262, at *2 (S.D.N.Y. Mar. 30, 2022); *Salvatorie Studios, Int'l v. Mako's, Inc.*, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001).  In *Diamond*, the Court quashed a subpoena because the Rule 26 conference had not yet occurred and, unlike here, the nonmovants did not "respond[] to the defendants' motion" and "offer[ed] no explanation as to why they require[d] testimony and the requested documents from" the third party.  2022 WL 956262, at *2.  In *Salvatorie Studios*, the Court quashed a subpoena without prejudice, recognizing that the requested information might later prove to be relevant.  2001 WL 913945, at *1.  In contrast, the subpoena seeks information that "bears on or, that reasonably could lead to other matter that could bear on" disputed issues in this case as described above.  *FCX Solar,* 2022 WL 3584946, at *2.

       Finally, Panini's party-discovery objection, Dkt. 250 at 3, is specious.  If any party is positioned to make this objection, it would be *Wild Card*.  But Wild Card did not make an objection.  Panini does not possess *Wild Card's* internal communications or communications with distributors that stand to illuminate Panini's anticompetitive conduct.  (Notably, to the extent Panini has information related to its effort to harm Wild Card, Panini is refusing to produce it and has forced Fanatics to move to compel.  *See* Dkt. 252.)  What obviously animates Panini's objection is fear that Wild Card will now be producing unique, powerful evidence of Panini's bad acts and poor business decisions.  Needless to say, that is not a good reason why telltale evidence should be kept from Fanatics.  The Motion should be denied.

3

Respectfully submitted,


*/s/ Michael B. Carlinsky*
Michael B. Carlinsky
Quinn Emanuel Urquhart & Sullivan LLP
295 Fifth Avenue
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
(212) 849-7000

*Counsel for Fanatics*