Exhibit C



February 20, 2026

**VIA ELECTRONIC MAIL**

Alicia Jovais
Lawrence Buterman
Latham & Watkins, LLP
1271 Avenue of the Americas
New York, NY 10020
alicia.jovais@lw.com
lawrence.buterman@lw.com

Kathryn Bonacorsi
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
kathrynbonacorsi@quinnemanuel.com

> Re: *Panini America, Inc. v. Fanatics, Inc. et al*., Case No. 1:23-cv-09714-LTS-VF –
> **Fanatics' Responses to Panini's First Set of Interrogatories and Third Requests
> for Production**

Counsel:

We write regarding Fanatics' Responses and Objections to Panini's First Set of Interrogatories and Third Set of Requests for Production in *Panini America, Inc. v. Fanatics, Inc. et al.* (-09714). We are available to meet and confer regarding these issues during the following times:

- Tuesday, February 24, 2026, from 12-4 pm
- Wednesday, February 25, 2026, from 2-4 pm
- Thursday, February 26, 2026, from 1-4 pm

Please be prepared to provide substantive responses to the issues outlined below during our call. Pursuant to the Process for Identifying and Resolving Discovery Disputes outlined in the Parties' August 15, 2025 Joint Letter, Dkt. 201, and the Court's February 6, 2026 Scheduling Order, Dkt. 279, we intend to raise any matters that we cannot resolve through the meet and confer process by March 10 at the March 18 discovery conference.

BOIES SCHILLER FLEXNER LLP

401 East Las Olas Boulevard, Suite 1200, Fort Lauderdale, FL 33301 | (t) 954 356 0011 | (f) 954 356 0022 | www.bsfllp.com



## I.    <u>Interrogatories</u>

### A. Fanatics' responses violate Rule 33(b)(4).

Where Fanatics has agreed to respond to the Interrogatories, it "incorporates by reference each of its General Objections and Objection to Definitions and Instructions," and then states that it will respond "Subject to and without waiving the foregoing General Objections," without specifying the precise scope of the answers it provides. This approach leaves Panini unable to determine what responsive information Fanatics is actually providing, and what information, if any, is being withheld based on Fanatics' specific and general objections. As we have repeatedly noted in other contexts, it is not appropriate for Fanatics to withhold responsive information based on generalized or unspecified objections without identifying what is being withheld and on what grounds, and what information is being provided. *See* Rule 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."). Fanatics should promptly confirm in writing that, for all the Interrogatories where it has responded, it is not withholding any responsive information based on its previously stated specific or general objections.

### B. Fanatics must respond to Panini's Interrogatories in full and cannot rely on documents without specifying the specific documents it is relying on.

Fanatics objects to the Interrogatories as "overly broad and unduly burdensome" on the ground that they call for the identification of "'all Persons with knowledge' of broad subject matters." Fanatics then states that it will "identify the current or former Fanatics employees who Fanatics presently understands are most knowledgeable on the referenced subject matters" but "will otherwise refer to documents produced in this action" pursuant to Federal Rule of Civil Procedure 33(d). Panini disagrees with Fanatics' characterization of the topics as "broad subject matters." Interrogatories seeking the names of witnesses with knowledge of information relevant to the subject matter of the action is precisely what Local Civil Rule 33.3 contemplates. Regardless, Fanatics must respond to the Interrogatories in full. Fed. R. Civ. P. 33(b)(1)(3). Selective, partial disclosure is not permitted. *United States v. Veeraswamy*, 347 F.R.D. 591, 599 (E.D.N.Y. 2024) ("A party responding to an interrogatory is required 'to make an inquiry and obtain information to answer the interrogatories which would include obtaining the information to fully and completely answer the interrogatories.'" (citation omitted)).

If Fanatics intends to rely on Rule 33(d), which permits a party to produce business records in lieu of answering an interrogatory in writing, it is required to "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Rule 33(d)(1). Fanatics did not specify any documents that contain this information, and instead referred generally to "documents produced." In response to the individual Interrogatories, Fanatics claims that it "will" respond "by referring to documents as they are produced in discovery," and at the same time makes no commitment to undertake "an affirmative duty to change or supplement [its] responses." This is plainly improper. *Shim-Larkin v. City of New York*, 2018 WL 3187327, at *11 (S.D.N.Y. June 28, 2018), *objections overruled*, 2018 WL 4636839 (S.D.N.Y. Sept. 27, 2018) (finding that responding party failed to comply with Rule 33(d) where "defendant did not identify … with sufficient detail, the portion of [the document] that it believed is responsive to [the interrogatory]."). Fanatics must either supplement its Interrogatory responses to respond in full—identifying all Persons with knowledge of the



specified topics—or immediately specify which documents, and the portions of those documents, it is relying on for each Interrogatory.[1]

### C. Fanatics' Responses Contain Discrepancies with Fanatics' Initial Disclosures.

Fanatics' responses to Panini's Interrogatories contain several discrepancies with the information Fanatics provided in its Initial Disclosures:

1. In Fanatics' Initial Disclosures, it identified Saj Cherian, Jeff Gordon, and Julie Yoo as individuals with knowledge of "Fanatics' sports trading card licensing agreements" and "Fanatics' negotiation of sports trading card licensing agreements." But Mr. Cherian, Mr. Gordon, and Ms. Yoo were not identified in Fanatics' responses to Interrogatory Nos. 1 or 2, which relate to the negotiations of the licenses and the terms of the licenses.

2. In Fanatics' Initial Disclosures, it identified Clay Luraschi as someone with knowledge of "Fanatics' product innovation." But Mr. Luraschi was not identified in response to Interrogatory No. 17 which sought for Fanatics to identify "all Persons with knowledge concerning Fanatics' investments and innovations in the trading card industry."

3. In Fanatics' responses to Panini's Interrogatories, it identified Jerry Frank, Stephanie Putnam, Susanne Tesi, Brian Bayne, Nick Matijevich, Robert Springs, Omar Wilkes, Brennan Woods, Scott Daniel, Andrew Eckert, and Matthew Gepp as being persons "most knowledgeable" on the subject matter of certain Interrogatories. These persons were not identified in Fanatics' Initial Disclosures as likely having discoverable information that Fanatics may use to support its claims or defenses pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i).

Please explain these discrepancies.

### D. Fanatics' Answer to Interrogatory 10 is Contradicted by Documents it has Produced.

Interrogatory 10 asks Fanatics to identify all Persons with knowledge concerning any discussions with NFLPA concerning NFLPA actually or potentially seeking to terminate its license agreement with Panini. In response to Interrogatory 10, Fanatics states that it is currently "unaware of any alleged 'discussions' as described in this Interrogatory." Fanatics' response is contradicted by documents that it has already produced in this litigation. FAN-PAN-SDNY00010056 and FAN-PAN-SDNY00010058 show NFLPA providing notice to Shiri Ben-Yishai and Gary Gertzog of its decision to terminate its license with Panini, and Michael Rubin, Saj Cherian, Mike Mahan, David Leiner, Glenn Schiffman, Gregg Winiarski, and Shiri Ben-Yishai communicating about the notice. Additionally, during the arbitration between Panini and NFLPA, David Leiner testified that Michael Rubin had a conversation with DeMaurice Smith from the NFLPA in which he reminded Smith of the termination provision in Panini's agreement with the NFLPA. Prelim. Hr'g Tr., FAN-

---

[1] If Fanatics is relying on un-produced documents in its responses, it must also immediately produce the documents it is relying on and specify which documents, and the portions of those documents, it is relying on for each Interrogatory.



PAN-SDNY00001104, at 60:6-10. Fanatics should conduct an appropriate investigation—which it clearly failed to do—and amend its response to Interrogatory 10 accordingly.

### E. Fanatics' Refusal to Answer Interrogatory 18 is Improper.

Fanatics refuses to answer Interrogatory 18, claiming it is "overly broad and unduly burdensome on the grounds that it seeks information outside the scope of discovery." This objection is unwarranted. Interrogatory 18 seeks the names of individuals holding knowledge necessary to testify to Fanatics' compliance with its discovery obligations. Identifying the individuals responsible for Fanatics' search for documents is the minimum necessary for Panini to evaluate whether Fanatics conducted an adequate search for responsive documents. Fanatics' objection on the basis of an unspecified privilege is also baseless. There is no privilege that prevents Panini from inquiring into the scope and completeness of Fanatics' efforts to identify documents responsive to Panini's discovery requests. Fanatics should amend its response to specify who will testify on this issue.

### II.     Third Requests for Production

### A. Narrowed Definitions

Fanatics proposes an overly restrictive definition of "Topps." Fanatics' proposed definition improperly excludes Topps' affiliates, subsidiaries, predecessor entities, and associated individuals who may be in possession of relevant documents. Please confirm in writing that Fanatics will produce all responsive documents regardless of which Topps entities or individuals have possession or control of such documents.

Fanatics similarly proposes an overly restrictive definition of "Wild Card, Inc.," objecting to the inclusion of related parties and predecessor entities such as AAA Sports, Inc. There is no basis for your objection to AAA Sports, which is specifically identified. Nor is this any reason for Fanatics to refuse to produce responsive communications with individuals or entities whom it knows are acting on Wild Card's behalf. Please confirm in writing that Fanatics will interpret "Wild Card, Inc." to include any representative of Wild Card and AAA Sports in the event that it agrees to produce documents in response to RFP No. 9 or is ordered to do so.

### B. Time Period

Fanatics' objection to producing documents going back to January 1, 2014, in response to RFP Nos. 1-3 is not merely improper—it is wholly inconsistent with other positions it has taken in this matter. Fanatics has demanded discovery from Panini going back to *2009* on identical topics, claiming this discovery is relevant to "establishing the industry practice around license acquisitions and exclusivity." Dkt. 209 at 2-3. Having taken that position, Fanatics cannot credibly claim that documents concerning Topps' negotiations with Leagues, Associations, or Entertainment Licensors (RFP No. 1), Topps' use or attempted use of exclusive licenses (RFP No. 2), and Topps' bidding for licenses (RFP No. 3) from a more recent period-2014 to the present— are somehow irrelevant. Fanatics should withdraw this baseless objection and produce all responsive Topps documents going back to January 1, 2014.



### C. Individual Requests for Production

Fanatics does not agree to produce any additional documents in response to Panini's Third Set of Requests for Production. For the following reasons, Fanatics' objections are baseless.[2]

***RFP No. 1.*** RFP No. 1 seeks documents related to negotiations with Leagues, Associations,[3] or Entertainment Licensors concerning the production or sale of Trading Cards. This request is the mirror image of Fanatics' RFP No. 4 to Panini. The requests Fanatics points to in its responses and objections are not duplicative. Documents concerning Fanatics' decision to enter into the business of Sports Trading Cards (RFP No. 14) or its projections and plans under Fanatics' Exclusive License Agreements (RFP No. 39) would not cover its negotiations for licenses with Leagues, Associations, and Entertainment Licensors. This request is also broader than RFP Nos. 15, 16, 18, 19, 21, 22, 30, 31, 33, and 34 from Panini's Second Set of Requests, because it seeks documents related to actual or potential negotiations with any League, Association, or Entertainment Licensor, not just the NFL, NFLPA, MLB, MLBPA, NBA, and NBPA. This request is also broader than the prior requests, because it covers Topps' documents going back to 2014, which are relevant for the reasons described above. Fanatics should produce the broader scope of documents covered by this request.

***RFP No. 2.*** RFP No. 2 seeks documents related to the use or attempted use of exclusive licenses for the production or sale of Collectibles. This request mirrors Fanatics' RFP No. 9 to Panini. None of the requests Fanatics identifies are duplicative of this request. This request is not limited to the competitive effects of exclusive license agreements (RFP No. 106). It covers documents related to the use or attempted use of exclusive licenses more broadly. It also is not limited to the impact or anticompetitive effects of Fanatics' exclusive licenses with the NBA, NBPA, NFL, NFLPA, MLB, and MLBPA (RFP Nos. 107 and 109), both because it is not limited to those license agreements, and because it is not limited to impact or anticompetitive effects. This request also covers policies or guidelines for the use of exclusive licenses, which is not the same as pricing policies covered by RFP No. 108. This request is also broader than the prior requests, because it covers Topps' documents going back to 2014, which are relevant for the reasons described above. Fanatics should produce the broader scope of documents covered by this request.

***RFP No. 3.*** RFP No. 3 seeks communications between Fanatics or Topps and any League, Association, or Entertainment Licensor concerning bidding for Licenses. This request mirrors Fanatics' RFP No. 38 to Panini. None of the requests Fanatics identifies are duplicative of this request. Fanatics again points to Panini's requests relating to the decision to enter into the business of Sports Trading Cards (RFP No. 14) and to enter into licenses with the NFL, NFLPA, MLB, MLBPA, NBA, and NBPA and negotiations for these licenses (RFP Nos. 15, 16, 18, 19, 21, 22, 30, 31, 33, and 34). Panini's new RFP No. 3 covers communications concerning the bidding of licenses more broadly, not just licenses with the NFL, NFLPA, MLB, MLBPA, NBA, and NBPA.

---

[2] Fanatics objects to nearly all the requests on the basis that they are duplicative of Panini's prior requests. To the extent there is any crossover between these requests, and those Fanatics claims are duplicative, Fanatics can de-duplicate the document hits.

[3] As you are aware, the parties are separately negotiating the scope of productions as it relates to negotiations with Players. Panini reserves all rights and maintains its existing objections to Fanatics' requests seeking player agreements, negotiations, and communications.



This request is also broader than the prior requests, because it covers Topps' documents going back to 2014, which are relevant for the reasons described above. Fanatics should produce the broader scope of documents covered by this request.

**RFP No. 4.** RFP No. 4 seeks payments Fanatics or Topps has made to certain rookies. This request mirrors the scope of what Panini has agreed to produce in response to Fanatics' RFP No. 51. This request is not duplicative of RFP Nos. 54 and 56 from Panini's Second Set of Requests for Production. Those requests relate to the terms of Fanatics' agreements with athletes for autographs. This request relates to Fanatics' actual *payments* to NFL or NBA rookies or rookies associated with any other League for which Fanatics or Topps did not have a license at the time such payments were made. Fanatics should produce documents responsive to this request.

**RFP No. 5.** RFP No. 5 seeks communications with any Trading Card printer or manufacturer relating to Panini. Fanatics objects to producing any documents in response to this request beyond what it has agreed to produce already in response to Panini's requests from its Second Set of Requests for Production. None of the requests Fanatics points to are duplicative of Panini's new RFP No. 5. RFP No. 5 seeks communications with any trading card printer or manufacturer relating to Panini, not just communications with GCP relating to Panini. By contrast, RFP Nos. 120, 122, and 124 relate exclusively to GCP. Fanatics further claims that this request is "vague and ambiguous to the extent it is unclear which part of the request the phrase 'relating to Panini' is intended to modify." Panini clarifies that it is seeking communications between Fanatics and any other printer or manufacturer that relates to Panini. In other words, the phrase "relating to Panini" is intended to modify communications. Fanatics' objection that the requested documents fall outside its possession, custody, or control is therefore meritless, as Panini seeks only communications involving Fanatics itself.

**RFP No. 6.** This request seeks specific data—the volume of Trading Cards that GCP manufactured or expects to manufacture from 2017 through 2045, broken down by Trading Card company, product, and month. This data is not covered by any of the existing requests Fanatics cites. If Fanatics disagrees and contends that it is already obligated to produce all documents responsive to this request, it should say so expressly. Fanatics also claims this request is unduly burdensome, because it seeks data "through 2045." But data through 2045 is relevant, because that is the date through which Fanatics is expected to hold exclusive licenses at issue in this litigation, and Fanatics has presented no showing of burden. Fanatics should produce the data sought by this request.

**RFP Nos. 7 and 8.** RFP No. 7 seeks "policies or Documents that support, contradict, or otherwise relate to efforts by GCP to segregate or protect Panini's confidential information after Fanatics' acquisition of a stake in GCP." RFP No. 8 seeks "Communications related to GCP's access to Panini's trade secrets, including, but not limited, information about Panini's production runs, product mixes, and form breaks." Fanatics' principal objections to both requests are that they are duplicative of prior requests and that they are an improper attempt to re-raise RFP No. 125 from Panini's Second Set of Requests for Production. Both objections lack merit.

To start, neither request is duplicative of RFP Nos. 122 and 124 from Panini's Second Set of Requests for Production. RFP No. 122 is focused on communications between Fanatics and



GCP relating to Panini. RFP No. 124 is focused on Fanatics' knowledge of GCP's contractual relationship with Panini. Panini's new RFP Nos. 7 and 8, however, seek GCP's internal documents. Further, RFP No. 124 is limited to documents related to GCP's contractual relationship with Panini. RFP Nos. 7 and 8 seek documents related to GCP's efforts to protect Panini's confidential information and GCP's access to Panini's trade secrets, whether or not specifically related to GCP's contractual obligations to Panini.

RFP Nos. 7 and 8 are also not an improper attempt to re-raise RFP No. 125 from Panini's Second Set of Requests. Fanatics mischaracterizes the Court's ruling on that request. The Court did not hold that RFP No. 125 sought irrelevant information. Rather, Fanatics argued—and the Court accepted—that RFP No. 125 need not be answered because it related specifically to the change-of-control provision in Panini's contract with GCP, and Panini's tortious interference claim based on that provision had been dismissed. Oct. 9, 2025 Hr'g Tr. 42:3-8. That ruling has no application here: RFP Nos. 7 and 8 have nothing to do with the change-of-control provision. Moreover, the Court ordered Fanatics to produce documents in response to RFP No. 124 concerning Fanatics' knowledge of GCP's contractual obligations to Panini before and after the acquisition, with the understanding that this production would encompass the full scope of what Panini was seeking in both RFP Nos. 124 and 125. Oct. 9, 2025 Hr'g Tr. 48:12-25. Fanatics' attempt to invoke the Court's narrow ruling on RFP No. 125 to resist these new requests is therefore misplaced.

Finally, these requests do not "improperly seek[] early discovery on Panini's trade secret claims in a different, unrelated matter." Rather, Panini's new RFP Nos. 7 and 8 cover a distinct set of documents related to GCP's efforts to protect Panini's confidential information and its access to Panini's trade secrets. These documents are relevant to Panini's Section 2 and Section 7 claims in this matter, *see* Am. Compl. ¶¶ 137-38, and should be produced.

***RFP No. 9.*** RFP No. 9 seeks communications between Fanatics and Wild Card, Inc. relating to Panini or any contemplated or actual legal action by Wild Card, Inc. against Panini. Fanatics has twice argued to the Court that Wild Card, Inc.'s claims against Panini are relevant to this case. Dkt. 252 at 3; Dkt. 258 at 2-3. While the Court rejected Fanatics' request for documents from Panini related to Wild Card, Inc.'s claims against Panini, Fanatics succeeded in obtaining documents from Wild Card, Inc. related to these claims. *See generally* Dkt. 259. Accordingly, Fanatics invited discovery into these issues. It cannot now argue that its communications with Wild Card, Inc. related to Panini or the claims Wild Card, Inc. brought against Panini are irrelevant. Panini is entitled to discover the full nature and extent of Fanatics' involvement in or knowledge of those claims—including any communications that may bear on Fanatics' relationship with Wild Card, Inc. concerning this litigation.

Regards,

*/s/ Sabria McElroy*
Stuart Singer
Sabria McElroy
Meredith Schultz



Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
mschultz@bsfllp.com

Eric Brenner
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
ebrenner@bsfllp.com