**quinn emanuel** trial lawyers | new york

<u>Via ECF</u>

The Honorable Valerie Figueredo                                    March 27, 2026
United States District Court Magistrate Judge
Southern District of New York

Re:    *Panini America, Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714 (S.D.N.Y. 2023) —
       Fanatics' Supplemental Opposition to Panini's Motion to Quash or for Protective Order

Dear Judge Figueredo:

        Fanatics respectfully submits this supplemental letter in further opposition to Panini's motion to quash Fanatics' subpoena to Citigroup (ECF 281, "Motion" or "Mot."). As explained below, documents produced by Panini after the March 18 conference underscore why Panini's Motion should be denied in its entirety.

        At the March 18 conference on Panini's Motion, Panini's counsel argued that Panini should be permitted to redact information from Citigroup documents that relates to Panini S.p.A.'s international collectibles business. *See* Mot. at 2. As explained at the conference, Fanatics opposes such redactions because Panini S.p.A.'s collectibles business is centrally relevant. *See* ECF 288 at 2-3. In addition to being a defendant in Fanatics' lawsuit, Panini S.p.A. directs and oversees the interconnected operations of its global subsidiaries, including Panini America. *See* ECF 69 ¶¶ 23, 76, 78. More fundamentally, documents concerning Panini S.p.A.'s international collectibles business may undermine a core premise of Panini's case—namely, that other types of collectibles products, such as international collectibles, entertainment collectibles, stickers, and partially licensed products, are not part of the relevant market, which Panini narrowly defines as "Major U.S. Professional Sports Leagues trading cards." ECF 69 ¶¶ 33-75; *see* ECF 288 at 2-3. Market definition is a critical issue in many antitrust cases and a potentially dispositive issue here. ECF 230, Aff. Def. No. 1; *see United States v. Live Nation Ent., Inc.*, 2026 WL 456804, at *10, *23, *35 (S.D.N.Y. Feb. 18, 2026) (granting defendant's motion for summary judgment on two alleged markets that were improperly limited). Fanatics is entitled to all relevant discovery on this issue.

        Three days after the March 18 conference, Panini produced an initial set of sales materials (from 2017-2021) created by its former financial advisor, Lincoln International. These materials—which Panini agreed to produce more than six months ago, *see* ECF 224 at 117:24-25, but inexplicably delayed producing until after the March 18 conference—further illustrate why advisor-prepared sales materials are critically relevant, and why any redaction of collectibles-related information would be extremely prejudicial to Fanatics. Attached as Exhibit 7 is a representative ███████████████████████████ created by Lincoln International. As detailed below, this document contains dozens of statements that clash with Panini's allegations against Fanatics and refute its suggestion that Panini S.p.A.'s international collectibles business is irrelevant.



These statements bear on Panini's allegations that Fanatics "foreclose[d]" competition in the market for "fully licensed" cards by securing long-term, exclusive licenses, as well as the supposed harm Panini suffered from the alleged conduct. *See, e.g.*, ECF 69 ¶¶ 108, 217.

These statements bear on Panini's allegations that Fanatics wrongfully obtained "control[]" of "the critical means of manufacturing" by acquiring a production company and "solidified and increased [its] market power" by acquiring another trading card company. ECF 69 ¶¶ 118-149.

*    *    *

This representative sample of advisor-prepared sales materials confirms that Panini has no legitimate basis to redact *any* collectibles-related information from Citigroup documents. Panini undoubtedly considers such information "irrelevant" because it conflicts with the market definition and theories of harm it has put forth in this case. But that is the precise reason it is critical that Fanatics be permitted to obtain such information. Allowing Panini to deem relevant only those materials that comport with its allegations undermines the very purpose of the discovery process, and risks creating a situation where Panini's antitrust allegations end up becoming *ipse dixit*. A far more reasonable approach—which Panini successfully advocated in comparable circumstances—is to allow production on an Outside Counsel Eyes' Only basis. *See* ECF 288 at 3.[2]

---

[1] Panini S.p.A. signed various agreements at issue in these actions. *See, e.g.*, ECF 69 at ¶¶ 132, 188.

[2] In the interest of compromise, Fanatics has agreed that Panini may redact information that relates exclusively to Panini S.p.A.'s unrelated publishing business line. *See, e.g.*, Ex. 7 at 40-47. Those limited redactions

2

We thank the Court for its consideration of this matter and respectfully request that the Court deny Panini's Motion.

*/s/ Michael B. Carlinsky*
Michael B. Carlinsky
Quinn Emanuel Urquhart & Sullivan LLP
295 Fifth Avenue
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
(212) 849-7000

*Counsel for Fanatics*

---

would comport with the only redactions that Fanatics has been permitted to make in this action—*i.e.*, org chart redactions of employees and entities outside the collectibles business.  *See* ECF No. 136 at 62:7-16.