

April 17, 2026

**Via ECF**
The Honorable Valerie Figueredo
United States District Court Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:  ***Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF
(S.D.N.Y. 2023) – Letter Motion on Redactions**

Dear Judge Figueredo:

Pursuant to paragraph 14 of the Confidentiality Stipulation and Protective Order [ECF No. 160], Panini America, Inc. ("Panini") respectfully requests leave to produce certain Lincoln International documents with limited redactions of irrelevant and commercially sensitive information. Specifically, Panini seeks to redact:[1] (1) Panini S.p.A.'s financial projections, (2) Panini S.p.A.'s actual financial information, and (3) information related to Panini S.p.A.'s soccer and global collectibles business. This information is irrelevant to this case and extremely commercially sensitive. Accordingly, the redactions should be permitted under the Protective Order.

### I. Background

The Protective Order entered in this matter has a provision—inserted at Fanatics' request—which permits parties to redact "non-responsive portions of a responsive document for confidentiality reasons." ECF No. 160 ¶ 14. Fanatics itself previously invoked this provision, but its proposed redactions were rejected because the information at issue was "directly relevant" to contested issues. ECF No. 183 at 2. Panini's proposed redactions, by contrast, target information about a non-party's international operations that has no bearing on any claim or defense in this case.

Specifically, Panini seeks to redact narrowly targeted, irrelevant information about its non-party parent corporation, Panini S.p.A. The proposed redactions primarily cover recent financial figures and metrics pertaining to Panini S.p.A.'s international business lines—information that provides no unique insight into Panini America, the U.S. market, or the exclusive licenses at issue in this litigation.

Pursuant to paragraph 14 of the Protective Order, Panini submits for in camera review an unredacted version of a Confidential Information Presentation prepared by Lincoln International (the "CIP"), with red boxes surrounding the text proposed to be redacted. The other responsive documents to which Panini proposes to apply redactions all relate to the preparation of the CIP, including drafts, shorter versions, and related communications. Accordingly, the proposed redactions to the CIP are representative of those Panini will apply to similar responsive documents.

---

[1] Fanatics objects to the redactions on pages 4, 5, 9, 11, 16, 19, 21, 31, 34, 35, 39, 40, 41, 42, 44, 45, 57, 75, 76, 77, 79, 84, 85, 86, 89, and 90 of the CIP.



Notably, Panini has left unredacted all information bearing on Panini America, the U.S. market, or the exclusive licenses at issue—ensuring that Fanatics has access to all information with any legitimate relevance to this litigation while protecting Panini S.p.A.'s confidential international business information from unnecessary disclosure. Moreover, Panini has already produced, without redaction, similar materials that pre-date or are contemporaneous with Fanatics' August 2021 announcement of its acquisition of the exclusive licenses.

Panini sent the proposed redactions to Fanatics on April 3, 2026. The parties met and conferred on April 10, 2026. Fanatics rejected all redactions that do not "solely relate to Panini's publishing business, legal costs, or non-collectibles organizational structure." Following the meet and confer, Panini agreed to remove certain redactions, but the parties were unable to reach full agreement.

## II. Argument

The CIP contains extensive, granular information about Panini America and the exclusive licenses at issue—all of which Panini has left unredacted. This includes: Panini America's historical and projected net sales, contribution margins, and EBITDA; the timeline and financial impact of the expiring NFL, NBA, and MLBPA licenses; Panini's strategic response to Fanatics' acquisition of those licenses; Panini America's employee count; and detailed breakdowns of U.S. collectibles revenue by product category, distribution channel, and geography. *See* CIP at 11, 18, 24-29, 37-38, 71-72, 78. As a result, Fanatics will have complete visibility into Panini S.p.A.'s statements and positions—made in connection with the potential sale for which the CIP was prepared—on the financial performance and future outlook of Panini America and the exclusive licenses.

The narrow categories of information Panini seeks to redact—Panini S.p.A.'s consolidated financial projections, actual financial results, and international soccer and entertainment business—add nothing to this picture. These are top-line figures for a global parent company with diverse business lines spanning collectibles in Europe and South America, manga and comics publishing, and entertainment licensing. They do not break out Panini America's financials or metrics, or provide any insight into Panini America's performance, plans, or financial condition that Fanatics cannot already obtain from the unredacted Panini America data. At the same time, these figures are extraordinarily sensitive: they are contained in recent documents prepared to market Panini S.p.A. for a potential sale, and disclosure could be exploited by competitors to interfere with Panini S.p.A.'s business plans or future transactions. Given this information's complete lack of relevance, an "Outside Counsel Eyes Only" designation may provide insufficient protection. The Protective Order's redaction provision exists precisely for situations like this, where irrelevant but highly sensitive information can be excised entirely rather than produced under a confidentiality designation that still permits disclosure to opposing counsel.

**Panini S.p.A.'s Financial Projections.** Fanatics objects to redactions of Panini S.p.A.'s consolidated financial projections. *See* CIP at 4, 5, 11, 21, 31, 41, 75, 76, 77, 79, 84, 85, 89, 90. But these projections aggregate results across all of Panini S.p.A.'s global business lines and do not isolate Panini America. For example, on page 11 of the CIP, Panini redacts the future projected net sales from all of Panini S.p.A.'s continuing businesses, as these numbers are on a Panini S.p.A.-wide basis and provide no unique insight into the future projected net sales of Panini America.

Fanatics complains that Panini redacted "expected EBITDA and net sales from continuing licenses after the league and PA licenses expire in 2025/2026." But any relevance these projections



might have depends on whether they illuminate Panini America's performance—and the consolidated S.p.A. figures do not. The CIP separately details projected net sales, contribution margins, and EBITDA specifically for U.S. collectibles and the expiring licenses. The consolidated S.p.A. projections Panini seeks to redact provide no incremental insight into Panini America or the harm from the loss of the exclusive licenses—they simply roll up unrelated international businesses that have nothing to do with this case.

To be clear, Panini does not contend that Panini S.p.A.-wide valuation or financial information is categorically irrelevant. To the contrary, Panini has produced without redaction similar materials containing S.p.A.-wide financials that were prepared contemporaneously with Fanatics' August 2021 announcement of its acquisition of the exclusive licenses. Those materials reflect the market's assessment of the impact on Panini's value at the time of the alleged anticompetitive conduct and are thus probative of damages. The CIP, by contrast, was prepared nearly four years later.

**Panini S.p.A. Actual Financial Results.** Fanatics similarly objects to redactions of slides reflecting Panini S.p.A.'s actual financials. *See* CIP at 9, 21, 31, 34, 44, 45, 75, 84, 85, 86, 89, 90. The same logic applies: consolidated historical results for a global enterprise tell Fanatics nothing about Panini America that it cannot learn from Panini America's own financials—which Fanatics already has, including "revenues, expenses, profits, and margins from the sale of each of [Panini's] Collectibles" since 2009, ECF No. 209-1 at 30, and Panini America's audited financial statements since 2017. The CIP also provides unredacted historical net sales, contribution margins, and growth rates specifically for U.S. collectibles. Fanatics' assertion that S.p.A.-wide historical data is "critical to an assessment of Panini's case" is baseless: Panini's claims arise from harm to Panini America, not to Panini S.p.A.'s unrelated business lines.

**Information Concerning Panini S.p.A.'s International Soccer and Entertainment Business.** Finally, Fanatics objects to information about Panini S.p.A.'s global soccer, entertainment, and collectibles licenses. *See* CIP at 4, 5, 16, 19, 35, 39, 40, 41, 42, 44, 45, 57, 77, 79. This information concerns licenses held by Panini S.p.A. or its international subsidiaries—not Panini America—for products sold predominantly outside the United States, including FIFA World Cup stickers, European soccer league collectibles, and entertainment properties like manga. None of this bears on the U.S. trading card market or Panini America. To the extent Panini has any U.S. soccer sales—such as FIFA-licensed products sold domestically—those sales are reported by Panini America, and Fanatics has already received extensive data and information on them. The soccer information in the CIP that Panini seeks to redact relates entirely to Panini S.p.A.'s international business. The CIP leaves unredacted all information about U.S. market dynamics, including U.S. net sales and any discussion of competition between licensed and unlicensed cards in America. Fanatics offers no explanation for why it needs details about Panini S.p.A.'s World Cup sticker album sales in Europe or its La Liga trading cards in Spain.

This information is also acutely sensitive. Details about Panini S.p.A.'s international licenses—including historical performance and future projections for FIFA World Cup and European soccer collectibles—could be used against Panini S.p.A. in future license negotiations or by competitors seeking to disrupt a potential sale. Fanatics, whose foreign affiliates compete directly with Panini S.p.A. in international markets, has no legitimate need for this information.

For these reasons, Panini respectfully requests that the Court permit Panini to redact from the Lincoln International documents information regarding Panini S.p.A.'s consolidated

**BSF**

projections, actual financial results, and international business operations that is unrelated to Panini America, the U.S. market, or the exclusive licenses at issue.

Respectfully submitted,

/s/ Stuart Singer

David Boies
Eric Brenner
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

Stuart H. Singer*
Sabria A. McElroy*
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com

*Counsel for Panini America, Inc.*

*\*pro hac vice*

**MEMO ENDORSED**

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE

**Dated: April 20, 2026**

Fanatics is directed to file its response by **Friday, April 24, 2026**.

cc:     All Counsel of Record (by ECF)