# EXHIBIT 28

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| PANINI AMERICA, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>FANATICS, INC., FANATICS, LLC,<br>FANATICS COLLECTIBLES<br>INTERMEDIATE HOLDCO, INC.,<br>FANATICS SPV, LLC, and<br>FANATICS HOLDINGS, INC.<br><br>*Defendants*. | Case No. 1:23-cv-09714-LTS<br>[Related to Case No. 1:23-cv-06895-LTS] |

## DEFENDANTS' THIRD SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PANINI AMERICA, INC.

Pursuant to Federal Rules of Civil Procedure 26 and 34, Defendants Fanatics, LLC; Fanatics Collectibles Intermediate Holdco, Inc.; Fanatics SPV, LLC; Fanatics Holdings, Inc.; and Fanatics, Inc.[1] (collectively "Defendants") by their counsel, hereby request that Plaintiff Panini America, Inc. ("Plaintiff") identify and produce the following documents for inspection and copying to Defendants' attorneys at the offices of Latham & Watkins, 1271 Avenue of the Americas, New York, New York 10020, attention to Larry Buterman, within 30 days of service or as otherwise agreed to by the Parties or required by Court order.

---

[1] Defendants note that Fanatics, Inc. no longer exists as a legal entity.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 90:**

All Documents and Communications concerning any potential or actual right of first refusal You had relating to a potential purchase, joint venture, merger, acquisition, or other business combination with GC Packaging.

**REQUEST FOR PRODUCTION NO. 91**:

All Documents and Communications concerning Your actual, potential, or contemplated acquisition of any Manufacturer of Trading Cards, including but not limited to GC Packaging.

**REQUEST FOR PRODUCTION NO. 92:**

All Documents and Communications concerning any actual or potential competitive effects relating to Your actual or potential exclusive License agreements, including but not limited to any analysis or communications regarding competitive effects.

**REQUEST FOR PRODUCTION NO. 93:**

All Documents and Communications relating to Your policies and any changes to your policies regarding redemption cards, including Your Rewards Points program.

**REQUEST FOR PRODUCTION NO. 94:**

Documents sufficient to show the "proprietary pricing models" referenced in Paragraph 11 of Your Texas Trade Secrets Complaint.

**REQUEST FOR PRODUCTION NO. 95:**

All Documents and Communications relating to the importance of "adher[ing] to strict production deadlines" for trading card printing, referenced in Paragraph 12 of Your Texas Trade Secrets Complaint.

**REQUEST FOR PRODUCTION NO. 96:**

All Documents and Communications relating to Your contention that there is a "highly competitive sports trading cards market," referenced in Paragraph 12 of Your Texas Trade Secrets

Complaint, including but not limited to, documents discussing the nature of competition and the sports included in the purported "sports trading cards market."

**REQUEST FOR PRODUCTION NO. 97:**

Documents sufficient to show Your supply chain and production process, including the length of time associated with Your production process, Your design approval process, and the length of time associated with Your design approval process.

**REQUEST FOR PRODUCTION NO. 98:**

All Documents and Communications that support, contradict, or otherwise relate to Your allegation that "GCP is one of the only Manufacturers able to meet Panini's technological quality and capacity requirements," including, but not limited to, all Documents and Communications related to whether any Manufacturer other than GCP is "able to meet Panini's technological quality and capacity requirements" or any portion thereof, Am. Compl. ¶ 122.

**REQUEST FOR PRODUCTION NO. 99:**

All Documents and Communications relating to any analysis of changes in the Trading Card industry over time, including, but not limited to, any reports, presentations, or analyses regarding the Junk Wax Era.

**REQUEST FOR PRODUCTION NO. 100:**

All Documents and Communications that support, contradict, or otherwise relate to Your allegation that "[a]mong consumers, the product interchangeability between Mass Market cards and Premium cards is limited," Am. Compl. ¶ 57, including, but not limited to, any reports or analyses regarding demographics for consumers of "Mass Market" and "Premium" cards and substitution patterns between "Mass Market" and "Premium" cards.

**REQUEST FOR PRODUCTION NO. 101:**

All Documents and Communications that support, contradict, or otherwise relate to Your allegation that there is "limited interchangeability between either Mass Market cards or Premium cards and sports collectibles such as jerseys, hats, and other league, team, or athlete-specific apparel," Am. Compl. ¶ 58, including, but not limited to, any reports or analyses regarding

3

demographics for consumers of "Mass Market" cards, "Premium" cards, and non-trading card "sports collectibles" and substitution patterns between "Mass Market" cards, "Premium" cards, and non-trading card "sports collectibles."

**REQUEST FOR PRODUCTION NO. 102:**

Documents sufficient to show Your investments in Your Trading Card business including, but not limited to, marketing spend, promotional programs, online marketing platforms, capital expenditures, research and development, and employee training and development programs.

**REQUEST FOR PRODUCTION NO. 103:**

All Documents and Communications concerning output issues with GC Packaging, including, but not limited to, any production issues, delivery issues, quality issues, and delays.

**REQUEST FOR PRODUCTION NO. 104:**

All Documents and Communications regarding the "October 2021 distributor meeting" referenced in Paragraphs 2 and 22 of the Wild Card Complaint.

**REQUEST FOR PRODUCTION NO. 105:**

All Documents and Communications regarding Your announcement or warning "that any distributor carrying Wild Card" products would "see consequences in allocations, programs, and access," as alleged in Paragraph 22 of the Wild Card Complaint, including without limitation any communications regarding Southern Hobby Distribution, Magazine Exchange, Inc., Hamps Supply Inc., and Steel City Collectibles' sales of Wild Card Trading Cards.

**REQUEST FOR PRODUCTION NO. 106:**

All Documents and Communications regarding any request or threat not to work with Wild Card made to a Manufacturer of Trading Cards with a "$5 million business relationship" with You, as referenced in Paragraph 30 of the Wild Card Complaint.

**REQUEST FOR PRODUCTION NO. 107:**

All Documents and Communications regarding any proposed allocations of Your Trading Cards or Collectibles declined by a distributor.

4

**REQUEST FOR PRODUCTION NO. 108:**

All Documents and Communications regarding any critiques or complaints about Your sales team, including without limitation the critique referenced in PAN-SDNY_000005219.

**REQUEST FOR PRODUCTION NO. 109:**

All Documents and Communications regarding the decision to "hold" Trading Card or Collectibles inventory or otherwise delay or limit the sale or delivery of Trading Cards or Collectibles, including without limitation the decision referenced in PAN-SDNY_000006638.

**REQUEST FOR PRODUCTION NO. 110:**

All Documents and Communications concerning the potential sale of any portion of Your Collectibles business, including any prospectuses, confidential information memoranda, brochures, presentations for potential investors, communications with bankers, or other material concerning the potential sale of any portion of Panini's business, including any brand, product, or line of business.

**REQUEST FOR PRODUCTION NO. 111:**

All Documents and Communications that support, contradict, or otherwise relate to Your claim that Panini America is "the world's largest sports and entertainment collectibles company."[2]

**REQUEST FOR PRODUCTION NO. 112:**

All Documents and Communications relating to Your awards from the 2025 Circana Global Toy Performance Awards.

**REQUEST FOR PRODUCTION NO. 113:**

All Documents and Communications relating to plans for Your NIL Trading Card business, including any assessments, valuations, forecasts, and investments in Your NIL Trading Card business.

---

[2] *See* https://www.paniniamerica.net/blog/panini-america-and-unrivaled-launch-an-exclusive-multi-year-trading-card-agreement/?srsltid=AfmBOopqVmDB8XMyo5bJrVRmZTb_TZe78f_yx Ut9LE_CG_nLqlUCwxe8

**REQUEST FOR PRODUCTION NO. 114:**

All Documents and Communications concerning any marketing, educational, or promotional materials that direct, encourage, or acknowledge consumer purchase or resale of Your Trading Cards or Collectibles via eBay or other secondary-market platforms, including internal approvals, strategy documents, internal analyses, and customer-facing guidance.

**REQUEST FOR PRODUCTION NO. 115:**

Documents sufficient to show Your manufacturing process and release strategy associated with special release cards.

**REQUEST FOR PRODUCTION NO. 116:**

All Documents and Communications relating to Your promotional strategy for Collectibles, including Documents relating to public appearances and autograph signing sessions.

## INSTRUCTIONS

1.      You are required to produce all non-privileged Documents in Your possession, custody, or control, including information in the possession, custody, or control of any of Your attorneys, directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and persons under your control.

2.      Unless otherwise specified or otherwise ordered by the Court, the relevant time period for which information and Documents should be provided in response to these Requests For Production is from January 1, 2009 to the present.  Fanatics' use of this time period does not constitute an admission that it is the relevant time period for all discovery in the above-captioned action.

3.      Each Document is to be produced along with all non-identical versions thereof in their entirety.

4.      All Documents shall be produced in the order that they are kept in the usual course of business, and shall be produced in their original folders, binders, covers or containers, or photocopies thereof.

5.      All Documents that respond, in whole or in part, to any portion of any request shall be produced in their entirety, including all attachments, enclosures, transmittal sheets, cover letters, and exhibits, in addition to the Document in its full form.

6.      The source(s) or derivation of each Document produced shall be specifically identified.

7.      If any information or Document is withheld on the basis of the attorney-client privilege, the attorney work-product privilege, or any other privilege pursuant to Federal Rule of Civil Procedure 26(b)(5), You must state with particularity the nature of and basis for the claim of

7

privilege.

8.      You are under a continuous obligation to supplement Your responses to these requests under the circumstances specified in Federal Rule of Civil Procedure 26(e).

9.      In the event that any Document called for by these requests or subsequent requests has been destroyed or discarded, that Document is to be identified by stating: (i) the author(s), addressee(s) and any indicated or blind copy(s); (ii) the Document's date, number of pages and attachments or appendices; (iii) the Document's subject matter; (iv) the date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; (v) the persons who were authorized to carry out such destruction or discard; and (vi) whether any copies of the Document presently exist and, if so, the name of the custodian of each copy.

10.     If there are no Documents responsive to a particular request, You shall so state in writing.

11.     Documents shall be produced in accordance with the electronically stored information ("ESI") protocol and protective order that is in force at the time any production is made.

## DEFINITIONS

The following definitions apply to the above requests for production.

1.      The term "Fanatics" refers to Fanatics, Inc., Fanatics, LLC, Fanatics Collectibles Intermediate Holdco, Inc., Fanatics SPV, LLC, and Fanatics Holdings, Inc. and any of their current employees, officers, agents, representatives, successors, assigns, parents, or subsidiaries.

2.      The term "Panini" refers to Panini America, Inc., Panini S.P.A., and any of their current employees, officers, agents, representatives, successors, assigns, parents, subsidiaries, or affiliated entities.

3.      The term "Parties" refers to Fanatics and Panini jointly.

4.      "Association(s)" shall mean the National Basketball Players Association, National Hockey League Players Association, National Football League Players Association, Major League Baseball Players Association, Major League Soccer Players Association, Women's National Basketball Players Association, National Association for Stock Car Auto Racing, World Wrestling Entertainment, Ultimate Fighting Championship, FIFA World Cup, and any other group empowered to license intellectual property rights on behalf of more than one athlete or performer.

5.      The term "Communication(s)" means, without limitation, any transmittal, conveyance or exchange of a word, statement, fact, thing, idea, Document, instruction, information, demand, question or other information by any medium, whether by written, oral, or other means, including but not limited to electronic communications and electronic mail.

6.      The term "Document(s)" shall have the broadest meaning ascribed to it by the Federal Rules of Civil Procedure and shall include without limitation any written, recorded, graphic, or other matter, whether sent or received or made or used internally, however produced or reproduced and whatever the medium on which it was produced or reproduced (whether on

9

paper, cards, charts, files, or printouts; tapes, discs, belts, video tapes, audiotapes, tape recordings, cassettes, or other types of voice recording or transcription; computer tapes, databases, e-mails; pictures, photographs, slides, films, microfilms, motion pictures; or any other medium), and any other tangible item or thing of readable, recorded, or visual material of whatever nature including without limitation originals, drafts, electronic documents with included metadata, and all non-identical copies of each document (which, by reason of any variation, such as the presence or absence of hand-written notes or underlining, represents a separate document within the meaning of this term). The foregoing specifically includes information stored electronically, whether in a computer database or otherwise, regardless of whether such documents are presently in documentary form or not. The term Document(s) shall include Communications.

7. The term "Entertainment Licensor(s)" refers to any licensor of intellectual property relating to entertainment products or services.

8. The term "Action" refers to *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS, filed on August 3, 2023 in the Middle District of Florida and currently proceeding in the Southern District of New York.

9. The term "Texas Trade Secrets Complaint" refers to the complaint filed in *Panini America, Inc. v. GC Packaging, LLC and The Topps Company, Inc.*, in the 191st District Court of Dallas County, Texas, filed on December 23, 2025.

10. The term "Junk Wax Era" refers to the time period beginning in the 1980s and lasting until the 1990s where Trading Card Manufacturers significantly increased their production volume of Trading Cards, resulting in decreased Trading Card value.

11. The term "League(s)" shall mean the National Basketball Association, Women's National Basketball Association, National Hockey League, National Football League, Major

10

League Baseball, and/or Major League Soccer.

12. The term "License(s)" refers to the right to use any intellectual property owned by any Leagues, Associations, or other entity.

13. The term "Manufacturer" refers to any entity involved in the physical production of Trading Cards, including without limitation printing, stamping, laminating, pressing, cutting, notching, collating, numbering, wrapping, packaging, or other assembling.

14. The term "MLB" refers to the Major League Baseball.

15. The term "NBA" refers to the National Basketball Association.

16. The term "NFL" refers to the National Football League.

17. The term "NBPA" refers to the National Basketball Players Association.

18. The term "NFLPA" refers to the National Football League Players Association.

19. The term "MLBPA" refers to the Major League Baseball Players Association.

20. The term "NIL" means name, image, and likeness.

21. The term "Person(s)" means any legal entity, including but not limited to natural persons, corporations, partnerships, firms, and/or associations, and any parent, subsidiary, division, department, or affiliate thereof.

22. The term "Player" refers to any individual that participates in any sporting event for compensation.

23. The terms "Relating to," "Referring to," "Regarding," "Concerning," or any derivative thereof, in addition to their customary and usual meanings, mean concerning, containing, identifying, monitoring, constituting, reflecting, debating, discussing, pertaining to, assessing, recording, supporting, negating, refuting, describing, evidencing, touching upon, and/or summarizing.

11

24. The term "Rewards Points Program" refers to Your program by which purchasers of Your Trading Cards find reward point cards inside of Your Trading Card packs and redeem those points for Trading Cards or other Collectibles made by You.

25. The term "Collectible" refers to following items associated with an athlete, actor, character, celebrity, mascot, team, league, sporting event, sporting venue, movie, television show, graphic novel, video game, or other entertainment franchise: Trading Cards, stickers, pins, bobble heads, dolls, action figures, photos, autographs, tickets, plaques, posters, signed memorabilia.[3]

26. The term "Trading Card(s)" refers to any physical or digital card that is designed for collecting, trading, and/or playing games, including, but not limited to, sports trading cards, such as baseball cards, basketball cards, football cards, hockey cards, soccer cards, golf cards, tennis cards, boxing cards, wrestling cards, mixed martial arts cards, motorsport racing cards, or other sports cards; gaming trading cards, such as Pokémon Trading Card Game, Yu-Gi-Oh! Trading Card Game, Digimon Card Game, Magic: The Gathering, Hearthstone; entertainment trading cards, such as Star Wars trading cards, Marvel trading cards, DC Comics trading cards, Harry Potter trading cards, and Garbage Pail Kids; collectible card games, such as Legend of the Five Rings, World of Warcraft Trading Card Game, and Dragon Ball Super Card Game; historical event cards; celebrity cards; and movie, or TV show cards, or any other similar product.

27. The term "You" or "Your" refers to Panini and, without limitation, any past or present parent, division, subsidiary, affiliate, joint venture, associated organization, director, officer, agent, employee, consultant, staff member, legal counsel, or any other representative or Person acting on behalf of Panini.

---

[3] This scope of products was previously agreed to by the Parties on August 19, 2025. *See* Aug. 19 letter from A. Jovais; Aug. 19 letter from S. McElroy; Sept. 25 letter from A. Jovais; Sept. 26 email from M. Nyman.

28.     "Wild Card Complaint" refers to the complaint filed in *Wild Card, Inc. v. Panini America, Inc.*, Case No. 4:25-cv-01216-ALM (E.D.T.X.), filed on November 6, 2025.

29.     The term "including" means "including but not limited to."  The term "include(s)" means "include(s) but is not limited to."

30.     The terms "and" and "or" are meant to be construed either disjunctively or conjunctively, as necessary by the context, to bring within the scope of the definition, instruction, or interrogatory all responses that might otherwise be construed to be outside of its scope by any other construction.

31.     The terms "all," "any," and "each" are meant to be construed as encompassing any and all.

32.     The use of the singular form of any word includes the plural form of the same and vice versa.

33.     The use of any tense of any verb includes within its meaning all other tenses of that verb.

34.     The use of words in the masculine, feminine, or neutral form shall include each of the other genders.

Dated: March 4, 2026


/s/ *Michael B. Carlinksy*
Michael B. Carlinsky
Kathryn D. Bonacorsi
**QUINN EMANUEL URQUHART
& SULLIVAN LLP**
295 Fifth Avenue
New York, NY 10016


Derek L. Shaffer
**QUINN EMANUEL URQUHART
& SULLIVAN LLP**
1300 I Street NW, 9th Floor
Washington, DC 20005


\* /s/ signature used with consent in
accordance with ECF Rule 8.5(b)


*Counsel for Fanatics.*

/s/ *Lawrence E. Buterman*
Lawrence E. Buterman
**Latham & Watkins LLP**
1271 Avenue of the Americas
New York, NY 10020


Amanda P. Reeves (*pro hac vice*)
**Latham & Watkins LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004


Christopher S. Yates (*pro hac vice*)
Alicia R. Jovais (*pro hac vice*)
**Latham & Watkins LLP**
505 Montgomery Street, Suite 2000
San Francisco, CA 94111

14

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2026, I caused the foregoing Defendants' Third Set

of Requests for Production to be served on all counsel of record via email.

/s/ Emily J. Viola
Emily J. Viola

15