# Exhibit 1



April 9, 2026

**VIA E-MAIL**

Lawrence E. Buterman
Alicia R. Jovais
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com
alicia.jovais@lw.com

Michael B. Carlinsky
Kathryn D. Bonacorsi
Ted Ovrom
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
kathrynbonacorsi@quinnemanuel.com
tedovrom@quinnemanuel.com

> **Re:** ***Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF
> (S.D.N.Y. 2023);** ***Fanatics Collectibles TopCo, Inc. v. Panini S.p.A.*, Case No. 1:23-cv-
> 06895-LTS-VF (S.D.N.Y 2023)**

Counsel:

I write on behalf of Panini regarding significant gaps in Fanatics' document productions in response to Panini's requests for production. These gaps require immediate investigation and cure by Fanatics.

Given the centrality of the missing documents discussed below, we request that you investigate the following issues and come prepared to discuss them at a meet and confer scheduled for **no later than April 17**. If we are not able to schedule a meet and confer by this deadline, we will request that the Court set a discovery conference to resolve the issues.

Panini is available to meet and confer at the following times:

- Monday, April 13, from 2-4 pm;



- Tuesday, April 14, from 3-5 pm; and
- Wednesday, April 15, from 2-5 pm.

Panini can also propose times for Thursday or Friday (April 16 or 17), if Fanatics is not available during any of those windows.

### I. Documents Concerning Licensor Communications, Drafts, Negotiations, and Pitches

Fanatics agreed to produce all documents concerning the negotiations and execution of the Exclusive License Agreements—including term sheets, memoranda of understanding, related Communications, and all drafts—in response to Panini's RFP Nos. 16, 19, 22, 25, 31, and 34. Fanatics also agreed to produce pitch materials, proposals, or presentations concerning its plans for the marketing, production, distribution, and sale of Sports Trading Cards provided to the NFL, NFLPA, MLB, MLBPA, NBA, NBPA, OneTeam, or other Licensors (RFP No. 37); financial projections, business plans, or forecasts related to expected sales, revenues, profits, or returns on investment under the Exclusive License Agreements (RFP No. 39); and "[a]ll Documents concerning any business plans, strategies, or objectives shared between You and OneTeam related to Sports Trading Cards" (RFP No. 76), among other related requests.

Fanatics has failed to produce all responsive documents for these agreed-upon requests, which concern some of the most central issues in the case. Panini demands that Fanatics immediately cure the following defects:

*Missing Licensor Pitch Decks.* Panini demands production of all documents and communications concerning pitch materials, proposals, or presentations regarding plans for the sale of Sports Trading Cards not yet produced, including, but not limited to, the pitch decks at NBPA-PANINI-LIT-000000151, NBPA-PANINI-LIT-000000084, and NBPA-PANINI-LIT-000000136, any related drafts or communications, and any documents concerning the "league pitch deck" referenced in FAN-PAN-SDNY00434751.

The small number of licensor pitch documents Fanatics produced, combined with third-party productions, confirms that many documents in this category are missing. For example, Fanatics failed to produce the pitch deck that *NBPA* produced at NBPA-PANINI-LIT-000000151. That is merely the final version produced by a third party; there are surely additional communications and drafts associated with this and other pitch decks in Fanatics' possession. Similarly, the email thread at FAN-PAN-SDNY00432810 was produced as a stand-alone document, yet earlier emails in the thread reference attachments that were not produced. Those

2



earlier emails and attachments are highly relevant, and despite being sent to two agreed-upon custodians—Michael Rubin and Gary Gertzog—Fanatics failed to produce them.

Fanatics also produced ***no communications*** showing the sharing or presenting of pitch decks to licensors. One email—FAN-PAN-SDNY00709728—states that a deck was "used with MLBPA," but no other documents or communications about that meeting were produced, and a later email confirms it is an "old deck" that has not been "used since." Separately, FAN-PAN-SDNY00709445 indicates a deck was created for and shown to MLBPA around January 2021, yet Fanatics produced no communications from that period regarding the drafting or sharing of that deck.

Please identify by Bates number each pitch deck shown to MLB, MLBPA, NBA, NBPA, NFL, NFLPA, and OneTeam for the purpose of entering into a trading cards license or the trading cards business, and when it was shown. If Fanatics failed to preserve or deleted relevant documents and communications, please disclose that fact and the timing of any such failure or deletion.

***Missing Negotiations.*** There are also stark gaps in Fanatics' productions regarding communications and negotiations with licensors for the Exclusive License Agreements. For example, there are no Fanatics documents or communications produced showing the drafting of the term sheet at FAN-PAN-SDNY00018759. Fanatics also failed to produce the following, which are highly responsive to multiple of Panini's requests:

- The first-in-time email in the email chain at FAN-PAN-SDNY00014307;
- The "pdf deck" and "excel file" referenced in FAN-PAN-SDNY00433357;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00432317;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00018471;
- The Topps offer to MLBPA sent on September 2, 2020, referenced on page '2393 of FAN-PAN-SDNY00112389, and any related documents and communications;
- The "updated attachment" sent in the first-in-time email in the email chain at FAN-PAN-SDNY00433056;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00432505;
- The first-in-time email with attachments in the email chain at FAN-PAN-SDNY00030591;

3



- The "Sum-of-the-Parts valuation analysis" referenced on page '2239 of FAN-PAN-SDNY00032231, and any related documents and communications;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00018245;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00018344;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00434445;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00014765;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00020002;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00024594;
- The first-in-time email with attachments in the email chain at FAN-PAN-SDNY00019871;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00024613;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00019792;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00025719;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00024303;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00025741;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00021171;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00024079;
- First-in-time email with attachments in the email chain at FAN-PAN-SDNY00024470;
- First-in-time email with attachments in the email chain at FAN-PAN-SDNY00500019;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00017661;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00631440;



- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00018783;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00017139;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00015559 and FAN-PAN-SDNY00015580;
- June 19, 2021 email with attachments shown in the email chain at FAN-PAN-SDNY00015497;
- First-in-time email with attachments in the email chain at FAN-PAN-SDNY00018755;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00015156;
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00021532; and
- Earlier in time emails with attachments in the email chain at FAN-PAN-SDNY00024460.

Please produce these emails, with their attachments, immediately.

More fundamentally, the small quantity of communications produced with licensors, and the time period gaps in communications produced, indicate that Fanatics has not produced all responsive communications with licensors concerning the license agreements at issue and any term sheets thereto. For example, FAN-PAN-SDNY00434352 constitutes a Zerocool presentation "created for" OneTeam and which OneTeam shared "with their Board in October" 2020. This presentation concerns entering into the trading cards industry. However, despite being shared with the OneTeam board in October 2020, there are no communications produced with OneTeam regarding entering into the trading cards business until February 3, 2021, at FAN-PAN-SDNY00017121.

Additionally, Fanatics produced no communications with NBPA before July 14, 2021, despite there apparently being a presentation to NBPA regarding trading cards on July 4, 2021, according to NBPA-PANINI-LIT-000000151. Similarly, Fanatics produced no communications with MLBPA regarding entering into the trading cards business before the February 28, 2021 communication at FAN-PAN-SDNY00433560, despite there apparently being a presentation to MLBPA on January 25, 2021 (see FAN-PAN-SDNY00709445).

Panini demands that Fanatics immediately address these deficiencies and produce all documents and communications concerning the negotiations and execution of the Exclusive License Agreements that Fanatics has not produced.



***Missing Term Sheets and Related Communications.***  Responsive term sheets and related documents are conspicuously absent from Fanatics' production. For example, Fanatics failed to produce the term sheet at NBA-Panini_00000203 and any drafts or communications related thereto. Fanatics also failed to produce all drafts and communications regarding the term sheets at FAN-PAN-SDNY00018759 and MLBPA-PAN-FAN-00000018, including communications that MLBPA itself produced at MLBPA-PAN-FAN-00000660. Fanatics must immediately produce all documents and communications concerning term sheets regarding the Exclusive License Agreements not yet produced, including all drafts and related communications.

***Missing Financial Projections.*** Fanatics further failed to produce all responsive financial projections or business plans under the Exclusive License Agreements, including but not limited to the projections discussed in FAN-PAN-SDNY00201865 and FAN-PAN-SDNY00432317, the presentations at NBPA-PANINI-LIT-000000084 and NBPA-PANINI-LIT-000000136, and the first-in-time email in FAN-PAN-SDNY00014307.

Panini demands that Fanatics immediately produce all documents concerning financial projections, business plans, or forecasts related to its expected sales, revenues, profits, or returns on investment under the Exclusive License Agreements not yet produced, including the documents identified above.

## II.    Documents Concerning Agreements with OneTeam

In RFP No. 2 of Panini's First Set of Requests, Panini requested all "Agreements with OneTeam related to trading cards." Fanatics represented that no responsive agreements existed other than those produced in response to RFP No. 1—even after Panini pointed to OneTeam's own website stating that it "launche[d] Fanatics Collectibles with Michael Rubin." Panini subsequently served RFP No. 74, seeking "[a]ll Documents relating to Your agreements with OneTeam." Fanatics resisted, and Panini moved to compel. ECF No. 210 at 2. Fanatics represented that any agreement responsive to RFP No. 74 "is plainly encompassed by RFP 77, pursuant to which Fanatics has agreed to produce communications with OneTeam relating to the launch of Fanatics Collectibles." ECF No. 214 at 2.

Despite these representations, Fanatics' productions appear to reference responsive agreements—specifically, a partnership between Fanatics and OneTeam—that have not been produced. For example, the Zerocool presentation at FAN-PAN-SDNY00434353 states that Zerocool (a Fanatics subsidiary) was created with "Initial Funding from OneTeam for 33% of Zero Cool" and that Zerocool's "partnership with OneTeam" was a "core advantage." Further,



FAN-PAN-SDNY00434857 indicates that Fanatics and OneTeam were set to finalize a "New Co Partnership" for trading cards by the end of 2020 (at '4859).

Please confirm whether any written agreement or other formal document memorializes an agreement or partnership between Fanatics (or any affiliate or subsidiary, including, but not limited to, Zerocool) and OneTeam concerning entry into the trading cards business. If so, please produce all documents relating to that agreement—including drafts and negotiation materials— or identify the agreement by Bates number.

### III.    <u>Missing Document Custodians</u>

#### a. <u>*Luber, Gordon, and Cherian*</u>

Fanatics' productions reveal that at least three disputed custodians—Josh Luber, Jeff Gordon, and Saj Cherian—do in fact possess unique responsive information that Fanatics has not produced. Fanatics' refusal to designate these individuals as custodians at the outset of discovery likely explains a number of the gaps identified above. Panini demands that they immediately be added as custodians and that their responsive documents be promptly produced.

As to Luber and Gordon, Fanatics' productions make clear that Zerocool had put together a proposal for a new trading card venture before joining with Fanatics and that Fanatics' productions lack important Zerocool documents from prior to Fanatics' involvement. For instance, Zerocool had already created an investment pitch deck and formed a partnership with OneTeam (*see* FAN-PAN-SDNY00434353). This indicates there are numerous documents in Luber and Gordon's possession about topics such as the formation of a plan for entering the trading card market, including potential partners for a trading cards business; the partnership with OneTeam; and other documents related to the preparation of Zerocool's pitch deck that are not in the possession of the existing custodians. Fanatics has now acquired Zerocool. Yet it still resisted the addition of Luber and Gordon as custodians, despite no other custodian having possession of Luber and Gordon's documents pre-Fanatics-involvement, which are highly relevant to Panini's claims. As a result, Panini has been prejudiced.

Even after Fanatics' involvement, Fanatics' productions show that Luber and Gordon have unique, relevant documents. As just one example, FAN-PAN-SDNY00708815 makes clear that Luber and Gordon were the ones drafting and revising a Zerocool pitch deck that formed the basis of Fanatics' pitches to licensors for its trading cards business. Because Fanatics resisted Luber and Gordon as custodians, we do not have the drafting documents and communications for this pitch deck.



As to Saj Cherian, numerous documents in Fanatics' productions show Cherian's unique involvement in Fanatics' trading card license bidding and negotiations. As one example, FAN-PAN-SDNY00707615, FAN-PAN-SDNY00710349, and FAN-PAN-SDNY00709144 all show that Cherian drafted and revised "NewCo" pitch decks for the production of trading cards. Other highly relevant documents, such as FAN-PAN-SDNY00434857 and FAN-PAN-SDNY00432810, indicate that Cherian gathered and assembled competitive intelligence—including Panini's confidential information—for Fanatics to use when pitching itself for trading cards licenses.

### b. *Custodian for Communications with Resellers*

Fanatics has also failed to identify an appropriate custodian for Panini's requests seeking communications with resellers. Fanatics agreed to produce communications with resellers of Sports Trading Cards in response to RFP Nos. 84 (case breakers); 87 (distributors); and 92 (hobby shops). Fanatics' own documents confirm that it communicates regularly with resellers: it planned weekly roundtables with hobby shops, and possibly case breakers, regarding its products (FAN-PAN-SDNY00673721); instituted "a text message service that over 80% of shops have opted in[to]" (FAN-PAN-SDNY00641841); and established programs for direct selling to breakers and hobby shops. Despite this, Fanatics has produced minimal direct communications with resellers responsive to these requests.

The small number of responsive reseller documents produced to date indicates that key communications are being conducted by individuals who are not custodians and who possess uniquely responsive information to RFP Nos. 84, 87, and 92. This concern is not new. We raised this issue at the November 7, 2025 hearing on the custodian dispute, noting that Fanatics had not proposed any custodian responsible for communications with case breakers and that very low hit counts confirmed the gap. Tr. at 30:14–19 (Nov. 7, 2025).

The deficiencies in Fanatics' production to date bear out that concern. As an example, Fanatics' direct communications with hobby shops and distributors appear to be conducted by non-custodians such as:

- Scott Heard (e.g., FAN-PAN-SDNY00123074, FAN-PAN-SDNY00187305);
- Avery Jessup (e.g., FAN-PAN-SDNY00641841, FAN-PAN-SDNY00642473, FAN-PAN-SDNY00689127, FAN-PAN-SDNY00224112);
- Casey Kravit (e.g., FAN-PAN-SDNY00689127);



- Kevin O'Neil (e.g., FAN-PAN-SDNY00642671, FAN-PAN-SDNY00642674, FAN-PAN-SDNY00177687); and
- Other non-custodians (e.g., FAN-PAN-SDNY00641158, FAN-PAN-SDNY00688105).

Similarly, Fanatics' direct communications with case breakers appear to be conducted by non-custodians such as:

- Jeff Gordon and Kevin O'Neil (e.g., FAN-PAN-SDNY00063638 at '3641) and
- Matthew Gepp (e.g., FAN-PAN-SDNY00165660).

Fanatics has an obligation to immediately identify the proper custodians for RFP Nos. 84, 87, and 92.

Please be prepared to discuss all custodian issues identified in this letter at the meet and confer scheduled for no later than April 17, 2026. We will make ourselves available to schedule this conference and will not accept delays. If we are unable to schedule a meet and confer by the end of next week, or if it becomes clear after the meet and confer that Fanatics does not intend to address the custodian issues raised herein, Panini will request that the Court schedule a discovery conference to resolve these disputes.

Panini reserves all rights.

Regards,

*/s/ Sabria McElroy*

Stuart Singer
Sabria McElroy
Meredith Schultz
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
mschultz@bsfllp.com