UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PANINI AMERICA, INC.,

                                    Plaintiff,

                    -against-                                        **23-CV-9714 (LTS) (VF)**

                                                                     **ORDER**
FANATICS, INC. et al,

                                    Defendants.
-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge:**

On June 9, 2026, Fanatics submitted a letter motion seeking an order compelling Panini

to (1) search for Citigroup-related documents, (2) add Elisabetta Mussini as a custodian, (3)

produce documents related to an ongoing litigation in Texas involving Panini, and (4) produce

summary sheets of certain athlete deal terms. See ECF No. 331. Panini opposed the letter

motion. See ECF No. 338. On June 9, 2026, Panini filed its own letter motion to compel Fanatics

to add five additional custodians.[1] See ECF No. 333. Fanatics opposed the letter motion. See

ECF No. 339. The Court held a conference to address the parties' discovery disputes on June 16,

2026.[2] See ECF No. 351. Below is a resolution of the parties' disputes.

---

[1] Panini also asked for an order compelling Fanatics to produce its athlete agreement
summaries, but this issue became moot on June 16, 2026, when Fanatics agreed to provide
Panini with the password to access the electronic file containing those summaries. Additionally,
Panini sought an order compelling Fanatics to produce certain other documents. See ECF No.
333 at 7. However, the parties indicated during the conference on June 16, that the issue was not
ripe for Court intervention. See ECF No. 351 at 3.

[2] The Court has been advised that the parties reached a resolution concerning the
custodian dispute. That dispute is therefore not addressed here. The Court will issue a separate
order addressing the dispute concerning discovery related to the ongoing litigation in Texas.

1

- Fanatics' RFPs 59-61 seek documents concerning the potential sale of Panini, and it appears that the responsive documents will largely comprise of communications with Citigroup and internal Panini communications. Panini has agreed to produce responsive documents on a "go-get basis" but is opposed to a custodial collection and a search using agreed-upon search terms. ECF No. 338 at 1-2. For e-mail communications, Panini proposes having the IT department for Panini S.p.A search for certain terms, like Citigroup, in the e-mails of the custodians and collect those e-mail communications to review for responsiveness. See ECF No. 351 at 16-17, 39. The Court previously concluded that documents concerning a potential sale of Panini are relevant to various issues in the case. See ECF No. 316. The Court is mindful that typically the "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." Hyles v. New York City, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016) (quoting The Sedona Principles, Second Edition, Principle 6). However, the documents concerning Citigroup relate to a discrete period of time of at most 12 months, and Panini has not demonstrated that collecting the e-mail communications of the six proposed custodians (see ECF No. 351 at 14) so that a hit report can be run to assess how many documents would have to be reviewed is unduly burdensome, particularly given that the work can be done remotely by a third-party vendor. Accordingly, Panini is directed to collect the e-mail communications for the relevant time of the six proposed custodians, so that a search using the agreed-upon search terms can be performed. If the previously agreed-upon search terms need to be updated or refined given the subject matter of these documents, the parties should engage in a meet and confer to do so. This process should

2

be done by Panini's eDiscovery vendor, to avoid any later argument by Fanatics that the collection and/or search were improper. See, e.g., ECF No. 351 at 18-19, 35. Once the parties have a hit report, if Panini wants to raise an argument that reviewing the e-mail communications for the six custodians is unduly burdensome given the high number of hits, it can do so.

- Fanatics has identified Panini athletes for which it seeks summary athlete agreements, consistent with the summary sheets that Fanatics was ordered to produce to Panini. Panini objects to the production of summary sheets because 21 of the identified athletes are either high school basketball and football players, college football and basketball players, or a WNBA player. ECF No. 338 at 6-7. Panini argues that the terms of the agreements with these athletes, who are either not yet professional players or who is an athlete in a league for which Panini is the licensee, are irrelevant. Id. The Court disagrees. In its complaint, Panini alleged that Fanatics signed athletes to agreements when it was not the licensee to lock up the athlete and deprive Panini, as the license, of the ability to use the athlete's signature on trading cards, at a point in time when the athlete was very marketable. See ECF No. 69 at ¶¶ 163, 165. As Fanatics previously argued, such conduct—i.e., entering into agreements with athletes for exclusive use of their signature—is industry norms that Panini itself engaged in. Allegations of Panini engaging in similar conduct is relevant to various issues in the case, including market definition and industry practice. See, e.g. ECF No. 164 at 18 n. 11; ECF No. 228. And to the extent Fanatics seeks the summary sheets of high school and college players, Panini has not represented that the agreement with the athlete ends prior to the athlete becoming a rookie in their respective league. As such, the fact that the agreement predated the

3

player's decision to enter the draft is not dispositive.[3] Fanatics has identified individuals very likely to enter their respective professional leagues, and Fanatics should be able to point to these agreements and the amounts of money paid by Panini to these athletes to argue that the non-licensed trading cards of rookie or soon-to-be rookie players attract significant consumer demand. As to the WNBA player, whether her trading card is a substitute for licensed NFL and NBA player cards goes to the merits of the claims and is an argument Panini can make at summary judgment or trial when Fanatics attacks its market definition. But for purposes of discovery, where relevance is interpreted broadly, In re Terrorist Attacks on Sept. 11, 2001, No. 03-MD-1570 (GBD) (SN), 2023 WL 4447869, at *2 (S.D.N.Y. July 11, 2023), objections overruled, 2023 WL 5432199 (S.D.N.Y. Aug. 23, 2023), Fanatics is entitled to the information it seeks to that it can mount an argument that the trading cards of WNBA players are substitutes for NFL and NBA trading cards or to point to conduct by Panini that it has mitigated any potential damages.

---

[3] Previously, the Court denied as overbroad a request to compel Panini to produce documents responsive to Fanatics' RFP 80, which requests discovery related to any "actual or potential Autograph Deals" with athletes under the age of 18. See ECF No. 273 at 2; ECF No. 252-1. RFP 80 was raised in a letter motion for which the Court held a conference on December 16, 2025, but the specific RFP was not discussed during the conference. See ECF No. 268. Fanatics has now demonstrated the relevancy of such discovery. And the request has been adequately narrowed, because Fanatics has provided a specific list of athlete that are high school football and basketball players likely to enter their respective professional leagues.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 332, 333, and 334.

**SO ORDERED.**

DATED:        New York, New York
              June 23, 2026

                                        _____
                                        VALERIE FIGUEREDO
                                        United States Magistrate Judge