**BSF** | BOIES
SCHILLER
FLEXNER

June 24, 2026

**Via ECF**

The Honorable Valerie Figueredo
United States District Court Magistrate Judge

> Re:    *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF
> (S.D.N.Y. 2023)

Dear Judge Figueredo:

Pursuant to Local Civil Rule 37.2 and Rule II(c)(2) of the Courts Individual Civil Rules, Panini America, Inc. ("Panini") respectfully requests a discovery conference to ask the Court to order non-party OneTeam Partners, LLC's ("OneTeam") compliance with a January 6, 2026 subpoena duces tecum. (Ex. A).[1] Though the place of compliance was Los Angeles, California, OneTeam consents to this Court's jurisdiction for purposes of litigating issues raised by the subpoena. (Ex. B).

Despite OneTeam's role in facilitating the monopoly at issue in this litigation,[2] OneTeam has not produced a single document in response to the subpoena. The parties engaged in extensive conferral[3] and written exchanges, but remain at an impasse on Requests for Production ("RFPs") 1–7, 9, and 14–17.[4] The requested discovery is relevant under Rule 26(b)(1) and does not impose an undue burden on OneTeam, an entity valued at approximately $2 billion.[5] *See* Fed. R. Civ. P. 26(b)(1); *Int'l Code Council, Inc. v. Skidmore, Owings & Merrill, LLP*, 2025 WL 1936704, at *2–3 (S.D.N.Y. July 15, 2025).

## I.    Background

This Court previously acknowledged the relevance of OneTeam's involvement in Panini's antitrust claims. *See* ECF No. 197 at 2 ("Fanatics' relationship with OneTeam is relevant to Panini's Section 2 claims"). OneTeam is a joint venture created by the NFLPA and MLBPA, combining and selling the intellectual property of players associations. ECF No. 69 ¶ 112. OneTeam launched Fanatics Collectibles with Michael Rubin[6] and is a ████████████████

---

[1] If the Court would benefit from additional briefing on these issues, Panini is prepared to provide it and proposes Panini and OneTeam file a joint proposed briefing schedule.

[2] *See* ECF No. 69 ¶¶ 112–13.

[3] Panini and OneTeam conferred telephonically on February 13 (10 AM), March 10 (2 PM), and April 7 (11:30 AM) for approximately 40 minutes each. Panini's counsel, Meredith Schultz, and OneTeam's counsel, Elena Kamenir, participated in all conferrals joined by others from their respective teams. OneTeam has only agreed to limited searches for certain documents as detailed below. On April 7, Panini advised OneTeam of the impasse and its intent to file a discovery motion.

[4] Panini is not pursuing RFP Nos. 8 and 10–13. One overarching dispute regards OneTeam's refusal to produce its communications and agreements with Fanatics. (*See* Ex. C). Panini has identified gaps in Fanatics' production of communications with OneTeam. Panini seeks these communications to the extent Fanatics does not have the missing documents or has otherwise not produced them.

[5] *See* Press Release, OneTeam, Rights Agency for Professional College Athletes Eyes $10B Value (Aug. 23, 2023), https://oneteam.com/all/rights-agency-for-professional-college-athletes-eyes-10b-value/ (last visited June 6, 2026).

[6] *About Us*, ONETEAM, https://oneteam.com/about-us/ (last visited June 6, 2026).



███████████. When announcing exclusive deals with Fanatics, MLBPA and NFLPA Executive Directors "said that the deal 'never would have happened' if their organizations had not 'joined forces to create OneTeam.'"[7]

Party discovery further confirms OneTeam's relevance to Panini's claims. OneTeam ████████████████████████ (*See* Ex. D at '859[8]; Ex. E at '098[9]; Ex. F at '810-11). OneTeam ████████████████████ (*See* Ex. G; Ex. H at '140; Ex. I). And OneTeam █████████████████████████████████████████████████ (Ex. J[10]; Ex. K at '399; Ex. L).

## II.    Argument

OneTeam refuses to produce documents relevant to Panini's claims and attempts to unreasonably limit production on other key topics.

RFP No. 1 (OneTeam Agreements with Fanatics). Panini has agreed to further narrow this already-discrete RFP to seek joint venture, investment, and partnership agreements between OneTeam and Fanatics or related entities, including Zerocool and entities referred to as "NewCo" and "CardCo." Despite minimal burden, OneTeam seeks to limit this RFP to ███████████ ███████████████████████. This excludes all other agreements between OneTeam and Fanatics and its affiliates, which are relevant to the coordination between OneTeam and Fanatics that allowed Fanatics to obtain exclusive licenses.

RFPs 2 and 7 (Negotiations and Decisions to License with Fanatics). OneTeam refuses to produce documents related to its ███████████████████████[11] Instead, it seeks to narrow its agreed production to ██████████ █████████████████████████████████ (*See* Ex. C). This is untenable. OneTeam's position excludes core negotiation documents and third-party communications. Both are highly probative of Fanatics' coordinated anticompetitive conduct through OneTeam.

RFPs 3 and 4 (Establishment of Fanatics Collectibles and Fanatics' Role Establishing OneTeam). OneTeam and Fanatics Collectibles' relationship bears directly on Panini's allegations that Fanatics' exclusive dealing arrangements with the players associations were the product of coordinated anticompetitive conduct rather than independent arms-length negotiations. *See* ECF No. 69 ¶¶ 8, 110–12. Yet OneTeam refuses to produce communications between OneTeam and Fanatics responsive to RFP 3 or any documents responsive to RFP 4.

---

[7] *OneTeam demonstrates power of combining players' group NIL rights*, SPORTS BUS. J. (Oct. 7, 2021), https://www.sportsbusinessjournal.com/Daily/Issues/2021/10/07/Marketing-and-Sponsorship/OneTeam.aspx.

[8] ████████████████████████████████████████

[9] Fanatics executive Saj Cherian ████████████████████████ ████████████████████████

[10] ██████████████████████████████████████████ ████████████████████████████████████████████

[11] This includes Fanatics' ████████████████████████. *See* ECF No. 69 ¶ 98.



RFP 5 (Business Plans Shared Between OneTeam and Fanatics). OneTeam refuses to produce responsive documents, ███████████████████████████████. (Ex. C). This is incorrect. RFP 5 reaches documents beyond licensing negotiations and the launch of Fanatics Collectibles, including business plans related to the sports trading card market as a whole. For example, ████████████████████████████████████████████████ ████████████████████ (*See* Ex. D at '859; Ex. E at '098; Ex. F at '810-11).

RFP 6 (NFLPA's Attempt to Terminate Panini's License). Panini agreed to narrow this RFP to documents related to NFLPA's attempt to terminate Panini's license or accelerate the start date of its Fanatics license. ███████████████████████ These documents are relevant to Panini's allegations that Fanatics induced NFLPA to terminate Panini's license early, using Fanatics' employee raid as manufactured pretext, so that Fanatics' exclusive deal would automatically accelerate, taking immediate effect. ECF No. 69 ¶¶ 180–84. OneTeam is uniquely positioned on this issue as the entity managing NFLPA's collective licensing rights and a ███████████████████████. *See* Ex. M at 1.

RFPs 9 (Right of First Offer). This RFP seeks documents concerning ██████████ ██████████████████████████████████████████████ ████████████████ (*See* Ex. M § 14(B)(iii)). OneTeam refuses to produce documents despite their relevance to the means and scope of Fanatics' competitive foreclosure of the sports trading card market.

RFP 14 (Pitch Materials Fanatics Provided to OneTeam). This narrowly tailored RFP seeks documents revealing the license terms Fanatics offered and the financial projections it used to obtain licensors' acquiescence in its monopolization scheme. *See* ECF No. 69 ¶¶ 8, 111. The burden of production is minimal, and the documents bear directly on how Fanatics restrained trade and monopolized the market.

RFP 15 (Panini's and Fanatics' Performance). OneTeam limits its agreed scope ██████████ ████████████████████████████ (*See* Ex. C). This excludes documents about Panini's performance, internal evaluations, and external communications with other third parties. These documents are relevant to Fanatics' defense that entities chose to license with Fanatics due to Panini's performance. *See* ECF No. 173 at 2.

RFPs 16 and 17 (Market Studies/Risk of Harm to Consumers). OneTeam refuses these RFPs, arguing they are the "subject of expert discovery between the parties." (Ex. N). Not so. "Expert discovery is narrowly construed to include the disclosure of experts and their reports, rather than the documents that could form the basis of an expert's report in the future." *City of Almaty, Kazakhstan v. Ablyazov*, 2019 WL 275701, at *2 (S.D.N.Y. Jan. 22, 2019). That experts may opine on the relevant market has no impact on the stand-alone evidentiary value of these documents. Such evidence bears on Panini's allegations that "Fanatics's anticompetitive, monopolistic acts … have the purpose and effect of destroying competition in and for the market for the production and sale of Major U.S. Professional Sports Leagues trading cards[.]" ECF No. 69 ¶ 12.

Respectfully submitted,

*/s/ Stuart H. Singer*



David Boies
Eric Brenner
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

Stuart H. Singer*
Sabria A. McElroy*
Meredith Schultz*
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
mschultz@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com

*Counsel for Panini America, Inc.*
*\*pro hac vice*

cc:    All Counsel of Record (by ECF)