**LATHAM&WATKINS**LLP          quinn emanuel trial lawyers | new york

June 24, 2026

**Via ECF**

The Honorable Valerie Figueredo
United States District Court Magistrate Judge, S.D.N.Y.

Re: *Panini Am., Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023)

Dear Judge Figueredo:

Fanatics seeks to correct the record on certain issues that arose during the June 16, 2026 discovery conference in connection with Fanatics' motion to compel documents concerning Wild Card's allegations against Panini. As discussed at the conference, Wild Card's allegations against Panini are remarkably similar to Panini's allegations against Fanatics in this action. *Compare* ECF 1, No. 4:25-cv-01216 (E.D. Tex.) (Wild Card Compl.) ¶¶ 22-23, 30-31 (Wild Card alleging Panini "used threats and coercion to cut off Wild Card's access to essential manufacturing inputs and distribution channels"), *with* ECF 69 ¶¶ 194-98, 144-47 (Panini alleging Fanatics "threaten[ed] distributors ... with cutting them off," forced retailers to stop carrying other products, and used its influence over a manufacturer to harm Panini); *see also* ECF 331 at 4-5; ECF 351 ("Tr.") 127:13-128:19. Fanatics' RFPs 104-106 seek documents related to three of Wild Card's specific allegations. ECF 331-28 at 4. At the conference, Panini made several comments regarding these RFPs and the related allegations that require correction.

*First*, Panini argued at the conference that "[t]here's no defense to say, by Fanatics, the custom and practice here is to threaten distributors." Tr. 137:11-13. This argument contradicts Panini's own arguments in the Wild Card case. In that case, Panini has suggested its alleged threats to cut off distributors and a manufacturer were consistent with "vigorous competition," ECF 12 at 25, No. 4:25-cv-01216 (E.D. Tex.), and has generally portrayed the alleged conduct as routine activity that did not impair competition, *see, e.g.*, *id.* at 2 ("[T]he Complaint alleges nothing more than Wild Card's own temporary loss of its preferred distribution channel"); *id.* ("Wild Card has merely dressed up in antitrust garb what is, at best, a business tort.") (cleaned up); *id.* at 10 (describing alleged conduct as "in line with a wide swath of rational and competitive business strategy.") (cleaned up). Panini will surely attempt to reconcile these conflicting statements, but regardless, they underscore that Fanatics has a viable industry norms defense. Panini's analogous conduct supports that defense, so Panini should not be allowed to block discovery into it.

*Second*, and relatedly, Panini argued at the conference that "you cannot have a [custom or] practice that's unlawful." Tr. 137:8-14. This argument fails. To start, ceasing to do business with a distributor is not per se unlawful. *See, e.g.*, *Verizon Comm'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004). To the extent Panini engaged in the same or similar conduct that it now describes as unlawful (when done by Fanatics), the Court has already recognized that Panini's analogous practices—including its exclusive licensing and athlete deals—are relevant to industry norms. *See* ECF 164 at 18 n.11 (recognizing that Panini's licensing practices "are important for considerations of industry norms"); ECF 228 at 3 (recognizing that Panini's own conduct in entering the market "would allow Fanatics to make its argument … that its own conduct was consistent with industry norms"); ECF 353 at 3-4 (recognizing that Panini's athlete deals are relevant to, among other things, industry norms). The same is true here: Discovery

into Panini's treatment of distributors or manufacturers is relevant to industry norms around relationships with distributors and manufacturers and the various lawful business reasons why a trading card company might choose not to work with a distributor.[1]

*Third*, when Fanatics pointed to documents produced by Panini that corroborate Wild Card's allegations, Panini claimed those documents "involved none of the relevant distributors that they say were threatened." Tr. 132:18-22. That is incorrect. Panini has produced an email showing that ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. A[2]; *see also* ECF 331-22 ( ████████████ ████████████████████████████████ ) (emphasis added). Moreover, ████████████ ████████████████████████████████████████████████████ *Compare* Ex. A, *with* ECF 69 ¶ 197. Thus, Panini possesses documents that are highly relevant to the question of industry norms surrounding manufacturer and distributor relationships. Panini should be compelled to produce the remainder of these highly relevant documents.[3]

*Finally*, Panini has no response to Fanatics' argument that the requested documents are independently relevant to probing the existence and extent of competition in the industry prior to Fanatics' entry into the space. Panini cannot allege that Fanatics reduced competition and simultaneously block discovery that will show what competition looked like before Fanatics' entry, when Panini was the incumbent. *See* ECF 331 at 5.

Respectfully submitted,

/s/ *Michael B. Carlinsky*
Michael B. Carlinsky
Quinn Emanuel Urquhart & Sullivan LLP
295 Fifth Avenue
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
(212) 849-7000

*Counsel for Fanatics*

/s/ *Lawrence E. Buterman*
Lawrence E. Buterman
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com
(212) 906-1264

*Counsel for Fanatics*

---

[1] At the conference, Panini argued that "there is no in pari delicto or unclean hands defense to antitrust claims." Tr. 132:2-7. But Fanatics is not relying on those defenses here, and in the same footnote that Panini cites, Judge Swain recognized that industry norms are relevant. ECF 164 at 18 n.11.

[2] Fanatics previously filed a different version of Exhibit A as Exhibit 21 to its motion to compel. ECF 331-21. Exhibit A is an alternate version of the same email, ████████████████████████████████████ ████████████████████████████████—all of whom are named in Wild Card's complaint (¶ 17).

[3] Panini also claimed it "had no relationship" with the manufacturer at issue in Wild Card's complaint. Tr. 132:23-133:2. But Panini cannot foreclose discovery based on its counsel's unilateral factual representations. If Panini had no relationship with that manufacturer, then it would presumably have no documents responsive to RFP 106. But Panini opposes Fanatics' motion to compel, which suggests there *are* responsive documents.