

June 26, 2026

**<u>Via ECF</u>**

The Honorable Valerie Figueredo
United States District Court Magistrate Judge

> **Re:**   ***Panini America, Inc. v. Fanatics, Inc. et al.*,**
> **Case No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023)**

Dear Judge Figueredo:

We write on behalf of Plaintiff Panini America, Inc. ("Panini") in response to Fanatics' unauthorized June 24, 2026 supplemental letter ("Suppl. Ltr") seeking discovery based on Wild Card, Inc.'s ("Wild Card") allegations. ECF No. 364. Panini respectfully requests that the Court strike Fanatics' letter from the record and deny the relief sought therein.

### I.    <u>The Court Should Strike Fanatics' Unauthorized Letter</u>.

The Court's briefing order permitted a single seven-page letter—at Fanatics' own request. ECF No. 328. The order did not authorize supplemental briefing. Fanatics had ample opportunity to make its arguments in its motion papers and at the June 16, 2026 conference, where it argued the Wild Card issue at length. *See* ECF No. 351 ("Tr.") at 125:14–130:9. Its June 24 letter is an unauthorized second bite at the apple dressed up as a request to "correct the record." But the letter merely rehashes arguments Fanatics already made or had the opportunity to make. Nothing justifies this improper submission, and it should be stricken.

### II.    <u>Fanatics' Arguments Do Not Justify Discovery Into Wild Card's Unproven Allegations</u>.

The Court has already rejected the theory that Fanatics may obtain discovery based on allegations of misconduct by Panini toward third parties. On January 5, 2026, the Court denied Fanatics' motion to compel Requests 77–80, which sought documents related to alleged unlawful or unethical conduct by Panini. The Court held that those requests were "overbroad" and that "Fanatics has not demonstrated that the requests seek information that is relevant to the claims in this case"—specifically finding "there is no indication that any of the information sought by these requests bore on the licensors' decisions to leave Panini." ECF No. 273 at 2. Requests 104–106 concerning Wild Card discovery seek the same category of information—documents concerning unproven allegations of misconduct toward distributors and a manufacturer—and constitute an improper end-run around the Court's relevance determination. Fanatics' "narrowed" framing does not change the analysis: the January 2026 order was a *relevance* ruling, not a proportionality one. Narrowing an irrelevant request does not make it relevant.



Fanatics' Supplemental Letter does not cure this defect. Its entire argument rests on treating Wild Card's unproven allegations as established fact. Wild Card claims that Panini threatened distributors in October 2021 with consequences if they carried Wild Card products. But those claims remain contested: Panini has moved to dismiss them, no factfinder has assessed their merits, and no evidence has been adduced to support them. Fanatics cannot bootstrap an untested third-party pleading into a license to conduct wide-ranging discovery in this case.

Ignoring this fundamental problem, Fanatics contends again—just as it argued in its Letter Motion and at the discovery conference—that Exhibit A (a version of which was attached as Exhibit 21 to Fanatics' Letter Motion) and ECF No. 331-22 "corroborate" Wild Card's claims. As Panini has explained, both documents are dated February 2021—eight months before the October 2021 meeting that is the focus of Wild Card's complaint. ECF No. 338 at 5; Tr. at 132:19–23. Moreover, these documents concern signature prices, not distributor allocation threats. Neither document has anything to do with the conduct Wild Card actually alleges.

Fanatics also mischaracterizes Panini's arguments in the Wild Card case in an effort to manufacture an inconsistency between Panini's litigation positions. Panini did not argue, as Fanatics implies (Suppl. Ltr at 1), that threatening distributors constitutes "vigorous competition" or is otherwise immunized from antitrust scrutiny. Rather, Panini has argued that a manufacturer may independently announce and enforce the terms on which it will deal, and that a distributor's decision to comply does not, standing alone, create an unlawful agreement. Panini's motion argues this is all Wild Card plausibly alleges. That is a legal argument about the elements of a Section 1 claim, not an admission that any particular conduct occurred.

Fanatics' unsupported interpretation of the documents it cites and its selective reading of Panini's motion to dismiss illustrate the dangers of permitting discovery predicated on third-party allegations. Allowing Fanatics to import Wild Card's claims into this case would require the Court and the parties to litigate the truth of those claims as a subsidiary proceeding—parsing what Panini actually argued, what the cited documents actually show, and whether Wild Card's allegations have any factual foundation. That is precisely the kind of speculative discovery that courts reject as disproportionate and unwarranted. *See Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004).

Beyond that, Fanatics' attempt to equate Wild Card's untested complaint with Panini's claims in this action does not withstand scrutiny. Judge Swain sustained Panini's claims based on detailed allegations of a wide-ranging pattern of anticompetitive conduct—including unprecedented long-term exclusive licenses, acquisition and control of Panini's specialized manufacturer, employee raiding, exclusive rookie autograph lockups, disparagement, jersey supply cutoffs, and inducement of licensor terminations. Panini's allegations concerning distributor pressure were part of this broader pattern of conduct directed at Panini and other market participants. ECF No. 69. Wild Card's allegations, by contrast, concern a single alleged statement at a single meeting and four distributors' subsequent independent decisions—not a coordinated multi-front campaign to monopolize an industry. Even if proven, Wild Card's claims would shed no light on "industry norms" relevant to Fanatics' alleged conduct in this case.



### III.    Panini Has Already Agreed to Produce Extensive Discovery on Distributors and Competition.

Fanatics' requests should be rejected for the separate reason that they are facially overbroad and disproportionate to the needs of the case. They seek all documents relating to Panini's interactions with distributors in connection with Wild Card—including documents from the October 2021 distributor meeting Wild Card references—without any meaningful nexus to a legitimate issue in this case. Fanatics frames the requests as bearing on "industry norms surrounding manufacturer and distributor relationships," (Suppl. Ltr at 2), but the actual scope of the requests sweeps far beyond any such topic and is untethered to that purported justification.

Critically, Panini has agreed to produce broad discovery that bears on distributor relationships, including:

- Requests 57–58: policies and communications concerning pricing, terms, and conditions for distributors, retailers, hobby shops, breakers, and resellers; and

- Request 86: documents and communications regarding any decision on how to distribute or sell trading card products.

Fanatics' Supplemental Letter also argues (Suppl. Ltr at 2) for the first time that the Wild Card discovery is relevant "to probing the existence and extent of competition in the industry prior to Fanatics' entry into the space." But Panini agreed to produce extensive documents concerning "competition in the industry" going back to 2017, years before Fanatics entered the trading card industry.  For instance, it has agreed to produce documents concerning:

- Request 11: competition for the sale of Collectibles in the United States;

- Request 12: analyses of the production or sale of Collectibles;

- Request 13: analyses of trading card sales quantity, dollar value, and market share;

- Requests 24–25: consumer demand/value and connection between quantity available and consumer appeal; and

- Requests 26–27: relationship between primary/secondary market demand and whether new trading card sales are distinct from resale.

This broad production will provide Fanatics with extensive discovery on historical competition, market definition, and distributor relationships—the very topics Fanatics claims to need.

Panini respectfully requests that the Court (1) strike Fanatics' unauthorized June 24, 2026 letter and (2) deny Fanatics' motion to compel responses to Requests 104–106.



Respectfully submitted,

*/s/ Stuart H. Singer*

David Boies
Eric Brenner
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

Stuart H. Singer*
Sabria A. McElroy*
Meredith Schultz*
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
mschultz@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com

*Counsel for Panini America, Inc.*
**pro hac vice*

cc:    All Counsel of Record (by ECF)