# Exhibit 5

**From:** Megan Nyman
**To:** Dale, Adam I.; Jessica Mugler
**Cc:** Stuart Singer; David Boies; Eric Brenner; Sabria McElroy; Meredith Schultz; Kessler, Jeffrey L.; Greenspan, David; Viebrock, Sarah L.
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel
**Date:** Thursday, May 14, 2026 11:11:24 AM
**Attachments:** image001.png

Adam,

We respond to your May 8 email below.

Second Subpoena

We are confident that Panini's use of its knowledge of documents from prior litigation to identify gaps in NFLPA/I's production was proper. Because we are at an impasse, Panini intends to move to compel on Request 1 from the second subpoena.

Request 17

Because we are at an impasse, Panini also intends to move to compel on Request 17 from the first subpoena. As the record makes clear, Panini never agreed to withdraw Request 17 in its entirety, and NFLPA/I agreed to produce documents responsive to this request in its Responses and Objections.

████████████████

We also intend to move to compel the ████████████████. We disagree that our description of the document is vague. We are seeking the ████████████████ that Fanatics sent to or shared with NFLPA/I prior to NFLPA/I executing the Fanatics license agreement in March 2021. Despite efforts to obtain the document from Fanatics, Fanatics has not produced the ████████████████, and we believe NFLPA/I has a clear obligation to produce it if it is in NFLPA/I's possession, custody, or control.

Start Date of Discussions with Fanatics

We have identified an additional issue. During negotiations of the subpoena, in your January 18 email, you represented that discussions between NFLPA/I and Fanatics began on January 8, 2021. On the basis of that representation, Panini agreed to January 8, 2021 as a start date for NFLPA/I's production on Requests 2 and 4. However, we have since identified documents from Fanatics that suggest ████████████ occurred in December 2020. NFLPA/I's representation that the discussions began on January 8, 2021 appears to have been false, and Panini relied on that representation in agreeing to narrow the scope of the production.

NFLPA/I should explain the basis for its representation that discussions with Fanatics began on January 8, 2021 by **Monday, May 18**. In light of the false representation, NFLPA/I should also immediately conduct a search of documents going back to November 2020 for documents responsive to Requests 2 and 4.

Production Deficiencies

NFLPA/I should provide the conclusion of its investigation into the other production deficiencies we have identified, including the lack of DeMaurice Smith documents and the absence of documents from April 2021 to December 2023, no later than **Monday, May 18**.

Individual Subpoenas

On the individual subpoenas, we are in agreement with your proposal. Please provide your proposed search terms by **Friday, May 22**.

Panini reserves all rights.

Best,

**Megan Nyman**
Associate

BOIES SCHILLER FLEXNER LLP

401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL, 33301
(t) 954 356 0011
(m) 954 295 7513
mnyman@bsfllp.com
www.bsfllp.com

---

**From:** Dale, Adam I. <AIDale@winston.com>
**Sent:** Friday, May 8, 2026 8:22 AM
**To:** Megan Nyman <mnyman@bsfllp.com>; Jessica Mugler <jmugler@BSFLLP.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

**CAUTION**: External email. Please do not respond to or click on links/attachments unless you recognize the sender.

---

Megan,

Our responses:

***Second Subpoena.***  As noted below, if Panini's position is that it will be filing a motion to compel, we do not agree to produce any documents in response to Panini's second subpoena.  Our position remains that Panini was only able to issue that subpoena by improperly using Confidential Information (as defined in the AAA protective order) that it received in the AAA arbitration and improperly retained. And, in any event, the second subpoena is a complete reversal of the parties' discovery agreement.  We reserve all rights, including the right to seek sanctions for Panini's violations of the AAA protective order.

███████████████.  We are confused by Panini's declaration of an impasse here and its threats to file a motion to compel. During our meet and confer, we reiterated our request for further detail on what Panini believes ███ ███████ was, when it was delivered, to whom and by whom, and what Panini's efforts have been to date in securing this document from Fanatics.  You stated that Panini believes there was a ████████ presented by Fanatics to NFLPA/PI "at some point" prior to NFLPA/PI executing the Fanatics license agreement in March 2021 because you believe that other licensors received ████████████.  You also stated that ██████ likely would have originated from █████████  Beyond that, you were unable to provide any details about the purported ███  In addition, you stated that you are still in the process of exploring with Fanatics whether the ███████ exists, and if so, whether Fanatics remains in possession, custody or control of it such that they could produce it.

Based on that, during our meet and confer we explained that given the limited and vague description that you provided about the document, we disagree with your characterization that this is merely a "go get" request.  We offered to revisit this discussion if Panini provides us with additional detail about what it thinks ████████ is or if Panini determines that for some reason, it is unavailable from Fanatics.  But as we understand it, you are still exploring these issues with Fanatics.  We remain open to revisiting this at the appropriate time, particularly now

that fact discovery has been extended by several months, but we do not believe that it is appropriate for Panini to demand that NFLPI search for a vaguely described ████████ that it has not determined is unavailable from Fanatics.

**Request 17.**  We are similarly confused by your declaration of an impasse here.  As I stated during our meet and confer, even if Panini never intended to withdraw this request in its entirety, it was reasonable for NFLPI to interpret our January 2026 email correspondence—where you confirmed that "Panini has withdrawn Request[] . . . 17"—to mean that Panini had, in fact, withdrawn the request.  We explained that it is unreasonable to make NFLPI conduct extensive and broad searches for documents responsive to Request 17 at this point because that work could have been done far more efficiently if it was part of our original review and production work.  We remain open to discussing a compromise that does not require us to conduct a broad re-search and re-review of materials.

**Motion to Compel.**  As I mentioned during our meet-and-confer, we view Panini's positions on the above issues to be directly contrary to the parties' discovery agreement that NFLPI has been operating under.  Thus, if Panini insists on moving to compel, we will pause our outstanding work in responding to the subpoena issued to NFLPI until a Court determines NFLPI's obligations (if any) on the above issues so that we are not working piecemeal, which would be unreasonable and unduly burdensome.  To be clear, we remain committed to completing our work in responding to the subpoena consistent with the parties' agreement reached in January, but for purposes of efficiency, we will not continue that work while a motion to compel is pending.

**Purported Production Deficiencies.**  We are investigating these items and will respond in due course.

**Individual Subpoenas.**  Irrespective of Panini's decision to proceed with a motion to compel, we agree to review and produce text messages from Steve Scebelo, DeMaurice Smith and Terese Whitehead in NFLPA's/NFLPI's possession that are responsive to their respective subpoenas.  We also agree to share our search terms with you.  However, we do not believe it is necessary, efficient or appropriate to require us to run the search terms, conduct a full review for privilege only and then turn over the non-privileged hits to other counsel to re-review and determine responsiveness.  Putting aside that this was never previously discussed, we don't understand why that significant additional burden and cost should be imposed on us or the individuals who are no longer employees of NFLPI and whose counsel are far less familiar with the issues in this litigation when we are agreeing to undertake the work to review and produce the responsive text messages.  Moreover, those messages are NFLPI's confidential business records and thus, there is no basis to require us to turn them over to other counsel.

Please let us know if you agree, and we will prepare and provide search terms.

We are available to discuss.  NFLPI reserves all rights.


Best,
Adam

**ADAM DALE**
PARTNER

**T** +1 (212) 294-5329

aidale@winston.com

*Admitted to practice in New York*

---

**From:** Megan Nyman <mnyman@bsfllp.com>
**Sent:** Monday, May 4, 2026 2:59 PM
**To:** Dale, Adam I. <AIDale@winston.com>; Jessica Mugler <jmugler@BSFLLP.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

Adam,

We are following up on Thursday's meet and confer.

**Compromise on Further Document Discovery**
You suggested that you may be willing to reach compromise with Panini to produce the missing arbitration documents we have specifically requested — the ▮▮▮▮▮▮▮▮▮ document and the documents ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Panini will agree to take the second subpoena off the table and will not to pursue a third document subpoena if NFLPA/I produces these documents. Please let us know if this is agreeable by **Thursday, May 7**.

▮▮▮▮▮▮▮▮▮

We understand that NFLPA/I is unwilling to search for and produce ▮▮▮▮▮▮▮▮▮ that it received from Fanatics ▮▮▮▮▮▮, which is responsive to Request 9 from the first subpoena. We are at an impasse on this issue and will move to compel this document.

**Request 17**
We understand NFLPA/I is unwilling to search for and produce the documents that it agreed to produce in its responses and objections responsive to Request 17 (internal Documents and Communications and Communications with OneTeam (to the extent such Communications exist) concerning Panini's performance, capabilities, business, reputation, or manufacturing abilities). We are at an impasse on this issue and will move to compel these documents.

**Production Deficiencies**
1. **Documents from April 2021 to June 2023** - We remain concerned that, aside from the reproduced arbitration documents, NFLPA/I has not produced any documents from the period of April 2021 to June 2023. In the meet and confer, you took the position that "nothing relevant" was going on during this period. We disagree. As we have discussed in prior meet and confers, the license agreement with Fanatics was announced in August 2021. Furthermore, throughout this period, there were communications between NFLPA/I and Fanatics about Panini, and in March 2022, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In the spring of 2023, Fanatics raided Panini's employees, which was ultimately at the center of the dispute concerning the wrongful early termination of Panini's license agreement. There may also have been communications between NFLPA and NFL players or their agents or representatives regarding Fanatics' right to use NFL players' group licensing rights in NFL trading cards, but we understand that we are still waiting on a supplemental production from NFLPA/I with

these documents. In our meet and confer, you claimed that you did a "good faith review" but did not state whether there were time limiters applied to your separate searches for the subpoena in this matter. Please confirm whether NFLPA/I excluded documents from this period for any of its searches.

2. **DeMaurice Smith Documents** - During the meet and confer, we raised that there were only six custodial documents for Mr. Smith produced by NFLPA/I. This is particularly concerning since Mr. Smith ███████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ You said you would investigate this issue and provide an explanation for why there are so few documents.

**Individual Subpoenas**

During the meet and confer, you suggested that you may be willing to conduct a broader search within Mr. Smith's, Mr. Scebelo's, and Ms. Whitehead's text messages for documents responsive to the individual subpoenas served on them. We communicated Panini's position that if you are going to conduct the search on behalf of the individuals, you should search for the full scope of documents responsive to the subpoenas. We are attaching the subpoenas here for your reference. Panini is willing to agree that you can limit the search to the individuals' text messages. NFLPA/I should share the search terms it is going to use for these requests, conduct a review for privilege, and otherwise provide all the documents that hit on those terms to the individuals' counsels to make responsiveness determinations. Please let us know whether this is agreeable by **Thursday, May 7**. We are still in discussions with Mr. Howell, but our hope is to propose the same for his text messages that are in the possession of NFLPA/I.

Panini reserves all rights.

Best,

**Megan Nyman**
Associate

BOIES SCHILLER FLEXNER LLP

401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL, 33301
(t) 954 356 0011
(m) 954 295 7513
mnyman@bsfllp.com
www.bsfllp.com

**From:** Megan Nyman
**Sent:** Wednesday, April 29, 2026 11:52 AM
**To:** 'Dale, Adam I.' <AIDale@winston.com>; Jessica Mugler <jmugler@BSFLLP.COM>
**Cc:** Stuart Singer <ssinger@BSFLLP.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@BSFLLP.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

Hi Adam,

We can discuss the outstanding issues concerning the two subpoenas on NFLPA/I and the individual subpoenas on Ms. Whitehead, Mr. Scebelo, Mr. Smith, and Mr. Howell during tomorrow's meet and confer.

Thanks,

**Megan Nyman**
Associate

**BOIES SCHILLER FLEXNER LLP**

401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL, 33301
(t) 954 356 0011
(m) 954 295 7513
mnyman@bsfllp.com
www.bsfllp.com

---

**From:** Dale, Adam I. <AIDale@winston.com>
**Sent:** Friday, April 24, 2026 9:37 PM
**To:** Megan Nyman <mnyman@bsfllp.com>; Jessica Mugler <jmugler@BSFLLP.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

**CAUTION**: External email. Please do not respond to or click on links/attachments unless you recognize the sender.

---

Megan,

Our responses:

**Productions.**  We checked, and you are not missing a production.  We had an internal miscommunication about the number of documents produced.

**Request 17.**  We can discuss this during our meet and confer next week.  However, Panini's position that it "will not agree to anything less than what NFLPA agreed to produce in its responses and objections" is not productive or reasonable.  Regardless of your view of the negotiating history, we understood your confirmation that "Panini has withdrawn Request[] . . . 17" to mean that NFLPI did not need to produce documents in response to Request 17.  Panini cannot credibly fault us for that.  Having already conducted a substantial review of documents, it would be unduly burdensome and disproportionate to the needs of the case to require NFLPI to conduct a brand new, full-scale search and review (including what is likely a re-review of a significant number of documents) for materials responsive to Request 17.  During our meet-and-confer, we are willing to discuss parameters to make this a more reasonable task.  We would also ask that you please consider and come prepared to discuss what documents Panini truly needs within the broad category of "internal Documents and Communications and Communications with OneTeam (to the extent such Communications exist) concerning Panini's performance, capabilities, business, reputation, or manufacturing abilities."

**Search Terms and Custodians**. Thank you for providing authorities that you contend support your position that we are required to disclose our search terms and custodians.  We do not agree that these cherry-picked, out-of-circuit cases reflect any principle—and certainly not one within the potentially applicable jurisdictions (D.D.C. or S.D.N.Y)—that we are required to disclose search term and custodian information to Panini.  Nonetheless, in the spirit of compromise, our search terms and custodians are included at the bottom of this email.

**Documents Between April 2021 and June 2023.**  Your accusation that "[t]he only documents produced from this time were from the arbitration" appears to be yet another example of Panini violating the arbitration protective order, which unequivocally precludes Panini from retaining or using NFLPI's Confidential Information from the arbitration for any other purpose.  We can't conceive of any way that Panini could, other than by violating the protective order, so definitively conclude that each of these 100+ documents is from the arbitration.  We reserve all rights.

But even if Panini were correct that these documents are all from the arbitration (which we're not sure about and are not going to waste our client's resources evaluating), we don't understand why that is a problem.  As you know, discovery in the arbitration was expansive; that is why Panini insisted that we re-review every produced document there for production here.  Moreover, (and again assuming Panini is correct that these are all arbitration documents) it should not come as any surprise that we did not identify additional responsive documents from that timeframe, particularly given that the categories of documents that NFLPI agreed to produce here primarily concern the decision to sign a license agreement with Fanatics and not Panini (which concluded in March 2021) and NFLPI's decision to terminate Panini's license (which occurred in August 2023).

We remain troubled by Panini's repeated violations of the arbitration protective order and its attempts to manufacture bases to question the sufficiency of NFLPI's production.

**Additional Productions**.  In addition to our work to collect and produce any remaining communications concerning Fanatics' right to use NFL Players' Group Licensing rights, we are in the process of conducting a re-review of the documents that we withheld as privileged to determine if anything else should have been produced.

Beyond that, as you know, in order to resolve the subpoenas issued to them, Steve Scebelo, DeMaurice Smith, and Terese Whitehead have each authorized NFLPA/NFLPI to review and produce documents from their cellular devices that were collected by NFLPI/NFLPA in connection with other matters.  We intend to apply the same parameters as we applied to NFLPI's documents for that work.  In other words, we will treat those devices as if they had been a part of the original NFLPI universe of documents, run the applicable search terms and produce responsive, non-privileged documents.

**Pitch Materials.**  A cardinal principle of discovery is that third parties should not be unduly burdened.  A hornbook example of undue burden is where a third party is requested to produce documents that are available from a party to the litigation.  NFLPI is a third party in this litigation and does not agree to undertake the burden of attempting to identify and locate materials that are available from Fanatics unless and until Panini determines that, for some reason, Fanatics is no longer in possession of them.  In fact, given your vague description of what Panini is seeking, we're not even sure what we'd even be looking for or if the documents ever existed.  We're prepared to discuss this during our meet and confer and would ask that you please be ready to discuss what these documents are, when they were transmitted to NFLPI/NFLPA, and your efforts to date to secure them from Fanatics.

| NFLPI SEARCH TERMS AND CUSTODIANS | | |
|---|---|---|
| **Request** | **Search String** | **Custodians** |
| Documents (not including communications with Fanatics) concerning NFLPA's decision to terminate its license agreement with Panini. | ██████████████ ███████████████ ███████████████ ████████████████ ████████ | ████████ ████████ ████████ ████████ |
| | ██████████████ | |

| | | |
|---|---|---|
| Documents concerning the NFLPA's decision to enter into the license agreement with Fanatics. | ██████████ ██████████ ████ | ██████ ██████ |
| Documents and communications relating to NFLPI's decision not to affirmatively seek a formal offer from Panini to extend, renegotiate, renew, or otherwise enter into a Sports Trading Card license agreement with Panini beyond February 2026. | ██████████ ██████████ | ██████ ██████ |
| Documents and communications relating to WWE's 2023 termination of its license agreement with Panini. | ██████████ ██████████ ██████████ ██████████ | ██████ ██████ ██████ |
| Communications between NFLPA and NFL players or their agents or representatives regarding Fanatics' right to use NFL players' group licensing rights in NFL trading cards. | ██████████ ██████████ | ██████ ██████ |
| Documents and communications constituting any complaints, concerns, or feedback received by NFLPI or NFLPA from Local Card Shops, Distributors, Case Breakers, or Retailers concerning Fanatics' contractual terms with them. | ██████████ ██████████ ██████████ ██████████ ██████████ ██████████ ████ | ██████ |



**ADAM DALE**
PARTNER

**T** +1 (212) 294-5329
aidale@winston.com

*Admitted to practice in New York*

**From:** Megan Nyman <mnyman@bsfllp.com>
**Sent:** Friday, April 17, 2026 6:11 PM
**To:** Dale, Adam I. <AIDale@winston.com>; Jessica Mugler <jmugler@BSFLLP.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

Adam,

To start, we are confused by your claim that you have produced 1,000 documents. We have received two productions from NFLPA. Both were sent by Neha Vyas – one on March 6 and one on March 27. The March 6 production contained 468 documents and the March 27 production contained 125 documents, for a total of 593 documents. Can you please confirm that we are not missing a production and that all the documents you intended to produce were included?

**Request 17.** Please let us know your availability to meet and confer to discuss this request and NFLPA's response to our second subpoena next Thursday (4/23) or Friday (4/24). So you know in advance, we will not agree to accept anything less than what NFLPA agreed to produce in its responses and objections as to Request 17. We believe the history of our negotiations makes clear that it was never our intent to accept anything less than this, but are willing to discuss if you think it would be productive.

**Search Terms and Custodians**.  We disagree with your assertions. If anything, NFLPA is the one trying to renegotiate our agreement to avoid producing relevant documents and now by refusing to provide search terms and custodians, which it agreed to do on numerous occasions. In this context, we believe the Court would order NFLPA to disclose its search terms and custodians. In *Apple, Inc. v. Samsung Electronics Co. Ltd*, for example, the court ordered non-party Google to "produce the search terms and custodians" because it would "aid in uncovering the sufficiency of Google's production and serves greater purposes of transparency in discovery." 2013 WL 1942163, at *3 (N.D. Cal. May 9, 2013); *see also DeGeer v. Gillis*, 755 F. Supp. 2d 909, 929 (N.D. Ill. 2010) (explaining that the non-party's "failure to promptly disclose the list of employees or former employees whose emails it proposed to search and the specific search terms it proposed to be used for each individual violated the principles of an open, transparent discovery process"); *V5 Techs v. Switch, Ltd.*, 332 F.R.D. 356, 367 (D. Nev. 2019) (ordering nonparty to provide "a sworn declaration" from a custodian to identify "with particularity the details of each of the searches conducted"). Please confirm you will disclose NFLPA's custodians and search terms, as you had previously agreed to do multiple times, otherwise we will move to compel these, as well.

**Documents Between April 2021 and June 2023**.  The only documents produced from this time were from the arbitration documents. There are no documents from your second production from this time. Are you claiming that your separate custodial searches for documents responsive to the subpoena in this action yielded no additional documents from this time? Again, this begs the question of the sufficiency of the search terms and custodians that NFLPA used for this action.

**Attachments to NFLPI-PANSUBPOENA-0001873.**  We will reserve rights to re-raise this issue once seeing NFLPA's privilege log.

**Communications Broadly Disseminated to Players/Agents**. We will look out for an additional production with these documents. Please confirm whether there are any additional categories of documents you are still reviewing or planning to produce.

**Communications Regarding Fanatics' Right to Use NFL Players Group License Rights.** We reject your assertion that "many" documents were produced in response to this request, and believe the small volume of documents produced in response to this request further reveals the need for NFLPA to disclose its custodians and search terms.

**▮▮▮▮▮▮▮▮.** We disagree that Panini needs to complete its investigation of this issue with Fanatics prior to seeking the materials from NFLPA. There is no burden associated with this request, which is a go-get request for a specific document. We are happy to discuss this during our meet and confer, but if NFLPA does not agree to produce ▮▮▮▮▮▮▮▮▮▮▮▮▮, we will move to compel this document given the current posture of discovery.

Best,


**Megan Nyman**
Associate

BOIES SCHILLER FLEXNER LLP

401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL, 33301
(t) 954 356 0011
(m) 954 295 7513
mnyman@bsfllp.com
www.bsfllp.com

---

**From:** Dale, Adam I. <AIDale@winston.com>
**Sent:** Tuesday, April 14, 2026 1:06 PM
**To:** Megan Nyman <mnyman@bsfllp.com>; Jessica Mugler <jmugler@BSFLLP.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel


**CAUTION**: External email. Please do not respond to or click on links/attachments unless you recognize the sender.

---

Megan, our responses are below.

**Purportedly Missing Documents**:  We accepted service of the new subpoena and will respond.

**Request 17**:  We disagree that the NFLPA has any obligation to produce documents in response to Request 17. Frankly, we don't understand how Panini can credibly argue that our January 22 and 23, 2026 email exchanges—where I noted that "Panini has withdrawn Request[ ] . . . 17," and you responded with "some caveats," none of which addressed Request 17, before stating that we are in agreement—could mean anything other than that Panini had agreed, as part of our overall arrangement, to withdraw Request 17 in its entirety.  What was discussed earlier in those negotiations, including in our R&Os in October 2025 (3 months before our agreement) or your December 2025 email (a month before our agreement) are irrelevant.  The only reasonable way to interpret the negotiation history is that ultimately, Panini agreed to drop Request 17.  We're confident that a court would agree and view this as yet another improper effort by Panini to try to engage in a post-hoc renegotiation after we produced 1,000 documents.  That said, we are willing to meet and confer to discuss this further.

**Search Terms and Custodians**:  Given Panini's repeated attempts to manufacture disputes to try to renegotiate our agreement on the scope of the subpoena, we're not willing to share any additional information.  If you have authorities that state we have an obligation to disclose our search terms and custodians to you, please send them so that we can evaluate whether they change our position.  But absent an obligation do to so, we reject Panini's demand for discovery into our subpoena response efforts.

**Purported Production Deficiencies**: We note at the outset that your questions indicate that Panini has conducted an incomplete or cursory review of our production, as many of your questions are based on demonstrably false premises.  While it is not our obligation to navigate our production for Panini, we nonetheless provide responses below.

1. ***Documents Between April 2021 and June 2023***.  We don't understand how you concluded that there were no documents produced from the period between April 2021 through June 2023.  We produced more than 100 documents from that period.

2. ***Attachments to NFLPI-PANSUBPOENA-0001873***.  These are draft materials prepared by ███████████ ██ role as an attorney for NFLPI.  Some of these materials were later combined into business documents, which were produced in their final form.

3. ***Communications Broadly Disseminated to Players/Agents***.  We are working on collecting any responsive broadly disseminated communications, which will be produced to the extent not already included in our production (e.g. NFLPI-PANSUBPOENA-0001909 at -1910, NFLPI-PANSUBPOENA-0000697 at 697-98).

4. ***Communications Regarding Fanatics' Right to use NFL Players Group License Rights***.  Many documents on this topic were produced.  *E.g.*, NFLPI-PANSUBPOENA-0000002, NFLPI-PANSUBPOENA-0000697, NFLPI-PANSUBPOENA-0000699,  NFLPI-PANSUBPOENA-0001907, NFLPI-PANSUBPOENA-0001909.

**<u>Privilege Log:</u>**  We intend to prepare a privilege log once we complete our production.  Given Panini's position that there are additional categories of documents that need to be produced, we cannot provide an estimate of when the privilege log will be delivered.

███████████████████.  We appreciate that your investigation into Fanatics' documents is ongoing.  If, at the conclusion of that investigation you determine that ███████████ shared with the NFLPA exist but for some reason, are no longer in Fanatics' possession, we are willing to discuss the NFLPA attempting to locate them.  However, until such time, we do not agree to undertake the burden or expense of locating documents that are more appropriately collected from Fanatics.

We reserve all rights.

-Adam



**ADAM DALE**
PARTNER

**T**  +1 (212) 294-5329
aidale@winston.com

*Admitted to practice in New York*

**From:** Megan Nyman <mnyman@bsfllp.com>
**Sent:** Wednesday, April 8, 2026 11:15 AM
**To:** Dale, Adam I. <AIDale@winston.com>; Jessica Mugler <jmugler@BSFLLP.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

Adam,

Please see below regarding various issues with the third-party subpoena on NFLPA/I.

### Missing Arbitration Documents

We think the written record of what actually happened during our negotiations is overwhelming, and we are not prepared to debate these issues anymore.  The documents we seek are plainly relevant, nothing in the Arbitration Order shows otherwise, there is no burden in producing these documents, and we haven't waived anything.  Nor does the Protective Order have any bearing on our ability to seek documents that were, for example, some of the most hotly discussed documents in the arbitration, including documents that were withheld until the eve of the arbitration. There is no surprise that we noticed they were missing.  Attached is a second subpoena that we intend to serve on the NFLPA/I. Please confirm whether you will accept service of this subpoena by the **end of day tomorrow**, otherwise we will proceed with formal service.  If you want to litigate whether this subpoena is proper, we are happy to do so.

### Request 17

As for Request 17, the language you quoted does not come from the Request, it comes from NFLPA/I's response. *See* October 27, 2025 Responses & Objections at 20-21 ("Subject to and without waiver of the foregoing objections, NFLPI agrees to conduct a reasonable search for and produce non-privileged internal Documents and Communications and Communications with OneTeam (to the extent such Communications exist) concerning Panini's performance, capabilities, business, reputation, or manufacturing abilities."). In my December 22 email, as to Request 17, I said "If NFLPI agrees to the rest of the proposal, Panini will accept the scope of what NFLPI has agreed to produce in response to this Request." While we agreed not to pursue the full scope of Request 17, we never agreed that NFLPA/I did not need to produce what it agreed to produce in its Responses and Objections. Please confirm by **Monday, April 13** that you will produce these documents, otherwise we will move to compel them.

### Search Terms and Custodians

You still have not shared with us NFLPA/I's search terms and custodians as repeatedly promised during meet and confers. Please immediately share these.

### Deficiencies with NFLPI's Production

Can you please clarify whether NFLPA/I's productions are complete? If so, we have identified several deficiencies:

1. We did not see any documents in the production from April 2021 through June 2023. Can you please clarify whether there were date limitations that were applied or otherwise explain the lack of documents from this time period?
2. The attachments associated with NFLPI-PANSUBPOENA-0001873 were withheld for privilege. Can you please explain the basis for withholding these documents? Also, please let us know when we can expect a privilege log.
3. We have not seen any communications that were broadly disseminated to the NFL Players or their representatives concerning the trading card licenses, though we understand that it is part of the PA's practice to send such communications. Can you please explain the absence of these documents? Did you attempt to locate these on a go-get basis?
4. We did not see any communications between NFLPA and the players or their representatives concerning Fanatics' right to use NFL Players' group licensing rights in NFL trading cards. Can you please explain the absence of these communications? We find it difficult to believe that there would not be any communications from the players or their representatives to the PA inquiring about their ability to sign licensing deals with Fanatics while the deal with Panini was still in place.



Request 9 in the first subpoena sought "All Documents and Communications constituting or relating to any pitch materials, proposals, business plans, marketing plans, presentations, studies, projections, or analyses concerning Sports Trading Cards provided to the NFLPA by Fanatics." Panini agreed to table this request, while reserving rights, pending its review of Fanatics' productions. Panini has identified gaps in Fanatics' productions, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that Fanatics sent to or shared with the NFLPA, which are missing. We are investigating, but we are concerned that the ▮▮▮▮▮▮▮▮▮▮ are not in Fanatics' possession. Accordingly, we are renewing this request as to ▮▮▮▮▮▮▮▮▮. We believe this discrete request is an easy go-get request that will impose no burden on the NFLPA to produce. Please confirm that NFLPA will produce these materials by **Monday, April 13**.

Best,

**Megan Nyman**
<span style="letter-spacing:0.2em">Associate</span>

**BOIES SCHILLER FLEXNER** LLP

401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL, 33301
(t) 954 356 0011
(m) 954 295 7513
mnyman@bsfllp.com
www.bsfllp.com

---

**From:** Dale, Adam I. <AIDale@winston.com>
**Sent:** Tuesday, March 24, 2026 9:46 AM
**To:** Megan Nyman <mnyman@bsfllp.com>; Jessica Mugler <jmugler@BSFLLP.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

**CAUTION**: External email. Please do not respond to or click on links/attachments unless you recognize the sender.

---

Megan,

As you know, our March 3 meet and confer concerned a subpoena to *Terese Whitehead*, not the NFLPA.  At the conclusion of that discussion, we briefly addressed the NFLPA's forthcoming production and that I anticipated it remained on schedule for later that week.  In response to a question about whether we were producing *all* arbitration documents, I reminded you and Meredith that we agreed to *review* all arbitration documents but would only produce documents that were otherwise responsive to the subpoena categories that we ultimately agreed to.  I also said that I had "*just started*" reviewing the proposed production and what I had seen to that point, in my incomplete review, was that the arbitration documents that would not be produced were communications with Fanatics and "business as usual" documents.  Your (improper) identification of a handful of documents that you believe do not fall within those categories does not, as you appear to be suggesting, make my statement untrue or misleading.  I was providing an informal "update" on our work to that point—not a definitive statement of our completed work.

We also disagree that we are "withholding relevant and responsive arbitration documents based on subjective and undisclosed interpretations of the agreed scope of the subpoena and the documents."  With one exception discussed below and not relevant here, there is no dispute about the scope of the agreed-upon production.  Rather, Panini appears to be taking the position that a document from February 2022— ██████████████ ████████████████████████████████████████████████████████████████ ████████████ —falls within the agreed-upon topic of "the NFLPA's decision to terminate Panini."  But the decision to terminate Panini and the termination itself occurred *eighteen months later* (in August 2023) and was based on events that began *more than a year later* (in spring 2023).  That is not an "undisclosed interpretation[];" it is what a panel of Arbitrators, including a Panini-appointed Arbitrator, concluded:

> It is undisputed that [then newly-elected NFLPA Executive Director Lloyd] Howell made the decision to terminate the License Agreement . . . after receiving legal advice from counsel regarding NFLPI's rights

under § 31 of the License Agreement [concerning a material change in executive management] and after considering a financial model showing the potential for declining future revenues if NFLPI were to continue to contract with Panini [citations omitted] . . . NFLPI was incorrect that it had the legal right to terminate the agreement, but Howell's decision to do so was not based on any collusive conduct with Fanatics or bad faith towards Panini.

Final Decision and Award at 29, *Panini v. NFLPI*, AAA Case No. 01-23-0003-7163, *submitted for confirmation in Panini Am. Inc. v. NFL Players, Inc.*, No,. 1:24-cv-06766-NRD (Sept. 9, 2024) (Dkt. 1-1).

Regardless of whether that finding is binding on Fanatics, it is indisputably binding on the relevant parties here: Panini and the NFLPA. We reject Panini's attempt to relitigate it now or to ignore it to impose an improper and overly broad scope of the subpoena that the parties did not agree to.

More fundamentally, we remain concerned that just days after violating the Protective Order from the arbitration, Panini continues violate it by using Confidential Information produced in that action to demand that NFLPI produce specific documents here.  As you know, we expressed serious concerns during the arbitration that Panini was using that action to secure information that it would then use in this litigation.  For that reason, Paragraph 13 of the Protective Order is specific that "Confidential Information shall be produced, *and may be used, solely for purposes of this Arbitration and any Related Action* [a motion to confirm/vacate]." (emphasis added).  And Paragraph 2 makes clear that "Confidential Information" is not limited to just documents; it includes their contents: any "materials or electronically stored information, in whole or in part." Panini is now using the NFLPA's Confidential Information from the arbitration to argue *in this different proceeding* that the NFLPA has not complied with its obligations under the subpoena.  We reserve all rights to seek redress for this violation, Panini's prior violation, and any others that Panini may engage in.

Nor may Panini serve a new subpoena or seek to broaden the agreed-upon scope of this one now that Panini has determined it is not happy with the bargain it struck.  *E.g.*, *Pinks v. M & T Bank Corp.*, 2016 WL 1216813, at *1, *4 (S.D.N.Y. Mar. 25, 2016) ("Parties should be encouraged to agree in discovery, [and] the information [Plaintiff] seeks is contrary to the Parties' discovery agreement" and "[t]o the extent that Parties enter into agreements on the best way to conduct discovery, courts should uphold and honor such agreements"); *Nova Biomed. Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 421 (S.D.N.Y. 1998) (affirming magistrate judge's order finding party "was not justified in serving a second subpoena to obtain documents from a non-party witness who had previously complied with a prior subpoena for documents and testimony").

With respect to the scope of the NFLPA's production, we did not agree to search for or produce documents in response to a standalone request for "internal Documents and Communications and Communications with OneTeam (to the extent such Communications exist) concerning Panini's performance, capabilities, business, reputation, or manufacturing abilities."  That language comes from subpoena Request No. 17.  On January 19, I wrote you an email summarizing our understanding of the parties' agreement, one of which was that "Panini has withdrawn Request[ ]. . . 17."  You responded on January 22, "with a few caveats," none of which addressed Request 17.  I responded on January 23, which also did not address Request 17, and later that day, you confirmed "we agree."  Of course, if any document falling within the agreed-upon scope of the subpoena also fits within the scope of Request 17, we will produce it.

We plan to make an additional production consistent with the parties' agreed-upon scope of the subpoena this week.

The NFLPA reserves all rights.

Best,
Adam



**ADAM DALE**
PARTNER

**T** +1 (212) 294-5329
aidale@winston.com

*Admitted to practice in New York*

**From:** Megan Nyman <mnyman@bsfllp.com>
**Sent:** Tuesday, March 17, 2026 6:43 PM
**To:** Jessica Mugler <jmugler@BSFLLP.com>; Dale, Adam I. <AIDale@winston.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

Adam,

As discussed with our team last week, we disagree that the document at issue (Exhibit G) was not responsive to the agreed scope of NFLPA/I's production.

In our meet and confer on March 3, you suggested that you were withholding very few arbitration documents and characterized the documents you were withholding as "business as usual items" and "communications with Fanatics." Unfortunately, it now seems that you are withholding relevant and responsive arbitration documents based on subjective and undisclosed interpretations of the agreed scope of the subpoena and the documents. We don't think there is any serious argument that Exhibit G is outside the agreed scope of the subpoena. Our team likewise recalls other arbitration documents that are plainly within the scope of the subpoena but were not produced here, such as the emails ███████████████████████████████████████ ██████████████████████████. Please let us know immediately whether you are taking the position these arbitration documents are outside the scope of the subpoena. If necessary, we are prepared to serve a new subpoena targeting the specific documents at issue to eliminate any ambiguity, but that does not seem like it should be required to resolve this issue.

Separately, your email raises other lingering issues that we should discuss. For example, please send your search terms and custodians as previously agreed. In addition, your description of the scope of what NFLPA/I agreed to produce excludes "internal Documents and Communications and Communications with OneTeam (to the extent such Communications exist) concerning Panini's performance, capabilities, business, reputation, or manufacturing abilities." But NFLPA/I agreed to produce these documents in its responses and objections. Please confirm that you are producing these documents?

Best,


**Megan Nyman**
Associate

## BOIES SCHILLER FLEXNER LLP

401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL, 33301
(t) 954 356 0011
(m) 954 295 7513
mnyman@bsfllp.com
www.bsfllp.com

---

**From:** Jessica Mugler <jmugler@BSFLLP.com>
**Sent:** Friday, March 13, 2026 3:50 PM
**To:** Dale, Adam I. <AIDale@winston.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Megan Nyman <mnyman@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

Adam,

Suffice it to say we disagree with many of your assertions, which we will not rehash here.  We write to confirm that (1) we have submitted the attached letter to the Court stating that Panini requests Exhibit G be removed from the docket and disregarded, and (2) Panini has deleted the PAN-NFLPI-FAN reproduction from its discovery database.

We will respond separately about your assertions about what NFLPI has agreed to search for and produce.

Thanks,

**Jessica Mugler**
Associate

## BOIES SCHILLER FLEXNER LLP

1401 New York Avenue, N.W.
Washington, DC 20005
(c) +1 636-697-6497
(d) +1 202-274-1169
jmugler@bsfllp.com
www.bsfllp.com

---

**From:** Dale, Adam I. <AIDale@winston.com>
**Sent:** Thursday, March 12, 2026 3:31 PM
**To:** Jessica Mugler <jmugler@BSFLLP.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Megan Nyman <mnyman@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

**CAUTION**: External email. Please do not respond to or click on links/attachments unless you recognize the sender.

---

Jessica,

As Dave previewed yesterday, Panini's response to its obvious (and egregious) violation of the arbitration

protective order is completely unacceptable.  Regardless of whether Panini believes that it is "entitled to have [the document] produced by NFLPI in this case"—which we dispute—the fact is that it *was not* produced in this case.  It was not Panini's prerogative to use it anyway and there is no excuse for Panini doing so.  Indeed, not only did Panini blatantly violate the arbitration protective order by retaining documents it was required to destroy, it comingled those documents with materials for its separate litigation with Fanatics, submitted one of to them to the Court, and misrepresented to the Court that it had been produced in that litigation.

That was not, as you suggest, just an error by "the person preparing the exhibits to the letter."  It is an obvious and systemic disregard of Panini's confidentiality obligations from top to bottom.  It was incumbent upon the author(s) and signatories of the letter to confirm that the document had, in fact, been produced in the litigation.  And it was incumbent on your firm to, at minimum, segregate documents produced in other matters from this one.  This is precisely why we are concerned about producing confidential, internal documents to Panini.  To that end, if the document (or any other NFLPI documents that were not produced in response to the subpoena) was transmitted to Fanatics when Panini presumably shared our subpoena production, please immediately claw it/them back and confirm that you have done so by close of business tomorrow.

Your proposal to "send a letter to the Court explaining that notwithstanding the fact that the document should have been produced in the case, Fanatics has already seen it, and it was filed under seal, it is [the NFLPA's] position that the Clerk should remove Exhibit G from the docket" is not acceptable.  Panini must, at minimum, write to the court explaining that it retained the document in violation of the protective order in the arbitration, it was not produced in this litigation, Panini should not have been in possession of it, the court should disregard it for purposes of Panini's motion, and *Panini* requests that it be removed from the docket, consistent with its protective order obligations.  Panini should make that submission to the court by close of business tomorrow.

As for your assertion that the document should have been produced in Panini's litigation with Fanatics, we disagree.  While it may have been responsive to Panini's initial, woefully overbroad, subpoena, it is not responsive to the far more narrow, agreed-upon scope of NFLPI's production.  As you know, after a lengthy negotiation, we agreed to search for and produce documents relating to: (1) NFLPA's decision to enter the license agreement with Fanatics; (2) NFLPA's decision not to affirmatively seek a formal offer from Panini to extend its license agreement; (3) NFLPA's decision to terminate Panini early, including Fanatics' recruitment and hiring of Panini employees in spring 2023; (4) WWE's termination of Panini's license; (5) communications with players/agents about Fanatics' rights to use the group licensing rights; and (6) complaints from card shops, distributors, etc. about Fanatics' contractual terms.

The document Panini improperly retained and submitted to the court falls into none of those categories.  Contrary to your apparent representation to the court, it does not in any way suggest that Fanatics and NFLPA discussed NFLPA terminating its license with Panini at any time or that Fanatics had any involvement in the NFLPA's decision to actually terminate the Panini license in August 2023.  It is a February 2022 email (nearly a year after the NFLPA entered the Fanatics license and more than a year before the NFLPA attempted to terminate the Panini license), which recounts ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████

Finally, your suggestion that there are "other responsive documents [NFLPI] ha[s] withheld thus far" raises additional concerns that Panini continues to violate or circumvent the arbitration protective order.

The NFLPA reserves all rights.

Best,
Adam



**ADAM DALE**
PARTNER

T  +1 (212) 294-5329
aidale@winston.com

*Admitted to practice in New York*

**From:** Jessica Mugler <jmugler@BSFLLP.com>
**Sent:** Wednesday, March 11, 2026 3:55 PM
**To:** Dale, Adam I. <AIDale@winston.com>
**Cc:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Megan Nyman <mnyman@bsfllp.com>; Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** RE: Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

Adam,

Please see attached.  This document, which relates to Fanatics' ██████████████████ ████████████████████████ is clearly responsive to our subpoena and we are entitled to have it produced by NFLPI in this case.  In this context, the person preparing the exhibits to the letter thought that the "PAN-NFLPI-FAN" Bates prefix corresponded to the Fanatics case.  To be clear, we destroyed all the documents with "NFLPI_" Bates prefix numbers pursuant to the NFLPI protective order, but this "PAN-NFLPI-FAN" reproduction made to Fanatics during the arbitration was inadvertently not deleted.

We are prepared to send a letter to the Court explaining that notwithstanding the fact that the document should have been produced in the case, Fanatics has already seen it, and it was filed under seal, it is your position that the Clerk should remove Exhibit G from the docket.

Let us know how you would like to proceed.

We can confirm that we will also delete the "PAN-NFLPI-FAN" reproduction from our database that was inadvertently preserved.  This, of course, does not change NFLPI's obligation to fully comply with the subpoena in this case, pursuant to which Panini and Fanatics will again receive this document anyway, in addition to other responsive documents you have withheld thus far.

Thanks,

**Jessica Mugler**
Associate

**BOIES SCHILLER FLEXNER** LLP

1401 New York Avenue, N.W.
Washington, DC 20005
(c) +1 636-697-6497
(d) +1 202-274-1169
jmugler@bsfllp.com

www.bsfllp.com

---

**From:** Dale, Adam I. <AIDale@winston.com>
**Sent:** Wednesday, March 11, 2026 8:19:11 AM
**To:** Stuart Singer <ssinger@bsfllp.com>; David Boies <DBoies@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>; Meredith Schultz <mschultz@bsfllp.com>; Megan Nyman <mnyman@bsfllp.com>
**Cc:** Kessler, Jeffrey L. <JKessler@winston.com>; Greenspan, David <DGreenspan@winston.com>; Viebrock, Sarah L. <SViebrock@winston.com>
**Subject:** Panini v. Fanatics - NFLPA Document Submitted with Motion to Compel

**CAUTION: External email. Please do not respond to or click on links/attachments unless you recognize the sender.**

---

Counsel,

Please immediately send us the document attached as Exhibit G to Panini's motion to compel submitted to the Court last night in the *Panini v. Fanatics* matter.  Your motion indicates that the document was produced by the NFLPA "in response to a third-party subpoena."  However, the Bates prefix on the document (PAN-NFLPI-FAN) is not the prefix that we used for our production (NFLPI-PANSUBPOENA) and the Bates number (00000084) corresponds to a document discussing ███████████████, which we can't imagine would be what your motion was citing.

The NFLPA reserves all rights.

Best,
Adam



**ADAM DALE**
PARTNER

**T**  +1 (212) 294-5329
aidale@winston.com

200 Park Avenue, New York, NY 10166-4193

*Admitted to practice in New York*

---

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other