LATHAM&WATKINSLLP                    quinn emanuel trial lawyers | new york

August 3, 2026

**Via ECF**

The Honorable Valerie Figueredo
United States District Court Magistrate Judge, S.D.N.Y.

Re: *Panini Am., Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023)

Dear Judge Figueredo:

    Fanatics writes to advise the Court of recent deposition testimony from a key Panini executive (D.J. Kazmierczak) that bears on Fanatics' pending motion to compel documents concerning Wild Card's allegations against Panini. ECF 332. Specifically, Mr. Kazmierczak's testimony shows that Wild Card-related discovery will be highly relevant to product market definition and should be produced for that reason, in addition to the reasons set forth in Fanatics' prior submissions. ECF 332 at 4-5; ECF 365; *see also* ECF 351 at 125:14-140:10.

    Product market definition is "essential to any antitrust case" and a central disputed issue in this matter. *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 955 (9th Cir. 2023). Panini defines relevant markets that are limited to only "newly issued" and "fully licensed" sports trading cards. ECF 69 ¶¶ 33, 42-43, 67. Panini then further narrows those "newly issued" and "fully licensed" sports trading cards to only three professional sports: MLB, NBA, and NFL. *Id.* ¶¶ 42, 67. Fanatics vigorously disputes Panini's alleged market definition. Fanatics is, accordingly, permitted to rebut those allegations with evidence that Panini actually views its products as competing in a much broader market. *See, e.g.*, *In re Apple iPhone Antitrust Litig.*, 2021 WL 718650, at *2 (N.D. Cal. Feb. 24, 2021) ("Apple is entitled to take discovery to support its arguments in favor of a broad market definition.").

    Discovery from Panini has discredited and continues to discredit Panini's artificial limitation of the market to only "fully licensed" trading cards, including by showing that trading cards bearing marks for a professional league and the league's players' association compete with trading cards bearing none of those marks, or less than all of them. For example, at his July 22 deposition, Mr. Kazmierczak (Panini's SVP of Operations) testified that ███████████ ███████████ —even though Wild Card does not make "fully licensed" trading cards. Ex. A at 58:22-59:21.[1] He also testified that ████████████████ ██████ —i.e., "athlete-licensed" cards, which Wild Card makes— ███████████ . *See, e.g.*, *id.* at 59:22-66:10 (████████████ ████████████████████████ ; *see also id.* at 72:24-73:2 (Mr. Kazmierczak: ████████████████████ ██████████████████ ).

    The materials Fanatics has sought from Panini related to Wild Card will therefore be highly relevant to rebutting Panini's product market allegations. Wild Card alleges that Panini engaged

---

[1] Panini may contend that Wild Card and Panini are competitors now but were not competitors in prior years, when Panini had the rights to make "fully licensed" NFL and NBA cards. But in 2021, when Panini allegedly tried to sideline Wild Card, Panini held the NFL and NBA licenses. Wild Card Compl. ¶¶ 19-20.

in anticompetitive conduct to "foreclose[]" Wild Card from the "relevant markets" and "eliminate[] a nascent competitive threat." Wild Card Compl. ¶¶ 3, 44. If Panini's "fully licensed" cards did not compete with Wild Card's athlete-licensed cards, then Wild Card would not have been an alleged "competitive threat" to Panini. *Id.* ¶ 44. Discovery from Panini into Wild Card's allegations will shed important light on the competitive dynamics between "fully licensed" and athlete-licensed cards.

The requested discovery will be particularly relevant to the August 25, 2026 deposition of Kevin Haake (Panini's VP of Sales), who is mentioned by name in Wild Card's complaint as the individual who made the alleged threats at issue in Wild Card's suit. *Id.* ¶ 22.

For the reasons previously articulated and for the emerging reasons above, Fanatics respectfully requests that the Court grant its motion to compel Panini to produce documents responsive to RFPs 104-06. *See* ECF 332 at 4-5; ECF 332-28 at 4.

Respectfully submitted,

/s/ *Michael B. Carlinsky*
Michael B. Carlinsky
Quinn Emanuel Urquhart & Sullivan LLP
295 Fifth Avenue
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
(212) 849-7000

*Counsel for Fanatics*

/s/ *Lawrence E. Buterman*
Lawrence E. Buterman
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com
(212) 906-1264

*Counsel for Fanatics*

2