

August 4, 2026

<u>Via ECF</u>

The Honorable Valerie Figueredo
United States District Court Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

> Re: *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF
> (S.D.N.Y. 2023) – Response to Fanatics' Second Supplemental Letter

Dear Judge Figueredo:

We write on behalf of Plaintiff Panini America, Inc. ("Panini") in response to Fanatics' second unauthorized supplemental letter, ECF No. 408, in support of its motion to compel production of documents concerning Wild Card, Inc.'s ("Wild Card") allegations against Panini in a separate proceeding to which Fanatics is not a party. The Court's briefing order permitted a single seven-page letter—at Fanatics' own request—and did not authorize supplemental briefing. Fanatics' second supplemental letter nonetheless advances, for the first time, a market-definition theory that it could have raised in its Letter Motion, ECF No. 331, or at the June 16, 2026 conference, where it argued the Wild Card issue at length. This new argument is improper, untimely, and should be stricken. Serial supplementation deprives Panini of the orderly briefing the Court prescribed and an opportunity to respond to Fanatics' arguments at the hearing. As set forth below, Fanatics' new argument also fails on the merits. Panini respectfully requests that the Court strike the letter and deny Fanatics' motion to compel Requests 104–106.

## I.      Wild Card Discovery Is Not Relevant

Nothing in Fanatics' latest submission undermines Panini's previous arguments against the discovery Fanatics seeks relating to Wild Card. First, the Court has already decided this issue and rejected an attempt by Fanatics to seek discovery relating to Wild Card. On January 5, 2026, the Court denied Fanatics' motion to compel Requests 77 and 79—which sought documents concerning allegations "by any Person, including Wild Card, Inc." of Panini misconduct. *See* ECF No. 273 at 2. Requests 104–106 seek the same category of information, and narrowing an irrelevant request does not make it relevant.

Second, Fanatics' entire argument rests on treating Wild Card's unproven allegations as established fact. Those claims remain contested; Panini has moved to dismiss them, no factfinder has assessed their merits, and no evidence has been adduced to support them. Panini's distribution practices do not bear on whether Fanatics violated the antitrust laws, and even if Wild Card's allegations were proven, they would not establish that Fanatics' conduct was lawful or an "industry norm" immunizing it from liability. Panini's initial response details the distinctions between



Panini's allegations, which were sustained by Chief Judge Swain, and Wild Card's untested allegations in a separate proceeding. *See* ECF No. 373 at 2.

Finally, the Wild Card discovery Fanatics seeks to compel ***does not bear on market definition***. Even accepted at face value, Fanatics' market-definition rationale does not match the discovery it seeks. Request 104 seeks documents about an "October 2021 distributor meeting" described in Wild Card's complaint; Request 105 concerns Wild Card's claim that Panini warned distributors of "consequences" for carrying Wild Card products; and Request 106 concerns Wild Card's allegation that Panini threatened a manufacturer. ECF No. 332-28 at 4. Whether Panini said something to a distributor at a 2021 meeting reveals nothing about which products consumers view as substitutes for licensed NFL, NBA, and MLB trading cards—the relevant product market alleged in Panini's Amended Complaint. Am. Compl. ¶ 42.

Discovery genuinely directed at market definition is already underway and will be addressed further through expert discovery. Panini has agreed to extensive discovery that bears on market definition and competition in the industry going back to 2017. *See* ECF No. 373 at 3. Relevant to Fanatics' newest theory, Panini has also agreed to produce documents concerning whether unlicensed sports trading cards compete with licensed sports trading cards (Request 21) and demand, competition, or the sale of unlicensed trading cards (Request 22).

## II.    Mr. Kazmierczak's Deposition Testimony Does Not Change the Analysis

Fanatics' latest letter invokes D.J. Kazmierczak's fact deposition testimony, claiming he ███████████████████████████████████████ and using that purported admission as a hook to contend Wild Card discovery will be probative of the relevant market. But as explained above, Requests 104–106 do not seek documents bearing on the relevant market, rendering this argument irrelevant.

Fanatics' new argument also mischaracterizes the record. Mr. Kazmierczak's testimony ████████████████████████ speaks only to ***present-day*** competition—a landscape in which Panini has been relegated to manufacturing unlicensed trading cards precisely ***because*** Fanatics has foreclosed 100% of the relevant market by locking up the NFL, NFLPA, NBA, NBPA, MLB, and MLBPA licenses for unprecedentedly long terms. That foreclosure has confined Panini to producing less-desirable, unlicensed cards. When asked ██████████████████ ██████████ Mr. Kazmierczak answered, ██████████████████████████ ECF No. 407-1, Defs.' Dep. Excerpts, Tr. 58:22–24 (emphasis added). The context is significant: Mr. Kazmierczak drew a distinction between ████████████████ and ████████████████ *Id.* 59:19–21. Testimony that ████████████ ████████████████████████ is entirely consistent with the fully licensed Major U.S. Professional Sports Leagues trading card market that Panini alleges.

No other portion of the testimony excerpted by Fanatics establishes that fully licensed cards compete with unlicensed cards. Indeed, the passages in Exhibit A to Fanatics' supplemental letter cut the other way. Asked ████████████████████████████ ████████████████, Mr. Kazmierczak testified that ████████████████ ████████████████████ *Id.* 61:16–22. He explained that ████████████



███████████████████████ *Id.* 61:24–62:4. As to game-worn memorabilia offerings in unlicensed cards, he also testified: ███████████████████ *Id.* 65:10–12. And while Fanatics highlights Mr. Kazmierczak's testimony that ████████████████████████████████████████████████████ but he is ██████████████████████ *Id.* 68:10–12.

Fanatics' selective excerpting omits other portions of Mr. Kazmierczak's testimony that contradict its characterization. For instance, Mr. Kazmierczak testified that ████████████████████████████████████████████████ Ex. A, Pl.'s Dep. Excerpts, Tr. 137:21–138:2. He also testified that ███████████████████████████████████████████████████ *Id.* 240:17–21; 241:1–7. And the ████████████████████████████████████████████████████. *Id.* 242:8–13. In any event, that some consumers purchase both unlicensed and licensed trading cards does not establish that consumers view these products as interchangeable. As a fact witness, Mr. Kazmierczak testified to observable facts about Panini's business—facts that are consistent with the relevant market Panini alleges. The economic question of whether licensed and unlicensed cards are interchangeable in the eyes of consumers is a core market-definition issue that will be resolved through expert economic analysis.

For the foregoing reasons, Panini respectfully requests that the Court (1) strike Fanatics' second unauthorized supplemental letter and (2) deny Fanatics' motion to compel responses to Requests 104–106.

Respectfully submitted,

*/s/Stuart H. Singer*

Stuart H. Singer*
Sabria A. McElroy*
Meredith Schultz*
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
mschultz@bsfllp.com

David Boies
Eric Brenner
**BOIES SCHILLER FLEXNER LLP**



55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com

*Counsel for Panini America, Inc.*

*\*pro hac vice*

cc:    All Counsel of Record (by ECF)