# EXHIBIT B

BSF | BOIES SCHILLER FLEXNER

July 23, 2026

**VIA EMAIL**

Lawrence E. Buterman
Latham & Watkins, LLP
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com

Michael B. Carlinsky
Kathryn D. Bonacorsi
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
kathrynbonacorsi@quinnemanuel.com

**Re: *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023) – Response to Fanatics' July 9 Letter Regarding Francesca Baroni**

Counsel:

We write in response to Fanatics' July 9, 2026 letter concerning Panini's assertion of attorney-client privilege over the documents of Panini S.p.A. board member Francesca Baroni. To start, your claimed concern over BSF's access to Fanatics' license agreements is specious given that Fanatics itself—not its outside counsel—obtained unauthorized access to Panini's most confidential information and used that information to obtain 20-year, exclusive licenses away from Panini. Further, your attempts to misconstrue Italian law to weaponize it against the protections owed by Ms. Baroni to her clients are baseless and promulgated on fundamental misunderstandings of Italian law.

## I. Fanatics' License Information Complaints Ring Hollow Given Fanatics' Use of Panini Confidential License Information.

Throughout your letter, you brazenly assert purported concerns over the effect that Ms. Baroni's status as outside counsel has on the "negotiations over the protective order" and "the production of Fanatics' license agreements." Fanatics' July 9 Ltr. at 1-2, 4. You suggest that Panini made assertions "in an effort to persuade the Court to grant Panini's outside counsel access to the terms of Fanatics' most sensitive commercial agreements." *Id.* at 2. These complaints are baseless and hypocritical. As explained previously, Panini has not shown Fanatics' license agreements—or any OCEO materials—to Ms. Baroni.

[redacted]

BSF

[redacted] *See* FAN-PAN-SDNY00432810 at -812, -810-11. This is the very same type of information that Fanatics has repeatedly represented as the "most sensitive and proprietary commercial agreements" in the company, ECF No. 129 at 7, and the economic terms Fanatics acquired are "among the most competitively sensitive information in the license agreements," the disclosure of which "would be extremely harmful to competition," ECF No. 179 at 2; *see also* ECF No. 126 (Nov. 7, 2024 Tr.) at 21:2-3 ("***these agreements reflect some of the most sensitive documents that the company has***") (emphasis added), 24:10-12 ("the most sensitive documents, competitively sensitive documents"), 24:22-23 ("the most competitively sensitive and impactful documents"), 27:18-19 ("These are the most critically sensitive documents."), 28:24-25 ("the most sensitive documents in the company"), 30:25 ("the secret sauce"), 31:9-16 ("the most sensitive stuff . . . the most confidential, sensitive documents in the company"), 35:25 ("the most sensitive documents that the company has"); ECF No. 129 at 3 (licenses contain "confidential, commercially-sensitive information pertaining to key aspects of its business"), 43:5 ("the most confidential document"); ECF No. 131 at 1 ("highly-confidential, competitively-sensitive"); ECF No. 136 (Dec. 12, 2024 Tr.) at 25:14-25 ("most sensitive commercial documents").

Fanatics' attempts to throw blame at BSF in an apparent attempt to cover its own tracks in this area are not well taken. Panini's clients do not have access to Fanatics' confidential license agreements. Fanatics cannot say the same.

## II. Panini's Assertions Regarding Outside Counsel Eyes' Only Designations Have Not Changed.

Fanatics' argument regarding Outside Counsel Eyes' Only ("OCEO") designations fails because it is based on the incorrect presumption that BSF has shared Fanatics' OCEO materials with Ms. Baroni. Fanatics' July 9 Ltr. at 1-2. As explained previously, Panini has not shared OCEO information with Ms. Baroni. Panini's June 23 Ltr. at 2. Accordingly, Panini's representations to the Court that Panini would not have access to OCEO documents remain true.

## III. Panini's Assertions Regarding Ms. Baroni Have Not Changed.

Similarly, Panini's representations regarding Ms. Baroni's role have remained constant. In its letter, Fanatics repeats the same arguments it raised previously and that Panini refuted in its June 23 letter. These arguments are baseless and, frankly, insulting. As explained now multiple times, Ms. Baroni is a Panini S.p.A. board member. She is not a Panini S.p.A. employee and is not in-house counsel. She is a licensed attorney at an outside firm who occasionally provides legal advice to Panini S.p.A. We are confused by your characterization of this information as "perplexing." Fanatics' July 9 Ltr. at 2.

Nor do we understand any claim of surprise over Ms. Baroni's role. Your letter again acknowledges our December 2025 correspondence stating that Ms. Baroni is legal counsel. *Id.* at 4. Moreover, your letter does not even acknowledge the documents raised by Panini showing that Fanatics has known of Ms. Baroni's role since ***at least September 2021***. Panini's June 23 Ltr. at 1 (citing FAN-PAN-SDNY00028342; FAN-PAN-SDNY00962754; FAN-PAN-SDNY00778458; FAN-PAN-SDNY00774118). Any claimed surprise is not credible.

BSF

The only new allegation you levy in your most recent letter is that Ms. Baroni's status as a licensed Italian attorney is somehow questionable based on the absence of a website for her law practice. This suggestion lacks merit. There is no obligation for an attorney to maintain a website or any online presence. Indeed, for decades, advertising by Italian attorneys was strictly prohibited under the Italian Code of Professional Ethics, and it was only partially liberalized by Legislative Decree No. 223/2006 (the so-called "Bersani Decree") and subsequently by Law No. 247/2012. The absence of a website is, to this day, entirely irrelevant to the verification of an attorney's professional status.

Moreover, Ms. Baroni's enrollment in the Bar of Bologna (*Albo degli Avvocati di Bologna*) is a matter of public record and can be verified by any party through the official search portal of the Italian National Bar Council (*Consiglio Nazionale Forense*, or "CNF") at https://www.consiglionazionaleforense.it/. Fanatics had had this search portal available to it all along. The suggestion that the lack of a private website could cast doubt on Ms. Baroni's professional qualifications is without basis in any requirement of the legal profession.

Finally, you now for the first time complain that Panini did not disclose that "Ms. Baroni has an ownership interest in Panini." Fanatics' July 9 Ltr. at 3. Even if this is true, Ms. Baroni's ownership interest has no relevance to her status as a lawyer or the privilege questions at issue, Panini had no obligation to disclose it to you, and your own letter confirms that this is publicly-reported information that was available to Fanatics.

## IV. Responses to Fanatics' Questions

Panini is withholding approximately 47 documents on the basis of Ms. Baroni's role as outside counsel. Of those 47, approximately 46 are withheld in full and one is redacted.[1] This is reflected in Panini's privilege log served on July 20, 2026. However, please note we are issuing a second log for documents produced in redacted form, and it is possible that Ms. Baroni may constitute counsel on one or more of those documents. Inadvertently, entries for redacted documents were not included in Panini's initial privilege log, which Fanatics raised to us. We are working to remedy this and will issue a new log shortly.

Documents withheld or redacted because of Ms. Baroni's status as outside counsel will be reflected in Panini's current and any further privilege logs throughout the entire relevant period. Note that as part of Ms. Baroni's work, she has regular discussions with BSF, and those of course are privileged communications. Her communications with BSF, or other outside counsel, may not be logged under ESI Protocol ¶ 41.b. and e.

Ms. Baroni has at times provided legal advice on matters within her role as outside counsel, including reviewing and advising on various agreements related to the potential license acceleration transaction with Fanatics, GCP agreements, certain licensor agreements, and agreements with financial advisors. She has also represented Panini in court in Italy.

---

[1] Of course, documents Ms. Baroni appears on in the privilege may also be withheld for a completely different reason than her role as outside counsel, including because of the role of other counsel, such as Gibson Dunn, on the email. Documents withheld on other grounds such as this are not included in the count of 47.

BSF

Panini confirms that it will continue to not share Highly Confidential or OCEO material with Ms. Baroni.

Finally, Fanatics has no right to seek engagement agreements or invoices for one of Panini's lawyers, and, as to Ms. Baroni and/or Studio Baroni in particular, such materials are irrelevant to their status as counsel.

## V. Fanatics Cannot Show Any Unfair Prejudice.

Fanatics asserts it is prejudiced by the withholding of Ms. Baroni's privileged communications because "communications between Ms. Baroni and Lincoln International" cannot be privileged. Fanatics' July 9 Ltr. at 3. But an attorney's communications with a financial advisor may be protected. It is well established that "An agent, such as a financial advisor, may have communications with an attorney that 'are covered by the attorney-client privilege if the financial advisor's role is limited to helping a lawyer give effective advice by explaining financial concepts to the lawyer.'" *Pearlstein v. BlackBerry Ltd.*, 2019 WL 2281280, at *2 (S.D.N.Y. May 29, 2019) (quoting *Urb. Box Off. Network, Inc. v. Interfase Managers, L.P.*, 2006 WL 1004472, at *3 (S.D.N.Y. Apr. 18, 2006)).

In *Pearlstein*, the court analyzed *in camera* redacted communications between Defendant BlackBerry and its financial advisor JP Morgan. In one communication, JP Morgan provided "BlackBerry's outside counsel with information about certain strategic and transactional matters about which it had expertise so that BlackBerry's counsel could give effective legal advice about what could be said publicly about those matters." *Id.* In another, "JP Morgan, as BlackBerry's agent, was seeking legal advice for BlackBerry." *Id.* The court found that both communications were privileged because they were "communications between and among a company, its outside counsel and financial advisor regarding legal advice." *Id.*

The same principle applies here. [redacted] The redacted emails therefore plainly constitute "communications between and among a company, its outside counsel and financial advisor regarding legal advice" and are therefore privileged. *Id.* Fanatics' cases are inapposite because they did not involve communications conveying legal advice.

## VI. Italian Law Protects Ms. Baroni's Rendering of Legal Advice.

Finally, Fanatics attempts to assert that Panini cannot withhold legal advice rendered by Ms. Baroni under Italian law. This is baseless. Fanatics' letter shows that it is confusing basic concepts of Italian corporate law and conflating fundamentally distinct corporate roles under Italian law.

Italian company law (Articles 2380-*bis* through 2396 Italian Civil Code) draws a clear and well-established distinction between a non-executive director **(*consigliere semplice*)**, an executive

BSF

director (***consigliere delegato* or *amministratore delegato***), and a chairman of the board (***Presidente del CdA***). Ms. Baroni serves as a non-executive director of Panini S.p.A., which, under Italian law, means she is a board member without managerial delegation, whose functions are limited to collective deliberation, strategic oversight, and supervisory duties pursuant to Article 2381(3) of the Italian Civil Code. A non-executive director does not participate in the day-to-day management of the company and holds no individual operational powers. This is readily verifiable through the publicly available corporate registry filing of Panini S.p.A. at the Chamber of Commerce of Modena.

Fanatics cites a 2003 decision of the CNF (No. 165/2003) to suggest that Ms. Baroni's corporate role may be "incompatible with recognition as an *avvocato* (i.e. a lawyer) under Italian law." Fanatics' July 9 Ltr. at 4. This argument is legally incorrect and factually inapplicable. The consolidated jurisprudence of the CNF and of the Italian Supreme Court, also sitting in Joint Chambers (*Sezioni Unite*), has conclusively established that the incompatibility between a corporate directorship and the legal profession arises **only** where the directorship entails the **actual exercise of managerial powers**. Ms. Baroni's role as a non-executive director does not implicate these principles. Indeed, the ruling you cite affirms that the role of attorney is fully compatible with the roles of non-executive director (i.e., member of the board of directors "consigliere semplice")—which are precisely the circumstances applicable to Ms. Baroni in the present case.

Fanatics' reliance on Ms. Baroni's status as an "owner"/**shareholder** of Panini is equally misplaced. The CNF has repeatedly confirmed (including in the decision cited by Fanatics) that the mere holding of shares in a company (*società di capitali* )—even a significant shareholding—does not trigger any incompatibility with, and has no effect on the independence of, the legal profession, as share ownership constitutes a passive capital investment and carries no management prerogatives (*see*, Cass. SS. No. 11151/1997, and CNF Decision No. 45/1991; CNF Decision No. 129/1996; CNF Decision No. 165/2003).

Finally, Fanatics' reliance on the Court of Justice of the European Union's decision in *Akzo Nobel Chemicals Ltd. v. Commission* (Case C-550/07 P) is fundamentally misplaced. That case addressed the question of legal professional privilege in EU competition proceedings as applied to communications with in-house lawyers. In-house lawyers are attorneys who are employees of the undertaking and therefore in a relationship of structural subordination to their employer, and who—notably—cannot be admitted to the Italian bar. In that case, the CJUE stated that in-house lawyers are not protected, because such lawyers lack the requisite independence. The critical factual premise in *Akzo Nobel* was the existence of an employment relationship creating hierarchical dependency between the lawyer and the entity.

By contrast, Ms. Baroni is not an employee of Panini; she has no employment contract with the company and is not subject to any form of hierarchical direction. Rather, she is a practitioner admitted to the Bar of Bologna, who operates her own law practice and provides legal advice to Panini S.p.A. in that autonomous professional capacity. Her position as a non-executive director does not alter that analysis: board membership is conceptually separate from the status of in-house counsel, and a non-executive directorship—which carries no managerial delegation and no operational responsibilities—does not create the kind of "personal, functional, structural and hierarchical integration" that was determinative in the *Akzo Nobel* ruling.

BSF

In short, as explained previously, Italian law imposes a duty of professional secrecy on lawyers, backed by procedural protections that give that duty practical effect. The protection of legal professional privilege is, furthermore, firmly rooted in European law. Under these principles, Fanatics has no basis to violate the protections that the Italian and EU legal order afford Ms. Baroni's communications when she acted as a lawyer on Panini S.p.A.'s behalf.

Regards,

*/s/ Stuart Singer*

Stuart Singer
Sabria McElroy
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com