# EXHIBIT H

BOIES SCHILLER FLEXNER

May 22, 2026

**VIA ELECTRONIC MAIL**

Alicia Jovais
Lawrence E. Buterman
Latham & Watkins, LLP
1271 Avenue of the Americas
New York, NY 10020
alicia.jovais@lw.com
lawrence.buterman@lw.com

Kathryn Bonacorsi
Michael B. Carlinsky
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
kathrynbonacorsi@quinnemanuel.com

**Re: *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF – Response to Fanatics' May 11, 2026 Letter**

Counsel:

We write in response to your May 11, 2026 letter. Your letter paints a misleading picture of Panini's discovery, and, in many instances, ignores the explanations we have already provided. We address your claims below.

**a. Custodial Productions**

You have alleged deficiencies in Panini's productions from its custodians. While we are reviewing the points raised by your letter to ensure a complete response, and therefore may supplement this response as appropriate, it appears that your letter reflects a misunderstanding of the scope of the custodians' respective roles.

The cause of action centers on Panini America, not its parent company, Panini S.p.A., based in Italy. As such, most of the responsive documents will originate from Panini America custodians rather than from Panini S.p.A. custodians. Similarly, Panini designating an individual as a custodian is not a representation of the volume of his or her responsive documents. Instead, it means that we anticipate that the custodian may have data relevant to the claims and defenses in this litigation.

A smaller volume of responsive documents is therefore not indicia of a deficient production; it is the natural result of the custodian's actual involvement (or lack thereof) in the

underlying conduct at issue, particularly for non-Panini America employees and non-employee custodians, as discussed below.

Your reliance on the Court's observation that Panini S.p.A. materials may be relevant to issues such as market definition and the value of licenses does not change this analysis. Panini has searched for and produced documents from S.p.A. custodians responsive to those topics. Panini has not withheld otherwise responsive documents on the grounds that they are within a Panini S.p.A. custodian's files.

Furthermore, Fanatics points to alleged gaps in data responsive to requests that stretch back, for some requests, to 2009. Fanatics should anticipate a loss or partial loss of historic data over time in the ordinary course of business such that there are fewer records from decades ago than there are from more recent years. Indeed, prior to 2022, Panini S.p.A. had no formal data retention policy. As you are aware, Panini had no duty to preserve documents related to this litigation prior to 2023. We are not aware of any deletion of data that occurred after Panini's duty to preserve data in connection with this litigation arose and when that data was collected.

You have made inquiries concerning the data of several custodians, and we will address them in turn, although, as noted above, our investigation is ongoing.

We have also discovered a technical error in the population of the ALLCUSTODIAN metadata fields. Specifically, some custodial documents may not have every custodian represented in that metadata field. This technical could have affected your counts of documents per custodian. We anticipate providing an overlay of metadata to correct for that error.

i. <u>Ivam Faria</u>

As you recall, Mr. Faria only has recent involvement in Panini America, namely, when he became CEO of Panini S.p.A. on April 22, 2025. Prior to becoming CEO, Mr. Faria oversaw Panini's South American operations, which are not at issue in this litigation. As we advised in our February 3, 2026 email correspondence, we agreed to search Mr. Faria's documents from April 22, 2025, to July 31, 2025. Fanatics did not object to this date range. The number of responsive documents he possesses is proportionate to his limited tenure and limited role. Further, the fact that Mr. Faria executed certain license agreements on behalf of Panini America does not mean he engaged in voluminous day-to-day correspondence regarding those agreements.

You claim it is "not credible" that Mr. Faria has only 47 responsive documents, yet Mr. Faria is a custodian on documents for less than four months. Based upon our initial investigation, we have produced 595 documents on which Mr. Faria was included in some fashion, inclusive of families. Either way, the production results were generated through the application of search terms negotiated by both parties for a limited, 101-day period. Moreover, that some of the 47 documents are from the same email thread is unremarkable—email threads are how business communications function, and each message within a thread may contain distinct substantive content.

ii. <u>Aldo Sallustro</u>

Panini collected Mr. Sallustro's electronic data hosted on Panini servers as well as his hard copy documents. Panini does not have possession, custody, or control of Mr. Sallustro's cell phone

data, to the extent any such data exists. In response to your letter, and in an abundance of caution, we are in the process of evaluating Mr. Sallustro's null set to ensure our review accuracy.

You also state that there are "zero documents in 2012 and 2020 and only six emails (with attachments) from 2017-2019," noting that Mr. Sallustro was "on the 'cc' line" of emails produced from other custodians that were not produced by Mr. Sallustro. Notwithstanding the fact that Fanatics is in possession of those emails from productions from other custodians, Panini S.p.A. had no document retention policy prior to 2022, and no duty to preserve documents related to this litigation arose until 2023. Accordingly, Panini had no duty to preserve Mr. Sallustro's documents during the 2017-2019 period, let alone in 2012. The absence of emails from as far back as 14 years ago, which neither the company nor the custodian had any duty to preserve, is not evidence of a "fail[ure] to produce" documents—it is merely evidence that data was not retained in the ordinary course of business long before any preservation obligation arose. Moreover, the fact that one version of an email exists in another custodian's records is serendipitous; it does not mean it "should exist" in Mr. Sallustro's records, particularly prior to the attachment of any duty to preserve such emails. To assert otherwise is to manufacture disputes without justification.

iii. Anna Baroni and Francesca Baroni

As we previously advised at our August 27, 2025 conferral, and again in our September 3, 2025 email correspondence, neither Ms. Anna Baroni nor Ms. Francesca Baroni are Panini employees. Instead, they are members of Panini S.p.A.'s Board of Directors, and they are not involved in the day-to-day operations of Panini. We advised that we did not consider them to be appropriate custodians, noting we did not seek Fanatics' board members as custodians, but we agreed to add them to the custodian list in the interest of compromise. It is not credible to claim surprise that Ms. Anna Baroni and Ms. Francesca Baroni have a smaller volume of documents that is consistent with their limited roles.

iv. Anna Baroni

You note that there are no documents from Ms. Anna Baroni before 2016, few documents from 2016, 2017, and 2022, and none from the first half of 2023. As noted above, no duty to preserve documents arose until 2023. A low volume of documents from a non-employee Board member without a Panini email account—particularly from a decade ago—is not inconsistent with these circumstances. Ms. Anna Baroni's production reflects the reality of her limited involvement, not any deficiency in Panini's collection or production efforts.

v. Francesca Baroni

You note that there are no documents from Ms. Francesca Baroni from before 2017, few in 2017, 2018, and 2019, and none after July 19, 2023. As with Ms. Anna Baroni, Ms. Francesca Baroni had no duty to preserve documents before 2023, and the same reasoning applies to the low volume of pre-2023 documents. Moreover, Ms. Francesca Baroni is an attorney. In that capacity, she rendered legal advice to Panini S.p.A. Accordingly, we are currently withholding responsive documents from Francesca's custodial collection on the basis of attorney-client privilege and/or work product privilege. Those documents are subject to our ongoing secondary privilege review; accordingly, we anticipate making a further production of Francesca Baroni's custodial documents through this secondary privilege review process.

BSF

vi. Peter Harris

Mr. Harris concluded his employment at Panini S.p.A. in 2022, and no custodial documents exist for Mr. Harris after December 20, 2022. Panini has produced responsive, non-privileged documents collected from Mr. Harris, but notes that some documents from Mr. Harris's files are subject to our ongoing secondary privilege review and may be subject to production. In response to your letter, and in an abundance of caution, we are in the process of evaluating Mr. Harris' null set to ensure our review accuracy.

vii. Peter Warsop

Any gaps in Mr. Warsop's documents from 2011 to 2013 are attributable to either routine data management practices during a period when no preservation obligation existed or the absence of documents containing negotiated search terms during those periods. Panini has produced all responsive, non-privileged documents collected from Mr. Warsop. In response to your letter, and in an abundance of caution, we are in the process of evaluating Mr. Warsop's null set to ensure our review accuracy.

**b. Text Messages**

When you alerted us to an issue with the text messages, we promptly conducted an investigation, identified the technical problem (incorrectly populated date metadata in certain rsmf files), and undertook a review of the newly-identified text messages. We produced many text messages to you last week, and anticipate producing the balance of responsive text messages this week. We have confirmed that the ingestion error was limited to rsmf files and did not affect other document types. Panini acted swiftly and in good faith to identify and remediate this issue, and the supplemental production is well in advance of the June 5 deadline.

**c. WhatsApp Communications**

Your allegations of "missing" WhatsApp messages rest on a generalization about the app's popularity in Europe. Our custodial interviews specifically addressed messaging applications, and those interviews did not reveal that the Panini custodians commonly used WhatsApp for Panini business. To the contrary, we are unaware of any high-frequency use of WhatsApp for matters relating to Panini's operations.

Notwithstanding the results of those interviews, Panini collected WhatsApp data from custodians who possessed WhatsApp data, and that data was subjected to the agreed-upon search terms. You reference three produced documents that mention WhatsApp, but the existence of occasional references to WhatsApp does not demonstrate that substantial WhatsApp communications are missing from Panini's production. Panini has met its discovery obligations with respect to WhatsApp.

**d. Teams Messages**

Panini collected and produced responsive Teams messages, as its productions demonstrate. You asked whether we anticipate forthcoming productions of additional Teams messages. Panini has identified one additional Teams message chat it anticipates producing.

BSF

e. **Licensor Communications**

Your complaints about Panini's productions of licensor communications are unfounded. To start, Panini did not agree to produce all of its communications with licensors. For example, with respect to RFP No. 5, Panini did not agree to produce all communications concerning "the production or sale of Collectibles." Panini only agreed to produce communications concerning Fanatics. Panini has produced all responsive licensor communications within the agreed-upon scope of its production obligations and is not withholding any such communications.

Moreover, Fanatics raises these purported deficiencies while still failing to correct major gaps in its own productions that Panini identified over a month ago in its April 9 letter at 3-5.

Indeed, there are still critical gaps in Fanatics' productions of pitch materials, including:

- [redacted]
- [redacted]
- [redacted]
- [redacted]

Fanatics should immediately commit to producing these critical documents by the June 5 deadline for document productions. If Fanatics is aware that any of these documents are not in its possession, it should immediately say so.

As to the issues with specific third parties that you raise, we respond as follows:

[redacted]

BSF

[redacted]

***MLBPA***. Fanatics takes issue with the quantity of communications with MLBPA that Panini produced. Yet Fanatics itself produced fewer communications with MLBPA—only 288 emails with individuals with MLBPA or MLBPI domain addresses—despite Topps also being a long-time licensee of MLBPA. Fanatics' own productions demonstrate that the quantity of emails alone is not indicative of any deficiency in Panini's production. Panini is not withholding responsive communications with MLBPA.

***NBPA***. Fanatics similarly produced only 66 communications with NBPA. The quantity of documents alone is not indicative of a deficiency in Panini's production. Panini is not withholding responsive communications with NBPA.

***WNBA & WNBPA***. Again, the quantity of documents alone is not sufficient to identify a deficiency. Panini is not withholding communications with licensors responsive to the agreed scope of its production obligations.

Notably, Fanatics has also produced a similarly small quantity of communications with other licensors, including NFLPA (83 emails), NFL (130 emails), NBA (109 emails), and MLB (283 emails). These volumes further confirm that the quantity of licensor communications in Panini's productions is not anomalous.

***CLC***. None of the documents Fanatics identifies are responsive to Fanatics' Requests for Production. Negotiations with CLC in its capacity representing schools for the use of school marks are not negotiations with "Leagues," "Associations," or "Entertainment Licensors," as those terms are defined in Fanatics' Requests for Production. Accordingly, these communications fall outside the agreed scope of production.

***NASCAR.*** [redacted]

***NHLPA & NHL.*** [redacted]

BSF

***Team USA.*** [redacted]

***NWSL.*** [redacted]

***Unrivaled Basketball.*** [redacted]

**f. Documents Related to GCP**

Your assertion that Panini has refused to search for documents responsive to RFPs 90 and 91 is incorrect. Panini's position has been, and remains, that RFPs 90 and 91 are duplicative of RFP 40 and that documents responsive to those requests are encompassed within Panini's collection, review, and production efforts for RFP 40. Accordingly, Panini has not refused to search for responsive documents; rather, it has objected to the duplicative nature of the requests.

In reviewing the relevant document populations, Panini has identified several hundred documents responsive to RFP 40 that have not yet been produced because they are currently flagged for second-level privilege review. Given the overlap among the requests, some subset of those documents may also be responsive to RFPs 90 and 91. To the extent those documents are determined to be non-privileged following completion of the privilege review process, Panini will produce them consistent with its discovery obligations.

Panini further disagrees with Fanatics' characterization that RFPs 90 and 91 seek categories of documents not captured by RFP 40. RFP 40 expressly seeks communications relating to any "potential purchase, joint venture, merger, acquisition, or other business combination" involving GC Packaging or other manufacturers. To the extent Fanatics contends certain categories of documents fall outside that request, Panini disagrees but remains willing to meet and confer as we initially offered in our Responses and Objections to Defendants' Third Set of Requests for Production of Documents and Things served on April 3, 2026.

**g. Documents with Technical Issues**

We will address these documents by category, and on a document-by-document basis as appropriate.

BSF

**h. Documents with Missing Content**

For documents PAN-SDNY_000434844 and PAN-SDNY_000434859, we are unable to identify the technical cause for the missing content, but we are able to access the documents, and we plan to re-produce the documents to Panini without redactions and with an OCEO confidentiality label.

Similarly, though we are still investigating the source of the error, there appears to have been a technical imaging error for PAN-SDNY_000598927. We will reproduce this document through an image overlay to Fanatics without redactions and with an OCEO confidentiality label.

For PAN-SDNY_000494367, we have been unable to identify any differences between the original and the produced version. Please advise us as to the specifics of what issues you believe exist, including the page numbers, and what specific issues you are encountering on the corresponding pages.

**i. Documents that are Not Viewable**

There is a rights management restriction on the encrypted documents at PAN-SDNY_000272231, PAN-SDNY_000272245, and PAN-SDNY_000273545. [redacted]

PAN-SDNY_000289121; PAN-SDNY_000293297; PAN-SDNY_000293476; PAN-SDNY_000295412; PAN-SDNY_000319770; PAN-SDNY_000323352; PAN-SDNY_000377831; PAN-SDNY_000378239; PAN-SDNY_000378296; PAN-SDNY_000380833; PAN-SDNY_000384027; PAN-SDNY_000393604; PAN-SDNY_000393606; PAN-SDNY_000393607; PAN-SDNY_000393633; PAN-SDNY_000393674; PAN-SDNY_000393677; PAN-SDNY_000393679; PAN-SDNY_000393697; PAN-SDNY_000399682; PAN-SDNY_000399683; PAN-SDNY_000409716; PAN-SDNY_000419682; PAN-SDNY_000430545; PAN-SDNY_000434036; PAN-SDNY_000435123; PAN-SDNY_000435124; PAN-SDNY_000419682; PAN-SDNY_000430545; PAN-SDNY_000434036; PAN-SDNY_000435123; and PAN-SDNY_000435124 are OneNote files. We are currently unable to access them native. We are working with our vendor to determine whether it has any processes that can render them viewable, but as of the date of this letter, we remain unable to image these files.

We produced PAN-SDNY_000416666 in native, and the data in this file appears to be corrupted. We could not identify the source of the corruption; however, we re-collected the document from the custodian, and we will reproduce it to Fanatics.

BSF

j. **<u>Native Documents Panini Has Been Unable to Locate</u>**

Both PAN-SDNY_000324422 and PAN-SDNY_000324719 appear to be the same corrupt file, and it appears that the file entered Panini's business records in a corrupt form. [redacted]

[redacted]

[redacted]

We are still investigating the issues you raised related to SDNY_000448391 and will update you when we have a resolution.

We reserve all rights.

Regards,

*<u>/s/ Meredith Schultz</u>*

Meredith Schultz
Sabria McElroy
Boies Schiller Flexner LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
(954) 356-0011
mschultz@bsfllp.com
smcelroy@bsfllp.com