BSF | BOIES SCHILLER FLEXNER

August 17, 2026

**Via ECF**
The Honorable Valerie Figueredo
United States District Court Magistrate Judge
Southern District of New York

**Re: *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023)—Opposition to Fanatics' Request for Privileged Documents**

Dear Judge Figueredo:

We write on behalf of Plaintiff Panini America, Inc. ("Panini") to oppose Fanatics' motion to compel privileged Francesca Baroni documents, submitted at ECF No. 428 ("Motion"). Fanatics' mischaracterizations of the record and attempts to misconstrue Italian law to weaponize it against the protections owed by Ms. Baroni to her clients are baseless and should be rejected. Fanatics makes sweeping arguments to challenge Panini's withholding of a narrow set of approximately ***47 documents*** where legal advice was rendered by or requested from Ms. Baroni.[1] By contrast, Fanatics' privilege log totals ***over 20,000 entries***. The motion should be denied: judicial estoppel does not apply because Ms. Baroni is not Panini's in-house counsel and Panini has not shared confidential materials with her, and Italian law protects Ms. Baroni's legal advice rendered in her outside-counsel capacity. Regardless, Panini invites submitting the documents to the Court for *in camera* review to put an end to Fanatics' quest for privileged documents.

## I. Francesca Baroni Is Not In-House Counsel.

Much of Fanatics' Motion is based on the assertion that Ms. Baroni is "in-house counsel" to Panini S.p.A. Motion at 1–2. She is not. Ms. Baroni is not a Panini S.p.A. employee. She is an Italian-licensed attorney at an outside firm who occasionally provides legal advice to Panini S.p.A. Her position as a board member does not alter that analysis: board membership is conceptually separate from the status of in-house counsel, consistent with Italian law. Ex. 1, Decl., ¶ 30.[2]

Panini's representations regarding Ms. Baroni's role have been consistent. In its Motion (at 2), Fanatics lists statements Panini has made concerning Ms. Baroni. These statements are constant: Ms. Baroni is a Panini S.p.A. board member and a licensed attorney at an outside firm who occasionally provides legal advice to Panini S.p.A.[3] She served in both roles.[4]

Fanatics' claimed surprise at Ms. Baroni's independent legal role is not credible. Its own Motion (at 2) acknowledges Panini's December 2025 correspondence stating that Ms. Baroni is legal counsel. Moreover, Fanatics has known Ms. Baroni's role since ***at least September 2021***. *See*

[1] When Panini disclosed the approximately 47-document figure, it had served only its initial privilege log. Panini has since served a supplemental privilege log, identifying an additional approximately 44 documents produced with redactions based on Ms. Baroni's legal role.

[2] Lettered exhibits refer to exhibits attached to Fanatics' Motion; numbered exhibits refer to exhibits attached to Panini's opposition.

[3] The mere fact that Panini included Ms. Baroni's role under a heading of "Panini S.p.A. In-House Counsel" does not transform her into in-house counsel. Ex. A at 1–2.

[4] Panini's delay in producing her documents because of GDPR obligations has nothing to do with the legal basis for withholding privileged documents.

Ex. L at 1 ("I am Francesca Baroni, lawyer of Panini."). Moreover, Ms. Baroni's enrollment in the Bar of Bologna is a matter of public record, verifiable through the official search portal of the Italian National Bar Council (*Consiglio Nazionale Forense*). Ex. 5. She represents other clients and has represented Panini in court. Ex. 3. Fanatics has had this information available to it all along. Fanatics relies on a business card provided to them that identifies Ms. Baroni as a board member, Motion at 2, and Ms. Baroni's attendance on calls or negotiations with Fanatics is consistent with Ms. Baroni acting in her role as board member, rather than as outside counsel. Ex. 1 ¶ 25.[5]

Panini's privilege log descriptions are equally consistent. To the extent Panini withholds documents because they reflect legal advice rendered by Ms. Baroni in her capacity as counsel, or requests for such advice, it identifies Ms. Baroni as counsel. Where Panini withholds communications with BSF, Gibson Dunn, or other outside counsel, it identifies Ms. Baroni as a client or client representative.

The suggestion that Studio Rag. Baroni somehow casts doubt on Ms. Baroni's independent legal role is misplaced. As explained to Fanatics, "Studio Baroni" is the shared trade name used by Francesca and Anna Baroni to carry out their respective professional activities as sole practitioners—Anna as an accountant and Francesca as a licensed attorney. Ex. 4 at 2. This is a common Italian arrangement in which practitioners of different professions share office space and a family name without forming a joint entity. There is no basis for Fanatics to suggest the name has any bearing on Ms. Baroni's professional identity, independence, or regulatory status as a licensed attorney.

Fanatics' complaints about Panini's initial disclosures fare no better. Fanatics' complaint that Panini did not include Ms. Baroni's legal role on the initial disclosures is neither here nor there; neither party has identified legal counsel on its initial disclosures. *See* ECF No. 206-3, Fanatics' Initial Disclosures, at 2 (President of Business Affairs Gary Gertzog identified with no mention of legal role).

## II. Judicial Estoppel Does Not Apply Here.

There is no basis for Fanatics' judicial estoppel claim. Panini does not have in-house counsel for this litigation and has not shared Highly Confidential or Outside Counsel Eyes Only material with Ms. Baroni or anyone at Panini. Fanatics' argument rests on the incorrect presumption that BSF has shared OCEO or HC materials with Ms. Baroni, which it has not.

Fanatics' complaints about the production of its license agreements are as baseless as they are hypocritical. To start, Panini has not shown Fanatics' license agreements—or any OCEO or HC materials—to Ms. Baroni. Moreover, it is outrageous that Fanatics would again complain about having to produce its license agreements while knowing its client obtained Panini's own license terms and used those at the business level to secure those very licenses away from Panini. *See* ECF No. 357 at 1. The license information obtained by Fanatics' business people is the very same type of information that Fanatics repeatedly represented as the "most sensitive and proprietary commercial agreements" in the company, ECF No. 129 at 1, the disclosure of which "would be extremely harmful to competition," ECF No. 179 at 2; *see also* ECF No. 126 (Nov. 7, 2024 Tr.) at 21:2–3 ("these agreements reflect some of the most sensitive documents that the

[5] Separately, of course, communications between Panini and other outside counsel, on which Ms. Baroni may be copied, may be withheld on the basis of an attorney-client relationship between Panini and separate outside counsel.

BSF

company has”), 24:10–12 (“the most sensitive documents, competitively sensitive documents”), 24:22–23 (“the most competitively sensitive and impactful documents”).

Strikingly, Fanatics also complains (at 1) that Ms. Baroni is an additional ***outside*** counsel to Panini that was undisclosed in negotiations to obtain the license agreements. Even setting aside the fact that Panini has no obligation to disclose to Fanatics all of its outside counsel (and Fanatics has neither identified any such obligation nor disclosed all of its own outside counsel to Panini), Panini’s representation concerned access to Fanatics’ confidential materials, not a global roster of every lawyer who ever provided advice to Panini. Panini has not shown Ms. Baroni any OCEO materials, including Fanatics’ license agreements, and thus Fanatics’ purported fears are unfounded.

### III. Italian Law Protects Ms. Baroni’s Rendering of Legal Advice

Fanatics’ Motion shows that it is confusing basic concepts of Italian corporate law and conflating fundamentally distinct corporate roles under Italian law. To start, Fanatics’ in-house-counsel rule is beside the point because Ms. Baroni is not a Panini employee. Moreover, Fanatics’ suggestion that Ms. Baroni lacks “independence” from Panini misconstrues the relevant legal standard. Italian law draws a clear and well-established distinction between a non-executive director (*consigliere semplice*), an executive director (*consigliere delegato* or *amministratore delegato*), and a chairman of the board (*Presidente del CdA*). Ex. 1 ¶ 10. Ms. Baroni serves as a non-executive director of Panini S.p.A., which, under Italian law, means she is a board member without managerial delegation. *Id.* ¶ 14. Ms. Baroni’s position as a non-executive director means she has the requisite independence from Panini to be considered its outside counsel under Italian law. *Id.*

Fanatics argues (at 3) that Ms. Baroni’s board position is “a managerial one” that makes her in-house counsel. Fanatics is wrong. Ms. Baroni’s role as a non-executive director does not have managerial delegation. *Id.* ¶¶ 7, 14. Panini S.p.A.’s corporate filings confirm this, showing that Ms. Baroni has held only the position of ordinary Board member from December 1, 2016, forward. *Id.* ¶¶ 6–7. And from 2007 to 2016, Ms. Baroni was sole administrator not of the operational Panini business, but of a different dormant holding vehicle that served as the corporate entity through which a leveraged buyout was structured. *Id.* ¶¶ 4–5. The fact that Ms. Baroni can assume “the same powers as those vested in the Chair, Ms. Anna Baroni, . . . ***in the event of [her] absence or impediment***,” does not vest her with managerial authority. *Id.* ¶¶ 8, 15. The very language of this delegation conditions its exercise on a triggering event that has not occurred. *Id.* This is a contingent, non-operative authority; the material question here is whether Francesca Baroni has in fact exercised any of these sleeping powers, which she has not. *Id.* ¶ 15.

Finally, Fanatics’ complaint (at 3) that “Studio Rag. Baroni shares the same address . . . as the holding companies that own 100% of Panini S.p.A.” is equally misplaced. The CNF has repeatedly confirmed that the mere holding of shares in a company—even a significant shareholding—does not trigger any incompatibility with, and has no effect on the independence of the legal profession, as share ownership constitutes a passive capital investment and carries no management prerogatives. *Id.* ¶ 18.

Italian law protects Ms. Baroni’s rendering of legal advice as outside counsel. *Id.* ¶¶ 27–28, 35. Accordingly, the Court should deny Fanatics’ request for privileged documents.

BSF

Respectfully submitted,

*/s/ Stuart H. Singer*

Stuart H. Singer*
Sabria A. McElroy*
Meredith Schultz*
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
mschultz@bsfllp.com

David Boies
Eric Brenner
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com

*Counsel for Panini America, Inc.*

**pro hac vice*

cc: All Counsel of Record (by ECF)