BSF | BOIES SCHILLER FLEXNER

September 9, 2026

**Via ECF**

The Honorable Valerie Figueredo
United States District Court Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re: *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023) – Request for Dedesignation of Documents**

Dear Judge Figueredo:

We write on behalf of Plaintiff Panini America, Inc. ("Panini") to request dedesignation of two documents on which the Joint Stipulation for Plaintiff's Leave to Amend First Amended Complaint (the "Amendment Stipulation") (ECF No. 357) rests. The two documents at issue do not meet the agreed standards for Outside Counsel Eyes' Only or Highly Confidential treatment under the protective order and, thus, should be designated Confidential at most. Any higher designation improperly interferes with Panini's ability to advise its clients about highly relevant material.

**Background**

On June 22, 2026, Panini submitted the Amendment Stipulation, setting forth two new paragraphs to be interlineated into the operative complaint. ECF No. 347. These new paragraphs allege that (i) Fanatics acquired Panini's confidential license information in violation of Panini's rights, (ii) Fanatics used that confidential information in its efforts to procure exclusive licenses to Panini's detriment, and (iii) OneTeam negotiated on behalf of the NBA Players Association in addition to the other licensors listed in the First Amended Complaint. *Id.* at 1-2. Fanatics stipulated to the amendment but reserved the right "to challenge the accuracy and relevance" of the new paragraphs. *Id.* at 2. By order dated August 10, 2026, the Court denied Fanatics' request to permanently seal these new allegations, holding that the "information sought to be sealed contains only high-level descriptions of Fanatics' and OneTeam's business processes," which "does not warrant sealing." ECF No. 435 at 2.

On April 5, 2026, prior to the Court's ruling, Panini met and conferred with Fanatics regarding its improper attempt to seal the amended allegations. This issue is now moot. However, at the same meet and confer, Panini also sought Fanatics' agreement to dedesignate the two documents underlying the amended allegations. Fanatics' only objection to this request was that it was premature because Fanatics' own motion to permanently seal the Amendment Stipulation was still pending before the Court. Fanatics did not otherwise seek to justify its position on substantive grounds. Following the Court's ruling on the sealing motion, Panini asked Fanatics to reconsider its position. Fanatics refused, claiming in conclusory terms that the documents

BSF

"'reference[] or reflect[] nonpublic information regarding [Fanatics']: … (d) competitive strategy or planning materials,' and their disclosure would result in 'competitive, commercial, or financial harm' to Fanatics."[1] Fanatics did not try to justify OCEO treatment for the documents. Nor did Fanatics try to explain what tangible, cognizable harm existed that was necessary to justify Highly Confidential, as opposed to Confidential, designations for these documents.

**Argument**

The two documents underlying the new allegations in the Amendment Stipulation — submitted as Exhibits A and B — are improperly designated OCEO under the governing Protective Order and should be downgraded to Confidential, at most, so that Panini is not prejudiced in its ability to rely on these materials in advising its client.

First, the Protective Order permits OCEO designation only where a document "references or reflects the non-public terms (proposed or final) of ***that party's*** license agreements," *i.e.*, the license agreement of the producing party. ECF No. 160 ¶ 4 (emphasis added). Exhibit B, however, does not contain ***any*** license terms whatsoever; Fanatics never had a good faith basis to designate this document OCEO. *See* Ex. B. As for the licensing terms referenced in Exhibit A, they do not reflect Fanatics' ***own*** license agreements. Rather, the economic terms in Exhibit A come [redacted]. Because Exhibit A does not reflect the non-public terms of "that party's" (i.e., Fanatics' own) "license agreements," it too does not qualify for OCEO protection.[2] *See* Ex. A.

Second, these two documents also do not meet the standard for "Highly Confidential" treatment under the Protective Order, which requires counsel to determine "in good faith, that such designation is necessary to protect the interests of the producing party in information for which unauthorized disclosure would result in competitive, commercial, or financial harm to the producing party or its personnel, clients, or customers," and that the document reflect "non-public information regarding that party's: (a) financial performance; (b) employee hiring, performance, or compensation; (c) trade secrets; (d) competitive strategy or planning materials; (e) proposed or final terms of commercial agreements (other than agreements designated Outside Counsel Eyes' Only); or (f) confidential pitches to potential partners or customers including drafts of such pitches." ECF No. 160 ¶ 3.

Fanatics cannot satisfy this standard. Exhibit A does not reflect Fanatics' (i.e., "that party's") own "non-public information" at all. Rather, it reflects [redacted]. Ex. A. Under paragraph 3, this is dispositive. It is, in all events, perverse for Fanatics to claim that after [redacted]

---

[1] Fanatics also contended that Panini's justification for dedesignating the documents does not make sense because Panini cannot show its client Highly Confidential information. But, of course, this does not make sense because Panini seeks to designate the materials Confidential, not Highly Confidential.

[2] Indeed, even if Topps' pre-acquisition license agreement was (wrongly) treated as a "Fanatics" license agreement, it would at most justify treating these specific terms as OCEO. A version of the document with these terms redacted would not itself still be OCEO.

BSF

[redacted] it is Fanatics that would suffer competitive, commercial, or financial harm if these terms were disclosed to Panini's business people.[3]

As for Exhibit B, it reflects nothing more than the fact [redacted] not non-public information about Fanatics' financial performance; employee hiring, performance, or compensation; trade secrets; competitive strategy or planning materials; proposed or final terms of commercial agreements; or confidential pitches to potential partners or customers. [redacted] *See id.* Accordingly, the two documents at issue qualify for Confidential treatment at most, and should be so designated.

Respectfully submitted,

*/s/ Stuart H. Singer*

David Boies
Eric Brenner
**Boies Schiller Flexner LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

Stuart H. Singer*
Sabria A. McElroy*
Meredith Schultz*
Pascual Oliu*
Ana Carolina Varela*
**Boies Schiller Flexner LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
mschultz@bsfllp.com
poliu@bsfllp.com
avarela@bsfllp.com

James P. Denvir*

[3] Panini has no objection to Fanatics redacting any competitively sensitive terms of the [redacted] prior to redesignating Exhibit A as "Confidential." Obviously, Panini is entitled to see the [redacted].

BSF

Richard A. Feinstein*
William Harvey
**Boies Schiller Flexner LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com
wharvey@bsfllp.com

*Counsel for Panini America, Inc.*

**pro hac vice*

cc: All Counsel of Record (by ECF)