LATHAM & WATKINS LLP quinn emanuel trial lawyers | new york

**Via ECF** September 24, 2026

The Honorable Valerie Figueredo
United States District Court Magistrate Judge, S.D.N.Y.

Re: *Panini Am., Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023)

Dear Judge Figueredo:

We write on behalf of Fanatics in response to the Court's September 11, 2026 Order (ECF No. 524) to request permanent sealing of the redacted portions of Panini's Letter Motion for Discovery Conference (ECF No. 509) and Exhibits 1-13, and 17-19 thereto.[1] Because the referenced documents contain confidential, sensitive business information regarding Fanatics' business operations, recruiting efforts, and employment terms, Fanatics respectfully submits that good cause exists for Exhibits 1-13 and 17-18, as well as limited excerpts of Panini's Letter Motion and Exhibit 19, to remain under seal.

Under the standard established in *Lugosch v. Pyramid Co. of Onondaga*, to determine whether judicial documents should be placed under seal, courts must balance "the presumption of access attached to the documents in question" against any "countervailing concerns" that "weigh against full public access to the documents." *See Melwani v. Kiss Nail Prods., Inc.*, 2026 WL 2323215, at *2 (E.D.N.Y. Aug. 11, 2026) (citing *Lugosch*, 435 F.3d 110, 119-120 (2d Cir. 2006)). When balancing these concerns, courts consider factors including, "the degree to which the subject matter is traditionally considered private rather than public, the nature and degree of injury that may result from disclosure, and the reliability of such information." *Suffolk Reg'l Off Track Betting Corp. v. United States Small Bus. Admin.*, 2025 WL 1384157, at *3 (E.D.N.Y. May 13, 2025). "When these factors 'outweigh the value to the public of accessing the document at issue, then that document should be sealed.'" *Id.* (quoting *Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*, 2024 WL 1743109, at *8 (S.D.N.Y. Apr. 23, 2024)).

The presumption of access given to filings submitted in connection with discovery disputes, such as the documents at issue here, is "somewhat lower" than the presumption applied to materials introduced at trial or in connection with dispositive motions. *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019). Thus, the reasons for sealing such materials "need not be as compelling." *Id.* The Second Circuit applies the lower "good cause" standard when assessing whether to seal information. *Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 738 (2d Cir. 2000) (holding that courts have "discretion in determining whether good cause exists to overcome the presumption of open access to documents filed").

Good cause to seal exists here. Protecting sensitive business information—such as confidential business relationships, negotiations, and financial information—falls within the "[e]stablished factors and values that can outweigh the presumption of public access." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 2021 WL 4135007, at *3 (S.D.N.Y. Sept. 10, 2021); *see also In re B & C KB Holding GmbH*, 2023 WL 2021299, at *1 (S.D.N.Y. Feb. 14, 2023) ("[C]ourts in this District routinely permit parties to seal or redact commercially sensitive

[1] Fanatics does not request permanent sealing of Exhibits 14-16.

information in order to protect confidential business and financial information."). Courts in this District also routinely seal "business information that might harm a litigant's competitive standing in the market." *New York v. Actavis, PLC*, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014); *see also W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, 2022 WL 890184, at *2-3 (S.D.N.Y. Mar. 25, 2022) (granting motion to seal because disclosure would "subject [Defendant] to a competitive disadvantage" and finding that "courts will commonly grant a company's request for sealing of proprietary business information, such as internal analyses, business strategies, or customer negotiations when disclosure of that information could provide competitors with an unearned advantage.") (internal citations omitted).

As set forth in the chart below, each of the documents that Fanatics requests to be sealed or redacted in connection with Panini's Letter Motion contains this sort of sensitive business information.

| **ECF No.** | **Description** | **Reason for Sealing** |
|---|---|---|
| 509-1<br>(Appendix A: Exhibits 1, 2, and 3) | Appendix A containing Exhibits 1-3, each described below.<br><br>Exhibit 1:<br>Meeting notes from Fanatics' internal meetings.<br><br>Exhibit 2:<br>Email from Stephanie Putnam containing meeting notes from Fanatics' internal "Biz Ops" meeting.<br><br>Exhibit 3:<br>Email from Stephanie Putnam containing internal recruiting notes. | Fanatics designated the Exhibits in this Appendix as "Highly Confidential" or "Outside Counsel Eyes Only" ("OCEO").[2] The Exhibits contain highly sensitive information, including (i) recruiting strategies for new employees, (ii) operational challenges faced by Fanatics, (iii) information on Fanatics' manufacturing practices, (iv) specific details on the identity and application status of prospective candidates, and (v) internal notes regarding the substance of Fanatics' confidential business meetings. Disclosure of this information would cause significant commercial harm to Fanatics by revealing its |

[2] The Protective Order allows documents to be designated "Highly Confidential" to "protect the interests of the producing party in information for which unauthorized disclosure would result in competitive, commercial, or financial harm" or "Outside Counsel Eyes Only" if the "document or information references or reflects the non-public terms (proposed or final) of that party's license agreements." ECF No. 160 ¶¶ 2–4.

| | | |
|---|---|---|
| | | current business plans, business operations, and recruitment strategies to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509-2<br>(Appendix B: Exhibits 4, 5, and 6) | Appendix B containing Exhibits 4-6, each described below.<br><br>Exhibit 4:<br>Slipsheet indicating "Document Withheld for Privilege."<br><br>Exhibit 5:<br>Redacted version of Exhibit 2.<br><br>Exhibit 6:<br>Redacted version of Exhibit 3. | While partially redacted, Exhibits 4 and 5 contain the same commercially sensitive information detailed under Appendix A above, disclosure of which would cause significant commercial harm to Fanatics by revealing its current business plans, business operations, and recruitment strategies to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509-3<br>(Appendix C: Exhibits 7, 8, and 9) | Appendix C containing Exhibits 7-9, each described below.<br><br>Exhibit 7:<br>Redacted version of Exhibit 1.<br><br>Exhibit 8:<br>Redacted version of Exhibit 2.<br><br>Exhibit 9:<br>Redacted version of Exhibit 3. | While partially redacted, Exhibits 7-9 contain the same commercially sensitive information detailed in Appendix A above, disclosure of which would cause significant commercial harm to Fanatics by revealing its current business plans, business operations, and recruitment strategies to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509-4<br>(Exhibit 10) | Stephanie Putnam Deposition Transcript | This document contains the deposition transcript for Stephanie Putnam, the entirety of which Fanatics |

| | | |
|---|---|---|
| | | designated "Confidential"[3] and portions of which are designated "Highly Confidential" or "OCEO." The transcript contains highly sensitive information on Fanatics' recruiting practices and strategies, its organizational structure, and its current and future business plans and operations. Disclosure of this information would cause significant commercial harm to Fanatics by revealing sensitive details about its business operations to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509-5<br>(Exhibit 11) | Fanatics' employee Stephanie Putnam's internal handwritten notes | Fanatics designated this document "Highly Confidential." This document contains notes over an extended period of time taken by Fanatics' employee Stephanie Putnam regarding her various job responsibilities and confidential business operations and strategies as Fanatics' VP of Talent Acquisition. These notes contain commercially sensitive information about (i) Fanatics' recruitment plans and strategies, including the names of specific candidates and the terms of their employment, (ii) Fanatics' |

[3] The Protective Order allows documents to be designated "Confidential" to "protect [a] party's interests in information that is proprietary, a trade secret or otherwise sensitive non-public information, including, but not limited to, non-public financial information, business plans, product-development information, or marketing plans[.]" (ECF No. 160 at ¶ 2).

| | | |
|---|---|---|
| | | current business practices and organizational structure, and (iii) Fanatics' future business plans and hiring needs. Disclosure of this information would cause significant commercial harm to Fanatics by revealing sensitive details about its business operations to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509-6 (Exhibit 12) | Email from Casey Kravitz to Stephanie Putnam regarding April Recruiting Snapshot | Fanatics designated this document as "Confidential." This document contains sensitive details on Fanatics' recruiting efforts, including details on hiring needs for specific departments, names of specific candidates and details on Fanatics' employment terms. Disclosure of this information would cause significant harm to Fanatics by revealing the details of its recruiting strategies, operational structure and employment contracts to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509-7 (Exhibit 13) | Redacted version of email in Exhibit 3. | Fanatics designated this document as "Highly Confidential." As noted under Appendix A above, this document contains commercially sensitive information on Fanatics' recruiting practices, including the names of prospective candidates, disclosure of which would cause significant harm to Fanatics by revealing its recruitment |

| | | |
|---|---|---|
| | | strategies to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509-11 (Exhibit 17) | Fanatics' Clawback Log – Case no. -9714 | This document was designated "Highly Confidential" by Fanatics and contains commercially sensitive information on Fanatics' recruitment efforts including the timing of those efforts, legal considerations surrounding those efforts, and the key personnel involved, disclosure of which would cause significant harm to Fanatics by revealing its recruitment strategies to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509-12 (Exhibit 18) | Fanatics' Clawback Log – Case no. -6895 | This document was designated "Highly Confidential" by Fanatics and contains commercially sensitive information on Fanatics' recruitment efforts including the timing of those efforts, legal considerations surrounding those efforts, and the key personnel involved, disclosure of which would cause significant harm to Fanatics by revealing its recruitment strategies to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509-13 (Exhibit 19) | Redacted portions of August 26, 2026 email between counsel for Panini and Fanatics regarding sealing and confidentiality designations | The proposed redactions contain details about Fanatics' agreements with third-parties, including commercially sensitive information on the existence |

LATHAM & WATKINS LLP quinn emanuel trial lawyers | new york

| | | |
|---|---|---|
| | | of certain agreements and the identity of parties to those agreements, disclosure of which would cause significant harm to Fanatics by revealing its business strategies and practices to competitors and potential countervailing parties, providing them with an unearned advantage. |
| 509 (Panini's Letter Motion) | Redacted portions of Panini's Letter Motion for Discovery Conference. | The proposed redactions reference and quote verbatim the commercially sensitive information in the Exhibits above, disclosure of which would cause significant harm to Fanatics for the reasons stated herein. |

Under the *Lugosch* balancing test, Fanatics' countervailing interest in protecting sensitive information regarding its recruitment practices and strategies, employment agreements, current and future business plans and agreements with third-parties outweighs the presumption of access to these discovery-related filings. Accordingly, Fanatics respectfully submits that there is good cause to permanently seal Exhibits 1-13 and 17-18, as well as the limited excerpts of Panini's Letter Motion and Exhibit 19.

Respectfully submitted,

*/s/ Michael B. Carlinsky*
Michael B. Carlinsky
Quinn Emanuel Urquhart & Sullivan LLP
295 Fifth Avenue
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
(212) 849-7000

*Counsel for Fanatics*

*/s/ Lawrence E. Buterman*
Lawrence E. Buterman
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com
(212) 906-1264

*Counsel for Fanatics*

MEMO ENDORSED

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE

**Dated: September 28, 2026**

The motion to seal is **GRANTED**. Fanatics has adequately explained why sealing is necessary to protect commercially sensitive information. The Clerk of Court is respectfully directed to close the motions at ECF Nos. 508 and 564.