BSF | BOIES SCHILLER FLEXNER

October 9, 2026

**VIA ECF**
The Honorable Valerie Figueredo
United States District Court Magistrate Judge
Southern District of New York

**Re: *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS-VF (S.D.N.Y. 2023)—Motion to Compel Compliance with Rule 45 Subpoena**

Dear Judge Figueredo:

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Local Civil Rule 37.2, and Rule II(c)(2) of the Court's Individual Civil Rules, Plaintiff Panini America, Inc. ("Panini") respectfully requests an order compelling non-party Clearlake Capital Group, L.P. ("Clearlake")[1] to produce all non-privileged documents it has in its possession, custody, or control responsive to Panini's subpoena *duces tecum* (the "Subpoena") served in Panini's case against Fanatics Collectibles ("Fanatics"). *See* Ex. 1.

## I. Factual Background

Clearlake is a global investment firm with approximately $185 billion in assets under management.[2] In December 2022, Clearlake led a funding round in which it and other investors raised approximately $700 million for Fanatics' holding company. Approximately two thirds of that $700 million reportedly came from Clearlake and one other investor (LionTree). As a result of spearheading this funding round, Clearlake reportedly received an equity interest amounting to something between 1% and 2.5% of Fanatics' holding company.

The timing of Clearlake's investment in Fanatics makes it highly likely that Clearlake possesses many documents relevant to this litigation. During August 2021, Fanatics announced that it had acquired exclusive licenses with the NBA and the NBA Players Association that run for at least 10 years, and exclusive licenses with the MLB and the MLP Players Association that last 20 years. *See* ECF No. 69 ("Amended Complaint") at ¶¶ 102, 104. Shortly thereafter, Fanatics also secured an exclusive 20-year license with the NFL. *See id*. In January 2022, Fanatics acquired Topps, and with it an exclusive license with the MLS. *See id*., at ¶¶ 102, 118–119. Clearlake necessarily evaluated these exclusive licenses, and various other aspects of Fanatics' business, to arrive at its valuation of Fanatics and its decision to lead a major funding round in which it participated. Accordingly, Clearlake likely has documents in its possession, custody, or control memorializing that analysis. Panini seeks these documents.

On June 1, 2026, Panini served the Subpoena requesting that Clearlake produce non-privileged documents pertaining to Fanatics' business in the sports trading card industry, its

---

[1] As Clearlake has an office in Manhattan and the place of compliance would be New York, this Court has jurisdiction to enforce the Subpoena pursuant to Rules 45 and 37. *See* Ex. 1, at 2; *see also* https://clearlake.com/global-offices/new-york/.
[2] *See generally*, https://clearlake.com/.

BSF

acquisitions of sports trading card licenses, its competition in the sports trading card market, and valuations of Fanatics' sports trading card business. *See* Ex. 1, at 12–13. Clearlake timely served its responses and objections to the Subpoena on July 1, 2026. (the "R&Os"). *See* Ex. 2, at 20. In those R&Os, Clearlake refused to produce any documents whatsoever, giving the same boilerplate response to all five requests: "Clearlake is unable to agree to the production of documents responsive to the Request as drafted. Clearlake is willing to meet and confer." *Id*., at 13–19.

Taking Clearlake up on its offer, on July 23, 2026, counsel for Panini and Clearlake first met and conferred to discuss the Subpoena, the R&Os, and to seek a compromise that would provide Panini the documents it needed while minimizing any burden on Clearlake. *See* Ex. 3, at 15–16. During that meeting, Clearlake's counsel took the position that the Subpoena was overbroad and requested irrelevant documents, many of which "may reside at the Fanatics company level rather than with Clearlake." Ex. 3, at 13. Nevertheless, both parties agreed to work to narrow the requests. *See id*., at 13–14.

On August 12, 2026, counsel for Panini and Clearlake met and conferred a second time. *See id*., at 11–12. At this meeting, Clearlake's counsel doubled down and reiterated that the Subpoena is overbroad, seeks information that has no relevance to Panini's case, and might even be sanctionable. Panini's counsel pointed out that any documents Clearlake retains memorializing its due diligence in deciding to invest in Fanatics—including its assessment of the market, Fanatics' long-term licenses with leagues and players' associations, and industry competitors (including Panini)—are highly relevant to Panini's claims. Nevertheless, in a spirit of compromise, counsel agreed that Clearlake could begin by producing investment memoranda responsive to the subpoena. *See id*., at 11.

Two weeks later, on August 27, 2026, Clearlake produced a single heavily-redacted memorandum evaluating Clearlake's decision to invest in Fanatics from August 2022. *See* Ex. 3, at 7; *see also* Ex. 4. Despite multiple follow-up requests from Panini, Clearlake has refused to produce any other responsive documents, instead accusing Panini of serving the Subpoena "to harass" Clearlake. Ex. 3, at 2–6. Panini now moves to compel Clearlake to produce the documents sought in the Subpoena.

## II. Legal Standard

Rule 45 "authorizes the issuance of a subpoena to compel a non-party to produce evidence independent of any deposition." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment. A non-party served with a valid Rule 45 subpoena is "subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." *Id.*; *see also* 8B Fed. Prac. & Proc. Civ. § 2209 (3d ed.) (same). "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Proportionality is assessed by analyzing the following factors: (1) "the importance of the issues", (2) "the amount in controversy", (3) "the parties' relative access to

BSF

relevant information", (4) "the parties' resources", and (5) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also* 8 Fed. Prac. & Proc. Civ. § 2008.1 (3d ed.) (same).

## III. Argument

Panini requests documents that are relevant and proportional to the needs of the case.

Panini requests five narrow categories of documents that are highly relevant to its dispute with Fanatics. Clearlake contributed substantial capital to Fanatics and led a significant funding round on Fanatics' behalf, at a crucial time during the period relevant to Panini's claims and defenses—that is, mere months after having acquired decades-long licenses across all major U.S. Sports and while Fanatics was executing its anticompetitive scheme. Before investing, Clearlake conducted due diligence on Fanatics and likely prepared several documents evaluating Fanatics' projected revenues and valuation (including the value of the licenses with the leagues and player associations it secured in 2021 and 2022). Clearlake would also have evaluated Fanatics' position in the sports trading card market, its relationship to competitors (including Panini), and potentially Fanatics' efforts to control the market by securing these licenses.[3] These documents would be highly relevant to Panini's claims that Fanatics negotiated these licenses to monopolize the sports trading card market, and in so doing caused substantial harm to Panini, other competitors, and downstream consumers. *See* Amended Complaint, ¶¶ 210–35. These documents are clearly relevant. *See DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 2021 WL 5908985, at *8 (S.D. Cal. Dec. 14, 2021) (ordering production of valuation materials relevant to antitrust claims); *see also BLST Northstar, LLC v. Atalaya Capital Mgmt. LP*, 2024 WL 2279195, at **4–8 (S.D. N.Y. Mar. 12, 2024) (ordering non-party produce 220 relevant documents—including investment memoranda containing valuation figure—after previously producing more than 5,800 others).

The requests are also proportional to the needs of this case. These relevant documents are unavailable through party discovery and likely shed light on highly important issues in a case where hundreds of millions if not billions in damages are at issue. *See* Amended Complaint, ¶ 298(i) (seeking treble damages). Clearlake is, in turn, a multibillion-dollar asset management firm and clearly has the resources available to produce more than one document from this deal file. Taken together, Clearlake cannot satisfy its "burden to sustain an undue burden objection to plaintiffs' production request", and requiring Clearlake to produce this limited subset of documents is certainly proportionate to the needs of this case. *Marin v. Apple-Metro, Inc.*, 2023 WL 2060133, at **2, 8–10 (E.D. N.Y. Feb. 8, 2023) (ordering non-party produce 16-years of payroll and timekeeping records as proportionate to needs of wage-and-hour class action); *see also Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 303–08 (S.D. N.Y. 2012) (ordering production of 10 years of employee data as proportionate to discrimination class action).

## IV. Conclusion

Panini respectfully asks the Court to grant Panini's motion and compel Clearlake to produce the documents sought in the Subpoena.

---

[3] Indeed, the one investment memorandum Clearlake did produce does [redacted], contains relevant information, and indicates additional documents exist. *See* Ex. 4, at 30 [redacted], 32 [redacted]

BSF

Respectfully submitted,
*/s/Ana Carolina Varela*
Ana Carolina Varela

David Boies
Eric Brenner
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

Stuart H. Singer*
Sabria A. McElroy*
Meredith Schultz*
Pascual Oliu*
Ana Carolina Varela*
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
mschultz@bsfllp.com
poliu@bsfllp.com
avarela@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
William Harvey
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com
wharvey@bsfllp.com

*Counsel for Panini America, Inc.*

**pro hac vice*

cc: All Counsel of Record (by ECF)