# Exhibit 1

FOR DOS USE ONLY

NEW YORK STATE OF OPPORTUNITY. | Division of Corporations, State Records and Uniform Commercial Code

New York State
**Department of State**
**DIVISION OF CORPORATIONS, STATE RECORDS AND UNIFORM COMMERCIAL CODE**
One Commerce Plaza
99 Washington Ave.
Albany, NY 12231-0001
https://dos.ny.gov

# Service of Process / Notice of Claim Cover Sheet (Albany Office Only)

**(1) Name of the entity or person to be served.** *(See Note 1 below):*

Clearlake Capital Group LP

**(2) If serving Process on a domestic entity, authorized foreign entity, or surviving or consolidated foreign entity attach a copy of the "Entity Information" page from the DOS website for the entity to be served to this cover sheet. If serving a Notice of Claim on a public corporation that has filed a Certificate of Designation for Service of Notice of Claim, attach a copy of the Certificate of Designation.**

**(3) Indicate the section of law under which service is made. Check only one box.** *(See Note 2 below):*

Domestic, Authorized Foreign Entities, and Surviving or Consolidated Foreign Entities ($40.00)

- ☐ Business Corporation Law §306
- ☐ Not-for-Profit Corporation Law §306
- ☐ Limited Liability Company Law §303
- ☒ Partnership Law §121-109(a)
- ☐ Partnership Law §121-1505
- ☐ Real Property Law §339-n
- ☐ General Associations Law §19

Notice of Claim on Public Corporations ($250.00)

- ☐ General Municipal Law §53 *(Certificate of Designation filed)*
- ☐ General Municipal Law §53 *(no Certificate of Designation filed)*

Other:

- ☐ Section of Law: __________________ and fee $ ______________

Unauthorized Foreign Entities ($40.00)

- ☐ Business Corporation Law §307
- ☐ Not-for-Profit Corporation Law §307
- ☐ Limited Liability Company Law §304
- ☐ Partnership Law §121-109(b)

Suspended Entities ($40.00)

- ☐ Business Corporation Law §306-A
- ☐ Limited Liability Company Law §301-A
- ☐ Partnership Law §121-104-A
- ☐ Partnership Law §121-1506

Vehicle and Traffic Law ($10.00)

- ☐ Vehicle and Traffic Law §253 (non-resident)
- ☐ Vehicle and Traffic Law §254 (former resident)

**(4) Indicate the manner in which the applicable fee is paid:**

☐ Drawdown Account (__________________) ☐ Check ☐ Credit Card ☐ Debit Card ☐ Cash ☐ Other

☐ Exempt pursuant to Executive Law §96(10) – process served on behalf of a political subdivision of the State

**(5) Process / Notice of Claim server name and P.O. address:** ______________________________

EMAIL ADDRESS: ______________________________

**(6) Staple cover sheet and Entity Information page(s), if any, to the Process or Notice of Claim.**

**(7) (a) If serving Process on a domestic entity, authorized foreign entity, or surviving or consolidated foreign entity, attach 2 duplicate copies of the Process.**

**(b) If serving Process on an unauthorized foreign entity or a suspended entity, attach 1 copy of the Process.** *(See Note 3 below)*

**(c) If serving a Notice of Claim on a public corporation, attach 2 duplicate copies of the Notice of Claim and a copy of the first page of the filed Certificate of Designation, if applicable.**

Note 1: If there is a conflict between the name of the entity as indicated in space "(1)" above and the name on the attached Entity Information page(s), ***the name provided on the attached "Entity Information" page(s) will control***. Additionally, if you attach the "Entity Information" page(s), and space "(1)" above is left blank, ***the entity named on the "Entity Information" page(s) will be served***.

Note 2: If there is a conflict between the section of law indicated in space "(3)" above and the section of law applicable to the type of entity described in the attached "Entity Information" page(s), ***the section of law applicable to the entity will control***.

Note 3: If you are serving an unauthorized foreign entity or a suspended entity, you, or the person on whose behalf service is being made, may also be required to mail notice of service and a copy of the process to the entity or person being served. ***The Department of State does not make any such mailing***. See the applicable section of law for further information.

**FOR DOS USE ONLY** **Served on** ______________________ **Date:** __________

**Search Results:** ☐ Records Located ☐ No Records Located ☐ Entity Name has Changed ☐ Entity has Merged Out of Existence

☐ Other: ______________________________

**Rejection:** ☐ Copies of Process/Notice of Claim are not duplicates ☐ 2 Copies of Process/Notice of Claim are required ☐ Court/Forum not within NYS

☐ Payment not Received ☐ Manner of payment was not Indicated ☐ Document not within statutory definition of "Process"

☐ Entity has Merged Out of Existence ☐ Secretary of State is not designated as agent for Service of Process

☐ Other: ______________________________

Rejection: ______________________________ Rejected by: ______________

An official website of New York State.
Here's how you know

NEW YORK STATE

# Department of State
## Division of Corporations

## Entity Information

Return to Results | Return to Search

Entity Details

**ENTITY NAME:** CLEARLAKE CAPITAL GROUP, L.P.
**DOS ID:** 3485545
**FOREIGN LEGAL NAME:**
**FICTITIOUS NAME:**
**ENTITY TYPE:** FOREIGN LIMITED PARTNERSHIP
**DURATION DATE/LATEST DATE OF DISSOLUTION:**
**SECTIONOF LAW:** 121-902 LPA - PARTNERSHIP LAW
**ENTITY STATUS:** ACTIVE
**DATE OF INITIAL DOS FILING:** 03/07/2007
**REASON FOR STATUS:**
**EFFECTIVE DATE INITIAL FILING:** 03/07/2007
**INACTIVE DATE:**
**FOREIGN FORMATION DATE:** 02/21/2007
**STATEMENT STATUS:** NOT REQUIRED
**COUNTY:** NEW YORK
**NEXT STATEMENT DUE DATE:**
**JURISDICTION:** DELAWARE, UNITED STATES
**NFP CATEGORY:**

ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY

Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

**Name:** CORPORATION SERVICE COMPANY

**Address:** 80 STATE STREET, ALBANY, NY, UNITED STATES, 12207 - 2543

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

Chief Executive Officer's Name and Address

**Name:**

**Address:**

Principal Executive Office Address

**Address:**

Registered Agent Name and Address

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

Farmcorpflag

**Is The Entity A Farm Corporation:** NO

Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

PANINI AMERICA, INC.
*Plaintiff*
v.
FANATICS, INC., ET AL
*Defendant*

Civil Action No. 1:23-cv-09714-LTS-VF

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Clearlake Capital Group LP - Secretary of State as Agent

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Boies Schiller Flexner,<br>55 Hudson Yards, 20th Floor<br>New York, NY 10001 | Date and Time:<br>06/15/2026 12:00 pm |
|---|---|

❐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 06/01/2026

*CLERK OF COURT*

OR

Stuart Singer

*Signature of Clerk or Deputy Clerk* — *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Panini America, Inc , who issues or requests this subpoena, are:

Stuart Singer, 401 E. Las Olas Blvd. Ste. 1200 Fort Lauderdale, FL 33301, ssinger@bsfllp.com, (954) 356-0011

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 1:23-cv-09714-LTS-VF

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* __________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________
______________________________________________________
______________________________ on *(date)* __________ ; or

❒ I returned the subpoena unexecuted because: ______________________________
______________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ __________ .

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: __________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

**(i)** is a party or a party's officer; or

**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:

**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

Plaintiff, Panini America, Inc., requests that Subpoena-Respondent, Clearlake Capital Group LP, produce all Documents responsive to the following individual requests (collectively, "the Requests").

## DEFINITIONS

The definitions below apply to each of the Requests, and are deemed to be incorporated in each of them:

1. "Action" refers to *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS.

2. "Collectibles" refers to trading cards, stickers, pins, bobble heads, dolls, action figures, photos, autographs, tickets, posters, and signed memorabilia.

3. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), and includes text messages, email communications, audio messages, voice messages, and messages sent through internet-based messaging applications and platforms such as WhatsApp, iMessage, Signal, Telegram, Facebook Messenger, Instagram Direct Messages, Snapchat, Discord, Slack, Microsoft Teams, WeChat, and any other similar communication services or applications.

4. "Document" and "Electronically Stored Information" ("ESI") shall have the same meaning as the usage of these terms in Civil Rule 26.3(c)(2) of the Local District Rules and Federal Rule of Civil Procedure 34(a)(1)(A).

5. "Fanatics" means Fanatics Holdings, Inc.; Fanatics Collectibles Topco, Inc.; Fanatics, Inc.; Fanatics, LLC; Fanatics Collectibles Intermediate HoldCo, Inc.; Fanatics SPV, LLC; and their affiliates, subsidiaries, and related parties, and includes each of their past and

present officers, employees, agents and representatives, parents and predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures. The terms "subsidiary," "affiliate," and "joint venture" refer to any firm in which there is total or partial ownership of twenty-five percent or more or total or partial control between the company and any other Person or entity.

6. "Including" means including without limitation.

7. "Panini" means Panini America, Inc., and its parent, Panini S.p.A., along with its affiliates, subsidiaries, and related parties.

8. "Person" means any natural person or any legal entity, including, without limit, any business or governmental entity or association.

9. "Sports Trading Cards" refers to collectible cards featuring the name, image, and likeness of Athletes that may also include Autographs, facsimile signatures, and tangible items (*e.g.* pieces of an Athlete's jersey).

10. "Trading Cards" refers to collectible cards featuring images of real or fictional people, characters (e.g. Pokémon, Disney characters, Marvel characters), or things.

11. The terms "You," "Your," "Yours" or "Clearlake" mean Clearlake Capital Group LP, and its affiliates, subsidiaries, and related parties, and includes each of their past and present officers, employees, agents and representatives, parents and predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures. The terms "subsidiary," "affiliate," and "joint venture" refer to any firm in which there is total or partial ownership of twenty-five percent or more or total or partial control between the company and any other Person or entity.

12. The terms "identify," "relating to," "concerning," "and," "or," "and/or," "any," "all," and "each," are defined as set forth in Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York.

13. The terms defined above and used in each of the Requests should be construed broadly to the fullest extent of their meaning consistent with Southern District of New York Local Rule 26.3.

14. Any reference to a Person that is a business entity and is not otherwise defined includes that Person's predecessors (including any preexisting person that at any time became part of that entity after merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, franchisors and franchisees; each other Person directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, consultants, controlling shareholders (and any entity owned by any such controlling shareholder), and attorneys of any of them; and any other Person acting for or on behalf of any of them.

15. Unless words or terms have been given a specific definition, each word or term used here shall be given its usual and customary dictionary definition except where such words have a usual custom and usage definition in Your trade or industry, in which case they shall be interpreted under such usual custom and usage definition of which You are aware.

**INSTRUCTIONS**

The instructions below apply to each of the Requests and are deemed to be incorporated in each of them:

1. You are requested to produce Documents in accordance with the specifications and instructions set forth in the Joint Electronic Discovery Stipulation and Order and Appendix 1 thereto ("ESI Protocol"), attached as Exhibit A.

2. Confidential documents produced in response to these Requests shall be designated in accordance with the procedures in the Confidentiality Stipulation and Protective Order, attached

as Exhibit B, which governs the designation and treatment of confidential information and materials produced in connection with the pre-trial phase of this Action.

3. If any part of a Document is responsive to any Request, the whole Document is to be produced.

4. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, these Requests for Production shall be deemed to be continuing in nature so that, if You, Your directors, officers, employees, agents, representatives or any Person acting on Your behalf, subsequently discover or obtain possession, custody or control of any Document or ESI previously requested or required to be produced, You shall make such Documents or ESI available within 7 days of discovery or possession. These Requests call for the production of all responsive Documents that are within Your possession, custody or control.

5. Any alteration of a responsive Document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications and other versions of a Document is a responsive Document in its own right and must be produced.

6. Documents not otherwise responsive to these Requests shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by these Requests, or if such Documents are attached to Documents called for by these Requests and constitute routing slips, transmittal memoranda, letters, cover sheets, comments, evaluation or similar materials.

7. To the extent responsive Documents reside on databases and other such systems and files, You are requested to produce the relevant database in usable form and/or permit access for inspection, review and extraction of responsive information.

8. Any Document request that demands the production of "Documents sufficient to show" requires You to produce only those Documents necessary to provide all the information necessary to show, identify or describe the subject matter requested.

9. The fact that a Document is in the possession of Panini, or is produced by another Person, does not relieve You of the obligation to produce all Your copies of the same Document, even if Your copies are identical in all respects to a Document produced or held by another Person.

10. If You serve a timely objection to any portion of a Request, definition or instruction, respond to the remaining portion. No part of a Request shall be left unanswered merely because an objection was interposed to another part of the Request.

11. If You object to any Request or subpart thereof, the objection shall state with specificity all grounds. Any ground not stated shall be waived.

12. Panini reserves its right to supplement or amend these Requests.

13. Unless otherwise specified, the time period for the Requests shall be from January 1, 2020, to January 1, 2023.

## DOCUMENT REQUESTS

**Request for Production No. 1**

All Documents and Communications relating to or discussing Fanatics' business, actual or prospective, including market share, in the Sports Trading Card industry.

**Request for Production No. 2**

All Documents and Communications relating to or discussing the impact of Fanatics' acquisition of exclusive Sports Trading Card licenses, including, but not limited to, economic benefits, and effect on existing competitors such as Panini.

**Request for Production No. 3**

All Documents and Communications relating to or discussing competition between Sports Trading Cards and other Collectibles, including, but not limited to, non-sports trading cards.

**Request for Production No. 4**

All Documents and Communications relating to or discussing competition between Fanatics and its competitors in the Sports Trading Card industry, including but not limited to, Panini.

**Request for Production No. 5**

All valuations of Fanatics' Sports Trading Card business including assumptions as to competition in the industry, and exclusivity.

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PANINI AMERICA, INC.

*Plaintiff*,

v.

FANATICS, INC., FANATICS, LLC, FANATICS COLLECTIBLES INTERMEDIATE HOLDCO, INC., FANATICS SPV, LLC, and FANATICS HOLDINGS, INC.

*Defendants*.

Case No. 1:23-cv-09714-LTS
[Related to Case No. 1:23-cv-06895-LTS]

**<u>JOINT ELECTRONIC DISCOVERY STIPULATION AND [PROPOSED] ORDER</u>**

The parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Joint Submission and Proposed Order (and any subsequent to this) ("Protocol") shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Protocol is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

## I. Definitions

1. "Actions" means *Panini America, Inc. v. Fanatics, Inc. et al.*, Case No. 1:23-cv-09714-LTS (S.D.N.Y. 2023) and *Fanatics Collectibles Topco, Inc. v. Panini S.p.A.*, Case No. 1:23-cv-06895-LTS (S.D.N.Y 2023), and any and all cases consolidated or coordinated with them.

2. "Document(s)" and "Electronically Stored Information" ("ESI") shall have the same meaning as the usage of these terms in Civil Rule 26.3(c)(2) of the Local District Rules and Federal Rule of Civil Procedure 34(a)(1)(A).

3. "Email" refers to electronic means for sending, receiving, and managing communications via different structured data applications (email client software), including, but not limited to, Microsoft Outlook, Google Gmail, Yahoo Mail, or Lotus Notes, and the files created or received by such means, though the inclusion of any platform, program, client, or software as an example herein will not obligate any Party to collect such ESI.

4. "Fanatics" means Fanatics Holdings, Inc.; Fanatics Collectibles Topco, Inc.; Fanatics, Inc.; Fanatics, LLC; Fanatics Collectibles Intermediate HoldCo, Inc.; Fanatics SPV, LLC; and their affiliates, subsidiaries, agents and/or employees, attorneys, and persons acting on behalf of the foregoing described entities and persons.

5. "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual documents, including extracted and user-created Metadata, as well as OCR or extracted text, should such data be available.

6. "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such a system.

7. “Panini” means Panini America, Inc., and its parent, Panini S.p.A., and their affiliates, subsidiaries, agents and/or employees, attorneys, and persons acting on behalf of the foregoing described entities and persons.

8. “Party” or “Parties” means one or more of the parties to the Actions, including any Party added or joined to any complaint in these proceedings, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Actions

9. “Producing Party” means a Party or non-party that produces documents or ESI.

10. “Requesting Party” means a Party that requests, formally or informally, the production of documents, ESI, or other information.

11. “Search Term” means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors or other syntax.

12. “Texas Case” means *Panini America, Inc. v. Eli Nicholas Matijevich, Jr., et al.*, Case No. DC-23-04798 (Tex. Dist. Ct., Dallas Cnty., April 14, 2023).

**II. Scope**

13. General**.** The procedures and protocols outlined herein govern the production of documents and ESI by all Parties. The Parties will take reasonable steps to comply with this agreed-upon protocol for the production of Documents and Electronically Stored Information (“Protocol”). All Productions made pursuant to this Protocol are subject to the protective order in these Actions. Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or Requesting Party. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, Local Rules, or applicable state and federal statutes, they shall be controlling.

14. Limitations and Non-Waiver**.** The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege arising under the laws of any jurisdiction, including the attorney-client privilege and the work-product doctrine. All Parties preserve all such privileges and protections, and all parties reserve the right to object to any such privileges and protections. The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds. Further, nothing in this Protocol shall be construed to affect the admissibility of documents and ESI. All objections to the discoverability or admissibility of any documents and ESI are preserved and may be asserted at any time.

15. Modification by Agreement**.** Any practice or procedure set forth herein may be modified by agreement of affected Parties, provided that modification has been confirmed in a writing signed by all affected Parties or their respective counsel of record. Any Party added or joined to any complaint in this Action and any Party to actions that may be consolidated into or coordinated with the Actions after the date of this Protocol that seeks to deviate from the Protocol must obtain leave of Court to do so unless all affected Parties otherwise consent in a writing signed by all affected Parties to their respective counsel of record.

16. Modification by Court Order**.** Nothing in this Protocol shall be construed as a waiver of the right of any Party to apply to the Court for an order modifying its terms for good cause shown, provided, however, that counsel for such Party must first meet and confer with the counsel for the opposing Party and the affected Parties shall use reasonable best efforts to negotiate an exception from or modification to this Agreement and order prior to seeking relief from the Court.

## III. Preservation

17. No Discovery of Material Not Required to Be Preserved. Absent a showing of extraordinary circumstances, the Parties shall not seek discovery of items that need not be preserved pursuant to the paragraph below. Any discovery request seeking such information must be served separately from discovery requests seeking other materials and must include a statement showing good cause for the discovery of such materials, considering the limitations set forth in Federal Rule of Civil Procedure 26(b)(2)(C). If any general discovery request is susceptible to a construction that calls for the production of items that need not be preserved pursuant to this Stipulation and Order, such items need not be searched for, produced, or identified on a privilege log pursuant to Rule 26(b)(5).

18. ESI That Is Not Reasonably Accessible. The following categories of ESI are not reasonably accessible in this litigation:

(a) Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonable accessible data source;

(b) Deleted slack, fragmented, or other data accessible only by forensics (nothing in this order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

(c) Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(d) Online access data such as temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

(e) Dynamic fields or databases or log files that are not retained in the usual course of business;

(f) Data that is not accessible through the operating system or software installed on a device; and

(g) Server, system, or network logs.

19. The Parties need not preserve for this litigation the categories of ESI listed in the paragraph above, unless on the date that this Stipulation and Order is entered by the Court, either Party has a policy that results in the routine preservation of such ESI, in which case such Party shall continue to preserve such ESI in accordance with its policy.

20. Nothing in this Stipulation and Order prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of documents or ESI are not reasonably accessible.

21. Preservation Does Not Affect Discoverability or Claims of Privilege. By preserving documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## IV. Search and Review

22. Disclosure of Intended Search Methodology. Each Producing Party will use reasonable search methodologies to collect, review, and produce relevant and responsive, non-privileged documents and ESI in response to requests for production. Prior to reviewing for and producing responsive documents and ESI, a Producing Party shall disclose to the Requesting Party, if relevant, (1) the Search Terms it intends to use to search for and identify potentially responsive documents and ESI; (2) the Custodial and non-Custodial Data Sources to which Search Terms shall be applied; (3) information sufficient for the Requesting Party to assess whether the chosen Custodial and non-Custodial Data Sources are appropriate; and (4) other disclosures reasonably necessary for the parties to meet and confer and resolve disputes related to search methodologies.

Following such disclosures, the Parties shall meet and confer and use reasonable efforts to reach agreement on the search methodologies according to the provisions that follow. If the Parties cannot reach agreement following such disclosures and negotiations, they shall bring their disputes to the Court for resolution in a timely manner.

23. Search Terms. If a Producing Party intends to use Search Terms to limit its collection, review, or production of ESI, that Party or Non-Party shall disclose to the Requesting Party a table describing the collections of ESI for which it proposes to use Search Terms and the Search Terms that it proposes to use for each collection of ESI.

24. The Producing Party shall also make disclosures reasonably necessary for the Requesting Party to assess the efficacy of the proposed Search Terms including, but not limited to, (1) the number of documents responsive to the Search Terms collectively (total and broken down by custodian); and (2) the number of documents responsive to each proposed Search Term (total).

25. After receipt of the Search Terms and disclosures set forth above (to the extent requested) by a Producing Party, the Requesting Party shall raise any concerns and propose any additions or modifications it may have to the Search Terms. The Requesting Party shall, upon request, explain the reasoning behind its additions or modifications.

26. The Producing Party will then either agree to the additions and/or modifications or decline to adopt them in writing. If the Producing Party declines to accept the additions and/or modifications, it will explain its reasoning and provide any counterproposals in writing.

27. The Parties agree and understand that such negotiations require a cooperative and a reasonably iterative process to evaluate and agree to Search Terms.

28. <u>Use of Technology Assisted Review ("TAR")</u>. Nothing in this Order precludes a Party from using TAR, or some other AI-enabled method to fulfill their document production obligations, provided that the Party discloses to the other Party the process used and complies with the meet and confer obligations outlined in this Order. A Producing Party that wishes to use TAR to determine whether documents are responsive or to otherwise limit the documents that it produces shall notify the Requesting Party and provide it a proposed TAR protocol that provides evidence of validation, including the size and precision of the statistical sample and level of actual recall achieved. The Requesting and Producing Parties shall then meet and confer in an attempt to negotiate an agreed-upon protocol.

29. Nothing in this Order may be construed or interpreted as precluding a Producing Party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the Requesting Party's request. Nothing may be construed or interpreted as precluding a Producing Party from performing a privilege review of documents determined to be responsive by any means. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term or TAR if that document is in good faith and reasonably deemed not responsive to the Requesting Party's request or privileged.

30. <u>Filtering.</u> Producing Parties must de-NIST electronic files, removing known, traceable software applications in the National Software Reference Library ("NIST List"), available at https://www.nist.gov/itl/ssd/software-quality-group/nsrl-download. If a Producing Party proposes to apply other filters to limit ESI that is collected for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the Producing Party shall advise the Requesting Party and the Requesting and Producing Parties shall meet and confer

regarding such additional proposed filters. If the Parties cannot reach agreement, they shall bring their dispute to the Court for resolution.

31. De-Duplication. Each Party is required to produce only a single copy of a responsive document. A Producing Party electing to deduplicate shall deduplicate across custodians and at the family-level only (i.e., if there are identical child documents that have different parents, they are not duplicative, and an attachment to a document is not a duplicate of the same document maintained as a standalone document). Each Party may de-duplicate responsive ESI (based on Source Hash, SHA1 hash, MD5 hash values, or other industry standard method) across custodians. For emails with families, the hash value is generated based on the parent/child document grouping. To the extent that deduplication through hash values is not possible, the parties shall meet and confer to discuss any other proposed method of deduplication. A Producing Party must make reasonable effort to identify all agreed upon custodians who were in possession of any de-duplicated documents through an appropriate load file field such as All Custodians. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1. In the event of rolling productions of documents or ESI, the Producing Party will, as needed, supplement the load files with updated All Custodian information, as well as BCC information to extent such metadata exists. Duplicate custodian information may be provided by a metadata overlay and will be provided by a Producing Party on an ongoing basis.

32. Email Threading. In order to limit the volume of duplicative content produced from email threads, use of email-threading analytics software is permitted to exclude email messages wholly contained and reviewable within later-in-time messages from the same email threads that

are produced provided, however, that all responsive prior or lesser-included emails with attachments are produced. If a Producing Party proposes to use email threading to limit the volume of content produced from email threads, the Producing Party shall advise the Requesting Party.

33. Cooperation. The Parties agree to work together in good faith to resolve any differences that they may have over the Producing Party's use of search terms or TAR. Any disputes over search terms or the use of TAR that cannot be resolved between the parties during a meet and confer may be consequently raised with the Court.

## V. Production Format

34. The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of the documents as part of the document production process.

## VI. Privilege Logs

35. Any Producing Party will produce a privilege log after substantial completion of document production. Except as provided otherwise below, for any Document withheld or redacted, the Producing Party will produce privilege logs in MS Excel (.xlsx) format.

36. The Parties shall meet and confer in good faith regarding the scope, format, and exchange of privilege logs. If after meeting and conferring, the Parties are unable to reach agreement on privilege logs, then disputes may be submitted to the Court consistent with the Court's individual rules.

37. Privilege logs shall be provided containing the following information, to the extent reasonably available:

a. A sequential number associated with each entry in the privilege log (Column A: row 1, row 2, row 3, etc.);

b. Where applicable, StartingBates and StartingBatesofParent;

c. The Custodian or Custodial or Non-Custodial Data Source from which the Document was collected;

d. The name of each person who sent, authored, or otherwise prepared the Document;

e. The identity of each person designated as an addressee or copyee, including CC and BCC (copyees and blind copyees shall appear in separate fields);

f. The date;

g. A description, pursuant to Federal Rule of Civil Procedure 26(b)(5)(A)(ii), of the contents of the withheld Document that, without revealing information that is itself privileged or protected, is sufficient to enable other Parties to understand the general subject matter of the Document and assess the basis of the claim of privilege or other protection from disclosure;

h. To the extent reasonably available, the name of the attorney(s) and legal organization who provided the legal advice at issue, from whom the legal advice at issue is requested, who directed the facilitation of the legal advice at issue, and/or who requested or prepared the Document;

i. The nature of the privilege or protection asserted (i.e., attorney-client privilege, work product doctrine).

38. If a Producing Party contends that all documents of a particular type or category are privileged, they may request permission from and shall meet and confer with the Receiving Party to identify such documents on a privilege log by category rather than individually. The

Receiving Party shall consider any such request in good faith. The Producing Party's categorical privilege log entry must still provide the Requesting Party, and the Court, if necessary, with information sufficient to evaluate the Producing Party's privilege claims.

39. A single document containing multiple email messages (i.e., in an email chain) may be logged as a single entry.

40. If the Producing Party contends that more than one basis for withholding applies to a single Document, all bases must be asserted in the privilege log.

41. Exclusions. To the extent any of the following documents are privileged or otherwise protected from disclosure by Federal Rule of Civil Procedure 26(b)(3)-(4), they may be excluded from privilege logs:

a. Documents solely in the possession of outside counsel and their consultants or other agents who represent a Party in any of these Actions;

b. Documents solely in the possession of outside counsel and a Party sent after the commencement of these Actions;

c. Documents sent solely among a Party's outside counsel and their consultants or other agents;

d. Documents sent solely between or among (i) Defendants' counsel, or (ii) Plaintiffs' counsel;

e. Documents sent solely among outside counsel, the Parties they represent, and/or consultants or other agents who represent a Party in connection with a litigation.

f. Documents sent solely among outside counsel and/or their consultants or other agents who represent a Party in the Texas Case and the Parties they represent in the Texas Case, regarding the prosecution or defense of the Texas Case.

g. Documents the Producing Party may properly exclude from a privilege log pursuant to any subsequent order in the Actions.

42. If a Document contains both privileged and non-privileged communications, the non-privileged communications must be produced, either by separately producing a copy of the non-privileged communications embedded in the privileged communication, or by producing a copy of the entire communication string with the privileged portion(s) redacted. The redactions shall be narrowly applied so the Receiving Party has the ability to discern to the maximum extent practicable the privilege assertion within the Document and to view all non-privileged communications and material.

43. Nothing in this Order prevents any Party from redacting personal data and personally identifying numbers or personally sensitive information from produced documents, consistent with the requirements under Federal Rule of Civil Procedure 5.2 and Local Rules. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

44. A Party who, pursuant to a request under Federal Rule of Civil Procedure 34 or a non-party, pursuant to a request under Federal Rule of Civil Procedure 45, re-produces documents from other matters, may produce privilege logs relating to that production in the manner they were produced in such other matters, so long as the privilege logs comply with Federal Rule of Civil Procedure 26(b)(5)(A). The Party shall, however, reproduce these logs in Excel format upon request if reasonably possible to do so.

45. The Parties have agreed to seek a Federal Rule of Evidence 502(d) Order, which shall be set forth in a separate document and presented to the Court for its consideration.

**VII. Non-Party Documents**

46. A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that non-parties produce documents within their custody and control in accordance with the specifications set forth herein. The Issuing Party shall timely notify other Parties when it receives non-party productions, and shall, upon request by other Parties ("Requesting Parties" for purposes of this paragraph), provide copies of such productions to Requesting Parties in the format in which they were received from the non-party. In the event that the format of a non-party production does not conform with the specifications set forth herein, the Parties shall meet and confer regarding the format of production to Requesting Parties. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-parties to object to a subpoena.

**VIII. Amendment of Order**

47. Nothing herein shall preclude any Party from seeking in writing to amend this Order for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any Parties involved in the dispute.

***

The preceding, together with Appendix 1, constitutes the agreement(s) reached, and disputes existing, (if any) between the Parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.

SO STIPULATED AND AGREED.

*/s/ Lawrence E. Buterman*

*Counsel for Fanatics, Inc., Fanatics, LLC, Fanatics Collectibles Intermediate Holdco, Inc., Fanatics SPV, LLC, and Fanatics Holdings, Inc.*

*/s/ David Boies*

*Counsel for Panini America, Inc.*

Dated: New York, New York
February 13, 2025

SO ORDERED.



**VALERIE FIGUEREDO**
**United States Magistrate Judge**

Appendices referenced herein are filed at ECF No. 101.

<u>**APPENDIX 1 – PRODUCTION FORMAT**</u>

**A. Production Components.**

Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

1. An ASCII delimited data file (.DAT) with ASCII 020 for the comma character and ASCII 254 for the quote character and ASCII174 for new line character, with all values in a multi-value field separated by a semi-colon ASCII 059 (with the use of commas and quotes as delimiters not acceptable using standard delimiters) and encoded in UTF-8;

2. An image load file (.OPT) that can be loaded into commercially acceptable production software. The Image Load File shall contain the following comma-delimited fields: STARTINGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT;

3. TIFF images;

4. Document level .TXT files for all documents containing extracted full text or OCR text;

5. Parent-child relationships will be maintained in production and child files should be produced consecutively following parent files and shall be sequentially Bates stamped. The Producing Party shall ensure the metadata fields for StartingBatesoffamily and EndingBatesoffamily referenced in Part D of this Appendix A are accurately populated;

6. Document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) common system files and application executable files which the Parties have agreed to filter pursuant V.9, and (2) documents

that are withheld on the basis of attorney-client privilege or work product protection. For the avoidance of doubt, documents that are linked are not part of the same family for purposes of this Order. Linked documents are governed by Appendix J below.

If a particular document or category of documents warrants a different production format, for example if it is impractical to produce an entire document family for particular documents, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

**B. Production Media and Access Controls.**

Documents shall be produced through electronic means, such as secure file sharing methods (e.g. FTP) or, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g. "VOL001"). Each piece of Production Media shall also identify: (a) the Producing Party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media.

Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the Producing Party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

**C. Data Load Files / Image Load Files**

All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

**D. Metadata Fields**

With the exception of hard copy paper documents, which are separately addressed in paragraph M below, each of the metadata and coding fields set forth below that can be extracted shall be produced for each document, to the extent reasonably practicable. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) StartingBates, (b) EndingBates, (c) StartingBatesoffamily, (d) EndingBatesoffamily, (e) Custodian, (f) AllCustodians, (g) Confidentiality; (h) Redactions, (i) Filepath, and (j) Pathtotextfile, which should be populated by the Party or the Party's vendor. The Parties will make reasonable efforts to ensure that metadata

fields automatically extracted from the documents correspond directly to the information that exists in the original documents.

| Field Name | Example output | Description |
|---|---|---|
| StartingBates | EDC0000001 | First Bates number of each document |
| EndingBates | EDC0000001 | Last Bates number of each document |
| StartingBatesoffamily | EDC0000001 | First Bates number of each attachment range |
| EndingBatesoffamily | EDC0000001 | Last Bates number of each attachment range |
| Batesrangeoffamily | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| StartingBatesofparent | EDC0000001 | First Bates number of parent document/Email. This field should be populated in each record representing an attachment "child" document |
| StartingBatesofeachattc hment | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s) separated by a semicolon. There can be more than one Bates number listed depending on the number of attachments. This field should be populated in each record representing a "parent" document |
| Custodian | Smith, John | Individual from whom the document originated |
| All Custodians | Smith, John;<br>Green, Alexa;<br>Peterson, Willo | All custodians associated with a document, including Individual(s) whose documents de-duplicated out. Semicolon should be used to separate multiple entries. |
| Emailsender(From) | John Smith | The sender of an email |

| | | |
|---|---|---|
| Torecipients | John Smith; Mary Jones | Recipients from the to line of an email. Semicolon should be used to separate multiple entries. |
| Ccrecipients | John Smith [mailto:jsmith@company.com]; Mary Jones [mailto:mjones@company.com] | Carbon copy recipients on an email. Semicolon should be used to separate multiple entries. |
| Bccrecipients | John Smith; Mary Jones | Blind carbon copy recipients on email. Semicolon should be used to separate multiple entries. |
| Emailsubject | Re: Board meeting minutes | Subject line from an email or a calendar item |
| Filenames | BoardMeetingMinutes.docx; BoardAgenda.docx | Name of the original native file, including extension. Semicolon should be used to separate multiple entries. |
| Emailsentdate | 02/15/2020 | The date an email or calendar item was sent using MM/DD/YYYY format. |
| Emailsenttime | 07:05:00 | The time an email or calendar item was sent using HH:MM:SS using 24 hour time format. |
| Normalizedtimezone | CT | The time zone in which the emails were standardized during conversion |
| DateStart | 11/11/2021 13:32:00 | Start date and time of calendar appointments. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. |
| DateEnd | 11/11/2021 14:52:00 | End date and time of calendar appointments Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. |
| Documenttype | Email | The content type of an email or native file document as identified/extracted from the header |
| Fileextension | .msg | The file type extension representing the email or native file document; will vary depending on the format |

| | | |
|---|---|---|
| Fileauthor | John Smith | The person who created the file. A file can have one or no author. |
| Filelastauthor | Jon Doe | Last saved by field value extracted from metadata of a native file. |
| Filecreateddate | 10/10/2010 | The date the file was created |
| Filelastmodifieddate | 11/24/2015 | The date changes were last made to a file. |
| Filelastmodifiedtime | 13:05:00 | Time the document was last modified using 24 hour time format. |
| Filelastaccesseddate | 11/24/2015 | Date the document was last accessed. |
| Filelastaccessedtime | 07:05:00 | Time the document was last accessed using 24 hour format. |
| Filelastprinteddate | 01/24/2015 | Date the document was last printed |
| Filesize | 5952 | Size of native file document/email in bytes. |
| Pagecount | 1 | Number of pages in the document. |
| All Filepaths | J:\Shared\SmithJ\October Agenda.doc; C:\Users\SmithJ\OneDrive\October Agenda.doc | Original file path including values of duplicate files. Semicolon should be used to separate multiple entries. |
| EmailmessageID | <000805c2c71b$75977050$cb8306d1@MSN> | A unique ID for email messages. |
| Emailheader | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; | Internet header information from each email. |

| | | |
|---|---|---|
| | Mon, 23 Aug 2004 11:40:10 - 0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | |
| Hash Value | d13ldd02c5e6eec4693d9a0698afl95c2fcab58712467eab4004583eb8tb7f89 | Document Source, SHA1 hash, or MD5 hash value (used for deduplication or other processing). |
| Pathtotextfile | TEXT/001/EDC0000001.txt | Path to extracted text or OCR. |
| Pathtonativefile | NATIVES/001/EDC0000001.xlsx | Path to the email or native file document. The linked file must be named per the “StartingBates” number. |
| Confidentiality | Confidential AEO | Confidentiality designation of the document. |
| Redactions | Yes | Indicate Yes if a document is redacted. If no leave blank. |
| Withheld Placeholder | Y | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y". If not applicable leave blank. |

| | | |
|---|---|---|
| Technical Issue Placeholder | Y | To the extent a file is withheld on the basis of a technical issue, this field must be populated with a "Y". If not applicable leave blank. |
| VolumeName | ABC001-001 | Unique production volume identifier applied |

Text and other messages and chats to include the following:

| Field Name | Example Output | Description |
|---|---|---|
| Message Type | Direct | Direct or group message |
| Channel name | Work Project | Name of conversation channel or group |
| Participants | 18885551212@whatsapp.net;18005551234@whatsapp.net | Names of individuals in a chat |
| Senders | 18885551212@whatsapp.net | All individuals who sent messages during the 24-hour period |
| Recipients | 18005551234@whatsapp.net | All individuals who received messages during the 24-hour period. |
| First Message sent date/time | 12/31/2021 14:01:00 | Date and time first message was sent using DD/MM/YYYY HH:MM:SS 24 hour format. |
| Message count | 6 | Total number of messages in chat |
| Participant count | 2 | Total number of participants in chat |
| Source | WhatsApp | Source of chat (TikTok, WhatsApp, etc. |
| Message ThreadSort | 8542484AD882B85080D109DE_201902061941130 | Custom value to allow chats to be reviewed in chronological context (if available) |

**E. TIFFs.**

Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The imaged data shall retain all attributes of the native or hard-copy file to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF image will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, shall to the extent reasonably practicable, be produced in native or Microsoft-equivalent format, or be imaged so that such content is viewable on the image file. Where hidden content, tracked changes or edits, comments, notes, or other similar information is not readable in its produced format, a Party that received the document may make reasonable requests that a more readable version, such as a native or Microsoft-equivalent version, be produced when helpful to interpret the contents of the relevant document. To the extent a response to discovery requires production of Document(s) accessible only through proprietary or enterprise software, the Parties shall meet and confer to finalize the appropriate production format. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents, with corresponding multi-page text and necessary load files. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image

stating "Document Produced Natively." A Producing Party retains the option to produce ESI in alternative formats if so agreed by the Requesting Party, which may include native format, or a combination of native and TIFF formats. For future productions of documents responsive to properly propounded requests issued pursuant to Fed. R. Civ. P. 34 and 45, the Producing Party will make reasonable efforts to identify documents with readability issues in advance of production and, where issues are detected, to produce the Document(s) in a more readable format (such as in native or Microsoft-equivalent form. The provisions of this Appendix E apply to any type of document (including emails, presentations, spreadsheets, and other types of documents).

**F. Color**

A Party that received a production may make reasonable requests that color images be produced where color is helpful to interpret the contents of the relevant document. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Reasonable requests that a document be produced in color for the reasons set forth in this Paragraph will not be unreasonably denied by the Producing Party. If a Producing Party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

**G. Text Files.**

A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall

be used for all scanned, hard copy documents and for documents with redactions. All Documents shall be produced with a link in the TextLink metadata field.

**H. Native Files.**

Spreadsheets (e.g. MS Excel) and PowerPoint will be produced in native format. To the extent Excel spreadsheets contain redactions, they shall be redacted using a tool designed for redacting spreadsheets and producing them natively, and produced in the form of a redacted ".xlsx." To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the FILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph D above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

**I. Request for Other Native Files.**

Other than as specifically set forth above, a Producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this Protocol does not require the production of that document in its native format, the party making such a request shall explain the reason for its request that the document be produced in its native format. The Requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. The Producing Party need only produce such a document in native format if reasonably practicable. Any native files that are produced should be produced with a link in the Native Link field, along with all extracted text and applicable metadata fields set forth in Appendix D.

**J. Linked Files and Collaborative Work Environments.**

For documents responsive to properly propounded requests issued pursuant to Fed. R. Civ. P. 34 or 45 containing hyperlinks, a receiving party may make reasonable and proportionate requests that the producing party conduct a reasonable search for relevant documents identified via hyperlinks. For each link identified by the receiving party, the Producing Party shall conduct a reasonable search for the document corresponding with the link. The Producing Party shall process and produce relevant documents corresponding with the links with reasonably available metadata. Parties understand that a hyperlinked document produced may not be the version in time document shared in a communication. Therefore to avoid any doubt, hyperlinked documents may contain a unique stamp (e.g. "Hyperlinked Document") to identify those documents in a production set. For Documents produced pursuant to this Appendix J, the Producing Party is not required to conduct any further search of documents corresponding with the links. The provisions of this Appendix J apply to any type of document (including emails, presentations, spreadsheets, and other types of documents). For Documents produced pursuant to this Appendix J, the Producing Party shall produce a cross-reference identifying the StartingBates of the document containing the hyperlink and the StartingBates of its corresponding hyperlinked document.

**K. Confidentiality Designation.**

Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**L. Redactions**

Each redaction on a document shall be completed using either black boxes with white text or white boxes with black text that contains the word "Redacted" with a standardized redaction reason to enable the receiving party to understand the basis for the redaction at the point of each redaction on each page of the redacted document. The redacted image file should be produced along with OCR text of the redacted file. If metadata displayed in the imaged document was redacted, then that metadata should be redacted from the load file as well, using language consistent with the imaged redactions, and logged for the receiving party pursuant to the terms of the producing party's privilege log. If a Requesting Party reasonably determines that a redacted file is not reasonably usable, the Requesting Party and the Producing Party will discuss an alternative method to produce the file in a reasonably usable format.

**M. Paper Documents.**

A Producing Party may make paper documents available for inspection and copying in accordance with Federal Rules of Civil Procedure 34 and 45 or, additionally or alternatively, scan and OCR paper documents. The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable:

| Field Name | Example Output | Description |
|---|---|---|
| StartingBates | EDC0000001 | First Bates number of each document |
| EndingBates | EDC0000001 | Last Bates number of each document |
| StartingBatesoffamily | EDC0000001 | First Bates number of each attachment range |

| | | |
|---|---|---|
| EndingBatesoffamily | EDC0000001 | Last Bates number of each attachment range |
| Batesrangeoffamily | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| StartingBatesofparent | EDC0000001 | First Bates number of parent document/Email. This field should be populated in each record representing an attachment "child" document |
| StartingBatesofeachattachment | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s) separated by a semicolon. There can be more than one Bates number listed, depending on the number of attachments. This field should be populated in each record representing a "parent" document |
| Custodian | Smith, John | Individual from whom the document originated |
| All Custodians | Smith, John; Green, Alexa; Peterson, Willo | All custodians associated with a document. Semicolon should be used to separate multiple entries. |
| Confidentiality | Confidential AEO | Confidentiality designation of the document |
| Pathtotextfile | TEXT/001/EDC0000001.txt | Path to extracted text or OCR |

Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The

parties will make reasonable efforts to unitize documents correctly. Where a document or a document group — such as folder, clipped bundle, or binder has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping to the extent reasonably practicable.

**N. Date and Time.**

No Party shall modify the date or time as contained in any original ESI. This provision does not prevent parties from deleting inaccurate date or time information that arises as an incident of collection or processing.

**O. Time Zone.**

To the extent reasonably practicable, ESI items shall be processed using a consistent time zone and the time zone shall be disclosed to the Requesting Party.

**P. Auto Date/Time Stamps.**

To the extent reasonably practicable, ESI items shall be processed so as to preserve the data/time shown in the document as it was last saved, not the date of collection or processing.

**Q. Hidden Text.**

ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text and fields, worksheets, speaker notes, tracked changes, and comments.

**R. Bates Numbers.**

Bates number must always: (1) contain no special characters or spaces;[1] (2) for TIFF images, be sequential within a given Document; (3) identify the Producing Party; (4) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; and (5) be unique across the entire production. Bates number must also maintain consistent numbering across a family of Documents. Bates numbers shall not be applied in a way that causes the text of the original Document to be obscured, deleted, or removed. If the Document contains a Bates number from a prior lawsuit, investigation, or production, the Producing Party shall avoid obscuring the previous Bates number or alternatively, shall provide a metadata overlay allowing the Requesting Party to identify the corresponding Bates number.

**S. Compression Files.**

Compression or container file types (e.g., .CAB, .GZ, .RAR. .ZIP), shall, where possible, be decompressed to ensure that a compressed file within a compression or container file are decompressed into the lowest possible compression resulting in individual folders and/or files. Original compression files and container files need not be produced, provided that all Documents within the compression or container file are produced in accordance with the specifications of this Order.

**T. Password Protected/Encrypted Files.**

To the extent Documents are password-protected or encrypted, the Requesting Party may make reasonable requests for the process such Documents for review. To facilitate the

---

[1] For the avoidance of doubt, hyphens, dashes, and underscores are permitted and are not "special characters" within the meaning of this provision.

identification of such documents, the Producing Party shall provide a slip-sheet for any document that failed to process because it was password-protected or encrypted. Any slip-sheet produced pursuant to this Appendix T shall indicate that the reason the document failed to process was password-protection or encryption, as applicable. The Producing Party shall use reasonable efforts to produce such documents where possible and proportionate to do so. The parties shall meet and confer to resolve any disputes arising under this Appendix T.

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PANINI AMERICA, INC.

*Plaintiff*,

v.

FANATICS, INC., FANATICS, LLC, FANATICS COLLECTIBLES INTERMEDIATE HOLDCO, INC., FANATICS SPV, LLC, and FANATICS HOLDINGS, INC.

*Defendants*.

Case No. 1:23-cv-09714-LTS
[Related to Case No. 1:23-cv-06895-LTS]

**CONFIDENTIALITY STIPULATION AND [PROPOSED] PROTECTIVE ORDER**

WHEREAS, the parties having agreed to the following terms of confidentiality, and the Court having found that good cause exists for the issuance of an appropriately tailored confidentiality order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is hereby

ORDERED that the following restrictions and procedures shall apply to the information and documents produced in connection with the pre-trial phase of the above-captioned action and related action *Fanatics Collectibles Topco, Inc. v. Panini S.p.A*, No. 1:23-cv-09714-LTS (S.D.N.Y., August 7, 2023) (collectively, the "Actions"):

1. This Order shall apply to all confidential materials and information disclosed in the Actions, whether in written form, through testimony or otherwise, whether disclosed by the parties to the Actions or by non-parties.

2. Counsel for any party may designate any document or information, in whole or in part, as "Confidential" if counsel determines, in good faith, that such designation is necessary to protect that party's interests in information that is proprietary, a trade secret or otherwise sensitive

non-public information, including, but not limited to, non-public financial information, business plans, product-development information, or marketing plans; information of a personal or intimate nature regarding any individual; information for which applicable federal, state or foreign law requires confidential treatment; or information that has been deemed by a relevant domestic or foreign court or regulatory authority to require confidential treatment. Information and documents designated by a party as Confidential will be stamped "CONFIDENTIAL."

3. Counsel for any party may designate any document or information, in whole or in part, as "Highly Confidential" if (i) counsel determines, in good faith, that such designation is necessary to protect the interests of the producing party in information for which unauthorized disclosure would result in competitive, commercial, or financial harm to the producing party or its personnel, clients, or customers, and (ii) that document or information references or reflects non-public information regarding that party's: (a) financial performance; (b) employee hiring, performance, or compensation; (c) trade secrets; (d) competitive strategy or planning materials; (e) proposed or final terms of commercial agreements (other than agreements designated Outside Counsel Eyes' Only); or (f) confidential pitches to potential partners or customers including drafts of such pitches. The parties should meet and confer if counsel determines, in good faith, that such designation is necessary for any other production of documents. Information and documents designated by a party as Highly Confidential will be stamped "HIGHLY CONFIDENTIAL."

4. Counsel for any party may designate any document or information, in whole or in part, as "Outside Counsel Eyes' Only" if that document or information references or reflects the non-public terms (proposed or final) of that party's license agreements, including but not limited to the license agreements at issue in the Actions and license agreements with athletes. For the avoidance of doubt, the parties may designate all draft and final versions of their license

Case 1:23-cv-09714-LTS-VF Document 60 Filed 12/10/25 Page 3 of 15

agreements, as well as other documents or communications that reference or reflect the non-public terms of those agreements, as "Outside Counsel Eyes' Only." Information and documents designated by a party as "Outside Counsel Eyes Only" will be stamped "OUTSIDE COUNSEL EYES ONLY."

5. Documents or information that are designated as Confidential, Highly Confidential, or Outside Counsel Eyes' Only are collectively referred to as "Designated Materials." All documents or information designated as Highly Confidential shall also be deemed Confidential, and all documents or information designated as Outside Counsel Eyes' Only shall also be deemed both Confidential and Highly Confidential.

6. A party may, on the record of a deposition or by written notice to opposing counsel not later than thirty days after receipt of the deposition transcript, designate any portion(s) thereof as Designated Materials. Absent such a designation on the record, information disclosed at a deposition is presumed to be, and shall be treated by the parties and their counsel as, Outside Counsel Eyes' Only for a period of seven (7) days and Confidential for the remainder of this thirty day period.

7. Any Designated Materials disclosed will be held and used by the person receiving such information solely for use in connection with the Actions and not for any other purpose or in any other litigation or proceeding.

8. In the event a party challenges another party's designation under this Order, counsel shall make a good faith effort to resolve the dispute, and in the absence of a resolution, the challenging party may seek resolution by the Court. The materials shall be treated as Designated Materials unless and until the Court grants such motion challenging the designation. A party shall not be obligated to challenge the propriety of the designation of documents as Designated

Case 1:23-cv-09714-LTS-VF Document 60 Filed 12/10/25 Page 4 of 15

Materials at the time of designation, and failure to do so shall not preclude a subsequent challenge to the designation. Nothing in this Protective Order constitutes an admission by any party that Designated Materials disclosed in this case are relevant or admissible. Each party reserves the right to object to the use or admissibility of Designated Materials.

9. All documents and information designated as "CONFIDENTIAL" shall not be disclosed summarized, described, characterized, or otherwise communicated to any person, except:

a. The requesting party (including current officers, directors, employees, or insurers of the party), and counsel, including in-house counsel;

b. Employees of such counsel assigned to and necessary to assist in the litigation;

c. Consultants, vendors (including trial vendors), or experts assisting in the prosecution or defense of the matter, to the extent deemed necessary by counsel;

d. As to any document, its author, its addressee, and any other person indicated on the face of the document as having received a copy;

e. Any witness (and attorneys for witnesses) who counsel for a party in good faith believes may be called to testify at trial or deposition in the Actions and who counsel for a party in good faith believes has knowledge of the document, provided such person signs an agreement to be bound by this Order in the form attached as Exhibit A prior to or at the trial or deposition; and

f. the Court (including any mediator, or other person having access to any Designated Materials by virtue of his or her position with or service to the Court), or any private mediator or arbitrator that the parties engage in this matter.

10. Other than upon the prior written consent of the producing party or by order of the Court, documents or information that are designated as Highly Confidential shall not be disclosed summarized, described, characterized, or otherwise communicated to any person, except:

a. outside counsel retained specifically for the Actions, including any paralegal, clerical or other assistant that such outside counsel employs and assigns to the Actions;

b. any person identified in subparagraph 9(c), provided such person signs an agreement to be bound by this Order in the form attached as Exhibit A;

c. the persons identified in subparagraphs 9(d), 9(e), and 9(f) of this Order; and

d. any in-house counsel of the party who signs an agreement to be bound by this Order in the form attached as Exhibit A, provided the executed Exhibit A is provided to opposing counsel in advance, opposing counsel is given five days to object to the new attorney's access, and the proposed in-house counsel is not provided access under this provision until the five days lapse. If opposing counsel does not object within five days, then the proposed in-house counsel may automatically be provided access under this provision. If opposing counsel objects, then the parties shall meet and confer in good faith. If the parties are unable to resolve any disputes within seven days of the meet and confer, the propounding party shall submit a letter to the Court explaining the basis for the proposed in-house counsel's access to Highly Confidential materials. The opposing party may then submit a response letter to the Court within seven days of the propounding party's letter. The Court will thereafter resolve the parties' dispute. During this process, the proposed in-house counsel will not be provided access under this provision.

11. Other than upon the prior written consent of the producing party or by order of the Court, documents or information that are designated as Outside Counsel Eyes' Only shall not be disclosed summarized, described, characterized, or otherwise communicated to any person, except those persons identified in paragraphs 10(a)-(c) of this Order, and only to the extent reasonably necessary to prosecute and defend the Actions.

12. Prior to disclosing or displaying the Confidential Information to any person, counsel must:

a. Inform the person of the confidential nature of the information or documents;

b. Inform the person that this Court has enjoined the use of the information or documents by him/her for any purpose other than in the Actions and has enjoined the disclosure of the information or documents to any other person; and

c. Require each such person to sign an agreement to be bound by this Order in the form attached as Exhibit A.

13. The disclosure of a document or information without designating it as "Confidential," "Highly Confidential," or "Outside Counsel Eyes' Only" shall not constitute a waiver of the right to designate the document as such. If so designated, the document or information shall thenceforth be treated as Designated Material subject to all the terms of this Order.

14. Should either party wish to redact non-responsive portions of a responsive document for confidentiality reasons, the parties shall meet and confer regarding the proposed redactions. If the parties are unable to resolve any disputes within seven days of the meet and confer, the producing party shall submit a letter to the Court explaining the basis for the proposed

Case 1:23-cv-09214-LTS-VF Document 60 Filed 12/10/25 Page 7 of 15

redactions, and shall simultaneously email a copy of the document(s) at issue to the Court on an *ex parte* basis, indicating which portions would be redacted. The receiving party may submit a response letter to the Court within seven days of the producing party's letter. The Court will thereafter resolve the parties' dispute.

15. Any Personally Identifying Information ("PII") (e.g., social security numbers, financial account numbers, passwords, and information that may be used for identity theft) exchanged in discovery shall be maintained by the receiving party in a manner that is secure and confidential and shared only with authorized individuals in a secure manner. The producing party may specify the minimal level of protection expected in the storage and transfer of its information. In the event the party who received PII experiences a data breach, it shall immediately notify the producing party of same and cooperate with the producing party to address and remedy the breach. Nothing herein shall preclude the producing party from asserting legal claims or constitute a waiver of legal rights and defenses in the event of litigation arising out of the receiving party's failure to appropriately protect PII from unauthorized disclosure.

16. Pursuant to Federal Rule of Evidence 502, the production of privileged or work-product protected documents or communications, electronically stored information ("ESI") or information, whether inadvertent or otherwise, shall not constitute a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

17. To the extent a party wishes to file with the Court documents or information designated as Designated Materials by an opposing party, that party shall file the Designated Materials electronically under seal in accordance with Rule I.g.2 of the Hon. Valerie Figueredo's Individual Practices In Civil Cases. The filing party shall simultaneously serve counsel for the opposing party via email with the materials filed under seal. Within ten business days of the filing under seal, the designating party shall file a letter setting forth the basis for any permanent redactions or sealing on the docket, and any party opposing the redactions or sealing shall indicate its position in the letter. The letter shall attach the documents with any proposed redactions. At the same time as the filing, the party seeking permission to seal shall email a copy of the letter to Judge Figueredo's chambers with the proposed redactions highlighted in yellow.

18. Each person who has access to Designated Materials shall take all due precautions to prevent the unauthorized or inadvertent disclosure of such material. If a receiving party learns that, by inadvertence or otherwise, it has disclosed Designated Materials to any person or in any circumstances not authorized under this Order, that receiving party must, as soon as practicable, but in any event, no longer than five business days after discovery by the receiving party or its counsel of record of the disclosure: (a) notify in writing the producing party of the unauthorized disclosure(s); (b) make reasonable efforts to retrieve all copies of Designated Materials that were disclosed without authorization; (c) inform the person or persons to whom the unauthorized disclosure or disclosures were made of the terms of this Order; and (d) request that such person or persons either (1) execute an agreement to be bound by this Order in the form attached as Exhibit A; or (2) promptly return or destroy all copies of the Designated Materials and refrain from publicizing or using for any purpose such Designated Materials.

19. Nothing herein shall limit the producing party's rights concerning its own Designated Materials.

20. This Order shall survive the termination of the Actions. At the conclusion of the Actions, Designated Materials and any copies thereof shall be promptly (and in no event later than 30 days after entry of final judgment no longer subject to further appeal) returned to the producing party or certified as destroyed. Despite the foregoing, the parties' counsel may retain documents and information designated Confidential as part of their working files, on the condition that those files will remain protected.

21. Nothing herein shall preclude the parties from disclosing Designated Materials if otherwise required by law or pursuant to a valid subpoena. If, at any time, Designated Materials governed by this Order are subpoenaed or requested by any court, administrative or legislative body, or by any other person or entity purporting to have authority to require the production thereof, the party to whom the subpoena or request is directed shall, to the extent permitted by law, promptly give written notice to the producing party and include with that notice a copy of the subpoena or request. To the extent permitted by law, the party to whom the subpoena or request is directed also shall not produce documents for at least 14 days after notice of the subpoena is provided to the producing party on in order to provide the producing party a reasonable period of time in which to seek to quash, limit or object to the subpoena or request, or to move for any protection for the Designated Materials.

22. If a party, through inadvertence, produces any Confidential, Highly Confidential, or Outside Counsel Eyes' Only materials without labeling or marking or otherwise designating it as such in accordance with this Order, the producing party may give written notice to the receiving

party that the document or thing is so designated and the receiving party must treat the materials as so designated once the producing party so notifies the receiving party.

23. All persons subject to this Order acknowledge that willful violations of this Protective Order could subject them to punishment for contempt of Court. This Court shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

24. The parties may amend this Protective Order only through mutual agreement in writing, or with the Court's permission upon a showing of good cause.

SO STIPULATED AND AGREED.

*/s/ Lawrence E. Buterman*

_______________________________

*Counsel for Fanatics, Inc., Fanatics, LLC, Fanatics Collectibles Intermediate Holdco, Inc., Fanatics SPV, LLC, and Fanatics Holdings, Inc.*

*/s/ David Boies*

_______________________________

*Counsel for Panini America, Inc.*

Dated: New York, New York
2/13/25

SO ORDERED.

_______________________________

**VALERIE FIGUEREDO**
**United States Magistrate Judge**

Exhibit A is filed at ECF No. 102-2.

**Exhibit A**

**Agreement**

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the Actions[1] have been designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "OUTSIDE COUNSEL EYES' ONLY," and are therefore confidential under the Protective Order entered by the Court in the Actions.

I hereby agree that I will not disclose any such designated materials except as authorized by the Protective Order. I further agree not to use any such designated materials for any purpose other than in connection with the Actions. I also agree that at the conclusion of the Actions, I will either return any such designated materials to the party or attorney from whom I received them, or upon permission of the producing party, destroy such materials.

By acknowledging these obligations under the Protective Order, I understand that I am submitting myself to the jurisdiction of the United States District Court for the Southern District of New York for the purpose of any issue or dispute arising hereunder and that my willful violation of any term of the Protective Order could subject me to punishment for contempt of Court.

DATED:

Signed in the presence of:

(Attorney)

[1] *Panini America, Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-LTS (S.D.N.Y., Aug. 3, 2023); *Fanatics Collectibles Topco, Inc. v. Panini S.p.A*, No. 1:23-cv-09714-LTS (S.D.N.Y., August 7, 2023).