BSF | BOIES SCHILLER FLEXNER

October 19, 2026

**VIA ECF**

The Honorable Valerie Figueredo
United States Magistrate Judge, S.D.N.Y.
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Re: *Panini Am., Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-LTS-VF**

Dear Judge Figueredo:

Panini America, Inc. ("Panini") respectfully submits this response to Fanatics' October 14, 2026 letter motion (ECF No. 620) seeking an exception to the parties' agreed deposition protocol ("Deposition Stipulation") to allow ***twelve hours*** of deposition time for two witnesses, Anna Baroni and Ivam Faria. This request is inconsistent with Fanatics' demand at the outset of the case—over Panini's objection—that ***every*** deposition must be governed by a seven-hour limit regardless of whether more time might be justified based on the specific circumstances of the witness. Fanatics took this position knowing that certain depositions could involve translation. And that position, now embodied in a Court order (ECF No. 345), insulated senior Fanatics executives such as Michael Rubin from the multiple days of deposition questioning that their involvement in every core issue raised in Panini's Complaint otherwise would have warranted. Yet, now that such depositions have passed, Fanatics argues that the seven-hour deposition limit should no longer apply across the board and that an individualized determination of deposition limits is justified based on the facts and circumstances of a specific witness. This is both cynical and abusive. Ms. Baroni and Mr. Faria are affiliated with Panini S.p.A., not Panini America, the plaintiff in this lawsuit whose U.S. operations are the subject of the claims in the Complaint. Ms. Baroni has never even been an executive of Panini S.p.A., just a board member. Mr. Faria did not even become CEO of Panini S.p.A. until 2025, after Aldo Sallustro passed away and the vast majority of relevant events at issue in the Complaint had occurred. Fanatics cannot, and does not, show that there is any basis for expansive questioning of them. If any departure from the default seven-hour rule is justified based on their individual circumstances, the limits for their depositions should be substantially ***less*** than seven hours, not more, even accounting for translation.

## I. The Deposition Stipulation, at Fanatics' Insistence, Precludes Increasing the Agreed Seven-Hour Limit Based on the Individualized Circumstances of a Witness.

Fanatics' request for more time with Ms. Baroni and Mr. Faria cannot be reconciled with the Deposition Stipulation that governs all witness depositions in this matter, which was heavily negotiated over several months and entered by the Court as an order. During those negotiations, Panini sought a flexible rule that would allow additional time for deposing certain witnesses based

on their individualized circumstances. Ex. 1, Mar. 23, 2026 Panini Ltr. at 1. Fanatics rejected this approach, claiming it would "invite[] problems or abuse." Ex. 2, Mar. 31, 2026 Email from A. Chernicoff to S. McElroy. The parties ultimately agreed to an across-the-board limit of seven hours that applied to all fact witnesses equally. Dep. Stip. ¶ 23. By definition, this "rough justice" did not account for the specific facts relating to a witness's testimony. By definition, this approach also did not permit discretionary extensions of the seven-hour limit to account for depositions with translators, which were governed by negotatiated provisions that did not provide for additional time. Nor should it be a surprise that the parties did not contemplate potentially more time for depositions with translators. This is a case about the U.S. trading card market brought by a U.S. corporation with operations in Dallas, Texas staffed by individuals who uniformly speak English. The only deponents who might potentially require a translator are individuals affiliated with Panini America's parent in Italy who are not core to the case and could never reasonably be expected to require more than seven hours for a deposition even with translation.

Fanatics, and its executives, got the benefit of the seven-hour deposition limit throughout this case, as Panini was constrained by this rule in its deposition questioning no matter how central a Fanatics witness was to the allegations of the Complaint or how much a witness obfuscated. And, to be clear, there are multiple Fanatics witnesses—such as Fanatics' founder and CEO Michael Rubin—who, if permissible, would have warranted multiple days of questioning given the expansive scope of their knowledge on the issues that matter. Fanatics cannot now try to have it both ways and impose burdens on Panini S.p.A. executives that it ensured would never be imposed on its own executives. The Deposition Stipulation should be enforced according to its plain terms. *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2022 WL 18027565, at *5–6 (S.D.N.Y. Dec. 30, 2022); *see also Marine Midland Bank, N.A. v. United States*, 11 F.3d 1119, 1124 (2d Cir. 1993) ("We do not believe that the [party] should be allowed to violate a [discovery] stipulation which it freely entered."). None of Fanatics' cases changes this conclusion because none involved a signed protocol or stipulation between the parties.

Finally, Fanatics cannot credibly argue that it needs additional deposition time because it only "recently learned" that Ms. Baroni and Mr. Faria required translators. ***The Deposition Stipulation explicitly addresses the need for translators for non-English speaking witnesses.*** *See* Dep. Stip. ¶ 14. Indeed, Fanatics explicitly negotiated the Stipulation's provision on deposition translation, and the parties fully adopted the redline changes Fanatics made to that provision. Ex. 3, Jun. 3, 2026 Email from E. Viola to S. McElroy. Therefore, knowing full well that deponents would use translators, Fanatics agreed to (indeed insisted on) a uniformly applicable seven-hour limit regardless. While the Deposition Stipulation provides that "[a]ny matter not expressly addressed is governed by the Federal Rules of Civil Procedure," the seven-hour limit for ***all*** witnesses and special protocols for translated depositions are in fact "expressly addressed" in the Stipulation. Fanatics is now simply trying to retrade the deal it struck—and co-authored—to seek a grossly inequitable result. The Court should not countenance this gamesmanship.

## II. On the Merits, the Scope of Ms. Baroni's and Mr. Faria's Relevant Knowledge Justifies Limiting the Duration of Their Depositions, Not Extending It.

Even assuming the seven-hour deposition rule in the Deposition Stipulation was not binding and even accounting for translation, neither Ms. Baroni nor Mr. Faria possesses relevant information to justify extending their depositions beyond the seven-hour limit. This case is about

BSF

Fanatics' anticompetitive conduct towards Panini America. It involves, for example, Fanatics' acquisition of long-term exclusive licenses for MLB, NFL, and NBA trading cards to monopolize the U.S. sports trading card market; its tortious interference in the printing and production of Panini America's trading cards in the U.S.; and its raid of dozens of Panini America's employees in Texas, where Panini America is headquartered. Neither Ms. Baroni nor Mr. Faria works for Panini America. Indeed, until 2025 when Mr. Faria became the Panini S.p.A. CEO, neither was even an executive of Panini S.p.A. For the entire relevant time period, Ms. Baroni served on Panini S.p.A.'s board of directors, not in an operational role—even in Italy. Until 2025, Mr. Faria was the head of Panini's Latin America and Brazil operations.

Consistent with these positions, Ms. Baroni and Mr. Faria have limited relevant information regarding this litigation, at most. Neither individual was originally a custodian; they were added as a compromise following Aldo Sallustro's passing in 2025. There is no evidence that they had any relevant involvement in the licensing relationships or negotiations with the various leagues and players' associations at issue here. There is no evidence that they had any relevant involvement in the production problems that Panini America faced with its trading-card manufacturer or the Fanatics' raid of employees. And there is no evidence to suggest that either person has meaningful knowledge regarding the U.S. trading card market generally.

The documents Fanatics attaches to its motion reinforce this point. To start, most telling is what is missing, i.e., any evidence of Panini America executives emailing Ms. Baroni or Mr. Faria regarding MLB, NFL, and NBA trading card licenses; pricing, sales, or distribution of such trading cards in the U.S.; manufacturing issues related to such trading cards; or any other operational issues related to the U.S. trading card market. Fanatics boldly claims Mr. Faria [redacted] But the document cited [redacted], has nothing to do with the license agreements at the heart of this case, and, even on its face, [redacted]. Fanatics' emphasis on the fact that "[redacted] just reinforces that he actually was not one of the executives with operational responsibility for the ***U.S.*** trading card market that is at issue in this case. As for Ms. Baroni, Fanatics claims that she "coordinated with Mr. Sallustro [redacted] But, as support, it cites one email with literally one sentence of substance [redacted]; this hardly proves a central "coordination" role, let alone a role justifying multiple extra hours of deposition time. Fanatics also bizarrely claims that "[t]oday, Ms. Baroni [redacted]

To the extent Fanatics wants to question Ms. Baroni about her participation in the [redacted] generally, seven hours of questioning, even with translation, is far more than ever could be reasonably required. This is a limited issue, and Fanatics will be taking depositions (in English, for the full seven hours) of other individuals with operational involvement in these matters, including Giorgio Aravecchia (Panini S.p.A.'s CFO), Francesca Baroni, and [redacted]. It would be abusive to force Ms. Baroni, a 71-year-old woman, to endure twelve hours of questioning on such a slender basis, when witnesses like Michael Rubin, who sits at the center of this litigation, were protected from such burdens at Fanatics' insistence.

BSF

Respectfully submitted,

*/s/ Stuart Singer*

David Boies
Eric Brenner
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
dboies@bsfllp.com
ebrenner@bsfllp.com

Stuart H. Singer*
Sabria A. McElroy*
Meredith Schultz*
Pascual Oliu*
Ana Carolina Varela*
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
ssinger@bsfllp.com
smcelroy@bsfllp.com
mschultz@bsfllp.com
poliu@bsfllp.com
avarela@bsfllp.com

James P. Denvir*
Richard A. Feinstein*
William Harvey*
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, DC 20005
Telephone: (202) 237-2727
jdenvir@bsfllp.com
rfeinstein@bsfllp.com
wharvey@bsfllp.com

*Counsel for Panini America, Inc.*

BSF

*pro hac vice

cc: All Counsel of Record (by ECF)

**MEMO ENDORSED**

**HON. VALERIE FIGUEREDO**
**UNITED STATES MAGISTRATE JUDGE**

**Dated: October 22, 2026**

Fanatics' letter motion (ECF Nos. 621, 639) seeking to compel additional deposition time for two witnesses (A. Baroni and Faria) is DENIED. The parties negotiated a deposition stipulation that expressly considered the need for translators but despite such potential need, the parties agreed to a firm 7-hour deposition limit for all witnesses. On that basis, the Court declines to exercise its discretion to intervene in the parties' negotiated stipulation. Regardless, Fanatics has not demonstrated that 7 hours (even with the use of a translator) is not sufficient time to fairly examine these witnesses, given their limited roles concerning the licensing relationships at issue in this case. Although these individuals may have relevant knowledge concerning other issues such as market definition, Panini's ongoing efforts to compete, and damages, they are not the only individuals with such knowledge and given their respective roles, 7 hours should provide ample time to obtain their testimony on those issues. The Clerk of Court is hereby directed to terminate the gavels at ECF Nos. 620 and 621.