SIDLEY

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

+1212 839 6785
JHEYWORTH@SIDLEY.COM

October 28, 2026

**Via ECF**

The Honorable Valerie Figueredo
United States District Court Magistrate Judge
Southern District of New York

**Re: *Panini America, Inc. v. Fanatics, Inc. et al.*, No. 1:23-cv-09714-LTS-VF. Non-Party Clearlake Capital Group, L.P.'s Opposition to Panini's Motion to Compel (ECF No. 607)**

Dear Judge Figueredo:

Non-party Clearlake Capital Group, L.P. ("Clearlake") opposes Panini's motion to compel. Panini asks the Court to order the manager of a fund that holds roughly 1% of a defendant's parent company to produce every document respecting that company's trading card business over three years. Panini has not narrowed a single request, can get the same information from Fanatics, and has not explained how a minority investor's private assessment bears on whether Fanatics violated the antitrust laws. The motion should be denied.

**Background.** In December 2022, a fund Clearlake manages participated in a financing round for Fanatics Holdings, Inc., the parent of the Fanatics defendants, acquiring approximately 1% of Fanatics Holdings. *See* Declaration of John Cannon ("Cannon Decl.") ¶¶ 3–4; ECF 607 at 1. Clearlake does not manage Fanatics and had no involvement in the league and players association licenses at issue. Cannon Decl. ¶¶ 5–6. What Clearlake knows about Fanatics, it learned from Fanatics. *Id.* ¶ 7.

The subpoena requests "[a]ll [d]ocuments and [c]ommunications" from January 2020 through January 2023 about Fanatics' business, market share, licenses, or competition, and "[a]ll valuations" of Fanatics' trading card business. ECF 607-1 at 12–13. It defines "Fanatics" and "Clearlake" to reach every 25%-owned affiliate and employee. *Id.* at 8–9. Clearlake objected (ECF 607-2) and explained in conferrals that it is a minority investor, that the material Panini wants resides with Fanatics, and that the subpoena is overbroad. Panini would not commit to any narrowing. ECF 607-3 at 2, 13. Clearlake nonetheless offered a compromise. Panini said it wanted Clearlake's assessment of the market, the licenses, and Fanatics' competitors. *Id.* at 13; ECF 607 at 2. Clearlake agreed to consider producing the investment committee memorandum that synthesizes exactly that, and ultimately produced it with the collectibles section unredacted. ECF 607-3 at 7–8, 10–11; Cannon Decl. ¶ 8. Panini's own motion calls that a "compromise." ECF 607 at 2. Panini took the document and, within two weeks, asked for "further document production," declared impasse, and announced it would move to compel. ECF 607-3 at 5–6. Panini never proposed a narrower request, a narrower date range, or any other limit. *Id.* at 2.

**1. Panini has not shown relevance or proportionality.** Rule 45 requires the issuing party to "take reasonable steps to avoid imposing undue burden or expense" on a non-party. Fed. R. Civ. P. 45(d)(1). "[T]he party seeking discovery [from a non-party] bears the initial burden of proving

that the information . . . sought in the subpoena [is] relevant and proportional to the needs of the case." *Phillips Petroleum Co. Venezuela Ltd. v. Girard St. Inv. Holdings LLC*, 2025 WL 763990, at *2 (S.D.N.Y. Mar. 11, 2025) (Figueredo, M.J.) (quotation marks and citation omitted).

Panini offers conjecture instead. Clearlake "necessarily evaluated" the licenses, "likely prepared" valuations, and "would also have evaluated" competition. ECF 607 at 1, 3. That does not show that a 1% investor's private views are probative of Fanatics' market power or intent. Clearlake did not negotiate the licenses or set Fanatics' strategy (Cannon Decl. ¶ 6) and cannot speak to why Fanatics did what it did. *See Arista Records LLC v. Lime Grp. LLC*, 2011 WL 781198, at *3, *5 (S.D.N.Y. Mar. 4, 2011) ("speculation that the non-parties . . . may have relevant documents . . . does not justify the significant burden"); *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 311–12 (S.D. Ind. 2016) (barring subpoena to 7.2% shareholder where requesting party "beats the drum of 'relevancy'" but never shows why "a shareholder's analysis" is "reasonably necessary").

Panini's answer is that Clearlake is "a multibillion-dollar asset management firm" with "the resources available to produce more than one document." ECF 607 at 3. That gets the rule backwards. Rule 26(b)(1) weighs the *parties'* resources, and a litigant subpoenaing a non-party does not get "the 'benefit' of the less-stringent standard for party discovery." *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 148–49 (S.D.N.Y. 2017).

**2. Panini can obtain the information it seeks from Fanatics.** Whether documents are available from other sources is central to undue burden. "If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 . . . rather than subpoenaing them from a non-party witness pursuant to Rule 45." *Phillips Petroleum*, 2025 WL 763990, at *2 (quoting *Athalonz, LLC v. Under Armour, Inc.*, 2024 WL 1555685, at *2 (S.D.N.Y. Apr. 10, 2024)).

Clearlake's diligence materials came from Fanatics and its advisors. Cannon Decl. ¶ 7. The memorandum Clearlake produced says so on its face. The Fanatics information in it "has been obtained from . . . Fanatics, EY, and from other third-party analyses." ECF 607-4 (sealed) at CCG_00000002. Its "forward-looking statements and projections" were "provided by Fanatics or other third parties" and "reflect various estimates and assumptions by Fanatics," which "informed Clearlake" that the projected results were reasonable. *Id.*

Panini calls the documents "unavailable through party discovery" (ECF 607 at 3), but never says what it asked Fanatics for or what is missing. Most of what the subpoena reaches is material Fanatics sent Clearlake, which Fanatics already has, and courts will not burden a non-party with producing what a party can supply. *See UMB Bank, N.A. v. Sanofi*, 2017 WL 6398628, at *1 (S.D.N.Y. Nov. 22, 2017) (quashing subpoenas to non-party investors where materials "can be obtained from" the plaintiff). The rest is Clearlake's internal analysis of that same information. That analysis says nothing about what Fanatics did or why, and the burden of collecting and reviewing it "would significantly outweigh any potential probative value." *Arista*, 2011 WL 781198, at *3. *Athalonz* is on point. There, the non-party showed by declaration that he had no

SIDLEY



role in the conduct at issue, and Judge Ho quashed the subpoena, holding that a party wishing to test that showing "must do so in the first instance by requesting discovery from its party opponent." 2024 WL 1555685, at *3.

**3. The subpoena is overbroad on its face.** Request No. 1 seeks all documents concerning Fanatics' "business, actual or prospective." ECF 607-1 at 12. It is not limited to trading cards or to the licenses at issue, and the subpoena defines "Fanatics" to reach every 25%-owned affiliate and every past and present employee. *Id.* at 8–9. The remaining requests are no narrower: all documents "relating to or discussing" Fanatics' licenses, its competition, and its competitors, and all valuations "including assumptions." *Id.* at 12–13. Each uses "including," which the subpoena defines as "without limitation" (*id.* at 9), and each runs for three years. Requests for "any and all" documents of this kind are "inherently overbroad" and amount "to little more than a fishing expedition." *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (quotation marks and citations omitted). Panini's "five narrow categories" (ECF 607 at 3) are five ways of asking for everything.

A very similar subpoena was quashed in *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44 (S.D.N.Y. 1996). There, antitrust plaintiffs subpoenaed the defendant's non-party investment banker for all documents about the defendant's market share, acquisitions, banker meetings, and "financial condition." *Id.* at 46. The court quashed the subpoena as "overbroad on its face" for reasons that apply here. The requests did not distinguish the defendant's relevant business from its unrelated divisions. *Id.* at 50–51. And the court agreed that the "financial condition" requests reached nearly every communication between the bank and its client, rejecting them as "guaranteed to produce information which would not even meet the broad standard of relevancy." *Id.* at 50–51 (cleaned up). Panini's subpoena has the same defects. It asks an investor, rather than a banker, for everything about a company that does far more than sell trading cards.

**4. The burden on Clearlake is real and disproportionate.** Non-party status "weighs heavily in favor of finding that the broad document requests in the subpoenas are unduly burdensome." *Phillips Petroleum*, 2025 WL 763990, at *3. Clearlake has no "deal file." Cannon Decl. ¶ 9. A search for the word "Fanatics" returns more than 200,000 documents across approximately 175 to 200 custodians. *Id.* ¶ 10. Responding would require reviewing those documents for privilege and for the confidential information of Fanatics, third parties, and Clearlake's funds, at a cost potentially exceeding $500,000. *Id.* ¶ 11. Against that burden, Panini can point to nothing more than a minority investor's private view of a company it does not run.

The motion should be denied and Clearlake relieved of any further obligation to respond to the subpoena.

Respectfully submitted,

*/s/ James Heyworth*
James Heyworth

cc: All Counsel of Record (by ECF)