UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PANINI AMERICA, INC.,

Plaintiff,

v.

FANATICS, INC., FANATICS, LLC, FANATICS COLLECTIBLES INTERMEDIATE HOLDCO, INC., FANATICS SPV, LLC, and FANATICS HOLDINGS, INC.,

Defendants.

Case No. 1:23-cv-09714-LTS-VF

**DECLARATION OF JOHN CANNON IN SUPPORT OF NON-PARTY CLEARLAKE CAPITAL GROUP, L.P.'S OPPOSITION TO PANINI AMERICA, INC.'S MOTION TO COMPEL**

I, John Cannon, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am the General Counsel of Clearlake Capital Group, L.P. ("Clearlake"). I submit this declaration in support of Clearlake's opposition to the motion to compel filed by plaintiff Panini America, Inc. ("Panini") (ECF No. 607). I make this declaration based on my personal knowledge, my review of Clearlake's business records, information provided to me by Clearlake personnel with knowledge of the matters described below.

2. Clearlake is a private investment firm headquartered in Santa Monica, California. Clearlake manages investment funds on behalf of institutional investors. Clearlake is not a party to this action.

3. In December 2022, an investment fund managed by Clearlake participated in a financing round for Fanatics Holdings, Inc. ("Fanatics Holdings") that raised approximately $700 million from a group of new and existing investors.

4. The investment was a minority investment. Clearlake's fund acquired approximately 1% of the equity of Fanatics Holdings, and Clearlake was one of many investors in the company.

and data room systems, and in messaging applications. A shared folder relating to Fanatics exists, but it contains a wide range of materials across all of Fanatics' business lines and the life of the investment, not a curated set of documents on the subjects in Panini's subpoena.

10. Panini's subpoena defines "Clearlake" to include every past and present officer, employee, agent, and representative of Clearlake and its affiliates, and it asks for all documents relating to Fanatics' business, market share, licenses, competition, and valuation. To assess the burden of responding, Clearlake ran a search for the term "Fanatics" across its email and messaging systems and its document management system. The search returns over 200,000 documents held by approximately 175 to 200 Clearlake employees, across investing, legal, compliance, accounting, investor relations, marketing, and administrative functions. As written, the subpoena would require Clearlake to collect and review the files of each of those individuals.

11. Each of those documents would have to be reviewed by counsel for responsiveness, for attorney-client privilege and work product, for confidential information belonging to Fanatics and other third parties that Clearlake is contractually obligated to protect, and for Clearlake's own proprietary information about its funds, its investors, and its other portfolio companies. Based on my experience and information available to me, I estimate that vendor and outside counsel costs to collect, review, redact, and produce that volume of documents would approximate or exceed $500,000.

12. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 28, 2026, at Santa Monica, California.

John Cannon
General Counsel
Clearlake Capital Group, L.P.