# EXHIBIT 2

**From:** Stuart Singer <ssinger@bsfllp.com>
**Sent:** Saturday, November 14, 2026 1:46 PM
**To:** Lawrence Buterman (NY-DC); Sabria McElroy; Eric Brenner; David Johnson (DC)
**Cc:** Jessica Mugler
**Subject:** Re: 30(b)(6) Depositions

I am going to consult with my partners on case tomorrow morning , hopefully, and get back to you later in day tomorrow

---

**From:** Lawrence.Buterman@lw.com <Lawrence.Buterman@lw.com>
**Sent:** Saturday, 14 November 2026 13:32:19
**To:** Stuart Singer <ssinger@bsfllp.com>; Sabria McElroy <smcelroy@bsfllp.com>; Eric Brenner <EBrenner@BSFLLP.com>; David.Johnson@lw.com <David.Johnson@lw.com>
**Cc:** Jessica Mugler <jmugler@BSFLLP.com>
**Subject:** Re: 30(b)(6) Depositions

**CAUTION: External email. Please do not respond to or click on links/attachments unless you recognize the sender.**

---

Glad to hear you got out. Do you have a sense which topics you'd still want to take a deposition on? While I would prefer (and think) that we can dispense with these entirely through alternative means, in terms of understanding whether to go forward or not this week it is important for us to know the topics that would be in play for the 30(b)(6) involving Fanatics' witness(es).

**Lawrence E. Buterman**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Direct Dial: +1.212.906.1264
Email: lawrence.buterman@lw.com
https://www.lw.com

---

**From:** Stuart Singer <ssinger@bsfllp.com>
**Sent:** Saturday, 14 November 2026 10:35:22
**To:** Lawrence.Buterman@lw.com <Lawrence.Buterman@lw.com>; Sabria McElroy <smcelroy@bsfllp.com>; David.Johnson@lw.com <David.Johnson@lw.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Cc:** Jessica Mugler <jmugler@BSFLLP.com>
**Subject:** Re: 30(b)(6) Depositions

Larry, I am writing this from middle of the Atlantic and very happy to have been able to get ou of Europe today. Hope you were able to travel back safely as well.

We are prepared on certain topics to substitute interrogatories but on other topics we will want to have a 30b6 deposition. We are prepared to push tha date of 30b6 depositions out, and to continue to try to reach agreement on these issues and the topics, and if we cannot do so, to tee up the issues for decision by the court, We do. not see the need to adjust the overall schedule even if the 30b6 depositions occur after other fact discovery finishes.

If I understand your email correctly, you are saying that at this point you do not see that it is possible for witnesses to be prepared for 30b6 depositions this week. If you can confirm that, we can proceed as I propose above.

Best,

Stuart

Stuart Singer
Managing Partner

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
(t) +1 954 377 4201
(m) +1 561 441 0911
ssinger@bsfllp.com
www.bsfllp.com

---

**From:** Lawrence.Buterman@lw.com <Lawrence.Buterman@lw.com>
**Date:** Saturday, November 14, 2026 at 2:45 PM
**To:** Sabria McElroy <smcelroy@bsfllp.com>; David.Johnson@lw.com <David.Johnson@lw.com>; Stuart Singer <ssinger@bsfllp.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Cc:** Jessica Mugler <jmugler@BSFLLP.com>
**Subject:** RE: 30(b)(6) Depositions

**CAUTION: External email. Please do not respond to or click on links/attachments unless you recognize the sender.**

---

Hi. Let me begin by saying that I hope everyone got home or is getting home ok. Between travel, the Microsoft outage and the ground stop it was quite the eventful week. I wanted to circle back on these 30(b)(6)s, recognizing that while we have narrowed the areas of disagreement, we still have a number of them that remain and likely no longer have sufficient time to get rulings from the Court in advance. As we have discussed, one of our primary objections is that for many of these topics there has already been extensive deposition testimony and thus a 30(b)(6) deposition is both not appropriate and likely to be completely unproductive. I know we have some disagreements on that, but in an effort to see if we can move the ball forward, we have gone back and further reviewed both sides' positions. Through that process, we have come to the strong conviction that it would be far more efficient and far more likely to generate useful information if the parties responded to Topics through written discovery responses to interrogatories or requests for admission, rather than the from the formality of attempting to educate

witnesses on what would amount to the same, or lesser, information. Below, we set forward a proposal. Please let us know if you're amenable to this approach.

Please note that as part of this proposal, we are willing to withdraw additional topics. However, by making this proposal we are in no way committing to drop or alter the Fanatics Topics discussed below if the parties cannot reach agreement on written responses *in lieu* of testimony. In other words, if both sides are willing to engage in what we think is a more efficient process, we are willing to make additional concessions to get us there. But if Panini is unwilling to engage in this process, we'll revert to our prior positions.

**Fanatics Would Provide:**

- **Panini Topic 1 (Consideration to OneTeam):** Fanatics would provide a verified interrogatory response identifying the specific equity interest amount that OneTeam holds in any Fanatics entity.

- **Panini Topic 3 (Goldman Investor Presentation):** If Panini propounds an interrogatory for the information it is seeking regarding the identified document (FAN-PAN-SDNY00482327), Fanatics would respond.

- **Panini Topic 4 (Hiring of Panini Employees)**: Fanatics will provide a verified interrogatory response describing its knowledge (or lack of knowledge) of any non-solicitation and confidentiality restrictions between Panini and the former Panini employees that Fanatics hired in April 2023, as of the time of April 2023. If Panini has particular questions regarding the three documents Panini has identified (FAN-PAN-SDNY00926501; FANCOLLECT-PAN_00021428; FAN-PAN-SDNY00703628), Fanatics will endeavor to answer them through an interrogatory response or request for admission.

- **Panini Topic 12 / Fanatics Topics 5 & 6**: **(Document Preservation):** Panini previously proposed that both sides produce a corporate representative to testify at a non-privileged level regarding (a) each side's respective data-retention policies and practices, and (b) the fact, dates, and recipients of litigation holds implemented at Panini and Fanatics, respectively. *See* Nov. 10, 2026 email from S. McElroy. Both sides can instead provide that information in a verified interrogatory response, but also including a list of the document custodians that received a company-issued mobile device.

**Panini Would Provide:**

- **Fanatics Topic 2 (Panini Projections)**: Panini previously agreed to designate a witness to testify regarding Panini America, Inc.'s 2026 revenues, contribution margins, and profits by sport, and Panini America's projected future revenues, contribution margins, and profits by sport, as reflected in the books and records at Panini America. *See* Nov. 6, 2026 email from M. Nyman. Panini will provide that information in writing as a verified interrogatory response.

- **Fanatics Topics 5 & 6 (Document Preservation)**: Discussed above in connection with Panini Topic 12.

- **Fanatics Topic 8 (Government Communications)**: Panini already agreed to produce a corporate representative on this Topic. *See* Nov. 6, 2026 email from M. Nyman. Instead, Panini will respond to an interrogatory identifying any communications it had with the DOJ, FTC, or other regulators about Fanatics or the trading card industry and describe those communications.

**The Parties Would Drop:**

- **Panini Topic 2 / Fanatics Topic 9 (Competition Assessments)** – Mutual drop of this Topic.
- **Panini Topic 5 / Fanatics Topic 4 (Pricing)** – Mutual drop of this Topic.
- **Fanatics Topic 1 (Panini SpA Ownership)**
- **Fanatics Topic 7 (Sallustro Device)** – Panini had previously agreed to designate a witness on this Topic. But to reach a compromise, Fanatics will drop the Topic.
- **Panini Topic 6 (Production & Quality Issues)** – If not dropped, Fanatics will not designate a witness on this Topic.
- **Panini Topic 7 (Distribution Policies)** – Panini already agreed to drop this Topic.
- **Panini Topic 8 (Autograph Usage)** – If not dropped, Fanatics will not designate a witness on this Topic.
- **Panini Topic 9 (Statements Concerning Panini)** – If not dropped, Fanatics will not designate a witness on this Topic.
- **Panini Topic 10 / Fanatics Topic 3 (Project Pisa)** – Mutual drop of this Topic.
- **Panini Topic 11 (Fanatics' Tortious Interference Claim) -** Fanatics stands on its interrogatory responses, which it will supplement should discovery reveal additional info.

**Reservation of Rights:**

- To the extent either side fails to provide a sufficient response to an agreed-upon interrogatory, the other side reserves the right to raise the issue with the Court and seek supplementation and/or a deposition, provided that such deposition will not impact the schedule in this case. To that end, we would agree with Panini on a (prompt) date certain for exchange of these supplemental rogs and responses.

Thanks,

Larry

**Lawrence E. Buterman**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1264 | M: +1.917.589.5124

---

**From:** Sabria McElroy <smcelroy@bsfllp.com>
**Sent:** Tuesday, November 10, 2026 7:03 PM
**To:** Buterman, Larry (NY-DC) <Lawrence.Buterman@lw.com>; Johnson, David (DC) <David.Johnson@lw.com>; Stuart Singer <ssinger@bsfllp.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Cc:** Jessica Mugler <jmugler@BSFLLP.com>
**Subject:** RE: 30(b)(6) Depositions

Larry and David -

Thanks for the call. While reserving all rights, I've outlined our proposals on Panini's topics for Fanatics, beginning with the topics we propose the parties treat as mutual.

**I. Proposed Mutual Topics**

**Market Definition (Panini's Topic 2 to Fanatics / Fanatics' Topic 9 to Panini).** Panini proposes that each party designate a witness to testify regarding the following: For the period January 1, 2020 through present (a) any studies, analyses, or other documents prepared by or for the responding party, or relied upon by the responding party, concerning substitution (i) among NFL, NBA, and MLB trading cards, (ii) between those products and any other product, or (iii) between those products sold in the Primary Market and Sports Trading Cards resold in the Secondary Market; and (b) the extent to which the responding party considers the prices of products other than NFL, NBA, and MLB trading cards, including Secondary Market prices (e.g., on eBay, Whatnot, or other resale or auction marketplaces), in setting or adjusting its Primary Market prices for NFL, NBA, and MLB trading cards.

After further discussion, we don't think the examining party should be required to identify specific documents in advance for part (a). The purpose of part (a) is to learn whether any such studies or analyses exist. The designee can conduct a reasonable investigation to ascertain whether any such analysis has been performed and, if so, describe it. If none exists, the designee can say so. This process imposes the same obligation on both sides.

**Pricing Policies and Practices (Panini's Topic 5 to Fanatics / Fanatics' Topic 4 to Panini).** Panini proposes that each party designate a witness to testify regarding the following mutual topic: Price Increases and Pass-Through. For the period January 1, 2020 through present (a) Whether, when, and by how much the responding party has increased (i) the prices it charges for trading cards featuring NFL, MLB, and NBA players to hobby shops, distributors, case breakers, and retailers, and (ii) the suggested retail price (SRP) or manufacturer's suggested retail price (MSRP) of its trading cards featuring NFL, MLB, and NBA players; and (b) the evidence known or reasonably available to the responding party bearing on whether those price increases have been passed through to consumers, including any evidence of higher prices paid at the consumer level

**Document Preservation (Panini's Topic 12 to Fanatics / Fanatics' Topics 5 and 6 to Panini).** Panini proposes that these topics be replaced with a single mutual topic, under which each of Panini and Fanatics will produce a corporate representative to testify at a non-privileged level regarding (a) each side's respective data-retention policies and practices, and (b) the fact, dates, and recipients of litigation holds implemented at Panini and Fanatics, respectively.

**II. Panini's Narrowed Topics to Fanatics**

Panini agrees to further narrow the following topics:

**Topic 4 (Hiring of Panini Employees).** As discussed, Panini is willing to narrow this topic to: Fanatics' knowledge of, and compliance with, any non-solicitation and confidentiality restrictions applicable to current or former Panini employees, and the context of and statements in Stephanie Putnam's March and April 2023 notes and draft emails (FAN-PAN-SDNY00926501; FANCOLLECT-PAN_00021428; FAN-PAN-SDNY00703628).

**Topic 8 (Exclusive Athlete Agreements Entered Before the Exclusive Licenses).** We're willing to narrow this topic to focus on the athletes that as of July 2026 had not been paid the full amounts of their

contracts (the "In-Scope Athletes") as follows: The number of In-Scope Athlete Autographs contracted for compared to the number actually used in products and the reasons Autographs went unused, amounts paid and unpaid under those agreements and the reasons for any unpaid amounts, and any internal analyses of whether those agreements were profitable.

The In-Scope Athletes for purposes of this topic are: Rob Dillingham, Will Levis, Bronny James (LeBron James Jr.), CJ Stroud, Isaiah Collier, Nikola Topic, Jaxson Dart, Bryce Young, Emeka Egbuka, Jayden Daniels, Ron Holland II, Malik Nabers, Tyler Smith, Tyrese Proctor, Cody Williams, Kyle Filipowski, Brandon Miller, Xavier Worthy, Anthony Black, Sterling Henderson, Danny Wolf, Ryan Dunn, Stephon Castle. (Note that we may need to make few revisions to this list, which I put together quickly, after I have someone else review and check it).

As previewed on the call, we're also open to withdrawing this topic if we reach agreement on our request for Fanatics produce excess autograph data and actual autograph use in products by year for each of the 46 at-issue Fanatics athletes. *See* my September 28, 2026 email to Alicia and ECF. No. 652.

**Topic 9 (Statements and Communications Concerning Panini).** As discussed, Panini is willing to narrow this to: Statements made in or around April 2023 by Michael Rubin, Mike Mahan, Omar Wilkes, or other Fanatics employees to sports agencies representing current and prospective NFL and NBA players, including CAA Sports and WME Sports, that Panini would be unable to fulfill its contractual obligations to athletes, that Panini was going to go bankrupt, or that Panini would lose its licenses with the NFL, NFLPA, NBA, and NBPA by June 2023.

**Topic 10 (Early-Termination and Buyout Discussions with Panini).** Panini will withdraw subpart 10(c). Panini maintains its position with respect to Fanatics' Topic 3.

**Topic 11 (Fanatics' Tortious Interference Claims).** Panini will withdraw subpart (b) of Topic 11. Fanatics' interrogatory responses, however, do not address the remaining subparts, including the identity of the employees with whom Fanatics claims a prospective relationship, the evidence of causation, Fanatics' recruiting efforts, and Fanatics' claimed damages. On damages, we're not looking for the 30(b)(6) witness to do an economic analysis that an expert would do but rather to explain how Fanatics was harmed by the alleged inability to hire certain Panini employees (e.g. what positions went unfilled or was Fanatics unable to fill with qualified candidates). We think those subjects are appropriate for a Rule 30(b)(6) witness, and Panini is entitled to know Fanatics' position on them.

**III. Other Topics**

**Topic 7 (Distribution Policies and Practices).** As noted on the call, Panini will withdraw Topic 7.

**Topic 3 (Investor Materials Prepared by Goldman Sachs).** We have agreement on Topic 3, subject to Panini's position that Fanatics must reasonably educate its designee on the preparation of the tracker and the statements contained in it.

**Topics 1 and 6.** You will get back to us regarding Topics 1 and 6.

Best,
Sabria

---

**From:** Sabria McElroy
**Sent:** Monday, November 9, 2026 3:04 PM
**To:** 'Lawrence.Buterman@lw.com' <Lawrence.Buterman@lw.com>; David.Johnson@lw.com; Stuart Singer <ssinger@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>

**Cc:** Jessica Mugler <jmugler@BSFLLP.COM>
**Subject:** RE: 30(b)(6) Depositions

I'll send invite for 2 tomorrow.

---

**From:** Lawrence.Buterman@lw.com <Lawrence.Buterman@lw.com>
**Sent:** Monday, November 9, 2026 2:54 PM
**To:** Sabria McElroy <smcelroy@bsfllp.com>; David.Johnson@lw.com; Stuart Singer <ssinger@bsfllp.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Cc:** Jessica Mugler <jmugler@BSFLLP.com>
**Subject:** RE: 30(b)(6) Depositions

**CAUTION: External email. Please do not respond to or click on links/attachments unless you recognize the sender.**

---

Yes. We really need to push this forward as we're likely going to need to seek the Court's assistance in resolving lingering disputes prior to the depositions next week. If we cannot talk today, let's talk tomorrow at 2.

**Lawrence E. Buterman**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1264 | M: +1.917.589.5124

---

**From:** Sabria McElroy <smcelroy@bsfllp.com>
**Sent:** Monday, November 9, 2026 2:50 PM
**To:** Buterman, Larry (NY-DC) <Lawrence.Buterman@lw.com>; Johnson, David (DC) <David.Johnson@lw.com>; Stuart Singer <ssinger@bsfllp.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Cc:** Jessica Mugler <jmugler@BSFLLP.com>
**Subject:** RE: 30(b)(6) Depositions

David, Larry –

Do you have time tomorrow between 2 and 4 to discuss the 30b6 topics and objections?

Sabria

---

**From:** Sabria McElroy
**Sent:** Tuesday, November 3, 2026 3:32 PM
**To:** 'Lawrence.Buterman@lw.com' <Lawrence.Buterman@lw.com>; David.Johnson@lw.com; Stuart Singer <ssinger@BSFLLP.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Cc:** Jessica Mugler <jmugler@BSFLLP.COM>
**Subject:** RE: 30(b)(6) Depositions

Larry does 6:15 work on your end?

**From:** Lawrence.Buterman@lw.com <Lawrence.Buterman@lw.com>
**Sent:** Tuesday, November 3, 2026 2:47 PM
**To:** Sabria McElroy <smcelroy@bsfllp.com>; David.Johnson@lw.com; Stuart Singer <ssinger@bsfllp.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Cc:** Jessica Mugler <jmugler@BSFLLP.com>
**Subject:** RE: 30(b)(6) Depositions

**CAUTION: External email. Please do not respond to or click on links/attachments unless you recognize the sender.**

---

Hi. Thank you for forwarding this along. I think it would make sense for us to talk and see if there is more we can do to narrow these (on both sides) and get initial feedback on areas where we may have objections. Is that something you would be able to discuss with us today (even at a high level)?

**Lawrence E. Buterman**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.212.906.1264 | M: +1.917.589.5124

---

**From:** Sabria McElroy <smcelroy@bsfllp.com>
**Sent:** Monday, November 2, 2026 10:00 PM
**To:** Johnson, David (DC) <David.Johnson@lw.com>; Stuart Singer <ssinger@bsfllp.com>; Buterman, Larry (NY-DC) <Lawrence.Buterman@lw.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Cc:** Jessica Mugler <jmugler@BSFLLP.com>
**Subject:** RE: 30(b)(6) Depositions

Larry and David –

Panini's revised topics are listed below. We have reduced the number of topics and narrowed the scope of some of the remaining topics. Panini reserves the right to further modify these topics and to reintroduce topics in the event we are unable to reach agreement on the narrowed scope.

We will serve a notice setting the deposition for November 18 tomorrow.

Best,
Sabria

**<u>Revised Topics</u>**

1. **Consideration Provided to Licensors and OneTeam**. The equity ownership interests in any Fanatics entity, or options to acquire such interests, and any other monetary or non-monetary consideration, offered or provided by Fanatics to Licensors, OneTeam, or any persons related to Licensors in connection with the negotiation or execution of the Exclusive Licenses, including the terms, amount, and value of such consideration and the reasons it was offered or provided.

2. **Market Definition**. Fanatics' understanding of the competition between itself and other companies which produce Sports Trading Cards, including Panini, Upper Deck, and Leaf, and the geographic areas in which it sells, markets, and distributes Sports Trading Cards, including but not limited to:
    1. the preparation of any analysis by or for Fanatics, or relied upon by Fanatics, which describes the market for Sports Trading Cards;
    2. the preparation of any analysis by or for Fanatics, or relied upon by Fanatics, which identifies whether Sports Trading Cards are substitutes for, or are reasonably interchangeable with, other Sports Trading Cards and/or other types of sports collectibles;
    3. the preparation of any analysis by or for Fanatics, or relied upon by Fanatics of products that You consider to be substitutes for, or reasonably interchangeable with, NFL Cards, MLB Cards, and NBA Cards;
    4. statements made to third parties, including investors, lenders, ratings agencies, or licensors, concerning Your market position or the competitive landscape in Sports Trading Cards; and
    5. the extent, if any, to which Fanatics views Sports Trading Cards sold in the Secondary Market as competing with or constraining sales of its Sports Trading Cards in the Primary Market.
3. **Investor Materials Prepared by Goldman Sachs**. The role of Goldman Sachs in preparing presentations or other materials provided to investors, lenders, or potential partners in connection with the fundraising round referred to as Project Hawk, and Your role in reviewing, approving, or supplying information for the statements contained in those materials, including the Project Hawk Due Diligence Tracker (FAN-PAN-SDNY00482327), including how and by whom it was prepared, and the identity of the Persons who provided the information and sources cited in it.
4. **Hiring of Panini Employees**. The business purpose and timing of Your efforts, beginning in or around March 2023, to recruit, solicit, hire, or otherwise engage current or former Panini employees; the context of and statements in Stephanie Putnam's March and April 2023 notes and draft emails (FAN-PAN-SDNY00926501; FANCOLLECT-PAN_00021428; and FAN-PAN-SDNY00703628); and Your knowledge of, and compliance with, any non-solicitation and confidentiality restrictions applicable to current or former Panini employees.

5. **Pricing Policies and Practices**. Fanatics' policies and practices for setting the prices of Sports Trading Cards, including but not limited to:
    1. the prices Fanatics has set for Topps-branded and Fanatics-branded products following the Topps Acquisition, including any increases to box pricing, presale pricing, and per-card pricing, and the timing, amount, and reasons for each such increase;
    2. internal analyses or projections of the effect of actual or contemplated price increases on consumer demand, revenue, and margins;
    3. the factors Fanatics considers in setting prices, including the extent, if any, to which the prices of other Trading Cards or collectibles products constrain Fanatics' pricing, and the extent, if any, to which Fanatics monitors, analyzes, or relies upon Secondary Market prices for Sports Trading Cards (including prices on eBay, Whatnot, or other resale or auction marketplaces) in setting or adjusting its Primary Market prices; and
    4. minimum price requirements or other pricing policies imposed on Retailers, Case Breakers, or Local Card Shops.
6. **Product Quality and Control**. Information concerning the quality of Your Sports Trading Card products, including but not limited to:
    1. any known defects, collation errors, missing inserts, off-center cutting, delamination, or other manufacturing defects in Sports Trading Cards produced by or for Fanatics, and the frequency and severity of such defects;
    2. any allegations, complaints, or investigations—whether internal or external—concerning the intentional pre-sorting, "loading," or preferential allocation of boxes or cases containing a disproportionate number of high-value, rare, or limited-edition cards to particular streamers, Case Breakers, influencers, or other preferred customers or partners; and
    3. policies, procedures, or practices governing the allocation, distribution, or sequencing of high-value or limited-edition cards across boxes, cases, or product runs, including any practices designed to ensure or undermine randomization.
7. **Distribution Policies and Practices**. Your policies and practices for the distribution of Sports Trading Cards from the date You first executed an Exclusive License through the present, including but not limited to:
    1. the termination of Your relationships with distributors, including but not limited to GTS Distribution;

2. Your relationships and agreements with Case Breakers, including the terms of any such agreements, any allocation of product to Case Breakers (including any Case Breaker-exclusive products), any requirements that Case Breakers use Fanatics Live or other Fanatics platforms, any rules or restrictions governing Case Breakers' conduct, and any preferential Case Breaker reseller programs (including the Direct Breaker program and the Medallion program);
3. Your negotiations or renegotiations of terms with Retailers or Local Card Shops concerning Sports Trading Cards;
4. the data that You collect from Retailers, Case Breakers, Local Card Shops, or distributors; and
5. any restrictions or limitations imposed by You on Retailers, Local Card Shops, or Case Breakers (e.g., pricing margins, shelf space allocation, or brand exclusivity).

8. **Exclusive Athlete Agreements Entered Before the Exclusive Licenses**. The basis for the financial terms of Exclusive Athlete Agreements Fanatics entered into before the effective dates of the Exclusive Licenses, including how the compensation compared to market rates or competing Panini offers, the number of Autographs contracted for compared to the number actually used in products and the reasons Autographs went unused, amounts paid and unpaid under those agreements and the reasons for any unpaid amounts, and any internal analyses of whether those agreements were profitable.
9. **Statements and Communications Concerning Panini**. Statements made by You, Rubin, any Rubin Affiliated Company, or any of Your employees in 2023 to third parties concerning Panini's financial status, licenses, products, market position, or business prospects.
10. **Early-Termination and Buyout Discussions with Panini**. Fanatics' efforts in 2022 and early 2023 to either purchase Panini outright or to acquire Panini's Licenses through early termination of such licenses and to acquire other assets of Panini, limited to:
    1. demands by Fanatics that Panini assume certain risks regarding potential forfeiture and recapture of such licenses or alleged frustration of purpose of the transaction and the relationship of such requests to the perceived antitrust risks in the transaction;
    2. structuring of the proposed transaction to avoid a Hart-Scott-Rodino filing by Fanatics; and
    3. Fanatics' knowledge of any alleged "second set of books" or other undisclosed financial records kept by Panini, including when and how Fanatics learned of them and how they affected Fanatics' valuation of, or decision-making regarding, the proposed transaction.

11. **Fanatics' Tortious Interference Claims**. The factual basis for Fanatics' allegation in Count 1 of the Second Amended Complaint that Panini interfered with Fanatics' prospective business relationship with current or former Panini employees, including but not limited to:
    1. the identity of each current or former Panini employee with whom Fanatics claims it had a prospective business relationship that Panini interfered with;
    2. any evidence that Panini threatened litigation or told any employee that Fanatics would be exposed to scrutiny by licensors or that Fanatics' contracts with licensors could be voided in order to prevent employee departures from Panini;
    3. any evidence that Panini's alleged litigation threats or statements caused any current or former Panini employee not to pursue, or not to accept, employment with Fanatics;
    4. efforts by Fanatics to recruit or hire employees for the positions it alleges current or former Panini employees would have applied for or filled in the absence of Panini's alleged tortious interference; and
    5. any damages suffered by Fanatics arising from the alleged tortious interference.
12. **Document Preservation and Collection**. Fanatics' identification, preservation, and collection of documents and electronically stored information ("ESI") in connection with this Action, including but not limited to:
    1. the date(s) on which Fanatics first anticipated litigation, and its litigation hold notices, including the date(s) of issuance, recipients, scope, and any updates;
    2. the persons responsible for overseeing Fanatics' preservation and collection efforts;
    3. the data sources from which documents and ESI were identified, preserved, and collected, including any sources excluded from preservation or collection and the reasons for such exclusions;
    4. the process by which Fanatics collected documents and ESI, including the date(s) and method(s) of collection; and
    5. Fanatics' document retention and destruction policies, any modifications to such policies after litigation was anticipated, and any loss, deletion, or destruction of documents or ESI after Fanatics' preservation obligations arose.

---

**From:** David.Johnson@lw.com <David.Johnson@lw.com>
**Sent:** Monday, November 2, 2026 6:34 PM
**To:** Sabria McElroy <smcelroy@bsfllp.com>; Stuart Singer <ssinger@bsfllp.com>; Lawrence.Buterman@lw.com; Eric

Brenner <EBrenner@BSFLLP.com>
**Subject:** RE: 30(b)(6) Depositions

**CAUTION: External email. Please do not respond to or click on links/attachments unless you recognize the sender.**

---

Sounds good. We'll let you know if sooner works.

---

**From:** Sabria McElroy <smcelroy@bsfllp.com>
**Sent:** Monday, November 2, 2026 6:32 PM
**To:** Johnson, David (DC) <David.Johnson@lw.com>; Stuart Singer <ssinger@bsfllp.com>; Buterman, Larry (NY-DC) <Lawrence.Buterman@lw.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Subject:** RE: 30(b)(6) Depositions

That's ok with us, but if you're ready earlier, please let me know.

---

**From:** David.Johnson@lw.com <David.Johnson@lw.com>
**Sent:** Monday, November 2, 2026 6:21 PM
**To:** Sabria McElroy <smcelroy@bsfllp.com>; Stuart Singer <ssinger@bsfllp.com>; Lawrence.Buterman@lw.com; Eric Brenner <EBrenner@BSFLLP.com>
**Subject:** RE: 30(b)(6) Depositions

**CAUTION: External email. Please do not respond to or click on links/attachments unless you recognize the sender.**

---

Hi Sabria, how about 10 pm ET?

---

**From:** Sabria McElroy <smcelroy@bsfllp.com>
**Sent:** Monday, November 2, 2026 5:03 PM
**To:** Stuart Singer <ssinger@bsfllp.com>; Buterman, Larry (NY-DC) <Lawrence.Buterman@lw.com>; Eric Brenner <EBrenner@BSFLLP.com>
**Cc:** Johnson, David (DC) <David.Johnson@lw.com>
**Subject:** RE: 30(b)(6) Depositions

Larry, what time do you want to exchange?

---

**From:** Stuart Singer <ssinger@bsfllp.com>
**Sent:** Monday, November 2, 2026 4:09 PM
**To:** Lawrence.Buterman@lw.com; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>
**Cc:** David.Johnson@lw.com
**Subject:** Re: 30(b)(6) Depositions

Yes, we are in position to do so. We are also noticing g our depo of Fanatics for Nov 18th in NYC.

Stuart Singer
Managing Partner

BOIES SCHILLER FLEXNER LLP
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
(t) +1 954 377 4201
(m) +1 561 441 0911
ssinger@bsfllp.com
www.bsfllp.com

---

**From:** Lawrence.Buterman@lw.com <Lawrence.Buterman@lw.com>
**Date:** Monday, November 2, 2026 at 3:35 PM
**To:** Stuart Singer <ssinger@bsfllp.com>; Eric Brenner <EBrenner@BSFLLP.com>; Sabria McElroy <smcelroy@bsfllp.com>
**Cc:** David.Johnson@lw.com <David.Johnson@lw.com>
**Subject:** 30(b)(6) Depositions

**CAUTION: External email. Please do not respond to or click on links/attachments unless you recognize the sender.**

---

Hi. Am currently in the air, but was wondering if you all would be in a position to exchange revised lists of topics today. We have substantially pared down ours and suspect that depending on some of the testimony in upcoming depositions we may be further able to remove topics. Of course, this would be subject to reservations of rights to reintroduce topics if the parties are unable to reach agreement on narrowing etc.

Thanks

**Lawrence E. Buterman**

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Direct Dial: +1.212.906.1264
Email: lawrence.buterman@lw.com
https://www.lw.com

---

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication

will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]

---

The information contained in this electronic message is confidential information intended only for the use of the named recipient(s) and may contain information that, among other protections, is the subject of attorney-client privilege, attorney work product or exempt from disclosure under applicable law. If the reader of this electronic message is not the named recipient, or the employee or agent responsible to deliver it to the named recipient, you are hereby notified that any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify the sender by replying to this electronic message and then deleting this electronic message from your computer. [v.1 08201831BSF]