LATHAM & WATKINS LLP quinn emanuel trial lawyers | new york

November 20, 2026

**VIA ECF**

The Honorable Valerie Figueredo
United States District Court Magistrate Judge

Re: *Panini America, Inc. v. Fanatics, Inc.*, Case No. 1:23-cv-09714-LTS-VF – Fanatics' Motion To Compel Supplemental Interrogatory Responses

Dear Judge Figueredo:

We write on behalf of Fanatics to respectfully request that the Court compel Panini to supplement its inadequate responses to Fanatics' Interrogatory Nos. 2, 8, 9, 11, 12, 15, 16, 18, and 21 (collectively, "Responses," attached as Ex. A). The parties exchanged correspondence and met and conferred on November 19, 2026, but could not resolve these disputes. Fanatics asks that the Court hear argument on this motion on December 7, 2026. *See* ECF No. 646.

## I. Panini Improperly Refers to Its Amended Complaint for Interrogatory 9

***Interrogatory 9:*** *Identify all statements Fanatics made to third parties that You contend were false, derogatory, or defamatory that You are relying on in support of Count 8 of Your Amended Complaint. See Amended Complaint ¶¶ 170-75, ECF No. 69.* Ex. B at 4.

Panini's Response simply parrots the vague allegations in its Amended Complaint. *Compare* Ex. A at 22, *with* Am. Compl. ¶ 172. But "an answer to an interrogatory must be completed within itself," and references to "the complaint itself" are "improper and thus unresponsive." *Hallmark Licensing LLC v. Dickens Inc.*, 2018 WL 6573435, at *10 (E.D.N.Y. Dec. 13, 2018). Panini "bears the burden of identifying the *particular statements*" that it "claims are defamatory." *Croslan v. Hous. Auth. for City of New Britain*, 974 F. Supp. 161, 171 (D. Conn. 1997). Having placed the alleged statements "squarely at issue," Panini "cannot refuse to identify those statements and simply leave [Fanatics] to speculate as to which statements [Panini] is relying upon." *Taylor v. Frazier*, 2025 WL 3770161, at *8 (D. Conn. Dec. 31, 2025).

## II. Panini Improperly Refers to Its Amended Complaint for Interrogatory 15

***Interrogatory 15:*** *For all the Trading Card or Sticker products that You have produced since 2009, Identify if those products are "Mass Market," are "Premium," or are something else, as those terms are alleged in Your Amended Complaint. See, e.g., Am. Compl. ¶¶ 52-59, ECF No. 69.* Ex. B at 5.

Panini alleges that there are distinct "Mass Market" and "Premium" trading card markets, and that there is limited interchangeability between the two. Am. Compl. ¶¶ 52-59. Panini must identify which products it contends are in each supposed market. *See Reisner v. Gen. Motors Corp.*, 671 F.2d 91, 98 (2d Cir. 1982) ("GM was entitled to discovery of Reisner's factual allegations concerning the relevant markets so that GM could prepare its defense."). Instead, Panini repeats its allegations about the features each product possesses, identifies a few exemplar Premium brands and Mass Market brands (two of which Panini already alleged, *compare* Am. Compl. ¶ 54, *with* Ex. A at 29-30), and claims "Fanatics can apply the identified criteria" for itself, Ex. C at 4. That is not how Panini's burden to prove a relevant market (or the discovery process) works. Fanatics has a right to discover the products that *Panini contends* fall into what it claims are "distinct" markets. That is the precursor to any calculation of market share, competitive effects, damages, and other elements Panini must prove. Fanatics has offered to permit Panini to identify

those products at the brand level, if that is Panini's contention, and to limit its identification to football, basketball, baseball, and soccer products from 2018 to present. *See* Ex. D.

### III. Panini Improperly Refers Fanatics to Unidentified Documents, Data, and Testimony for Interrogatory Nos. 2, 8, 12, 16, and 18

Panini provided no substantive information in response to Interrogatory Nos. 2, 8, 12, 16, and 18. Instead, it "refer[red] Defendants to the documents and data produced in this action" or to unidentified deposition testimony. But merely incorporating by reference unidentified "documents," the "document production," or depositions is "improper and thus unresponsive." *Hallmark*, 2018 WL 6573435, at *10; *see also Neogenix Oncology, Inc. v. Gordon*, 2017 WL 4233028, at *2 (E.D.N.Y. Sept. 22, 2017). Panini invokes Rule 33(d), but that Rule permits a party to answer by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1); *see also Volt Elec. NYC Corp. v. A.M.E., Inc.*, 2020 WL 6378945, at *2 (S.D.N.Y. Oct. 30, 2020) (ordering Bates numbers or narrative response); *Mills v. Steuben Foods*, 2023 WL 179579, at *2 (W.D.N.Y. Jan. 13, 2023) (requiring "sufficient particularization identifying [documents] … with reasonable exactness"). Panini's Responses fail to meet this standard.

It is critical that Panini provide fulsome responses to Interrogatory Nos. 2, 8, 12, 16, and 18, each of which seeks information highly relevant to Fanatics' defenses:

**Interrogatory 2** asks Panini to identify exclusive offers of "ten years or more" that it made to licensors from 2009 to the present. Panini has alleged that the length of Fanatics' licenses is "unprecedented." Am. Compl. ¶¶ 7-8, 12, 100, 103, 105. [redacted] *See* Ex. F. So Panini's contentions regarding the length of its own licenses are key to Fanatics' defenses.

**Interrogatory 8** asks Panini to describe how its product "marriages" have operated since 2019, including related sales data. Panini's contentions about its bundling practices are relevant to Fanatics' defense that Panini's business dealings have harmed purchasers, including by forcing them to buy a product they do not want. *See, e.g.*, Ex. G (K. Haake Tr.) at 175:21-176:25 [redacted].

**Interrogatory 12** asks Panini to identify its total net sales, gross sales, and contribution margin from Trading Cards and Stickers *other than* fully licensed NFL, NBA, and MLB cards. Panini's contentions on these figures are plainly relevant to market definition and damages: Panini's success selling other-sports and entertainment cards undermines its gerrymandered market and its purported damages.

**Interrogatory 16** asks Panini to describe its efforts to sell Panini America. Panini's contentions about its sales process and related valuations are highly relevant to damages. Panini claims it has not put its sales efforts at issue "except for any valuations generated in connection with those efforts." Ex. A at 31. But those valuations cannot be tested without knowing the sales process that generated them, including who received Panini's marketing materials and who had access to its data room. Fanatics has offered to limit the Interrogatory to Panini's ongoing sales process, including the identity of each entity to which Panini or its agents and/or advisors provided marketing materials or granted access to a data room. *See* Ex. D.

**Interrogatory 18** asks Panini to describe its efforts to develop and sell Trading Card Game products and, for each, its sales performance. That information goes to the heart of rebutting Panini's alleged product market: Panini alleges that trading card games and other non-sports cards

are not interchangeable with sports trading cards, and that it is impossible for it to operate without a license from the NFL, NBA, MLB, or their Players Associations. Yet Panini has been developing these very products and touting their success. *See* Ex. H (J. Stefano Tr.) at 224:11-17 ([redacted]); Press Release, May 20, 2026, https://blog.paniniamerica.net/chaotic-returns-beloved-trading-card-game-franchise-announces-relaunch-with-physical-cards-organized-play-and-a-new-online-experience/.

### IV. Panini's Response to Interrogatory 11 Is Vague and Non-Substantive

***Interrogatory 11:*** *Identify the date by which You contend Fanatics first acquired monopoly power in each relevant market that You contend Fanatics illegally monopolized.* Ex. B at 4.

Panini provides one undifferentiated answer to Interrogatory 11 for every market: that Fanatics acquired monopoly power "[redacted]" Ex. A at 24. Panini pleads eight separate markets, Am. Compl. ¶¶ 252-53, yet provides no specific answer for any of them. Panini must "provide the best answer [it] can based upon information within [its] possession," *Harris v. Bronx Parent Hous. Network, Inc.*, 2020 WL 763740, at *1 (S.D.N.Y. Feb. 14, 2020) (citation omitted), not a "high level" summary that leaves Fanatics to guess at its contentions. And the Federal Rules foreclose Panini's objection that the Interrogatory calls for a legal conclusion: "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Panini must supplement its Response to identify when it contends that Fanatics first acquired monopoly power in each market.

### V. Panini's Response to Interrogatory 21 Is Also Vague and Non-Substantive

***Interrogatory 21:*** *Identify each instance from March 2022 to the present in which You contend that Your output or production of Trading Cards was reduced, delayed, or cancelled as a result of any conduct by Fanatics, Ames Watson, or GCP. For each instance, Identify the product you contend was affected, the magnitude of the reduction, delay, or cancellation, and the basis for attributing that to Fanatics, Ames Watson, or GCP. See Am. Compl. ¶¶ 121-48, 264, ECF No. 69.* Ex. B at 6-7.

Panini responded to Interrogatory 21 with only a "high level" list of thirty-one collections without identifying when any release was affected; whether it was reduced, delayed, or cancelled; or the extent of the effect. Ex. A at 38-40. That is insufficient. Panini's alleged output interruptions are among the core alleged anticompetitive acts, Am. Compl. ¶¶ 121-48, and Fanatics is entitled to know how Panini claims it was affected. Contrary to Panini's claims, whether a release was delayed, reduced, or cancelled, and by how much, are facts—not expert opinion. And Fanatics has offered to limit this Interrogatory to whether each purported output interruption was (1) a delay, (2) a reduction, or (3) a cancellation, and the magnitude of each. *See* Ex. D.

### VI. Fanatics Served Proper Interrogatories Consistent with Local Rule 33.3

Panini previously objected to Interrogatories 2, 8, 12, 15, 16, and 18 on the basis that they are not "contention" interrogatories. Ex. C at 2-4. This is gamesmanship. Panini does not believe the parties limited interrogatories to contention interrogatories because *Panini itself* served many "non-contention" interrogatories. *See* Ex. E (Interrogatories 3-7). The parties stipulated to extend the deadline for any "interrogatories," not merely "contention interrogatories." ECF No. 593. And the Local Rules permit interrogatories seeking factual information when they are "a more practical method of obtaining the information sought than a request for production or a deposition." Local Civ. R. 33.3(b)(1).

LATHAM & WATKINS LLP                quinn emanuel trial lawyers | new york

Respectfully submitted,

*/s/ Michael B. Carlinsky* [1]
Michael B. Carlinsky
Quinn Emanuel Urquhart & Sullivan LLP
295 Fifth Avenue
New York, NY 10016
michaelcarlinsky@quinnemanuel.com
(212) 849-7000

*Counsel for Fanatics*

*/s/ Lawrence E. Buterman*
Lawrence E. Buterman
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
lawrence.buterman@lw.com
(212) 906-1200

*Counsel for Fanatics*

cc: All Counsel of Record (via ECF)

[1] Fanatics uses electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.